# GLAVIN PLLC
156 West 56th Street, Suite 2004
New York, New York 10019
646-693-5505

February 24, 2023

**VIA ECF**
The Honorable Jennifer H. Rearden
United States District Court
500 Pearl Street
Southern District of New York
New York, New York 10007

Re:    **United States v. Charles McGonigal and Sergey Shestakov**, 23 Cr. 16 (JHR)

Dear Judge Rearden:

We represent Sergey Shestakov in the above-referenced matter and write to object to two provisions of the Government's proposed protective order because, to protect the integrity of these proceedings and Mr. Shestakov's right to a fair trial, those provisions should be binding on *both* the Government and the defense. *See* Government Ltr. Mot. to Enter a Protective Order and Proposed Order, ECF Nos. 22, 22-1 (the "Gov't Ltr." and the "Proposed Order"). Mr. Shestakov requests that the Court enter a protective order that binds *both* the Government and the defense to the second sentence of paragraph three and the entirety of paragraph seven.[1]

Although the Government claims there is "no legal authority" (Gov't Ltr. at 5) supporting the binding provisions on *both* parties that we request, the Government is wrong. On September 9, 2020, in *United States v. Kolfage et al.,* 20. Cr. 412 (S.D.N.Y.), U.S. District Court Judge Analisa Torres entered a protective order, "[o]n motion of the United States of America," *that bound both the Government and the defense to one of the very same provisions at issue here. See* Ex. A (20-cr-412, ECF No. 33). That protective order, in a very high-profile criminal case charging former Donald Trump advisor Steve Bannon and others with fraud involving a purported charity called "We Build the Wall," specifically provided:  "the ***parties***, the ***parties' counsel***, and Designated Persons shall not disclose Protected Materials to members of the media, nor shall the ***parties***, the ***parties' counsel***, and Designated Persons post any Protected Materials on any Internet or network site (such as Facebook, Twitter, Instagram, and other social networking and media sites and applications) to which persons other than the parties, the parties' counsel, and Designated Persons have access." *Id.* ¶ 6 (emphasis added). We seek that same provision here.

The *Kolfage* parties and their counsel—*i.e.*, including the Government—agreed to be bound under this provision in a criminal case where the Government acknowledged that

---

[1]    Counsel for defendant Charles McGonigal agreed to the terms of the Government's Proposed Order as a precondition of being able to receive discovery in this matter, but does not object to the modifications to the order sought by Mr. Shestakov, which we understand would bind all parties if entered by the Court.

The Hon. Jennifer H. Rearden
February 24, 2023
Page 2

"extrajudicial public and media statements" risked prejudicing the proceedings. *See Kolfage et al.*, No. 20-cr-412, ECF No. 22 (S.D.N.Y. Aug. 28, 2020). A protective order with reciprocal obligations binding the parties from disclosure of "Disclosure Material" to the media and on social media is similarly warranted in this high-profile case and is squarely within this Court's "broad discretion" under Rule 16(d)(1). *United States v. Guzman Loera*, 24 F.4th 144, 155 (2d Cir. 2022) (recognizing the district court's "broad discretion" over protective orders governing discovery); *see In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 122 (2d Cir. 2008) (observing that Rule 16(d) leaves discovery to the "informed discretion of the district court").

### I.   Extraordinary Pretrial Publicity In This Case

As the Government acknowledges, this case has "garnered…significant media attention[.]" Gov't Ltr. at 4. That is an understatement. Following the arrests of Mr. McGonigal and Mr. Shestakov, on January 23, 2023 the Government published a press release on the U.S. Attorney's Office website which included statements both from U.S. Attorney Damian Williams and FBI Assistant Director in Charge ("ADIC") Michael Driscoll.[2] The U.S. Attorney's Office of the Southern District of New York Twitter account (which has approximately 111,0000 followers) also tweeted that press release.[3] The U.S. Attorney admonished Mr. McGonigal and Mr. Shestakov "as public servants [] [who] should have known better" and promised that the "Office will continue to prosecute those who violate U.S. sanctions enacted in response to Russian belligerence in Ukraine in order to line their own pockets." DOJ Press Release. ADIC Driscoll further stated that Russian oligarchs "like Oleg Deripaska," an alleged unindicted co-conspirator of Mr. Shestakov in the Indictment, "perform global malign influence on behalf of the Kremlin and are associated with acts of bribery, extortion, and violence," thereby publicly implying that Mr. Shestakov deliberately and willfully aligned himself with the Kremlin, Vladimir Putin, and corrupt and violent actions--which was not true, incendiary and served to grossly prejudice Mr. Shestakov to the world and any jury pool.[4] *Id.*

News outlets ran breaking news stories on the Indictment's allegations including, *CNN*, *The New York Times*, *The Daily News*, *The Washington Post* and *Business Insider*. Critically, many of the articles rely on "sources" who purport to be current or former law enforcement or intelligence officials.[5] Some of these publications were highly prejudicial towards Mr. Shestakov,

---

[2]   Press Release, DEP'T OF JUST., *Former Special Agent In Charge Of The New York FBI Counterintelligence Division Charged With Violating U.S. Sanctions On Russia* (Jan. 23, 2023) [hereinafter "DOJ Press Release"], (available at https://tinyurl.com/4sdjranp).

[3]   US Attorney SDNY (@SDNYnews), TWITTER (Jan. 23, 2023, 10:50 AM) https://tinyurl.com/yv9ady9v.

[4]   The DOJ Press Release ran afoul of 28 C.F.R. § 50.2, which governs "Release of information by personnel of the Department of Justice relating to criminal…proceedings" and explicitly provides that DOJ extrajudicial media statements "should not include subjective observations," "[o]bservations about a defendant's character," statements concerning "argument" in the case, and "[a]ny opinion as to the accused's guilt." *Id.* §§ 50.2(b)(3), (6).

[5]   *See, e.g.,* Luke Barr, Aaron Katersky & Alexander Mallin, *Former Top FBI Official Charles McGonigal Arrested Over Ties To Russian Oligarch Oleg Deripaska*, ABC News (Jan. 24, 2023), https://tinyurl.com/2p954ye4

The Hon. Jennifer H. Rearden
February 24, 2023
Page 3

linking him to Russian President Vladimir Putin and Russian intelligence efforts.[6] *Business Insider* has regularly published articles on the case and its purported broader implications—publishing a new exposé as recently as February 16, 2023—that reference "US intelligence sources."[7] Similarly, a recent *Rolling Stone* article refers to various intelligence-affiliated sources throughout and "documents" reviewed by the magazine.[8]

Mr. Shestakov's case has also received considerable interest from Congress. For example, on January 29, 2023, U.S. Representative Jim Jordan, appeared on the Sunday version of NBC's "Meet The Press" and discussed Mr. Shestakov's case.[9] On February 2, 2023, Representatives Jordan and Matt Gaetz announced that the House Judiciary Committee was investigating Mr. McGonigal's activities and published a letter to FBI Director Christopher Wray linking Mr. Shestakov's co-defendant, Mr. McGonigal, to investigations into Russian interference in the 2016 United States Presidential election. H.R. Comm. on the Judiciary, 108th Cong. (Representative Jim Jordan & Representative Gaetz letter to FBI Director Christopher Wray, dated Feb. 2, 2023) (available at https://tinyurl.com/bdz5sa5h). Representative Jordan's letter also requested documents relating to Mr. McGonigal and a briefing. *Id.*

There is no question that this case will continue to garner intense public scrutiny. Accordingly, Mr. Shestakov's right to a fair trial with an unbiased jury pool is of paramount concern.

## II.    Applicable Law

Rule 16(d) of the Federal Rules of Criminal Procedure provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." FED. R. CRIM. P. 16(d)(1). Indeed, "it is well within the courts' authority to adopt appropriate measures to ensure that the entire process, from arrest to disposition, is fair and

---

(refers to "law enforcement sources"); Shane Harris, Rosalind S. Helderman & Catherine Belton, *Former FBI Agent's Side Work Puts Bureau Under New Scrutiny*, WASH. POST (Feb. 13. 2023), https://tinyurl.com/57zxxash ("[A]rticle is based on interview with current and former officials, some of whom spoke on condition of anonymity due to sensitivity of criminal charges"); Seth Hettena, *Who Corrupted a top FBI Spyhunter?*, ROLLING STONE, Feb. 17. 2023, https://tinyurl.com/29vft36a (refers to numerous unnamed sources, including retired senior FBI official); Michael Rothfeld, William K. Rashbaum & Kenneth P. Vogel, *How Prosecutors Say a Top F.B.I. Agent Sold His Services Overseas*, N.Y. TIMES (Feb 4. 2023), https://tinyurl.com/2p829y88.

[6]   *See* Tim Balk & Molly Crane-Newman, *Retired Top FBI Agent In NYC Is Charged With Violating Sanctions On Russia, Working with Oligarch*, N.Y. Daily News (Jan. 23, 2023), https://tinyurl.com/ytuj4jfz ("[F]ormer Soviet Diplomat Sergey Shestakov worked in 2021 for Putin associate. . . ."); SpyTalk: Intelligence for Thinking People (@talk_spy), TWITTER (Jan. 30 2023, 4:03 PM), https://tinyurl.com/bdhpfm76 ("Interesting new details on Sergey Shestakov former Russian "diplomat" arrested in #McGonigal case. . . .").

[7]   Mattathias Schwartz, *Exclusive: British Intel Caught FBI Spy Chief Secretly Meeting a Russian in London*, BUS. INSIDER (Feb. 16, 2023), https://tinyurl.com/2p85czrs (referencing three sources that are former officials in the US intelligence community and one unidentified source).

[8]   Hettena, *Who Corrupted a top FBI Spyhunter?*, *supra* note 5.

[9]   *Meet the Press - January 29, 2023, Transcripts,* NBC NEWS (Jan. 29, 2023), https://tinyurl.com/2dks6p22.

The Hon. Jennifer H. Rearden
February 24, 2023
Page 4

perceived to be fair." *United States v. Smith*, 985 F. Supp. 2d 506, 541 (S.D.N.Y. 2013); *see also United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991) (noting that Rule 16(d) permits the court to limit or otherwise regulate discovery under the Rule). "[T]he court has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. McCaughey*, 534 F. Supp. 3d 132, 138 (D.D.C. 2021) (citation omitted); *see Guzman Loera*, 24 F.4th at 155.

### III. Discussion

Mr. Shestakov has no objection to a protective order in this case. Instead, Mr. Shestakov welcomes a protective order banning disclosure of the Disclosure Material to the media or social media given the extraordinary national and international interest in this case at a time when Russian President Putin and his government have waged an unprovoked, immoral and horrific war on a United States ally. Indeed, the Government's Proposed Order expressly states that the Disclosure Material may include material that "would risk prejudicial pretrial publicity if publicly disseminated. Proposed Order ¶ 1. The defense has no interest in disclosing Disclosure Material to the press or on social media, and we hope the same of the Government. Thus, it is mystifying why the Government would not agree to the very same provision here to which it agreed, and Judge Torres ordered, in the *Kolfage* case.

The DOJ is "the world's largest law office, employing more than 10,000 attorneys" *Office of Attorney Recruitment & Management*, DEP'T OF JUST., https://www.justice.gov/oarm (last visited Feb. 21, 2023), and the DOJ relies on federal investigative agencies, like the FBI, in prosecutions. *See, e.g., United States v. Walters*, No. 16-cr-338, 2017 WL 11434158, at *9 (S.D.N.Y. Mar. 1, 2017) (this reliance "requires a prosecutor's office to have a reputation of trust, *accommodation*, and cooperation with the special agents engaged in the investigation," and rooting out misconduct may be difficult, "but it is *essential* to the federal prosecutor's role in seeing that justice is done according to a process that *respects the rights of others*" (emphasis added)). The prosecutors and FBI agents on this case are undoubtedly briefing up-the-chain to top officials within the DOJ. Mr. Shestakov's simply seeks a reciprocal assurance that the prosecutors, their agents, and entities under the DOJ do not impermissibly disseminate Disclosure Material to the media or on the Internet.

Mr. Shestakov's objection, at its core, seeks to "avoid the creation of a carnival atmosphere in high-profile cases" and prevent the compromise of this criminal proceeding and future trial. *Smith*, 985 F. Supp. 2d at 540 (citation omitted). In seeking to bind the Government to the provisions of paragraphs three (second sentence) and seven, Mr. Shestakov recognizes that "the risk of prejudice to the fair administration of justice from a public-relations battle is heightened in high-profile cases." *Id.* at 541 (citing *In re Dow Jones & Co.*, 842 F.2d 603 (2d Cir. 1998) and *United States v. Bulger*, No. 99-cr-10371, 2013 WL 3338749, at *6 (D. Mass. July 1, 2013)).

Beyond the Court's broad authority under Rule 16, Mr. Shestakov has a Sixth Amendment right to a fair trial. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1073 (1991) (noting that "on several occasions [the Supreme Court has] approved restriction on the communications of trial participants where necessary to ensure a fair trial for a criminal defendant") (citation omitted);

The Hon. Jennifer H. Rearden
February 24, 2023
Page 5

*Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) (given the "difficulty of effacing prejudicial publicity…trial courts must take strong measures.); *United States v. Simon*, 664 F. Supp. 780, 791 (S.D.N.Y. 1987) (Under *Sheppard*, the court must take steps to prevent "dissemination of prejudicial publicity," including forbidding "prejudicial extrajudicial statements by lawyers and *other participants* in the case" (emphasis added)).

In other contexts, the Government has recognized the harm that leaks present to criminal cases. *See, e.g.*, *Walters*, 2017 WL 11434158, at *10, n.1 ("the government also points out that . . . the investigation of [the defendant] was harmed rather than helped by the leaks"). In *Walters*, a high-profile insider trading case involving a nationally known sports gambler, after complaints by the defense, the Government was finally forced to acknowledge that an FBI agent on the case was leaking grand jury information to the media. *See Walters*, No. 16-cr-338, ECF No. 68 (S.D.N.Y. Jan. 13, 2007), attached hereto as Ex. B, at 2–4. This is precisely what we seek to avoid.

With respect to paragraph seven of the Proposed Order, we seek a provision that *prospectively* requires the Government (like the defense) to (a) provide a copy of the protective order to prospective witness and anyone working with the prosecution team to whom they disclose *going forward* Disclosure Material, and (b) keep track of the prospective witnesses and anyone working with the prosecution team to whom they disclose Disclosure Material and what material was disclosed. Such a reciprocal provision is designed to promote compliance with paragraph three, discourage leaks, and allow for targeted inquiry in case an improper disclosure occurs. Should there be a violation of the protective order in its current form offered by the Government, the Court would only be empowered to inspect the defense's list. That is patently unfair and ineffective given the abundant possibility that the Government could be the source of the dissemination. Without a reciprocal list requirement, this paragraph is without force, devoid of the ability to effectively investigate the leak and remediate prejudice against the defense.

Finally, it is little comfort that the Government believes there are sufficient remedies under Local Criminal Rule 23.1, particularly when (i) the DOJ Press Release already ran afoul of that rule and 28 C.F.R. § 50.2; (ii) there is an available proactive mechanism now to *prevent* prejudice, *i.e.*, by binding both parties from disclosure of the Disclosure Material to the media; and (iii) Rule 23.1(i) does not explicitly provide for discipline of a non-lawyer investigative agents (such as the FBI) who improperly leak Disclosure Material. Given the unique circumstances of this case, our request for reciprocal binding provisions for paragraphs three (second sentence) and seven is eminently reasonable.

Respectfully submitted,

By: *Rita M. Glavin*
Rita M. Glavin
Katherine E. Petrino