

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 28, 2023

**BY ECF**

The Honorable Jennifer H. Rearden
United States District Judge
500 Pearl Street
Southern District of New York
New York, New York 10007

      Re:    *United States v. Charles McGonigal and Sergey Shestakov*, 23 Cr. 16 (JHR)

Dear Judge Rearden:

      The Government respectfully submits this letter replying to defendant Sergey Shestakov's opposition (Dkt. 28) to the Government's motion for a protective order. For the reasons discussed below, and in the Government's letter motion, the Court should issue the protective order the Government has proposed.

**I.**    **The Government's Press Release Was Proper**

      Much of Shestakov's opposition is dedicated to accusing the Government of improper conduct as a justification for the protective order modifications he seeks. Shestakov argues that the Government's press release announcing this case contained statements or implications that were "not true," and "incendiary," and that the press release "served to grossly prejudice" him. (Dkt. 28 at 2). His claims are baseless and, in any event, provide no basis for his proposed modifications.

      For starters, there was nothing improper about the Government's press release. This District's Local Criminal Rule 23.1 presumptively permits the Government to issue an announcement at the time of arrest and to describe the "nature, substance or text of the charge, including a brief description of the offense charged." *See also United States v. Avenatti*, 433 F. Supp. 3d 552, 567-68 (S.D.N.Y. 2020) ("there is nothing unusual about the U.S. Attorney issuing a press release announcing an arrest," and nothing in the local rule "bar[s] the Government from briefly setting forth its theory of the case" in a public announcement); *accord United States v. Woodberry*, 546 F. Supp. 3d 180, 190 (E.D.N.Y. 2021).

      Shestakov nevertheless claims the Government's press release ran afoul of the rule. He points to statements that the defendants "should have known better" than to violate sanctions; that the United States Attorney's Office would continue to prosecute violations of sanctions enacted in response to Russia's war in Ukraine; and that Russian oligarchs like Oleg Deripaska, whom the

defendants violated sanctions by working for, "perform global malign influence on behalf of the Kremlin and are associated with acts of bribery, extortion, and violence." (Dkt. 28 at 2 (quoting the Government's press release)).[1] But Shestakov's arguments are meritless in light of the presumptively permissible conduct set forth in the rule. *See* L. Crim. R. 23.1(e)(1), (3).

Taking the three challenged statements in turn: *first*, "should have known better," if anything, *understates* what the Government alleged in the Indictment and must prove at trial, which is that the defendants willfully committed crimes. *See* Indictment ¶¶ 26, 28, 30, 35; *cf., e.g.*, *United States v. Lopez-Diaz*, 794 F.3d 106, 114 (1st Cir. 2015) (Government's argument that the defendant "should have known better" invoked a "lesser negligence standard, rather than knowledge or willful blindness"). *Second*, the statement that the Government would continue to prosecute similar offenses is a routine feature of press releases and falls comfortably within the authority granted by the applicable rules to address the public policy significance of a case. *See, e.g.*, *United States v. Silver*, 103 F. Supp. 3d 370, 379 (S.D.N.Y. 2015) ("The rules afford prosecutors considerable latitude to speak about the facts of a case, the offenses charged, and even the public policy significance of a case, to the extent that such discussion is in furtherance of law enforcement goals." (internal quotation marks and citations omitted)); *United States v. Whitehead*, No. 22 Cr. 692 (LGS) (S.D.N.Y.), Dkt. 58 at 23 (the "*Whitehead* Order") (the "general statement that the FBI would pursue others who would 'attempt to obtain funds through false promises or threats' is an unobjectionable statement of the FBI's mission"). *Third*, the description of the reason for the sanctions on Russian oligarchs—their performance of harmful acts on behalf of the Kremlin—permissibly paraphrases and summarizes information contained in the Indictment on that subject. *See* Indictment ¶¶ 4-11; *see also, e.g.*, *Whitehead* Order at 2 (paraphrasing charging documents is permissible, and the use of "near-synonyms does not constitute" an opinion about the defendant's guilt or the merits of the case under L. Crim. R. 23.1(d)).

Shestakov relies on his allegations as the basis for his opposition to the Government's proposed standard protective order. But even if his complaints about the press release had merit—they do not, for the reasons just summarized—they would still not be a valid reason to deny the Government's proposed order. Shestakov has identified no court that has agreed to modify or issue a protective order as a remedy for allegedly improper Government statements. As the Government's moving letter explained, the desire to publicly respond to perceived wrongs by the Government is not a basis to oppose or modify a protective order. *See, e.g.*, *United States v. Smith*, 985 F. Supp. 2d 506, 540 (S.D.N.Y. 2013).

## II. Good Cause Supports the Government's Proposed Protective Order, But Not Shestakov's Proposed Modifications

Despite Shestakov's rhetoric and his allegations of wrongdoing, he effectively concedes that the challenged protective-order provisions should appropriately apply to the defense. (*See* Dkt. 28 at 4-5 (Shestakov "welcomes" a protective order and does not dispute that the provisions should bind the defense)). He opposes the challenged terms solely because they are not reciprocal. But whereas there is good cause for imposing the challenged restrictions on the defense, Shestakov has not identified good cause to impose them reciprocally on the Government. Far from being justified

---

[1] For the Court's reference, the relevant press release is available at https://www.justice.gov/usao-sdny/pr/former-special-agent-charge-new-york-fbi-counterintelligence-division-charged-violating.

by good cause, Shestakov's proposed reciprocal language would impose inappropriate obligations on the Government. Take the challenged language in paragraph 3 of the proposed protective order: The Government has no intention to disclose discovery materials to the media, or to post them on Twitter. But that is not all that paragraph 3 prohibits. It also prohibits posting discovery materials on internet or network sites "to which persons other than the parties hereto have access." Binding the Government to that provision would, for instance, prevent the Government from using a secure file-transfer website to share materials gathered in this investigation with other law enforcement agencies or attorneys for the Government, *see* Fed. R. Crim. P. 6(e)(3). That may have been the effect of the provision Shestakov cites in the order from *United States v. Kolfage* (*see* Dkt. 28-1 ¶ 6), but it was not the intent.[2]

Shestakov's alternative to paragraph 7 of the proposed protective order would likewise cause absurd results. He proposes that the Court order the Government to provide a copy of the protective order to "prospective witnesses and anyone working with the prosecution team to whom they disclose *going forward* Disclosure Material." (Dkt. 28 at 5). On its face, that restriction could apply to numerous people—related and unrelated to this investigation—with whom the Government can properly share information in its investigative files. For instance, that restriction would at least arguably require the Government to provide the protective order in advance to, and keep a list of, any magistrate judges who consider search warrant applications based on Disclosure Material. It might arguably also require protective order disclosure to, and list-keeping about, (1) grand jurors who might consider a superseding indictment in this case, or an indictment in a separate case; (2) "prospective witnesses" in a different investigation or case; (3) law enforcement officers who are not members of the prosecution team; and (4) Government lawyers who are not members of the prosecution team. We are aware of no court that has imposed that kind of obligation on the Government as the price of producing discovery in a criminal case.

In the context of the protective order, paragraph 7 makes sense only because of other restrictions on the purposes for which the defense—but not the Government—can use Disclosure Material. Other terms of the protective order, to which Shestakov does not object, limit *the defense's* use of discovery materials to this case.[3] (*See* Dkt. 22-1 ¶ 3 (Disclosure Material "shall be used by the defense solely for purposes of defending this action"); *id.* ¶ 5 (the order "does not prevent the disclosure of any Disclosure Material in any hearing or trial held *in this action*, or to any judge or magistrate judge, *for purposes of this action*" (emphasis added)). The Government is not, and cannot be, subject to similar restrictions on use. The Government lawfully obtained the

---

[2] That the Government *consented* to the entry of an order in another case provides little legal support for *imposing* such an order in a different case with different factual circumstances, given that Judge Torres had no occasion to consider the arguments raised here. And nothing required the Government to object to the order in *Kolfage* if entry of the order in that case would not prejudice the Government, simply to avoid entry of similar orders in other cases where the Government could be prejudiced. If the Government's consent in one case were binding in all future cases, the Government would have to routinely object to defense requests even where they were harmless to the Government, burdening courts with many unnecessary disputes.

[3] The Government anticipates jointly proposing with at least McGonigal, and potentially both defendants, an expansion of that provision, to permit Disclosure Material under the order to also be used in the separate criminal case pending against McGonigal in the United States District Court for the District of Columbia.

discovery materials, and may use its investigative files for many lawful purposes separate and apart from producing discovery to the defendants or prosecuting this case. And for some of the materials, other legal rules already govern the use of information and require the Government to keep track of disclosures. *See, e.g.*, Fed. R. Crim. P. 6(e)(3). By contrast, the defendants are obtaining the discovery materials solely because the Government is providing them to the defendants, who have no lawful claim to possess—much less use—the materials except as part of this case.[4] It would be inappropriate and unduly burdensome to impose the restrictions of paragraph 7 on the Government given the Government's far broader authority to use its own investigative materials for reasons other than prosecuting this case.

\*\*\*

Shestakov's opposition effectively concedes that there is good cause to impose the challenged restrictions in paragraphs 3 and 7 on the defense. His request is only to have those provisions apply equally to the Government. But he has not established—and there is not—good cause for that request.

The Government respectfully requests that the Court reject Shestakov's objections and enter the proposed protective order.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Rebecca T. Dell
Hagan Scotten
Derek Wikstrom
Assistant United States Attorneys
(212) 637-2198 / 2410 / 1085

Cc: Defense Counsel (by ECF)

---

[4] Shestakov's suggestion that fairness requires reciprocity (*see* Dkt. 28 at 5) is thus misplaced, because the parties are not similarly situated: Subjecting Shestakov to certain conditions in order to receive discovery which he does not possess and has no right to possess outside this case is not equivalent to subjecting the Government to conditions with respect to materials that it already possesses and may use for any number of lawful purposes. *See United States v. Chow*, 14 Cr. 196, 2014 WL 2093488, at \*3 (N.D. Cal. May 19, 2014) ("Chow complains that the protective order 'must be reciprocal in this case to maintain the integrity of the process.' Judge Spero correctly rejected this notion in the parties' negotiations. The government is already in possession of the materials in question. To the extent that the defendants turn over their own discovery materials, they are free to seek a reciprocal protective order as to those materials." (internal citations omitted)).