# BRACEWELL

June 23, 2023

**VIA ECF**

The Honorable Jennifer H. Rearden
United States District Judge
500 Pearl St.
Southern District of New York
New York, NY 10007-1312

Re:   *United States v. Charles McGonigal*, No. 1:23-cr-00016-JHR

Your Honor,

     We write as counsel for Defendant Charles McGonigal to supplement the government's letter of June 2, 2023 regarding the status of discovery, and to respectfully request that the Court hold a status conference, in an appropriate environment, to address the current state of classified discovery and to identify potential areas of motion practice under the Classified Information Procedures Act ("CIPA"). Counsel for Sergey Shestakov joins in this request because information that is discoverable to Mr. McGonigal also may be discoverable to Mr. Shestakov. With respect to the status of unclassified discovery, the U.S. Attorney's Offices in the Southern District of New York and the District of Columbia have provided voluminous electronic discovery on a rolling basis, and we are dutifully reviewing it as it becomes available. We are in regular communication with the government about our various requests.

     With respect to the way forward as it pertains to classified discovery, as we noted at our last court appearance, the government has indicated that it "does not anticipate making a filing pursuant to Section 4 of CIPA and believes it has met its discovery obligations with respect to classified information." *See* ECF No. 44 at 1. In a subsequent series of conversations, the government informed us, in a general way, that it has satisfied its discovery obligations relating to classified information. The government's position is perplexing. While it is not surprising that the government does not wish to account for its each and every step in satisfying its constitutional obligations, it is puzzling and concerning that the government would, at this stage, determine that no CIPA Section 4 presentation to the Court is appropriate, when we are a year away from trial and the government's discovery obligations with respect to Rule 16, the Jencks Act, *Brady* and *Giglio* are ongoing. The indictment and the U.S. Attorney's press release include accusations that foreseeably implicate classified information within each of the four categories of discoverable

**Mr. Seth D. DuCharme**   T:+1.212.508.6165   F: +1.800.404.3970
**Ms. Meagan C. Maloney**   31 W. 52nd Street, Suite 1900, New York, New York 10019-6118
seth.ducharme@bracewell.com   bracewell.com

AUSTIN   CONNECTICUT   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   SAN ANTONIO   SEATTLE   WASHINGTON, DC

# BRACEWELL

Hon. Jennifer H. Rearden
June 23, 2023
Page 2

information.  With respect to the category of impeachment material alone, it is hard to imagine a world in which there are no classified materials that touch on the credibility of the government's trial witnesses (or alleged unindicted coconspirator hearsay declarants), and which would require treatment under Section 4 of CIPA.

As an initial matter, the classification level of information in the possession of the United States is *wholly irrelevant* as to whether or not it is discoverable.  Classification rules appropriately exist to safeguard the national defense of the United States by limiting the dissemination of such information in the normal course.  *See* Exec. Order No. 13526, 75 Fed. Reg. 707, (2009) (prescribing a uniformed system for classifying national security information).  But once a defendant is indicted, the government is obligated to consider whether information within its holdings is discoverable under the applicable rules, statutes and constitutional caselaw.  *See United States v. Mostafa*, 992 F. Supp. 2d 335, 337 (S.D.N.Y. 2014) ("CIPA applies the general law of discovery in criminal cases to classified information. . .").  While CIPA affords the government an opportunity to withhold certain limited categories of information through the issuance of a protective order by the Court, the government cannot decide to withhold information that ordinarily would be discoverable merely because a U.S. government agency has deemed it classified.  *See* 18 U.S.C. App. III § 3.  It is well-settled that the government may choose to declassify the information, provide a summary of such information, or, with the Court's permission, withhold it so long as it is determined by the Court to be irrelevant to the defense.  *See id.* § 4.

To be clear, CIPA is merely a procedural statute that "does not expand or restrict established principles of discovery."  *United States v. El-Hanafi*, No. 10 Cr. 162, 2012 WL 603649, at *2 (S.D.N.Y. Feb. 24, 2012).  The Act "has no substantive impact on the admissibility or relevance of probative evidence."  *Mostafa*, 992 F. Supp. 2d at 337 (citing *United States v. Johnson,* 139 F.3d 1359, 1365 (11th Cir. 1998)).  Accordingly, when the government has access to potentially discoverable information, and chooses not to disclose that information to the defense, it must seek the Court's permission under CIPA and Rule 16(d) of the Federal Rules of Criminal Procedure.

By suggesting, at this early stage, that no CIPA 4 conference is necessary in this case, the government is circumventing the normal process by which the federal district courts typically consider and either accept or reject the government's proposition that it has satisfied its discovery obligations.  *See United States v. Schulte*, No. 17 Cr. 548, 2021 WL 4335723, at *1 (S.D.N.Y. Sept. 23, 2021) ("Throughout [the CIPA 4] process, the Court placed itself 'in the shoes of defense counsel, the very ones that cannot see the classified record, and ... with a view to their interests' to determine whether the withheld data might be relevant and helpful to the defense.") (quoting *United States v. Amawi*, 695 F.3d 457, 471 (6th Cir. 2012)); *see also United States v. Hasbajrami*, No. 11 Cr. 623, 2016 WL 1029500, at *14 (E.D.N.Y. Mar. 8, 2016) (granting the government's proposed discovery plan only after an *ex parte*, *in camera* review of potentially relevant classified

# BRACEWELL

Hon. Jennifer H. Rearden
June 23, 2023
Page 3

materials); *United States v. Boulos*, No. 13 Cr. 612, 2015 WL 502170, at *2 (E.D.N.Y. Feb. 3, 2015) (same).

CIPA Section 4 conferences have become the norm, rather than the exception, in cases such as this one that purport to concern the national security of the United States. *See, e.g.,* Letter by Gov't, *United States v. Hossain*, No. 19 Cr. 606 (S.D.N.Y. June 5, 2020), ECF No. 25; Letter by Gov't, *United States v. Liu*, No. 19 Cr. 804 (S.D.N.Y. Dec. 17, 2019), ECF No. 41; Letter by Gov't, *United States v. Saipov*, No. 17 Cr. 722 (S.D.N.Y. Oct. 4, 2019), ECF No. 207; Memo. & Op., *United States v. Seng*, No. 15 Cr. 706 (S.D.N.Y. June 22, 2017), ECF No. 541; Notice of Gov't Mot., *United States v. Al Farekh*, No. 15 Cr. 268 (E.D.N.Y. June 30, 2016), ECF No. 50; Motion of Gov't, *United States v. Boulos*, No. 13 Cr. 12 (E.D.N.Y. Oct. 29, 2014), ECF No. 57; Op. & Ord., *United States v. El-Hanafi*, No. 10 Cr. 162 (S.D.N.Y. Feb. 24, 2012), ECF No. 94; Memo. of Gov't, *United States v. Ahmed*, No. 10 Cr. 131 (S.D.N.Y. Oct. 15, 2010), ECF No. 15. In short, the government is obligated to disclose evidence that is helpful and relevant to the defense, and to seek the Court's concurrence when it has decided to withhold information, otherwise discoverable, that it proposes is not helpful to the defense—a determination that the government recognizes is best not made unilaterally by the prosecution team. *See United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008); *see also United States v. Ng Lap Seng*, No. S5 15 Cr. 706, 2017 WL 2693625, at *3 (S.D.N.Y. June 21, 2017). With respect to *Brady*, *Giglio* and Jencks material it of course must produce them in some form. Here, it strains credulity to expect the government to produce *in original format* declassified versions of *all* the information that is potentially relevant and helpful to the defense, and thus it is highly likely that CIPA Section 4 is implicated. At the very least, the Court should make a detailed record as to the government's position, which it would normally do at the CIPA Section 4 stage. *Compare* 18 U.S.C. App. III § 2, *with id.* § 4 ("If the court enters an order granting relief . . . the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.").

Further, it is hard to understand why the government is so reluctant to be more transparent in explaining its discovery practices to the defense in this case. While many national security cases involve defendants with no prior clearances or experience with the U.S. Intelligence Community, and may involve only recently-cleared defense counsel who may be new to navigating the burdens and responsibilities of handling classified information, here, those concerns do not apply. Mr. McGonigal was one of the most senior and experienced national security investigators in the FBI with significant direct professional experience in the areas germane to his requests for assurances about the thoroughness of the government's discovery analysis. In addition, before moving to private practice, the undersigned counsel served as the Chief of the National Security Section, the Chief of the Criminal Division and the Acting United States Attorney in the U.S. Attorney's Office in the Eastern District of New York as well as the Senior Counselor to the Attorney General of the United States for National Security and Criminal matters, and has responsibly held TS/SCI

# BRACEWELL

Hon. Jennifer H. Rearden
June 23, 2023
Page 4

clearances with respect to some of the United States government's most sensitive programs. As the Department of Justice has concluded in re-instating defense counsel's clearances for the purpose of this case, we are trustworthy. So, here, we have a defendant and defense counsel who are highly respectful and experienced with regard to the protocols for handling and compartmentalizing sensitive classified information, and simply request comfort that the government has indeed done everything it would normally do in a case such as this, with sufficient detail to assess the credibility of the government's position.

Notably, Mr. McGonigal has not been accused of mishandling classified information in the cases brought against him, and he maintains respect for the national security interests of the United States, as of course do we. In addition, we are *not* asking the government to disclose to the defense *any* sensitive sources and methods by which discoverable information was collected—only to provide greater transparency to us, and to the Court, as to how it views its procedural obligations, so that we may consider the fairness and reasonableness of the government's approach. Mr. McGonigal is *personally familiar* with this process from his time at the FBI, and it is reasonable for him to expect to be treated no worse than the other defendants who have come before him. To adequately represent Mr. McGonigal, it seems only fair that we be allowed to hold the United States government to the same standards that the defendant upheld as a national security and law enforcement professional, and to make a record of the government's position.

In sum, if the government could explain, in an appropriate setting, how it determined that it had obviated the need for a CIPA Section 4 proceeding, we likely can avoid speculative motion practice, and the parties and this Court may be assured that we can continue to litigate this case fairly and with the level of confidence to which we are entitled. Sadly, even well-meaning prosecutors have discovered too late that they have prejudiced a defendant in their approach to discovery. Judge Nathan soberly observed:

> With each misstep, the public faith in the criminal-justice system further erodes. With each document wrongfully withheld, an innocent person faces the chance of wrongful conviction. And with each unforced Government error, the likelihood grows that a reviewing court will be forced to reverse a conviction or even dismiss an indictment, resulting in wasted resources, delayed justice, and individuals guilty of crimes potentially going unpunished.

*United States v. Nejad*, 487 F. Supp. 3d 206, 225–26, 213 (S.D.N.Y. 2020) (ordering further fact-finding to determine whether sanctions against prosecutors were warranted for withholding exculpatory material, including "the Government's complete failure to produce certain classified material at any point—either before, during, or after trial."). Let us address these concerns now, and then go forward with confidence that the defendant will have the fair trial to which he is entitled, consistent with the protections of the Constitution, binding Second Circuit caselaw, and the Department of Justice's own principled policies, which expressly address these issues. *See*

# BRACEWELL

Hon. Jennifer H. Rearden
June 23, 2023
Page 5

U.S. Dep't of Just., Just. Manual § 2052 (2020), available at https://www.justice.gov/archives/jm/criminal-resource-manual-2052-contacts-intelligence-community-regarding-criminal-investigations.

      For the reasons set forth above, we respectfully request a status conference in an appropriate setting pertaining to the government's obligations to produce information that may be relevant and helpful to the defense, regardless of its level of classification, and to address the potential remedies the Court may impose if the government declines to do so. *See* 18 U.S.C. App. III § 6(e)(2) ("Whenever a defendant is prevented . . . from disclosing or causing the disclosure of classified information, the court shall dismiss the indictment or information [or] shall order such other action . . . as the court determines is appropriate."). To the extent the Court would like more detailed briefing on these issues prior to the conference, the CISO has provided to cleared defense counsel access to facilities that would allow us to draft a supplemental submission at a higher classification level.

Respectfully submitted,

*[signature]*

Seth D. DuCharme
Meagan C. Maloney