```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                              23 CR 16 (JHR)

SERGY SHESTAKOV,

                 Defendant.                 Conference
------------------------------x
                                            New York, N.Y.
                                            September 19, 2023
                                            10:20 a.m.

Before:

                HON. JENNIFER H. REARDEN,

                                            District Judge

                         APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  DEREK WIKSTROM
     HAGAN C. SCOTTEN
     Assistant United States Attorneys

GLAVIN PLLC
     Attorneys for Defendant
BY:  RITA M. GLAVIN
     KATHERINE E. PETRINO
     LEO KORMAN
```

1           (Case called)
2           MR. WIKSTROM:  Good morning.  Derek Wikstrom and Hagan
3   Scotten for the government.
4           THE COURT:  Hello.
5           MS. GLAVIN:  Good morning, your Honor, Rita Glavin,
6   along with my colleagues Katherine Petrino and Leo Korman.  We
7   are here with our client, Sergy Shestakov.
8           THE COURT:  Good morning, all.  Please be seated.
9           Let's start with what I know is on everyone's mind,
10  which is the application filed yesterday by the defendant and a
11  request from the government to set a briefing schedule, which I
12  certainly will.
13          I am not sure how much we can do.  I'm happy to listen
14  today, if people want to make arguments.  Of course I only have
15  a brief from one side.  I'll hear you out, if you like, and we
16  can set a briefing schedule.
17          I already have a number of questions, so I can raise
18  those today.
19          MS. GLAVIN:  Your Honor, it would be helpful for me,
20  because I will tell you that I have been frustrated in my
21  discussions with the government as to -- I think there is a
22  couple of issues.  If the Court could do inquiry, because
23  perhaps we can narrow what the issues are for a motion to
24  compel.
25          As of our conference in May of this year, the

1    government represented what they believed the discovery to be
2    in the Deripaska indictment before Judge Castel, and then the
3    government said that they had never seen the discovery in the
4    case and that they were inferring --
5         THE COURT:  They were surmising, right?
6         MS. GLAVIN:  They were surmising.
7         What I would like to know, and I have asked
8    repeatedly, and I'm not getting any answer beyond, we have
9    complied with our discovery obligations, is, does the
10   government consider the material in the *Shriki* indictment to
11   fall in this case within material that is in their possession,
12   custody, and control.
13        What I gathered from the letter that I got from the
14   government on May 18, it is that they had not looked at that
15   discovery, and they don't plan to look at the discovery, the
16   AUSAs in this case.
17        THE COURT:  I think a different inference arises from
18   that letter, actually.
19        MS. GLAVIN:  That's what I want to get at, because
20   this will narrow it.
21        THE COURT: On the 18th, what they said was:  The team
22   in this case does not possess the evidence gathered in *Shriki*.
23   I know you have a problem with that.
24        But they go on to say:  Nor are we aware of any
25   evidence in that case that constitutes *Brady* or *Giglio* or is

1  material to the defense in this case.  That doesn't necessarily
2  mean the government is unaware because they failed to take any
3  steps to educate themselves about the evidence in that case,
4  right.
5       MS. GLAVIN:  That's exactly what I'm getting at
6  because I'm not getting an answer to that question.  The
7  government has not given me an answer to that question.
8       Because what I know from that case, from the *Shriki*
9  case, there were search warrants in that case that were
10 executed at Deripaska's homes in New York and in D.C.
11      I also have reason to believe that in the *Shriki* case
12 that a cell phone was searched by the government of a woman who
13 I understand to be an assistant to Deripaska.  That cell phone
14 would most certainly be material to preparing our defense in
15 this case in terms of the contacts in those cell phones,
16 communications in that cell phone if this is the assistant to
17 Deripaska.
18      I also understand that in the *Shriki* case the
19 allegation is that Deripaska was using shell companies and
20 straw individuals to move money through bank accounts to pay
21 people to evade sanctions.
22      It is material to my preparing what our defense may
23 be, and I have -- I think there is two routes, both of which we
24 are going in this case.  One is that there was no sanctions
25 violation period, but, secondly, if there was, Mr. Shestakov

certainly did not understand that he was in any criminal conspiracy with Mr. Deripaska at all, but the flow of the money and how Deripaska, who was an unindicted coconspirator in this case, how he operated. He had shell companies in the U.S. I know that based on the other case. There is Gracetown, Inc. There is Ocean Studios California. We want all of that material from the *Shriki* case.

        THE COURT: When you say all of that material, you said in your letter, *Shriki* contains core Rule 16 evidence. What is your basis for these statements? How do you know what you say you know about that case?

        MS. GLAVIN: Because, one, what the government said at the conference, its financial records. Two, I have read what has been publicly reported about that case, I have read what's in the indictment in that case, and I've had a discussion with someone who has some involvement in that case. So I have an understanding of what I believe to be in the discovery in that case.

        I am frustrated because it is unusual in my experience, that the government isn't saying, absolutely, have at it. They didn't have a problem giving me the discovery from the D.C. case with Mr. McGonigal, even though they said they didn't consider that -- they are doing it in an abundance of caution. Why will they not give the financial accounts that they have linked to Deripaska in the *Shriki* case, give me that

1  financial information, the corporate information, the search
2  warrant returns.  I don't understand.
3              THE COURT:  What is the status of that case and what
4  has been produced?
5              MS. GLAVIN:  I think you should ask the government
6  because I do not know except that there has only been one
7  defendant that has appeared.  The case is on in October.
8              THE COURT:  On for?
9              MS. GLAVIN:  A conference.
10             THE COURT:  Mr. Wikstrom, would the government like to
11 be heard at this point on this application, or do you want to
12 wait until you submit your brief?
13             MR. WIKSTROM:  We are content to just wait until we
14 submit our brief.  As we said in our letter last night, your
15 Honor, we don't agree with everything Ms. Glavin is saying, but
16 we think the appropriate way to resolve this is by briefing the
17 motion to compel.
18             THE COURT:  Why don't we do -- do you want to do 14
19 and 7?  Trial is in nine months.  We don't have any motions due
20 until February.  What about -- two weeks from today is October
21 3, and then, Ms. Glavin, you get until the 10th to reply.
22             MS. GLAVIN:  Your Honor, I'm actually going to ask for
23 a little more time because I have depositions that I'm in and
24 another reply brief due in another matter.
25             THE COURT:  Once you get the government's opposition,

1  how much time are you going to want?

2          MS. GLAVIN:  Two weeks.

3          THE COURT:  Do you want three to do your opposition?

4          MR. WIKSTROM:  Two weeks is fine, your Honor.  We can
5  file our opposition -- assuming we are construing the letter
6  Ms. Glavin filed yesterday as a motion, we can file an
7  opposition on the 3rd.

8          MS. GLAVIN:  Your Honor, I actually would like to
9  brief brief this.  I put in the letter.  To be candid, I put in
10 the letter because I was hoping the Court would inquire and
11 press the government about what the discovery was in that case,
12 and hopefully we would avoid motion practice.  That was my
13 hope.

14         I just am surprised.  Having dealt with the office on
15 a number of cases, I have never had a problem getting discovery
16 like this when my client is charged with being part of a
17 conspiracy with someone indicted in another case, similar
18 charges, same time period.  I would just ask the Court press
19 them.

20         THE COURT:  I have -- you might not call it a brief,
21 but it looks like one to me.  I have a fairly lengthy written
22 submission from you laying out your position and citing cases,
23 and I don't have that from them.  I am going to give them a
24 chance to get their position together.

25         MS. GLAVIN:  I would like to submit a formal brief on

1   what the law is and the specifics of what the documents are
2   that we are seeking.
3           THE COURT:  That's fine.  Do you want to submit your
4   brief on the 3rd?
5           MS. GLAVIN:  Your Honor, just the issue is, we are in
6   depositions.
7           THE COURT:  Tell me when you'd like to submit your
8   brief.
9           MS. GLAVIN:  October 10.
10          THE COURT:  Mr. Wikstrom, October 24.
11          MR. WIKSTROM:  That's perfect.  Thank you, your Honor.
12          THE COURT:  Ms. Glavin, you'll do a Halloween reply or
13  you'd like --
14          MS. GLAVIN:  November 3.
15          THE COURT:  November 3.  Friday, November 3.
16          In terms of what else we are doing today, is there
17  anything else to cover today?  I know that there have been five
18  productions made since March.  Are there any other issues
19  anyone anticipates raising in connection with discovery other
20  than the one we were just discussing?
21          MR. WIKSTROM:  There is no other update from the
22  government's perspective since our July 10 letter to the Court,
23  which referenced a June 27 discovery production.  That's the
24  last discovery production we have made in this case.  From our
25  perspective, there is no further update.  And other than this

1  briefing schedule, nothing else the government has on its
2  agenda today, your Honor.
3           THE COURT:  Ms. Glavin, what about you?
4           MS. GLAVIN:  Two things, your Honor.
5           One is, with respect to the discovery, we are going to
6  be making an *ex parte* application to the Court, under 18 U.S.C.
7  3006(e)(2), applying for a Court order for expert services to
8  be paid for by CJA.
9           The second is that we would like to have the Court
10 amend or modify Mr. Shestakov's bail conditions.  His travel
11 restrictions are currently Southern District, Eastern District,
12 and the District of Connecticut.  If it can be modified to
13 include the District of New Jersey so that Mr. Shestakov can
14 drive his wife to work and drive through New Jersey to see his
15 children.
16          THE COURT:  As to the first issue, are you here as CJA
17 counsel or as retained counsel?
18          MS. GLAVIN:  I am here as retained counsel.  There is
19 a process for *ex parte* applications to be made in cases even
20 with retained counsel.
21          THE COURT:  I'll see that when you submit it.
22          As to the other issue, you are going to write to me
23 about that.
24          MS. GLAVIN:  On the bail modification, I think the
25 government agrees.

1        THE COURT:  I want to get a letter, and I want to look
2   at it.  I don't anticipate having an issue with it, but I don't
3   want to do that without seeing anything in writing.
4        We have already excluded time through trial, is that
5   correct, under the speedy trial clock?
6        MR. WIKSTROM:  That's correct, your Honor.
7        THE COURT:  Hearing nothing further, we are adjourned.
8   Thank you.
9        (Adjourned)