**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> SERGEY SHESTAKOV, <br><br>          Defendant. | Case No. 23 Cr. 16 (JHR) <br><br> **Oral Argument Requested** |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**SERGEY SHESTAKOV'S MOTION TO COMPEL**
**THE GOVERNMENT TO PRODUCE DISCOVERY**

**GLAVIN PLLC**
Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
156 W. 56th Street, Ste. 2004
New York, NY 10019
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 6

       A.       Mr. Shestakov is Entitled to the Discovery Materials Under Rule 16. .................... 6

       B.       The USAO's Representation That It Has Complied with Rule 16 Does Not End the Analysis. ........................................................................................ 10

       C.       The USAO Concedes by Waiver that the Discovery Materials Are in Its Possession, Custody, or Control. ........................................................................... 12

       D.       The USAO's View of Brady is Alarmingly Incorrect. ......................................... 13

       E.       A Co-Defendant's Guilty Plea Is Irrelevant to Whether the USAO Should Produce the Discovery Materials. ........................................................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421 (S.D.N.Y 2022) ....... 13

*United States v. Amanat.*, 15-CR-536 (PGG), ECF 706, Dec. 22, 2017, Trial Transcript, at 7145 .......................................................................................................................... 7, 16

*United States v. Bruno*, 383 F.3d 65 (2d Cir. 2004) ................................................................. 6

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) ............................................................. 15

*United States v. Garcia-Pena*, No. 17-CR-363 (GBD), 2018 WL 6985220 (S.D.N.Y. Dec. 19, 2018) ............................................................................................................................ 11

*United States v. Gatto*, 316 F. Supp. 3d 654 (S.D.N.Y. 2018) ................................................ 15

*United States v. Goode*, No. 16 CR. 529 (NSR), 2018 WL 919928 (S.D.N.Y. Feb. 15, 2018) ............................................................................................................................ 12

*United States v. Hossain*, 16-CR-606 (SHS), 2020 WL 6874910, at *2 (S.D.N.Y. Nov. 23, 2020) ............................................................................................................................ 5

*United States v. Labat*, 905 F.2d 18 (2d Cir. 1990) ................................................................. 9

*United States v. Martinez*, 844 F. Supp. 975, 982 (S.D.N.Y. 1994) (SWK) ............................ 8

*United States v. Merced*, No. 19-CR- 832 (ER), 2021 WL 5826286 (S.D.N.Y. 2021) ........... 6, 14

*United States v. Messina* No. 11-CR-31 KAM, 2011 WL 3471511 ........................................ 8

*United States v. Mongelli*, 794 F. Supp. 529 (S.D.N.Y. 1992) ............................................... 13

*United States v. Stein*, 424 F. Supp. 2d 720 (S.D.N.Y. 2006) ................................................. 6, 15

*United States v. Stevens*, 985 F. 2d 1175, 1180 (2d Cir. 1993) .............................................. 8, 12

*United States v. Urena*, 989 F. Supp. 2d 253 (S.D.N.Y. 2013) .............................................. 5, 8, 12

**Statutes**

18 U.S.C. § 371 ........................................................................................................................ 9

**Rules**

Federal Rule of Evidence 803 ................................................................................................. 11

Federal Rule of Criminal Procedure 5 .................................................................................... 6, 14

Defendant Sergey Shestakov, by and through his undersigned counsel, respectfully submits this reply brief in further support of his Motion to Compel production of the Discovery Materials (the "Motion").[1] Given the extraordinary significance of the Discovery Materials to preparing Mr. Shestakov's defense at trial, the defense requests oral argument on this Motion.

## PRELIMINARY STATEMENT

Mr. Shestakov seeks specific materials in the possession of the USAO and FBI team investigating Oleg Deripaska that constitute core Federal Rule of Criminal Procedure 16 material in preparing his defense that there was no conspiracy to do business with alleged co-conspirator and Specially Designated National ("SDN") Oleg Deripaska in violation of U.S. sanctions law as charged in the Indictment.

There is no prejudice to the government in producing these materials to Mr. Shestakov because there is a protective order in this case. And not even the government argues it would be prejudiced by producing the Discovery Materials to the defense. Indeed, if need be, Mr. Shestakov is willing to have these materials provided to the defense on *an attorneys' eyes only basis*. Mr. Shestakov, on the other hand, will suffer severe and irreparable prejudice if his defense team does not have access to the Discovery Materials because they support Mr. Shestakov's defense that neither Mr. Shestakov nor McGonigal were working for and/or on behalf of Deripaska as charged in the Indictment. Mr. Shestakov's freedom is at stake here ██████████████████████████████████████████████████████

---

[1] For ease of reference, we use terms as they are defined in Mr. Shestakov's moving memorandum ("Mov. Mem.").

1

▮ This is about fundamental fairness to the defense.

*First*, the Discovery Materials sought are not a "fishing expedition" in the hope of finding something useful. Rather, the USAO has specific records regarding unindicted co-conspirator Deripaska's means of communicating, doing business, and conducting financial transactions to evade U.S. sanctions as the USAO has acknowledged in charging documents, press releases, public statements, and court conferences in the *Bonham-Carter* and *Deripaska* sanctions cases. Since sanctions were imposed on him in 2018, Deripaska has used certain banks, bank accounts, corporate entities, and certain longtime business associates to continue to conduct business on his behalf, and the USAO has those records. Those records go directly to the core of Mr. Shestakov's defense: there was no conspiracy with Deripaska as charged in the Indictment, and/or Mr. Shestakov and McGonigal were working for EN+ and not Deripaska.

The USAO's arguments as to why this is not Rule 16 material and Mr. Shestakov should not have this evidence are nothing more than arguments that the USAO would make to a jury about why the jury should not agree with the defense's theories and arguments: *i.e.*, according to the USAO the fact that Deripaska had longstanding business agents and a manner of doing business through specific entities and financial accounts to get around U.S. sanctions does not mean that Deripaska did not work with Mr. Shestakov and McGonigal as charged in the Indictment. But that is precisely why Mr. Shestakov is entitled to the Discovery Materials under Rule 16. Mr. Shestakov is entitled to make that argument to the jury and present evidence to bolster it. Mr. Shestakov needs the Discovery Materials to prepare his defense that the USAO got this wrong: there was no

conspiracy with Deripaska as charged to work with or for him and be paid in violation of U.S. sanctions; neither Deripaska nor his agents would ever have conducted business with McGonigal and Mr. Shestakov in the way the USAO alleges given his certain established methods of conducting business, the other corporate entities and bank accounts he routinely used (or his agents used); Mr. Shestakov and McGonigal were working for, and understood they were working for, EN+; and Deripaska did not have ties to Pandean Ltd. ("Pandean") and its financial accounts, which is the entity through which the alleged transaction at issue occurred. Mr. Shestakov is entitled to present this defense to a jury and use the Discovery Materials to prepare and bolster that defense and prove the lack of connection to Deripaska, and why Deripaska and his agents would not and did not conduct business in the manner alleged here. A jury considering that evidence is likely to determine that the USAO has not proved every element of the charged conspiracy beyond a reasonable doubt, particularly given that Fokin worked for EN+ at the time and the USAO's lack of evidence tying Deripaska to Pandean and its bank accounts.

*Second,* this motion to compel is not about—as the USAO argues—the Court and the defense having to accept representations by the USAO that they have complied with their discovery obligations. *See* ECF 87 ("Gov. Opp.") at 9–10. Instead, this motion to compel is about very specific materials the defense knows that the USAO possesses and the USAO now argues—wrongly—it should not have to produce because they do not believe them to be Rule 16. Contrary to the USAO's arguments as to the scope of Rule 16, the "materiality standard of Rule 16 normally is not a heavy burden[.]" *United States v. Stein*, 488 F. Supp. 2d 350, 356 (S.D.N.Y. 2007) (LAK) (cleaned up). Mr. Shestakov is asking for access to specific materials that the defense has identified and shown are material to preparing and bolstering his defense in this sanctions conspiracy case. *See United States v. Urena*, 989 F. Supp. 2d 253, 261–62 (S.D.N.Y. 2013) (PAE) (evidence was

3

material where "it conceivably may provide a different version of events from that presented at trial by the Government," may "lead the defense to pursue other investigative leads as it readies for trial and will lead it to admissible evidence. To be sure, it is entirely possible that . . . . the recording will prove to be of little or no use to the defense. But at this stage, the Court cannot simply so assume[.]"); *United States v. Hossain*, 16-CR-606 (SHS), 2020 WL 6874910, at *2 (S.D.N.Y. Nov. 23, 2020) (in determining whether material is discoverable, the court must determine "whether the information is helpful or material to the defense, *i.e.*, useful to counter the government's case or bolster a defense." (quoting *United States v. Stewart*, 590 F.3d 93, 131 (2d Cir. 2009)). Simply because the USAO thinks the Discovery Materials are not discoverable under Rule 16 does not end the analysis.

*Third,* the USAO has waived and/or conceded any argument that the Discovery Materials are not in its possession, custody, and control because the *USAO consciously decided to provide no facts to the Court on the precise composition of the prosecution team in response to Mr. Shestakov's motion*. *See* Gov. Opp. at 7–9. The fact that the USAO did not discuss the specific make-up of the FBI's New York Counterintelligence Division personnel supervising and investigating Deripaska in the *Bonham-Carter*, *Deripaska*, and *McGonigal* sanctions cases is telling. Just as telling is the USAO's admission that "the analysis regarding the composition of the prosecution team in this case necessarily involves a detailed and cumbersome factual analysis" that the Court "need not decide" and "the necessary fact-finding would be granular and time-consuming, particularly as personal within that [Counterintelligence] division sometimes move between squads." *Id.* at 8–9. In other words, the USAO says absolutely nothing about the agents from the FBI Counterintelligence Division supervising and working on the three Deripaska sanctions conspiracy cases at the direction of the USAO, because the USAO would have to do

4

contorted mental gymnastics to convince anyone that the Discovery Materials were not in their possession, custody and control. They are. To the extent that the Court would even entertain the USAO's nonargument about whether the materials are in its possession, the defense requests full factual disclosure and a hearing on the issue.

*Fourth*, the USAO's argument that this Court should not entertain whether the Discovery Materials are *Brady* until **after** trial is alarming and wrong. Starting with the defendant's initial appearance, the Court is required to ensure the USAO is aware of and complies with its *Brady* obligations. *See* Fed. R. Crim. P. 5(f); *United States v. Merced*, No. 19-CR- 832 (ER), 2021 WL 5826286, at *3 (S.D.N.Y. 2021) ("*Brady* encompass[es]. . . .material information that could potentially lead to admissible evidence favorable to the defense.") Though a *Brady* violation is only determined in hindsight, the Court has broad authority under its case management powers to order production of discovery materials. *See Stein*, 424 F. Supp. 2d at 726–27 (trial court has the authority to order disclosure "as a matter of sound case management").

Finally, to the extent that the USAO argues or insinuates that it should not have to produce the Discovery Materials because those materials cannot meaningfully matter to the defense given the USAO's belief that their evidence is so strong and Mr. Shestakov is guilty, the USAO is wrong again. The USAO's decision to cite to McGonigal's guilty plea (Gov. Opp. at 2) to insinuate that Mr. Shestakov—who maintains his innocence—is guilty, is contrary to established law. *See, e.g.*, *United States v. Bruno*, 383 F.3d 65, 77–78 (2d Cir. 2004) (concluding it was "plain error" and a violation of the Confrontation Clause to admit a non-testifying co-defendant's plea as evidence of a conspiracy). Indeed, juries are regularly instructed that no inferences can be drawn about a defendant's guilt based on the fact of an alleged co-conspirator's guilty plea. *See, e.g., United States v. Amanat*, 15-CR-536 (PGG), ECF 706, Dec. 22, 2017 Trial Transcript, at 7145 (A co-

defendant's decision "to plead guilty and cooperate with the government is not evidence that either defendant committed a crime. A defendant may not be found guilty simply based on his association with individuals who decided to plead guilty.")

## ARGUMENT

**A.     Mr. Shestakov is Entitled to the Discovery Materials Under Rule 16.**

The USAO spends several pages making arguments that belong in front of a jury, not a response to a pre-trial motion to compel the production of certain discovery materials to the defense. Of course the USAO disagrees with Mr. Shestakov's theory of the case and believes they have a better argument to the jury about the significance of the other corporate entities, accounts and agents that Deripaska used to conduct business to evade the 2018 sanctions imposed on him. But that does not mean the Discovery Materials are not Rule 16 material. *Stein*, 488 F. Supp. 2d at 356 (noting that the "materiality standard of Rule 16 normally is not a heavy burden").

Whether or not the USAO agrees with the merits or strength of Mr. Shestakov's defense that Deripaska would not and did not conduct business with Mr. Shestakov and McGonigal as charged given how Deripaska had conducted and was conducting his business operations at that time, is irrelevant to this Motion.[3] Indeed, what matters for this Motion is that the material "may

---

[3] The USAO frames Mr. Shestakov's argument as simply "a sort of reverse modus operandi argument [that] Deripaska evaded sanctions using different people and entities than the people and entities in this case, so Deripaska must not have been using the people and entities in this case to evade sanctions." Gov. Opp. at 11. For all the USAO's bluster about how the *Deripaska* and *Bonham-Carter* differ from the instant case, it ignores a critical premise of this Motion to Compel: all three cases share a common critical co-conspirator—the sanctioned Russian oligarch Oleg Deripaska—during an overlapping time-period and, as alleged, nearly identical conduct to evade sanctions. How Oleg Deripaska—the purported "boss" and leader/manager of these three conspiracies—conducted business during this time is absolutely relevant to a jury's consideration of whether Mr. Shestakov and McGonigal were working for him in the manner charged, as opposed to working for EN+. Further, given the numerous other corporate entities and financial accounts at Deripaska's disposal—both abroad and in the United States—the Discovery Materials are critical to preparing and bolstering the defense that Pandean is not connected to Deripaska and Deripaska would not and did not engage McGonigal and Spectrum directly or indirectly through EN+ executive Evgeny Fokin.

provide a different version of events from that presented at trial by the Government," and may "lead the defense to pursue other investigative leads as it readies for trial and will lead it to admissible evidence." *Urena*, 989 F. Supp. 2d at 261–62; *see United States v. Stevens*, 985 F. 2d 1175, 1180 (2d Cir. 1993) (evidence is material "if it could be used to counter the government's case or to bolster a defense"); *Stein,* 488 F. Supp. 2d at 356-57 ("evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence.) To be clear, Rule 16 should be interpreted "broadly to ensure fairness to the defendant." *United States v. Martinez*, 844 F. Supp. 975, 982 (S.D.N.Y. 1994) (SWK).[4]

The Discovery Materials will be used to negate the USAO's argument that McGonigal and Mr. Shestakov conspired to work with Deripaska and/or on his behalf as charged.  The USAO's contention that it is irrelevant that "[Mr.] Shestakov has not met Deripaska, or forged any agreement directly with him," Gov. Opp. at 14–15 n.10, is misplaced. This request for the Discovery Materials is different—that the charged conspiracy did not exist and/or that Mr. Shestakov was or reasonably believed he was, working for EN+ and not for Deripaska. Although a defendant need not have known the identities of each and every co-conspirator or have been apprised of all their actions, to prove a conspiracy, the USAO must prove that (1) the charged conspiracy existed, (2) the defendant knew of that conspiracy, and (3) the defendant knowingly joined and participated in it. 18 U.S.C. § 371; *United States v. Labat*, 905 F.2d 18, 21–22 (2d Cir. 1990).

---

[4]     The USAO betrays its cramped view of Rule 16 in arguing that Mr. Shestakov "err[ed]" in his citation to *Messina*, referring to that case's reasoning that "the requested information must enable the defendant significantly to alter the quantum of proof in his favor." No. 11-CR-31 KAM, 2011 WL 3471511, at *1 (E.D.N.Y. Aug. 8, 2011). The USAO conspicuously omitted the court's next line (and well-settled principle): "the materiality standard of Rule 16 normally is not a heavy burden[.]" *Id.* (citing *Stein*, 488 F. Supp. 2d at 356–57) (cleaned up).

The Discovery Materials are significant to preparing and bolstering the defense that: (1) Deripaska was not only *not involved* in this charged transaction, but he was not the intended beneficiary as charged, (2) Mr. Shestakov did not believe, and reasonably so, that Deripaska was involved in this charged transaction; and (3) McGonigal and Mr. Shestakov were working for EN+, and/or reasonably believed that to be the case.  The Discovery Materials would bolster these defenses, as they will show how Deripaska was specifically conducting business at that time in a manner to evade sanctions through longtime associates, as well as certain corporate entities and financial accounts.  Pandean has nothing to do with Deripaska, and any agent working on Deripaska's behalf would have no reason to use Pandean to conduct business for Deripaska.

The USAO further avers that because Mr. Shestakov "knew Fokin was Deripaska's 'business associate who conducted his business'" it could not be the case that Mr. Shestakov reasonably believed he had contracted to perform work for EN+ (not Deripaska). Gov. Opp. at 16. This mistakenly assumes that Fokin, who was an executive at EN+ at all relevant times, only served at the direction of Deripaska. To so narrowly construe Fokin's role is not only unsupported by the facts, but cannot serve as a basis to refute materiality of the Discovery Materials.

In an effort to rebut Mr. Shestakov's materiality showing, the USAO now seeks to distance itself from the allegations it lodged in the *Bonham-Carter* and *Deripaska* indictments. With respect to *Bonham-Carter*, the USAO argues "[n]othing about the *Bonham-Carter* indictment suggests Bonham-Carter was part of an 'established network,' was a 'close confidante' of Deripaska, or used any distinctive method to set up 'new companies and bank accounts.'" Gov. Opp. at 12. This position is belied by DOJ's own press release regarding the case, which touts that Bonham-Carter had worked for Deripaska for approximately *two decades*, handled important real estate transactions on Deripaska's behalf, took orders from Deripaska to set up a company to run his

business, engaged in more than $1 million in illicit wire transactions between March 2021 and December 2021 (the time period charged in this Indictment), wired money to Gracetown Inc., and attempted to unlawfully transfer artwork purchased by Deripaska from an auction house in New York to London through misrepresentations concealing Deripaska's ownership. Ex. A. The press release (and indictment) quotes Bonham-Carter's communications where he repeatedly refers to Deripaska as his "boss," laments that he had been advised not to travel to the U.S., and details specific instructions from Deripaska. *Id.* ("OVD [i.e., Deripaska] wants me to set up my own company to run the [Belgravia Square] house[.]")

Similarly, the USAO characterizes the defendants' conduct in *Deripaska* as "informal exchanges" that do not portray an established network. Gov. Opp. at 12. Yet, FBI Assistant Director Michael Driscoll is quoted in this case's press release, stating in part, "Deripaska has continued to circumvent those **sanctions through an international network of enablers and facilitators**. . . . Today's actions demonstrate the FBI's commitment to protecting U.S. national interests through the identification and disruption of Kremlin-linked oligarchs' **criminal networks**." Ex. B (emphasis added). Moreover, the USAO argues that "there is nothing distinctive about" a company Shriki set up. Gov. Opp. at 13. Yet, the press release alleges that Shriki "attempted to expatriate over $3 million in proceeds through one such shell company, 'Ocean Studios California LLC,' to a Russia-based account belonging to another DERIPASKA company," in a scheme that echoes the instruction to Bonham-Carter to "set up" a company to handle business for Deripaska. Ex. A. The Deripaska "network" described by FBI Assistant Director Driscoll is distinctive, as are the specific companies and agents associated with that "network." Contrary to the USAO's efforts to now downplay the significance of those Deripaska agents and entities, the charging documents and DOJ press releases in those cases make it clear: Bonham-Carter has been

9

a close business associate of Deripaska for decades and trusted to handle some of his most lucrative assets and sensitive transactions; Shriki also worked for Deripaska in the United States since 2013, handling millions of dollars in transactions for him, including winding down his business in New York after the 2018 sanctions and setting up a new entity to continue conducting his business in the United States.

Finally, to the extent that the Court has any reservations as to whether the Discovery Materials would lead to admissible evidence, a large portion to be business or financial records will fall within the hearsay exception. Fed. R. Evid. 803(6). The defense will use those records to bolster the defense and to find other evidence through Rule 17 document and testimony subpoenas, that Pandean is not tied to Deripaska and Fokin was not working as Deripaska's agent as charged in the Indictment.  As for witnesses, the records will assist in identifying witnesses to call in the defense, including potentially Shriki and associates working with her.

**B.     The USAO's Representation That It Has Complied with Rule 16 Does Not End the Analysis.**

The USAO's representation that it has complied with its discovery obligations is not the end of the inquiry. The cases on which the USAO relies are wholly distinguishable: they involve broad requests for unspecified materials, materials that may not exist, or statements or other evidence subject to independent discovery obligations. *See United States v. Garcia-Pena*, No. 17-CR-363 (GBD), 2018 WL 6985220, at *6 (S.D.N.Y. Dec. 19, 2018) (Court may credit government's representation where it has produced "two videos of the alleged firearm sale . . . . and represents that it is 'aware of its obligations under Rule 16 and *Brady*[,]' that it 'continues to search files related to' the firearm sale, and that it 'will promptly produce any additional discoverable materials that it uncovers.'") (citation omitted); *United States v. Goode*, No. 16 CR. 529 (NSR), 2018 WL 919928, at *18 (S.D.N.Y. Feb. 15, 2018) (Rule 16 requests were

10

moot where the defendant requested disclosure of case-in-chief exhibits, experts, and co-conspirator statements and "[t]he Government represents that it has complied with Rule 16 obligations").

Here, Mr. Shestakov is aware of *specific* categories of materials USAO is withholding and is not otherwise obligated to produce closer to trial, like witness statements or exhibits. Accordingly, the Court need not simply adopt the USAO's representation that it has complied with its obligations. Mr. Shestakov has demonstrated that the Discovery Materials are Rule 16 because they "could be used to counter the USAO's case or to bolster a defense." *Stevens*, 985 F.2d at 1180; *see Urena*, 989 F. Supp. 2d at 261–62.[5] Data from seized electronic devices and email accounts in *Bonham-Carter* and *Deripaska*, including contacts and communications, will detail his "networks" to evade U.S. sanctions and the manner in which Deripaska conducts his U.S. business. That information is critical to preparing (and bolstering) Mr. Shestakov's defense that he and McGonigal were not in the charged conspiracy with Deripaska to do this transaction, and that Fokin was not acting as Deripaska's agent. Similarly, the financial or corporate records of the entities and Deripaska's agents listed in the Discovery Materials are relevant to Deripaska's

---

[5]    On a separate but related point, the government's attempt to distinguish the Mac Ballers' cases cross-production based on its conception of Rule 16 fares no better. On this point, the government represents that in those cases, it "did not simply cross-produce *en masse*" and instead "***produced discovery from other cases that directly implicated the defendants in the case at hand, such as where the defendants in one case purchased drugs from the defendant in the other***." Gov. Opp. at 19 (emphasis added). Mr. Shestakov is not asking for *en masse* production. The Discovery Materials are targeted to certain corporate and financial records, as well as electronic data, that are material to preparing Mr. Shestakov's defense and that implicate a mutual co-conspirator allegedly the organizer, manager and/or leader in each of the charged sanctions conspiracies. Deripaska is the critical co-conspirator in each of the three cases charging the same crime over the same period of time. The USAO argues that voluntary disclosures in other cases should not define the scope of its obligations because it only does so "[w]here doing so would not prejudice the [g]overnment [and would] avoid unnecessary litigation." *Id.* Therein lies the tell of the government's argument: it opposes disclosure because it would risk some prejudice *to the government* such as unnecessary litigation, ***not the defendant***. That is not the law under Rule 16 or otherwise and betrays the fear behind the USAO's position: that anything that would be material to the preparation of the defense risks weakening the government's proof, and therefore must not be produced. The USAO has not made any argument that production of the Discovery Materials to Mr. Shestakov would be prejudicial to them.

11

manner and methods of carrying out alleged sanctions evasion crimes, and will bolster Mr. Shestakov's defense that there was no conspiracy and counter the USAO's claims regarding the role of Pandean and Fokin. Seized items pursuant to search warrants executed at Deripaska's properties, and on devices and email accounts associated with Deripaska's longtime business agents such as Bonham-Carter and Shriki, will be used to counter the USAO's case regarding Fokin's role, the relevance of Pandean, and bolster the defense that this transaction was not done for Deripaska and on his behalf.

**C.     The USAO Concedes by Waiver that the Discovery Materials Are in Its Possession, Custody, or Control.**

The USAO has conceded Mr. Shestakov's arguments relating to the USAO's possession, custody, or control of the Discovery Materials by failing to address them or offer any specific facts in its opposition brief. Failure to respond to an argument constitutes a waiver and, thus, a concession to the unopposed argument. *See United States v. Mongelli*, 794 F. Supp. 529, 530 (S.D.N.Y. 1992) (VLB) (concluding that USAO's failure to oppose or object to defendant's argument constituted waiver.); *see also Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y 2022) (JFW) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.")

Beyond any direct refutation to Mr. Shestakov's arguments that the Discovery Materials are in its possession or control, the USAO admits that "personnel within [the Counterintelligence Division of the FBI's New York Field Office] sometimes move between squads," and thus implies that investigators in *Deripaska*, *Bonham-Carter*, and the present case overlapped. Instead of rebutting Mr. Shestakov's argument on that exact point, the USAO simply argues that "the Court need not decide that issue to resolve this motion." Gov. Opp. at 8. Indeed, the USAO goes so far as to lecture against conducting any inquiry on the issue because "the necessary fact-finding would

12

be granular and time consuming." Gov. Opp. at 9. This quasi-judicial economy argument is nothing more than the USAO avoiding having to advance contorted and cramped legal arguments on the obvious: the USAO has possession, custody, and control over the Discovery Materials. To the extent the Court is willing to entertain, at this late stage, any claim that the Discovery Materials are not in its possession, custody or control, the defense requests full factual disclosure and a hearing to resolve the issue.

D.    **The USAO's View of Brady is Alarmingly Incorrect.**

The USAO must disclose the Discovery Materials not only under Rule 16 but also under *Brady* for the reasons set forth in the defense's moving papers. The USAO's argument that its *Brady* obligations can only be adjudicated *after* trial because *Brady* is only analyzed "retrospectively," is seriously misplaced. As an initial matter, Rule 5(f) requires Courts to remind federal prosecutors of their *Brady* obligations per court order "on the first scheduled court date when both prosecutor and defense counsel are present." Fed. R. Crim. P. 5(f). The Rule 5(f) Order further warns of "the possible consequences of violating such order under applicable law." *Id.*; *see* ECF 11. These obligations extend to information that could "potentially lead to admissible evidence favorable to the defense," *Merced*, 2021 WL 5826286, at *3, further evidencing *Brady*'s pre-trial dimensions.

The USAO cites *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) and *United States v. Gatto*, 316 F. Supp. 3d 654, 658 (S.D.N.Y. 2018) (LAK) for the notion that non-production of specific documents may not serve as the basis for a *Brady* violation in advance of trial. This argument completely ignores subsequent interpretation of *Coppa*. In *United States v. Stein*, the court recognized, "the fact that there can be no *Brady* violation in the absence of prejudice is not to say either that the government has no cause for concern, **or that a trial court is**

13

*without power to order disclosure*, **in advance of trial**." 424 F. Supp. 2d at 726 (emphasis added).

*Stein* continues:

> Indeed, the Second Circuit pointedly underscored this point in *Coppa* when it noted that the 'case present[ed] no occasion to consider the scope of a district court's discretion to order pretrial disclosures as a matter of sound case management' and remanded 'to afford the District Court an opportunity to determine what disclosure order, if any, it deems appropriate as a matter of case management.'
> 424 F. Supp. 2d at 726–27 (citation omitted).

*Gatto* similarly recognized this interpretation and, although the court ultimately denied the motion to compel in that case, it is readily distinguishable, as the defendants sought additional exculpatory and impeaching *witness statements* beyond the government's summary descriptions of certain witness statements already provided to the defense pursuant to *Brady*. 316 F. Supp. 3d at 659.[6] Accordingly, *Coppa* has been interpreted to mean that *Brady* obligations can properly be considered in advance of trial "as a matter of sound case management." *Stein*, 424 F. Supp. 2d at 726–27; *see also Gatto*, 316 F. Supp. 3d at 659 (same) (citing *Coppa*, 267 F.3d at 146 and *Stein*, 424 F. Supp. 2d at 726–27). Thus, the Court is well within its discretion to compel production of the Discovery Materials not just under Rule 16 but also *Brady*.

E.   **A Co-Defendant's Guilty Plea Is Irrelevant to Whether the USAO Should Produce the Discovery Materials.**

The USAO portrays Mr. Shestakov as a criminal despite his not guilty plea and the presumption of innocence afforded him. The USAO improperly relies on co-defendant McGonigal's guilty plea to argue the allegations in the Indictment are true simply because of McGonigal's guilty plea. Gov. Opp. at 2 ("the allegations in this case . . . have been admitted in a

---

[6]   In *Gatto*, the USAO had already made *Brady* disclosures by providing the defense with descriptions of certain witness statements in advance of trial, but the defense motion sought further disclosure of the actual witness statements. *Id.* at 659–660. Notably, witness statements must ultimately be provided, albeit much closer to trial, under 18 U.S.C. § 3500.

detailed guilty plea by Shestakov's co-defendant"). McGonigal's personal decision to do what he believed was in his best interest has nothing to do with Mr. Shestakov and whether the Discovery Materials are material to preparing his defense at trial. That is why the law is very clear that a non-testifying co-defendant's guilty plea has no bearing on whether another defendant is guilty. *See, e.g., United States v. Amanat*, 15-CR-536 (PGG), ECF 706, Dec. 22, 2017 Trial Transcript, at 7145 (instructing the jury that a defendant may not be found guilty simply based on his association with individuals who decided to plead guilty).

## CONCLUSION

For the foregoing reasons, the defense asks the Court to compel disclosure of the Discovery Materials so that Mr. Shestakov can use them to prepare his defense, counter the USAO's case, and/or bolster his defense at trial.

Dated: New York, New York
       November 8, 2023

Respectfully submitted,

  /s/ Rita M. Glavin

Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*