# EXHIBIT 1



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

December 19, 2018

The Honorable Mitch McConnell
Majority Leader of the U.S. Senate
Washington, D.C. 20510

Dear Mr. Majority Leader McConnell:

With this letter, we wish to provide you with notification that Treasury intends to terminate the sanctions imposed on En+ Group plc ("En+"), UC Rusal plc ("Rusal"), and JSC EuroSibEnergo ("ESE") in 30 days. En+, Rusal, and ESE have agreed to undertake significant restructuring and corporate governance changes to address the circumstances that led to their designation, including reducing Oleg Deripaska's direct and indirect shareholding stake in those entities to below 50 percent; overhauling the composition of those entities' boards of directors; taking restrictive steps related to their corporate governance; and agreeing to unprecedented transparency by undertaking extensive, ongoing auditing, certification, and reporting requirements. As part of this agreement, half of En+'s restructured board of directors will be comprised of U.S. or UK nationals and Rusal's current board chairman will step down. Deripaska will remain sanctioned. All of Deripaska's property and interests in property, including entities in which he owns a fifty percent or greater interest, will remain blocked, and foreign persons will continue to be subject to secondary sanctions should they knowingly facilitate a significant transaction for or on behalf of Deripaska or entities in which he owns a fifty percent or greater interest. None of the transactions to be undertaken to divest Deripaska of his interests in these companies will allow Deripaska to obtain cash either in return for shares relinquished in, or from future dividends he may receive from, En+, Rusal, or ESE. OFAC reserves the right to relist any or all of these companies should the change in circumstances represented by their implementation of the agreement with OFAC be reversed, including by a material breach of the terms of the agreement.

## *1. Background*

On April 6, 2018, OFAC designated seven Russian oligarchs, including Oleg Deripaska, and 12 companies they own or control. This action also targeted 17 senior government officials as well as a state-owned Russian weapons trading company and its subsidiary, a Russian bank. The April 6 action aggressively targeted Russian oligarchs and elites that further the Kremlin's global malign activities, including its attempts to subvert Western democracy, its support for the Assad regime, its malicious cyber activities, its occupation of Crimea, and its instigation of violence in Ukraine. This sanctions action was one of many that the Treasury Department has taken to target Russia's malign behavior. Under this Administration, Treasury has sanctioned 256 Russia-related individuals and entities, including 150 individuals and entities under Ukraine/Russia-related sanctions authorities codified by the Countering America's Adversaries Through Sanctions Act (CAATSA).

Among the 12 companies targeted on April 6, OFAC designated En+ for being owned or controlled by, directly or indirectly, Deripaska, and placed En+ on its list of Specially Designated Nationals and Blocked Persons ("SDN List") pursuant to Executive Order 13661 of March 16, 2014, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine" ("E.O. 13661") and Executive Order 13662 of March 20, 2014, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine" ("E.O. 13662"). OFAC also designated Rusal for being owned or controlled by, directly or indirectly, En+; Deripaska has a 0.01 percent direct ownership interest in Rusal, and his involvement was not a basis for the designation of Rusal. OFAC also designated ESE for being owned or controlled by, directly or indirectly, En+ and Deripaska. As with En+, OFAC placed both Rusal and ESE on the SDN List pursuant to E.O. 13661 and E.O. 13662.

The action on April 6 was among the most impactful targeted sanctions actions ever taken by OFAC and included many of the globally integrated companies the oligarchs rely on to generate their wealth. The designation of Rusal, the world's second largest aluminum producer, was felt immediately in global aluminum markets. The price of aluminum soared in the weeks following the designation, and Rusal subsidiaries in the United States, Ireland, Sweden, Jamaica, Guinea, and elsewhere faced imminent closure without limited sanctions mitigation in the form of OFAC general licenses.

## 2. *En+, Rusal, and ESE Petition OFAC for Delisting*

As stated publicly by Treasury Secretary Steven T. Mnuchin, the designations of En+, Rusal, and ESE, as well as the follow-on collateral consequences, were not the primary aim of the April 6 sanctions against Deripaska. Rather, En+, Rusal, and ESE were designated due to their entanglement with Deripaska. Economic sanctions, including those in E.O. 13661 and E.O. 13662, are designed to change behavior. In this case, the objectives of the sanctions were to reduce Deripaska's ownership in and sever his control of these entities.

Upon their designation on April 6, 2018, En+, Rusal, and ESE (collectively, the "Petitioners") approached the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) to petition for delisting pursuant to 31 C.F.R. § 501.807. The Petitioners, led by Lord Gregory Barker, the former Minister of State for Energy and Climate Change for the United Kingdom, have engaged in negotiations with OFAC extensively during the past eight months, while OFAC evaluated whether Petitioners were credibly able to make material changes in the structure and composition of the companies such to be eligible for delisting. Petitioners conducted themselves throughout in a cooperative and transparent manner. Petitioners submitted proposals whereby they would sever the ownership and control of Deripaska over Petitioners. Throughout the negotiations, OFAC pressed for terms that were targeted towards further restricting Deripaska. Ultimately, OFAC and the Petitioners were able to settle on terms acceptable to OFAC and implementable by Petitioners. As a result, Petitioners have agreed to undertake significant restructuring and corporate governance changes to address the circumstances that led to their designation, including significantly reducing Deripaska's direct and indirect shareholding stake in Petitioners; overhauling the composition of their boards of directors; taking other restrictive steps related to their corporate governance; and agreeing to undertake extensive, ongoing auditing, certification, and reporting requirements.

### 3. *Change in Circumstances with Respect to En+, Rusal, and ESE*

Since their designation and following months of detailed negotiations with Treasury, OFAC has secured from Petitioners a binding agreement that severs Deripaska's control over these critical revenue-generating entities and reduces his ownership in these entities below 50 percent, thereby untangling and protecting these companies from the controlling influence of a Kremlin insider. The agreement between OFAC and the Petitioners is subject to approval by a number of stakeholders. Furthermore, the agreement reached between OFAC and the Petitioners will create an unprecedented level of transparency for the U.S. government into these global companies, along with the other substantial concessions obtained from them.

With the change in circumstances that led to the original designations of Petitioners, including Petitioners' ongoing substantial commitments, this letter serves as notification of Treasury's intention to terminate the sanctions imposed on En+, Rusal, and ESE in 30 days. Treasury also assesses that this action — a removal based on a change in factual circumstances that is in line with longstanding U.S. sanctions precedent and practice designed to change behavior — is not intended to significantly alter U.S. foreign policy.

We stress that Deripaska will remain sanctioned and on OFAC's SDN List. All of Deripaska's property and interests in property, including entities in which he owns a fifty percent or greater interest, will remain blocked. The result of OFAC's conditions for delisting is that Deripaska's investment in En+ is isolated and frozen. En+ is the linchpin underlying the designations of these companies, since Deripaska has virtually no direct ownership stake in Rusal, and none at all in ESE. Specifically, Deripaska's stake in En+ will be reduced from approximately 70 percent to 44.95 percent, and his stake cannot be increased in the future. Pursuant to the agreement, Deripaska's stake in En+ will be reduced through corporate restructuring transactions that do not involve the transfer of funds directly or indirectly to Deripaska, as well as by a donation of shares to a charitable foundation. None of the transactions to be undertaken consistent with the agreement will allow Deripaska to obtain cash either in return for his shares or from future dividends issued by En+, Rusal, or ESE. Future dividends to which Deripaska may be entitled due to his diminished ownership interests will be placed into a blocked account. Furthermore, foreign persons will be subject to secondary sanctions under section 228 of the CAATSA should they knowingly facilitate a significant transaction for or on behalf of Deripaska. Finally, OFAC has made it clear to the Petitioners that it reserves the right to relist any or all of the Petitioners should the change in circumstances represented by their implementation of the agreement with OFAC be reversed, including by a material breach of the terms of the agreement.

### 4. *Details of the Restructuring Agreed to by En+, Rusal, and ESE*

The significant restructuring and corporate governance changes agreed to by Petitioners have been documented in a "Terms of Removal," which is a binding agreement between Petitioners and OFAC that remains in effect as long as Deripaska is on the SDN List. The foundation of this agreement is the role of En+ in the restructuring and corporate governance changes. Deripaska will have no direct ownership stake in ESE and will retain only a 0.01 percent direct ownership stake in Rusal. En+ will own and control Rusal and ESE, which operates to isolate and freeze

Deripaska's indirect ownership in Rusal and ESE. Through the Terms of Removal, Petitioners agreed to implement the following:

- ***Deripaska's ownership in En+ brought well below 50 percent.*** Deripaska's stake in En+ will fall from approximately 70 percent to 44.95 percent, and his stake cannot be increased. Pursuant to the Terms of Removal, VTB Bank or another non-SDN assignee approved by OFAC ("VTB Bank") will take ownership of a block of Deripaska's shares in En+ pledged as collateral for previously issued obligations of entities controlled by Deripaska issued by VTB Bank.[1] Deripaska's ownership interest in En+ will fall further as a result of a restructuring transaction whereby the Swiss company Glencore, or its subsidiary, swaps shares in Rusal for a direct ownership interest in En+. The end result of these corporate transactions will be a significant fall in Deripaska's ownership of En+, none of which involve the transfer of funds directly or indirectly to Deripaska. Deripaska will also donate a block of shares to a charitable foundation. None of the transactions to be undertaken consistent with the agreement will allow Deripaska to obtain cash either in return for his shares or from future dividends issued by En+, Rusal, or ESE.

- ***Limited voting rights in En+.*** Deripaska will not be able to vote more than 35 percent of En+ shares, as Deripaska will assign any voting rights above 35 percent of En+ shares to a voting trust obligated to vote in the same manner as the majority of shares held by shareholders other than Deripaska. Furthermore, OFAC has identified several shareholders with professional or family ties to Deripaska. In all such cases, En+ has agreed to assign the voting rights under these shares to an independent third party with no personal or professional ties to Deripaska. Furthermore, VTB Bank will reassign voting rights associated with the shares it takes ownership of to an independent third party.

- ***Independent board of directors for En+.*** En+ agreed to create a board of 12 directors with a majority of independent directors. Eight of the directors will be independent of Deripaska and selected through an agreed-to process that utilizes an executive search firm to select members with no business, professional, or family ties to Deripaska or any other designated person. With these changes, half of the En+ board will now be U.S. or UK nationals with extensive business expertise. OFAC has vetted the entire slate of the proposed new board members. Prior to designation, En+'s board was not majority-independent and consisted of 12 directors, of whom only three were independent non-executive directors. Deripaska will have the right to nominate no more than four directors. Replacements for these eight will be selected through the same process, with an opportunity for further review by OFAC. En+ has agreed that Directors nominated by Deripaska will not be permitted to sit on the Audit or Nominations committees.

---

[1] VTB Bank is presently listed as an entity on OFAC's Sectoral Sanctions Identification List and is subject to Directive 1, which prohibits U.S. persons from transacting in, providing financing for, or otherwise dealing in new debt of specified tenors or new equity by, on behalf of, or for the benefit of the persons operating in Russia's financial services sector named under Directive 1, their property, or their interests in property. Based on Petitioners' delisting petitions, the transactions to be undertaken pursuant to the Terms of Removal do not appear to be prohibited under Directive 1.

- 4 -

- ***Further extinguishment of control.*** To further extinguish potential avenues of control by Deripaska, Deripaska is required by the Terms of Removal to provide a deed letter to En+ that includes a number of binding legal commitments severing his ability to control En+. Specifically, the deed letter provides that En+ and Deripaska explicitly agree not to act in any manner or to enter into any arrangement, whether by contract, trust, or otherwise, that directly or indirectly provides Deripaska with the ability to exercise a controlling influence over the management or policies of En+ or any entity owned or controlled by En+, including Rusal and ESE. En+ also has agreed to certify that, besides the right to nominate four directors, it has not granted Deripaska or any of his relatives any rights beyond those of ordinary shareholders with respect to En+ and any entity owned or controlled by En+.

- ***Ongoing transparency through auditing, certification, and reporting.*** The Petitioners have agreed to provide OFAC with an unprecedented level of transparency into the management and operation of these companies. En+ and Rusal agreed to comply with ongoing auditing, certification, and reporting requirements, including: (i) auditing En+'s and Rusal's engagements with and obligations to Deripaska and any entities controlled by Deripaska as well as certifications that such engagements have been terminated or do not constitute control by Deripaska; (ii) providing OFAC monthly certifications of compliance with the agreed upon Terms of Removal; (iii) providing OFAC quarterly company reports for En+ and Rusal; (iv) providing OFAC board minutes for En+ and Rusal; (v) immediately notifying OFAC of any change in the composition of the independent En+ board and certifying that any such change is consistent with the selection process outlined in the Terms of Removal; (vi) immediately notifying OFAC of any anticipated changes to the identity of any independent third party assigned voting rights in relation to En+ and certifying that such individual has no business, professional, or family ties to Deripaska or any other SDN; (vii) immediately notifying OFAC of any anticipated change in ownership of shares of En+ related to the Terms of Removal and certifying, *inter alia*, that the change is consistent with the Terms of Removal and that Deripaska's ownership shall not rise above 44.95 percent; (viii) immediately notifying OFAC of any anticipated changes to the constituent documents of any of the Petitioners and certifying the anticipated changes are consistent with the Terms of Removal.

In all cases, notifications and certifications required to be made under the Terms of Removal are designed to ensure that Deripaska cannot obtain increased influence over En+ or Rusal by changes in the management or ownership of En+. Furthermore, En+ has agreed that no entity owned or controlled by En+, including En+ and Rusal, will change its place of incorporation to Russia from any other jurisdiction without an affirmative vote of the new En+ board and certifications to OFAC.

En+ has agreed to respond fully and expeditiously to any request for information from OFAC regarding the Terms of Removal or general sanctions compliance. OFAC will continue to actively monitor the Petitioners' compliance with the Terms of Removal for any information suggesting that Deripaska, any entity in which he owns a 50 percent or greater interest, or any other blocked person seeks to influence the Petitioners. All of the information provided and certifications En+ is required to make under the Terms of

Removal will be directed to OFAC's Office of Global Targeting, the office that develops evidentiary packages to designate individuals and entities and which manages the delisting process.

- ***Additional commitments with respect to Rusal.*** OFAC designated Rusal for being owned or controlled by En+. Therefore, through the same binding agreement with OFAC, Rusal and En+ agreed that En+, once it is no longer subject to sanctions, shall continue to control Rusal through a 56.88 percent stake and that En+ shall retain its right to nominate the CEO of Rusal. Deripaska will only retain a direct shareholding interest in Rusal of 0.01 percent and any dividends from this interest would be placed in a blocked account. En+ has committed to use its majority control of Rusal to create a board of 14 members, and a majority of those board members (eight) will be independent non-executive directors who have no business, professional, or family ties to Deripaska, or any other SDN. The Chairman of the Board of Rusal will be one of the independent non-executive directors, and the current Chairman of Rusal (Matthias Warnig) is stepping down as a condition of the delisting of Rusal and further will no longer be a member of the Rusal board. The other six directors will likewise have no business, professional, or family ties to Deripaska, or any other SDN, other than their professional backgrounds as employees of Rusal or En+. Deripaska will have no right to appoint any board members of Rusal. Prior to designation, Rusal's board was not majority-independent and consisted of 18 directors, of whom only six were independent non-executive directors. OFAC has vetted the current slate of directors for Rusal's board, will review any future independent director candidates, and will monitor all director appointments to ensure Rusal's ongoing compliance with the Terms of Removal. Rusal has also agreed to extensive certification and reporting requirements similar to those agreed to by En+. Furthermore, En+ has agreed that it will use its majority control of Rusal to provide ongoing auditing and monitoring of potential Deripaska involvement in Rusal.

- ***Commitments with respect to ESE.*** OFAC designated ESE for being owned or controlled by En+ and Deripaska. ESE is a Russian power company and a wholly owned subsidiary of En+. It does not have an independent board of directors, and day-to-day management is the responsibility of the General Director, who is appointed and overseen by the En+ board of directors. The change in ownership and control of En+ described above would also extinguish Deripaska's control of ESE. Deripaska will not have any direct shareholding interest in ESE. Furthermore, ESE's General Director will provide OFAC with monthly certifications that he or she is not acting for or on behalf of Deripaska, or any other SDN, and that control over ESE rests with the General Director of ESE and En+. As a wholly owned subsidiary of En+, the reporting and certification requirements that En+ committed to will necessarily encompass ESE operations and management.

### 5. *Ongoing OFAC Monitoring and Enforcement*

OFAC will continue to enforce its sanctions on Deripaska aggressively, including by closely monitoring the Petitioners' compliance with the Terms of Removal ("TOR"). Should one or all

of the Petitioners fail to abide by the binding TOR, OFAC will consider all remedies at its disposal, including re-designating the offending entity.

- *Enforcement through complete transparency.* The TOR agreed to between OFAC and Petitioners require unprecedented transparency. The Petitioners must regularly provide OFAC with information and certifications about their compliance with the TOR. This will supplement and be confirmed with the U.S. Government's own information.

  - The Petitioners are required to provide OFAC monthly certifications regarding independence from Deripaska and any other designated person; En+ and Rusal, which make extensive commitments in the TOR, are required to certify monthly to their compliance with respect to all elements of the TOR.

  - En+ and Rusal are required to submit to OFAC copies of their quarterly reports, board minutes, and audit reports related to Deripaska's or other designated persons' potential collateral involvement in En+ and Rusal.

  - En+ and Rusal are required to give OFAC notice of and an opportunity to respond to anticipated changes in the composition of their boards, as well as of anticipated changes to third parties assigned voting rights pursuant to the commitments in the TOR.

  - En+ and Rusal are required to commit to respond in full and on a timely basis to any additional questions from OFAC related to compliance with the TOR.

  - En+ and Rusal are required to agree that if OFAC provides En+ / Rusal with information that bears on the compliance of En+ / Rusal with any of the elements of the TOR — including with respect to the independence of any of the eight non-Deripaska appointed directors of En+ or with respect to any of the eight independent non-executive directors of Rusal — En+ / Rusal will report to OFAC promptly on any actions that will be undertaken to remediate the issues identified by OFAC and will provide OFAC with an opportunity to respond or object to those actions.

  - OFAC reserves the right to relist any or all of the Petitioners to the extent that the change in circumstances represented by Petitioners' entering into and adhering to the TOR is reversed, including by a material breach of the TOR.

- *Additional mechanisms for enforcement.* Over and above the TOR, OFAC retains broad authorities to potentially designate or bring an enforcement action for direct or indirect dealings with Deripaska or any other designated person in the course of dealing with the Petitioners.

  - Notwithstanding the delisting of the Petitioners, Deripaska remains sanctioned. OFAC, therefore, has the authority to designate any person for providing, directly

or indirectly, material support to Deripaska, including, for example, an "independent" director who acts at Deripaska's behest.

- Notwithstanding a delisting of the Petitioners, U.S. persons will continue to be prohibited from dealing, directly or indirectly, with Deripaska or any other designated person. OFAC's civil enforcement authorities and processes to address such a situation are described in detail in OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, app. A.

- Notwithstanding a delisting of the Petitioners, non-U.S. persons will face potential secondary sanctions for knowingly facilitating significant transactions for or on behalf of Deripaska or any other person or entity subject to sanctions imposed by the United States with respect to the Russian Federation, as described in OFAC's guidance.

### 6. *Conclusion*

Treasury officials stand ready to engage and answer any questions that may arise upon review of this submission. Moreover, the Petitioners have confirmed their consent to the release of the proprietary information contained in the TOR to the appropriate congressional leadership and committees as may be necessary. Please feel free to reach out to Treasury's Office of Legislative Affairs at (202) 622-1900 if you would like to discuss this matter further.

Sincerely,

Andrea M. Gacki
Director
Office of Foreign Assets Control

Cc: The Honorable Charles Schumer, Minority Leader, U.S. Senate
The Honorable Paul Ryan, Speaker, U.S. House of Representatives
The Honorable Nancy Pelosi, Minority Leader, U.S. House of Representatives
The Honorable Mike Crapo, Chairman, Committee on Banking, Housing & Urban Affairs, U.S. Senate
The Honorable Sherrod Brown, Ranking Member, Committee on Banking, Housing & Urban Affairs, U.S. Senate
The Honorable Robert Corker, Chairman, Committee on Foreign Relations, U.S. Senate
The Honorable Robert Menendez, Ranking Member, Committee on Foreign Relations, U.S. Senate
The Honorable Ed Royce, Chairman, Committee on Foreign Affairs, U.S. House of Representatives
The Honorable Eliot Engel, Ranking Member, Committee on Foreign Affairs, U.S. House of Representatives
The Honorable Jeb Hensarling, Chairman, Committee on Financial Services, U.S. House of Representatives
The Honorable Maxine Waters, Ranking Member, Committee on Financial Services, U.S. House of Representatives