UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

       -v.-

SERGEY SHESTAKOV,

           Defendant.

23 Cr. 16 (JHR)

## THE GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
26 Federal Plaza, 37th Floor
New York, New York 10278

Rebecca T. Dell
Derek Wikstrom
Assistant United States Attorneys
    *Of Counsel*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

    A. The Indictment ................................................................................................................ 2

        1. Oleg Deripaska Is Sanctioned ..................................................................................... 3

        2. Shestakov Agreed to and Did Provide Services to Deripaska ...................................... 3

        3. Shestakov Lied to the FBI ............................................................................................ 5

ARGUMENT ............................................................................................................................. 6

    I. THE DEFENDANT'S MOTION TO DISMISS COUNTS ONE THROUGH FOUR SHOULD BE DENIED ........................................................................................................ 6

    A. Applicable Law ............................................................................................................... 6

        1. Pleading Standard ......................................................................................................... 6

        2. Void-for-Vagueness Doctrine ...................................................................................... 8

    B. Discussion ....................................................................................................................... 9

        1. Counts One and Two Are Legally Sufficient and Do Not Violate Due Process ........... 9

        2. Counts Three and Four Are Legally Sufficient ............................................................ 12

    II. THE DEFENDANT'S MOTION TO DISMISS COUNT FIVE SHOULD BE DENIED . 12

    A. Applicable Law ............................................................................................................... 13

    B. Count Five Sufficiently Alleges that Shestakov Made a False Statement When He Denied Having a Business Relationship with Fokin ...................................................................... 15

    C. Count Five Sufficiently Alleges that Shestakov Concealed His Knowledge of the Nature of the Relationship Between Fokin and McGonigal ........................................................... 20

CONCLUSION .......................................................................................................................... 22

## Table of Authorities

**Cases**

*Boyce Motor Lines v. United States*,
  342 U.S. 337 (1952) ........................................................ 11, 7

*Bronston v. United States*,
  409 U.S. 352 (1973) ........................................................ 15, 22

*Deripaska v. Yellen*,
  No. 19 Civ. 727 (APM), 2021 WL 2417425 (D.D.C. June 13, 2021) ..................... 3

*Deripaska v. Yellen*,
  No. 21-5157, 2022 WL 986220 (D.C. Cir. Mar. 29, 2022) (per curiam) ................ 3

*States v. Lattimore*,
  127 F. Supp. 405 (D.D.C. 1955) ........................................... 19, 19

*United States v. Abdullaev*,
  761 F. App'x 78 (2d Cir. 2019) ............................................ 12

*United States v. Alfonso*,
  143 F.3d 772 (2d Cir. 1998) ........................................... 11, 17, 7

*United States v. Alshahhi*,
  No. 21 Cr. 371 (BMC), 2022 WL 2239624 (E.D.N.Y. June 22, 2022) ................ 8, 9

*United States v. Avenatti*,
  432 F. Supp. 3d 354 (S.D.N.Y. 2020) .................................. 10, 7, 8, 9

*United States v. Block*,
  No. 16-CR-595 (JPO), 2017 WL 1608905 (S.D.N.Y. Apr. 28, 2017) ................ 10

*United States v. Bonacorsa*,
  528 F.2d 1218 (2d Cir. 1976) ............................................. 17

*United States v. Coonan*,
  938 F.2d 1553 (2d Cir. 1991) .............................................. 8

*United States v. Corr*,
  543 F.2d 1042 (2d Cir. 1976) ............................................. 14

*United States v. Dawkins*,
  999 F.3d 767 (2d Cir. 2021) ........................................... 20, 7, 8

*United States v. De La Pava*,
  268 F.3d 157 (2d Cir. 2001) ............................................... 7

*United States v. Farmer*,

137 F.3d 1265 (10th Cir. 1998)) ........................................................................ 13

*United States v. Forde*,
740 F. Supp. 2d 406 (S.D.N.Y. 2010) ................................................................ 15

*United States v. Frequency Elecs.*,
862 F. Supp. 834 (E.D.N.Y. 1994) .................................................................... 16

*United States v. Gaudin*,
515 U.S. 506 (1995) ........................................................................................... 15

*United States v. Goldberg*,
756 F.2d 949 (2d Cir. 1985) ................................................................................ 7

*United States v. Hescorp, Heavy Equipment Sales Corp.*,
801 F.2d 70 (2d Cir. 1986) ............................................................................... 11

*United States v. Homa Int'l Trading Corp.*,
387 F.3d 144 (2d Cir. 2004) ............................................................................. 11

*United States v. Kaplan*,
758 F. App'x 34 (2d Cir. 2018) ................................................................... 13, 14

*United States v. Kross*,
14 F.3d 751 (2d Cir. 1994) ............................................................................... 19

*United States v. Lighte*,
782 F.2d 367 (2d Cir. 1986) ........................................................... 13, 14, 17, 18, 21

*United States v. Mahaffy*,
285 F. App'x 797 (2d Cir. 2008) ................................................................. 14, 21

*United States v. Maxwell*,
534 F. Supp. 3d 299 (S.D.N.Y. 2021) ............................................................... 14

*United States v. Polos*,
723 F. App'x 64 (2d Cir. 2018) ............................................................. 13, 14, 18

*United States v. Post*,
950 F. Supp. 2d 519 (S.D.N.Y. 2013) ................................................................. 7

*United States v. Raniere*,
384 F. Supp. 3d 282 (E.D.N.Y. 2019) ............................................................. 8, 9

*United States v. Rybicki*,
354 F.3d 124 (2d Cir. 2003) ............................................................................... 8

*United States v. Sampson*,
898 F.3d 287 (2d Cir. 2018) ....................................................................... 13, 14

ii

*United States v. Sarwari,*
    669 F.3d 401 (4th Cir. 2012) ............................................... 13

*United States v. Schafrick,*
    871 F.2d 300 (2d Cir. 1989) ..................................... 14, 17, 18, 21, 22

*United States v. Stavroulakis,*
    952 F.2d 686 (2d Cir. 1992) ..................................... 12, 16, 7

*United States v. Stringer,*
    730 F.3d 120 (2d Cir. 2013) ............................................... 8

*United States v. Strohm,*
    671 F.3d 1173 (10th Cir. 2011) ........................................... 18

*United States v. Wedd,*
    993 F.3d 104 (2d Cir. 2021) ............................................... 7

**Other**

31 C.F.R. § 589.201 .......................................................... 2

18 U.S.C. § 2 ................................................................ 2

18 U.S.C. § 1001 ....................................................... 2, 13, 15

18 U.S.C. § 1956 ............................................................. 2

50 U.S.C. § 1705 ............................................................. 2

Executive Orders 13660, 13661, and 13662 .................................... 2

Federal Rule of Criminal Procedure 7 ..................................... 6, 7

Federal Rule of Criminal Procedure 12 ...................................... 7

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to defendant Sergey Shestakov's motion to dismiss the charges against him in Indictment 23 Cr. 16 (JHR) (Dkt. 2 (the "Indictment")) (Dkt. 103 ("Motion" or "Mot.")).  For the reasons that follow, the Motion is meritless and should be denied.

First, Shestakov moves to dismiss Counts One and Two as violative of his due process rights because, he claims, the relevant statutes and regulations are vague as applied to him and he was not on notice that his work with Evgeny Fokin—referred to as "Agent-1" in the Indictment— and En+ would result in criminal liability.  Shestakov also seeks dismissal of Counts Three and Four, which charge him with laundering the proceeds of Counts One and Two.  Shestakov's claims are premature because as-applied vagueness challenges are generally reviewed after a factual record has been developed at trial.  Nevertheless, Shestakov misconstrues the Indictment, which alleges that Shestakov agreed to and did provide services to Oleg Deripaska, a sanctioned oligarch, not Fokin and En+.  Shestakov's attack on a theory not alleged in the Indictment is irrelevant, and Shestakov's motion to dismiss Counts One through Four should be denied.

Second, Shestakov moves to dismiss Count Five's false statements charge because the alleged false statements Shestakov made during an interview with the Federal Bureau of Investigation ("FBI") were, he claims, made in response to ambiguous questions and his statements were literally true.  Shestakov's claims that he was responding to "vague and ambiguous" questions, and that certain of his statements were literally true, must be resolved by a jury, not by the Court on a motion to dismiss.  But even if the Court were to reach the merits, Shestakov is wrong.  When asked whether he had a "business relationship" with Fokin, Shestakov falsely denied

having any such relationship, and, when asked about the relationship between co-defendant Charles McGonigal and Fokin, Shestakov concealed that all three were regularly in communication, including during an in-person meeting just 12 days before the FBI interview. Accordingly, Shestakov's motion to dismiss Count Five should also be denied.

## **FACTUAL BACKGROUND**

### A. The Indictment

On January 23, 2023, the Indictment in this matter was unsealed, charging defendant Sergey Shestakov in five counts: (1) conspiracy to violate and the International Emergency Economic Powers Act ("IEEPA"), in violation of 50 U.S.C. § 1705, 31 C.F.R. § 589.201, and Executive Orders 13660, 13661, and 13662 (Count One); (2) violation of IEEPA, in violation of the same statute, Executive Orders, and regulation, as well as 18 U.S.C. § 2 (Count Two); (3) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Three); (4) money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Count Four); and (5) false statements, in violation of 18 U.S.C. § 1001. (Indictment ¶¶ 24-35). Co-defendant McGonigal was also charged in Counts One through Four. The Indictment also provides detailed allegations regarding Shestakov's scheme to provide services to Deripaska, launder money earned from that scheme, and then lie to the FBI about certain aspects of that scheme.[1] (Indictment ¶¶ 1-23). Below is a summary of the relevant allegations contained in the Indictment, which bear on the pending motion.

---

[1] Notwithstanding these detailed factual allegations, the Indictment does not contain a full proffer of the Government's anticipated evidence at trial.

### 1.  Oleg Deripaska Is Sanctioned

On April 6, 2018, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated Deripaska as a Specially Designated National ("SDN") in connection with its finding that Russia's actions toward Ukraine constitute an unusual and extraordinary threat to the national security and foreign policy of the United States.  (Indictment ¶ 4).  OFAC designated Deripaska under Executive Orders 13661 and 13662 for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation, among other grounds.  (Indictment ¶ 11).  The United States District Court for the District of Columbia later affirmed the sanctions, finding, among other things, that OFAC's determination that Deripaska acted as an agent of Russian President Vladimir Putin was supported by the evidence, *see Deripaska v. Yellen*, No. 19 Civ. 727 (APM), 2021 WL 2417425 (D.D.C. June 13, 2021), and that decision was then affirmed on appeal, *see Deripaska v. Yellen*, No. 21-5157, 2022 WL 986220, at *1-3 (D.C. Cir. Mar. 29, 2022) (per curiam), *cert. denied*, 143 S. Ct. 117 (2022).

### 2.  Shestakov Agreed to and Did Provide Services to Deripaska

Despite Deripaska's sanctioned status, in the late summer of 2021, Shestakov agreed to provide services to Deripaska.  (Indictment ¶ 1).  Specifically, Shestakov and McGonigal agreed to and did investigate a rival oligarch, Vladimir Potanin, at Deripaska's behest.[2]  (Indictment ¶ 1).

This was not the first time Shestakov agreed to provide services for Deripaska.  In 2019, Shestakov and McGonigal introduced Fokin to a law firm (the "Law Firm") that worked to have

---

[2] Potanin is referred to as "Oligarch 2" in the Indictment.  Because Shestakov's memorandum of law refers to several individuals and entities by their proper names, rather than the anonymized versions used in the Indictment, the Government uses the same proper names.

the sanctions against Deripaska lifted, work that is permitted under the sanctions.  (Indictment ¶¶ 14-15).  Deripaska agreed to retain the Law Firm and personally signed an engagement letter with the Law Firm.  (Indictment ¶ 15).  Under the terms of the engagement, Deripaska agreed to pay the Law Firm $175,000 per month.  (Indictment ¶ 16).  The Law Firm retained McGonigal as a consultant and investigator on the matter, and the Law Firm paid McGonigal by transferring $25,000 to a corporation owned by Shestakov.  (Indictment ¶ 16).  Work and payment on the matter had ceased by March 2020 due to the COVID-19 pandemic.  (Indictment ¶ 17).

More than a year later, in the Spring of 2021, Shestakov and McGonigal began negotiations with Fokin to provide services again to Deripaska.  (Indictment ¶ 18).  In or about August 2021, McGonigal, Shestakov, and Fokin drafted and executed a contract (the "Contract") to memorialize the services to be provided to Deripaska, which concerned an investigation of Potanin.  (Indictment ¶¶ 18-19).  According to the Contract, Pandean would pay Spectrum Risk Solutions ("Spectrum") $51,280 upon execution of the Contract and $41,790 per month thereafter.[3]  (Indictment ¶ 19).  Even though McGonigal and Shestakov were to be paid under the Contract for services to be provided to Deripaska, none of them was named in or a signatory to the Contract.  (Indictment ¶ 19).  Instead, the Contract listed signature lines for Pandean and Spectrum.  (Indictment ¶¶ 19-20).  Nevertheless, after McGonigal told Shestakov that he had not informed Spectrum's owner—McGonigal's "Friend"—about the Contract, Shestakov forged the Friend's signature on the Contract for Spectrum.  (Indictment ¶ 20).

---

[3] Pandean was referred to as the "Cyprus Corporation" in the Indictment.  Spectrum was referred to as the "New Jersey Corporation" in the Indictment.

Consistent with the Contract, on August 13, 2021, a Russian bank wired $51,280 to Spectrum, followed by monthly payments of $41,790 between August 18 and November 18, 2021. (Indictment ¶ 19).  When the Friend later questioned why a Russian bank was wiring thousands of dollars to Spectrum, McGonigal told the Friend that it was payment for "legitimate" work McGonigal was performing for "a rich Russian guy."  (Indictment ¶ 20).  The Friend later transferred funds received from the Russian bank at McGonigal's direction, including to McGonigal and Shestakov.  (Indictment ¶ 20).

In return for Deripaska's money and consistent with the Contract, McGonigal sought to gather information about Potanin and Potanin's interest in a corporation that Potanin and Deripaska were vying to control.  (Indictment ¶ 21).  McGonigal retained subcontractors to assist in this endeavor, without informing them that they were in fact working for Deripaska.  (Indictment ¶ 21).  On October 28, 2021, one of those subcontractors informed McGonigal that a third-party had located "dark web" files that could reveal "hidden assets valued at more than 500 million us $" and other information that McGonigal believed would be valuable to Deripaska.  (Indictment ¶ 22).  For several weeks, McGonigal and Shestakov negotiated with Fokin to obtain funds from Deripaska to purchase these "dark web" files, including during an in-person meeting among McGonigal, Shestakov, and Fokin on November 9, 2021.  (Indictment ¶¶ 22, 23).

### 3.  Shestakov Lied to the FBI

On or about November 21, 2021, work under the Contract ceased when the FBI seized McGonigal's and Shestakov's cellphones.  (Indictment ¶ 22).  That same day, prior to the seizure, Shestakov met with FBI agents and attempted to conceal the nature and depth of his relationship with McGonigal and Fokin.  (Indictment ¶ 23).  Specifically, Shestakov claimed he was unsure how recently McGonigal and Fokin had met, even though Shestakov had met with both of them

on November 9, 2021.  (Indictment ¶¶ 23, 35).  In addition, when asked if he "ever engaged in a business relationship" with Fokin, Shestakov replied that he did not have a business relationship with Fokin, even though work on the Contract was still being performed at that time and Shestakov regularly spoke with Fokin about such work, including earlier that very day.  (Indictment ¶¶ 23, 35).

## ARGUMENT

## I.  THE DEFENDANT'S MOTION TO DISMISS COUNTS ONE THROUGH FOUR SHOULD BE DENIED

Counts One through Four of the Indictment, which are premised on McGonigal and Shestakov's scheme to provide services to Deripaska under the Contract and launder the proceeds they received pursuant to the Contract, satisfy Federal Rule of Criminal Procedure 7(c)(1) by providing "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Nevertheless, Shestakov moves to dismiss Counts One through Four because he claims he was not on notice that providing services to Fokin and/or En+ would violate IEEPA. (Mot. 7-11).  As described further below, Shestakov's arguments are premature, and they misconstrue the allegations in the Indictment.  The Indictment alleges that Shestakov worked for *Deripaska*, not Fokin or En+.  Shestakov's claims, which distort the plain allegations within the Indictment, should be rejected, and his motion to dismiss Counts One through Four should be denied.

### A.  Applicable Law

#### 1.  Pleading Standard

Federal Rule of Criminal Procedure 12(b) allows a defendant to move before trial to dismiss an indictment.  Fed. R. Crim. P. 12(b)(3)(B).  "A defendant faces a high standard in

seeking to dismiss an indictment, because an indictment need provide only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Post*, 950 F. Supp. 2d 519, 527 (S.D.N.Y. 2013) (citations and internal quotation marks omitted).

Before trial, "the allegations of [an] indictment must be taken as true," *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952), and "[t]he sufficiency of the evidence" is not a matter that may be "appropriately addressed on a pretrial motion to dismiss an indictment," *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998); *see also United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985) (in reviewing the facial sufficiency of an indictment, "[c]ontrary assertions of fact by the defendants will not be considered"). To satisfy Rule 7(c)(1), "an indictment need do little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021) (citation and internal quotation marks omitted); *see also United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (same). "An indictment is sufficient as long as it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend,' and (2) 'enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Dawkins*, 999 F.3d at 779 (quoting *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021)).

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. Avenatti*, 432 F. Supp. 3d 354, 360 (S.D.N.Y. 2020) (quoting *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)); *see id*. at 360 ("[D]ismissal of charges is an 'extreme sanction,' . . . that has been upheld 'only in very limited and extreme circumstances,' and should be 'reserved for the truly extreme cases,'

7

'especially where serious criminal conduct is involved.'" (citations omitted)).  Even in cases involving very bare-bones charges, courts will not dismiss an indictment absent a showing of prejudice.  *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013).

### 2.  Void-for-Vagueness Doctrine

The void-for-vagueness doctrine requires that "a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Dawkins*, 999 F.3d at 787 (internal quotation and citation marks omitted).  While criminal statutes are subject to stringent standards, a "statute need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth." *Id.* (internal quotation and citation marks omitted). Where the interpretation of a statute does not implicate First Amendment rights, "it is assessed for vagueness only 'as applied,' i.e., in light of the specific facts of the case at hand and not with regard to the statute's facial validity." *United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003). Therefore, to succeed on a vagueness challenge, a defendant "must demonstrate that the statute, as applied, failed to adequately warn of the prohibited conduct." *United States v. Coonan*, 938 F.2d 1553, 1562 (2d Cir. 1991).

Courts in this Circuit have agreed that a defendant "must wait to bring an as-applied vagueness challenge until the facts have been established by evidence introduced at trial and the fact-finder has had an opportunity to weigh in." *United States v. Raniere*, 384 F. Supp. 3d 282, 320 (E.D.N.Y. 2019) (collecting cases); *see also*, *e.g.*, *United States v. Alshahhi*, No. 21 Cr. 371 (BMC), 2022 WL 2239624, at *11 (E.D.N.Y. June 22, 2022) (denying as premature a vagueness challenge to 18 U.S.C. § 951), *reconsideration denied*, 2022 WL 3595056 (Aug. 23, 2022); *Avenatti*, 432 F. Supp. 3d at 366 ("[R]esolution of a defendant's void for vagueness challenge

ordinarily requires a more expansive factual record to be developed at trial."). Courts have reached this conclusion because, in order to evaluate whether the statute as applied to a defendant provided fair notice, first "it must be clear what [the defendant] did." *Raniere*, 384 F. Supp. 3d at 320 (internal quotation marks omitted).

### B. Discussion

#### 1. Counts One and Two Are Legally Sufficient and Do Not Violate Due Process

Even though Counts One and Two satisfy the minimal pleading requirements necessary to survive a motion to dismiss, Shestakov nevertheless contends that Counts One and Two violate his due process rights because the relevant statutes, executive orders, and regulations implicated in Counts One and Two are vague as applied to him. (Mot. 7-11). As an initial matter, Shestakov's argument is premature because as-applied vagueness challenges are generally reviewed after trial on a full record. *See, e.g.*, *Raniere*, 384 F. Supp. 3d at 320; *Alshahhi*, 2022 WL 2239624, at *11; *Avenatti*, 432 F. Supp. 3d at 366.

Shestakov's vagueness challenge also fails on the merits. Shestakov argues that he "could not have been on notice that his work for Mr. Fokin, a high-level employee of En+, and En+ would be the basis for criminal liability." (Mot. 7). Shestakov elaborates that he could not reasonably understand "that conduct with an official of En+ and for En+'s benefit that may also benefit Mr. Deripaska . . . would be criminalized." (Mot. 8-9). Shestakov's argument attacks a strawman. The Indictment does not allege—as Shestakov contends—that Shestakov agreed to provide services to Fokin and En+, which by happenstance also benefited Deripaska. Rather, the Indictment alleges that Shestakov knowingly agreed to provide services to and for the benefit of

Deripaska, a sanctioned oligarch.[4]   (Indictment ¶¶ 1, 18-22).   The Indictment does not even mention En+ when discussing the Contract and services to be provided to Deripaska.   (*See* Indictment ¶¶ 18-22).   Indeed, the only mention of En+ in the Indictment is a passing reference to note that Fokin served as an officer of En+ during the relevant time period of the Indictment. (Indictment ¶ 12).   Nor does the Indictment allege that the purpose of the Contract was to provide services for the benefit of Fokin.   Instead, the Indictment alleges that, just as Shestakov knew that Fokin represented Deripaska in Deripaska's retention of the Law Firm in 2019, Shestakov knew that Fokin represented Deripaska in the negotiation with McGonigal and Shestakov about the Contract.   (Indictment ¶¶ 14-22).

To the extent Shestakov wishes to argue that he agreed to provide services to Fokin and/or En+, and not Deripaska, that is an argument he can make at trial if there is an evidentiary basis supporting it.   But that argument cannot be the basis for a motion to dismiss.   *See Alfonso*, 143 F.3d at 777.   At this stage of the case, the Indictment's allegations—including those related to Shestakov's work for Deripaska—"must be taken as true."   *Boyce Motor Lines*, 342 U.S. at 343 n.16.   Shestakov's effort to attack a theory that is not alleged in the Indictment should be rejected. *See, e.g.*, *United States v. Block*, No. 16-CR-595 (JPO), 2017 WL 1608905, at *3 (S.D.N.Y. Apr. 28, 2017) (denying defendant's motion to dismiss certain counts on due process grounds where the defendant incorrectly characterized the indictment's allegations).

---

[4] Elsewhere in his Motion, Shestakov appears to concede this point numerous times.  For example, later in his Motion, he states that the Government's theory of the case is that "Mr. McGonigal and Shestakov were actually working for Mr. Deripaska."   (Mot. 15; *see also, e.g.*, *id.* 2 ("The Indictment alleges that Mr. Shestakov conspired with . . . Oleg Deripaska . . . ."); *id.* 3 ("During the time period that Mr. Shestakov was allegedly conspiring with . . . Mr. Deripaska . . . .").)

Shestakov also claims that due process prevents the criminalization of conduct "where the interests of and benefits to Mr. Deripaska and En+ happen to directly converge, and are one and the same." (Mot. 9). This argument also misses the mark. Once again, the Indictment does not allege that Shestakov entered into the Contract to provide services to En+. The allegations concern Shestakov's agreement to knowingly provide services to Deripaska. Once again, if Shestakov wishes to dispute these facts and argue that he provided services only to En+, he may do so before the jury at trial.

Moreover, the charges in Counts One and Two are specific intent crimes that require the Government to prove at trial that Shestakov willfully violated the sanctions imposed on Deripaska. In other words, the Government's trial proof will establish that Shestakov acted with knowledge that his conduct was unlawful. *See, e.g.*, *United States v. Abdullaev*, 761 F. App'x 78, 81 (2d Cir. 2019); *United States v. Homa Int'l Trading Corp.*, 387 F.3d 144, 147 (2d Cir. 2004). Longstanding law recognizes that a due process challenge should fail under these circumstances. *See United States v. Hescorp, Heavy Equipment Sales Corp.*, 801 F.2d 70, 77 (2d Cir. 1986) ("[A] requirement of willfulness makes a vagueness challenge especially difficult to sustain."). Here, the Government can readily prove that Shestakov knew his conduct was unlawful. Shestakov knew that *Deripaska himself* was sanctioned because Shestakov and McGonigal introduced Fokin to the Law Firm so that the Law Firm could try to get those sanctions lifted. (Indictment ¶¶ 14-16). Given that fact, Shestakov, unsurprisingly, does not argue that he did not know Deripaska was sanctioned. Nor could he. The Indictment also alleges that Deripaska was an SDN during the relevant time period, and, therefore, providing services to Deripaska was and remains illegal.

(Indictment ¶¶ 1, 5-11, 14-16).  Thus, Shestakov's motion to dismiss Counts One and Two should be denied.

### 2.   Counts Three and Four Are Legally Sufficient

Like Counts One and Two, Counts Three and Four are legally sufficient because they properly track the language of the statutes charged and state the time and place of the alleged crime.  *See Stavroulakis*, 952 F.2d at 693.  Because Shestakov's sole basis for rejecting Counts Three and Four rest on his faulty arguments regarding Counts One and Two (Mot. 11), the Court should also deny Shestakov's motion to dismiss Counts Three and Four.

## II.  THE DEFENDANT'S MOTION TO DISMISS COUNT FIVE SHOULD BE DENIED

Count Five alleges that Shestakov (i) concealed his knowledge of the relationship between McGonigal and Fokin and (ii) lied by stating that Shestakov did not have a business relationship with Fokin, when Shestakov knew that he and McGonigal had negotiated with Fokin to enter the Contract to provide services to Deripaska and that all three regularly communicated about the Contract, including earlier that day and during an in-person meeting on November 9, 2021. (Indictment ¶¶ 23, 35).  Despite these allegations, Shestakov moves to dismiss Count Five because his statements were purportedly made in response to fundamentally ambiguous questions and, with respect to his knowledge of the relationship between McGonigal and Fokin, were literally true. (Mot. 11-22).  Those are arguments for trial, not for a motion to dismiss.  Nevertheless, contrary to his claims, the questions posed were not fundamentally ambiguous and Shestakov's answers were false.  As a result, Shestakov's motion to dismiss Count Five should be denied.

### A.   Applicable Law

Section 1001 imposes criminal penalties on anyone who, "in any matter within the jurisdiction of the executive . . . branch of the Government of the United States, knowingly and willfully" (1) "falsifies, conceals, or covers up by any trick, scheme, or device a material fact," or (2) "makes any materially false, fictitious, or fraudulent statement or representation."  18 U.S.C. § 1001(a)(1)-(2).   "[W]hether the witness believes that an answer is true or false generally turns on the declarant's understanding of the question."  *United States v. Lighte*, 782 F.2d 367, 372 (2d Cir. 1986); *see United States v. Sampson*, 898 F.3d 287, 307 n.15 (2d Cir. 2018) (assuming, without deciding, that the standards applicable to perjury apply equally to a false statement charge); *United States v. Kaplan*, 758 F. App'x 34, 39 (2d Cir. 2018) (same); *United States v. Polos*, 723 F. App'x 64, 65 (2d Cir. 2018) ("[W]e assess challenges to Section 1001 convictions using the same legal standards we apply to perjury convictions.").   Accordingly, and as is true of virtually all factual issues, "[a] jury is best equipped to determine the meaning that a defendant assigns to a specific question."  *Lighte*, 782 F.2d at 372.

A narrow exception arises when language in a question is so "fundamentally ambiguous" that a Court can conclude, as a matter of law, that the false statement count cannot stand.  *See id*. at 375; *see also United States v. Sarwari*, 669 F.3d 401, 407 (4th Cir. 2012) ("[F]undamental ambiguity is the exception, not the rule." (quoting *United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir. 1998))).   A question is "fundamentally ambiguous" when it "is not a phrase with a meaning about which [people] of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony."  *Lighte*, 782 F.2d at 375 (internal quotation marks and citation omitted).

However, a defendant cannot demonstrate fundamental ambiguity simply by showing that words used in a question are amenable to multiple meanings, or that an answer "might generate a number of different interpretations." *Id.* (internal quotation marks and citation omitted). A statement "must be judged according to common sense standards and given [its] natural meaning in relation to [its] context." *United States v. Schafrick*, 871 F.2d 300, 303 (2d Cir. 1989). Critically, courts generally evaluate challenges to a false statement count on the basis that a question was fundamentally ambiguous after trial and following the development of a full factual record. *See, e.g.*, *Sampson*, 898 F.3d at 307 (appeal following a conviction); *Kaplan*, 758 F. App'x at 39 (appeal following a conviction); *Polos*, 723 F. App'x at 65-66 (appeal following a conviction); *see also United States v. Maxwell*, 534 F. Supp. 3d 299, 319 (S.D.N.Y. 2021) (Nathan, J.) ("Courts typically evaluate whether a question was fundamentally ambiguous only after the development of a full factual record at trial.").

The law also does not permit a conviction under Section 1001 based on answers that are literally true. *See Lighte*, 782 F.2d at 374. Nor can a conviction rest on answers that are literally true but unresponsive, and therefore "arguably misleading by negative implication." *Id.*; *see also Bronston v. United States*, 409 U.S. 352, 362 (1973). But when "the answer is false, the fact that it is unresponsive is immaterial." *United States v. Corr*, 543 F.2d 1042, 1049 (2d Cir. 1976). Even statements that "could be literally true in isolation" can support a false statement conviction if they are "materially untrue" in "the context in which the statements were made." *Schafrick*, 871 F.2d at 304. "[U]nless the questioning is fundamentally ambiguous or imprecise, the truthfulness of [the defendant's] answers is an issue for the jury." *Id.*; *see also United States v. Mahaffy*, 285 F.

14

App'x 797, 798 (2d Cir. 2008) (whether a statement is "literally true" is "a question of fact for the determination of a jury" (internal quotation marks and citation omitted)).

Finally, even if a defendant makes a knowing false statement, a false statement conviction requires that the statement be material.  A false statement is material if it has "a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed."  *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (alteration in original) (internal quotation marks and citation omitted).  Materiality is a question for the jury "except in the most extraordinary cases."  *United States v. Forde*, 740 F. Supp. 2d 406, 412 (S.D.N.Y. 2010) (citing *Gaudin*, 515 U.S. at 522-23).

### B.  Count Five Sufficiently Alleges that Shestakov Made a False Statement When He Denied Having a Business Relationship with Fokin

Count Five sufficiently alleges that, on or about November 21, 2021, during an interview with the FBI, Shestakov knowingly and willfully made a material false statement when he denied having a "business relationship" with Fokin.  (Indictment ¶ 35).  Specifically, when asked whether he had "ever engaged in a business relationship with" Fokin, Shestakov replied, in substantial part, "No, no business."  (Indictment ¶ 23).  This statement was false, and Shestakov knew it.  In particular, he knew that he, along with McGonigal, had negotiated with Fokin to enter into the Contract to provide services to Deripaska.  (Indictment ¶¶ 18-19).  Shestakov also knew that he had forged the Friend's signature on the Contract and that Shestakov had been paid under the Contract.  (Indictment ¶¶ 19-20).  He further knew that he regularly spoke with Fokin about the Contract, including during an in-person meeting on November 9, 2021, and earlier on the same day the FBI interviewed Shestakov.  (Indictment ¶¶ 22-23).

Recognizing the falsity of the statement, Shestakov does not claim that his denial of a "business relationship" with Fokin was literally true.  Nor does Shestakov claim that his lie was immaterial or not in a matter within the jurisdiction of the executive branch of the United States. Instead, Shestakov—relying on extrinsic materials, beyond the allegations of the Indictment— claims that the question of whether Fokin was a "personal friend" or someone with whom he had a "business relationship" was fundamentally ambiguous.  Shestakov's strained efforts to find ambiguity should be rejected.

As an initial matter, Count Five recites the elements of the offense and tracks the statutory language, and no more is required.  *See Stavroulakis*, 952 F.2d at 693. The defendant cannot, at this stage, challenge the sufficiency of the Government's evidence on this Count.  *See Alfonso*, 143 F.3d at 777.  Nor is it proper for Shestakov to rely on extrinsic evidence—outside the allegations in the Indictment—to support his motion to dismiss.  "Solidly etched in our legal foundation is the notion that an indictment need only be valid on its face to withstand a motion to dismiss, irrespective of the extrinsic evidence or lack thereof in support of the charges alleged therein." *United States v. Frequency Elecs.*, 862 F. Supp. 834, 837 (E.D.N.Y. 1994).  The Indictment alleges an unambiguous question and answer (Indictment ¶ 23), and Shestakov cannot at this stage use extrinsic evidence to attack the Indictment.

But even on their own terms, Shestakov's arguments about the purported ambiguity of the "business relationship" question and answer fail.

*First*, Shestakov asserts that the question was ambiguous because whether he believed he was in a "business" relationship with Fokin "is entirely subjective to [his] own belief and understanding of 'business'" because it could pertain to Fokin, En+, Spectrum, or Deripaska.

(Mot. 15).   To begin, Shestakov is wrong that his understanding of the question should be considered subjectively.   As the Second Circuit has held, "How a defendant interprets a question obviously is not viewed subjectively, as that would compel the jury to accept as conclusive the meaning a defendant alleges he gave to the stated question. . . . The test is therefore an objective one," where the jury considers whether the question—"as the declarant must have understood it, giving it a reasonable reading—was falsely answered."   *Lighte*, 782 F.2d at 372.   When making that determination, the question must be considered in the context in which it was posed.   *See Schafrick*, 871 F.2d at 303-04; *see also United States v. Bonacorsa*, 528 F.2d 1218, 1221 (2d Cir. 1976) ("A defense to a charge of perjury may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole.").   Here, Shestakov's false statement was made in the context of numerous questions about Fokin as an individual.   There is no reference to En+, Spectrum, or Deripaska.   When viewed objectively, it is clear that Shestakov was being asked about his relationship with Fokin as an individual, which is exactly what the Indictment alleges and what the Government expects to prove at trial.   *See Bonacorsa*, 528 F.2d at 1221 (on an appeal following a conviction, finding no ambiguity in questions because, "[w]hen viewed with anything but the partisan eye of an advocate, the questions, as they followed one upon the other, were pointed toward the development" of one topic).   Shestakov's self-serving interpretation should therefore be rejected.

*Second*, Shestakov argues that the term "business relationship" is impermissibly "subject to individual interpretation" because it could refer to "a formal partnership, a contractual relationship, individuals that often do business with each other or refer business to one another, or

a relationship premised solely on business." (Mot. 16). However, the question must be "judged according to common sense standards," *Schafrick*, 871 F.2d at 303, and Shestakov may not inject ambiguity into a clear question just because a term may be subject to multiple meanings, *see Lighte*, 782 F.2d at 375. *See also United States v. Strohm*, 671 F.3d 1173, 1178 (10th Cir. 2011) ("Simply plumbing a question for *post hoc* ambiguity will not defeat a perjury conviction where the evidence demonstrates the defendant understood the question in context and gave a knowingly false answer."). Moreover, the mere fact that a term encompasses "a broad range of activities" does not render a question fundamentally ambiguous. *See Polos*, 723 F. App'x at 65-66 (finding a question about "employment activities" not to be fundamentally ambiguous). In addition, the Indictment plainly alleges that Shestakov knew he had a business relationship with Fokin: Shestakov negotiated the Contract to provide services to Deripaska with Fokin, received payment under that Contract, and regularly spoke with Fokin about providing services under the Contract. (Indictment ¶¶ 18-23). The Government expects to offer evidence at trial that proves those allegations. Such evidence would permit a jury to find that people of "ordinary intellect" would agree that Shestakov knew he was being asked about his negotiations with Fokin concerning the execution and fulfilment of terms under the Contract and that Shestakov lied when he denied having a business relationship with Fokin. *Lighte*, 782 F.2d at 375.

The out-of-circuit district court case on which Shestakov relies in support his argument that the term "business relationship" is ambiguous—*United States v. Lattimore*, 127 F. Supp. 405 (D.D.C. 1955)—is easily distinguishable. In *Lattimore*, after applying "exacting scrutiny" applicable to allegations that concern the First Amendment, the district court held that the question of whether the defendant was a "follower of the Communist line" "varies according to a particular

individual's political philosophy" and definition of "the Communist line."  *Id*. at 407, 410.  Here, the question posed to Shestakov did not implicate the First Amendment, and, therefore, a higher standard of scrutiny does not apply.  Moreover, Shestakov was not asked whether he followed a particular political party's views, which may encompass a number of varying positions over time. Instead, he was asked a straightforward question: whether he had a business relationship with Fokin, which "ordinary people" would understand referred to some type of work relationship, such as one for the purpose of making a profit.  *See, e.g.*, Black's Law Dictionary (11th ed. 2019) (defining "doing business" as "the carrying out of a series of similar acts for the purpose of realizing a pecuniary benefit, or otherwise accomplishing a goal"); Webster's Dictionary (defining "business" as "a usually commercial or mercantile activity engaged in as a means of livelihood"), https://www.merriam-webster.com/dictionary/business (last visited March 8, 2024).

*Third*, Shestakov claims that the question was impermissibly framed in the disjunctive. According to Shestakov, he was asked whether Fokin was either a "personal friend" or someone with whom he had a "business relationship," and not both.  (Mot. 16).  This argument, which relies on evidence extrinsic to the Indictment, ignores the fact that Shestakov was asked whether he "*ever* engaged in a business relationship with" Fokin.  (Indictment ¶ 23 (emphasis added)).  The common sense understanding of "ever" applies to any time in the past.  *See United States v. Kross*, 14 F.3d 751, 756 (2d Cir. 1994) ("'[E]ver' is not an imprecise word.").  In this context, Shestakov's denial of a business relationship with Fokin is a false statement, which should be presented to the jury.

Finally, Shestakov argues that Count Five fails to allege that he acted knowingly and willfully when he denied having a business relationship with Fokin.  (Mot. 18).  Not so.  Count Five "track[s] the language of the statute" and alleges that Shestakov acted knowingly and

willfully.  *Dawkins*, 999 F.3d at 779; (Indictment ¶ 35).  Moreover, Count Five is supported by numerous allegations in the Indictment which demonstrate that Shestakov knew he had a business relationship with Fokin, including the allegations concerning the negotiations and fulfillment of services under the Contact.  (Indictment ¶¶ 18-23).

### C.   Count Five Sufficiently Alleges that Shestakov Concealed His Knowledge of the Nature of the Relationship Between Fokin and McGonigal

Count Five sufficiently alleges that Shestakov knowingly and willfully concealed his knowledge of the relationship between Fokin and McGonigal.  (Indictment ¶ 35).  Specifically, during the FBI interview, Shestakov feigned uncertainty about the nature of the relationship between Fokin and McGonigal, even though Shestakov knew, among other things, that all three had met in person just 12 days earlier to discuss the Contract, they all negotiated the Contract, and Fokin and McGonigal spoke regularly about the Contract.  (Indictment ¶¶ 12-14, 18-23, 35).

Once again, Shestakov claims that his statements were made in response to fundamentally ambiguous questions.  (Mot. 20-21).  But no questions were discussed in the Indictment, and Shestakov fails to identify which specific questions were purportedly ambiguous.  Besides, the trial evidence will show that the questions posed to Shestakov were clear.  For example, when asked about the nature of McGonigal's "interest" in Fokin, Shestakov said McGonigal wanted to be "nominally in touch" with Fokin because of McGonigal's interest in "things Russian," his "work in the FBI," and for "business connections."  But Shestakov knowingly failed to mention the elephant in the room, namely, that he and McGonigal had negotiated the Contract with Fokin to provide services for Deripaska.  (Indictment ¶¶ 18-23, 35).  Similarly, when Shestakov was asked whether he, McGonigal, and Fokin had "ever all met together," Shestakov replied, "Uh at some point, yea we did."  When pressed whether they all met "recently or [a] long time ago,"

Shestakov responded, "Uh some time ago yea yea."  And, when asked whether they had met "[l]ike a year ago, 4 years ago," Shestakov said they had met "on occasion," both while McGonigal was with the FBI and after he retired.  In each of those answers, Shestakov knowingly concealed that they all had met in person within the last two weeks.  (Indictment ¶¶ 23, 35).  Contrary to Shestakov's claim (Mot. 21), these questions are unlike the questions that were found to be ambiguous by the Second Circuit in *Lighte*.  In *Lighte*, a case involving post-conviction appellate review, the Second Circuit found that a question was fundamentally ambiguous because it used the word "'you' without indication that, unlike the prior two questions, the appellant was now being questioned in his role as trustee."  782 F.2d at 376.  Shestakov identifies no specific term in any question with similar ambiguity.

Citing *Bronston*, Shestakov offers the alternative argument that his answers were literally true.  (Mot. 21).  As previously explained, whether Shestakov's answers were literally true is a question of fact for the jury to decide.  *See, e.g.*, *Schafrick*, 871 F.2d at 304; *Mahaffy*, 285 F. App'x at 798.  In any event, his reliance on *Bronston* is misplaced.  In *Bronston*, the defendant gave a literally true, but non-responsive answer when, in response to a question about whether *he* ever had any Swiss bank accounts, he said that "*[t]he company* had an account there for about six months" and neglected to mention that *he* personally previously had Swiss bank accounts.  409 U.S. at 354 (emphasis added).  Here, unlike in *Bronston*, Shestakov gave responsive, but misleading answers.  For example, when asked about McGonigal's "interest" in Fokin, Shestakov responded that McGonigal was interested in "Russian things," but neglected to mention one of those "Russian things"—the Contract Shestakov, McGonigal, and Fokin had negotiated to provide services to Russian oligarch Deripaska.  Similarly, when asked whether he, McGonigal, and Fokin

had met "recently or [a] long time ago," Shestakov confirmed they had met after McGonigal had retired from the FBI, but Shestakov concealed that they had met just 12 days earlier.  Where, as here, "an answer is responsive to the question, . . . there is no notice to the examiner" to ask further clarifying questions "and no basis for applying *Bronston*."  *Schafrick*, 871 F.2d at 303.

Finally, Shestakov argues that Count Five fails to allege that he acted knowingly and willfully when he concealed the nature and extent of the relationship between McGonigal and Fokin.  (Mot. 22).  However, given the Indictment's allegations regarding the extensive relationship among Shestakov, McGonigal, and Fokin, beginning with Shestakov's introduction of McGonigal to Fokin in 2018 through the work on the Contract (Indictment ¶¶ 12-14, 18-23, 35), such an argument should be easily rejected.

## **CONCLUSION**

For the reasons set forth above, Shestakov's motion to dismiss should be denied.

Dated: New York, New York
      March 8, 2023

           Respectfully submitted,

           DAMIAN WILLIAMS
           United States Attorney for the
           Southern District of New York


By:     /s/ Rebecca T. Dell
           Rebecca T. Dell
           Derek Wikstrom
           Assistant United States Attorneys
           Tel.: 212-637-2198 /-1085