**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SERGEY SHESTAKOV,<br><br>Defendant. | Case No. 23 Cr. 16 (JHR) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SERGEY SHESTAKOV'S MOTION TO DISMISS**

Dated: March 26, 2024
New York, New York

**GLAVIN PLLC**
Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
156 W. 56th Street, Ste. 2004
New York, NY 10019
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. The Court Should Dismiss Counts One and Two ..... 2

II. Count Five Must Be Dismissed ..... 5

A. The Question Concerning Mr. Shestakov's Relationship with Mr. Fokin was Fundamentally Ambiguous and Should Not be Presented to a Jury ..... 6

B. Mr. Shestakov's Statements Regarding Mr. McGonigal Cannot Form the Basis of a False Statement Charge ..... 8

CONCLUSION ..... 11

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Bronston v. United States*,
409 U.S. 352 (1972) .......... 9, 10

*United States v. Gasperini*,
894 F.3d 482 (2d Cir. 2018) .......... 4, 5

*United States v. Handakas*,
286 F.3d 92 (2d Cir. 2002) .......... 5

*United States v. Kerik*,
615 F. Supp.2d 256 (S.D.N.Y. 2009) .......... 6, 7

*United States v. Lattimore*,
127 F. Supp. 405 (D.D.C. 1955) .......... 8

*United States v. Lighte*,
782 F.2d 367 (2d Cir. 1986) .......... 8

*United States v. Polos*,
723 F. App'x 64 (2d Cir. 2018) .......... 8

*United States v. Schafrick*,
871 F.2d 300 (2d Cir. 1989) .......... 10

*United States v. Stavroulakis*,
952 F.2d 686 (2d Cir. 1992) .......... 6

*United States v. Tairod Nathan Webster Pugh*,
2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) .......... 4

Defendant Sergey Shestakov, by and through his undersigned counsel, respectfully submits this reply brief in further support of his Motion to Dismiss the Indictment (the "Motion").[1]

## PRELIMINARY STATEMENT

In arguing that the Indictment adequately alleges IEEPA violations and there is not a "fair notice" issue, the government ignores: (a) that the Indictment specifically alleges that Mr. Fokin was an official of En+ at all relevant times and that Mr. Deripaska was a principal shareholder of En+, Indictment ¶ 12; (b) the undisputed public facts that En+, through its subsidiary Rusal, had a tremendous financial interest in Nornickel and its CEO and majority shareholder Vladimir Potanin, and Rusal filed a lawsuit against Mr. Potanin for mismanagement of Nornickel pursuant to that interest in October 2022 because of a longstanding dispute, Mov. Mem. at 5 n.8; and (c) the government's theory, as charged in the Indictment, is that Mr. Fokin, while acting as an official of En+, was also acting as an agent-middleman of En+'s principal shareholder who controlled numerous board seats, in arranging to provide "business intelligence" about Potanin and Nornickel that would have benefited En+ and its primary shareholder, Indictment ¶¶ 18-22. As alleged, Mr. Shestakov was not on notice that the business intelligence work would have violated IEEPA because the Indictment is clear that he dealt with Mr. Fokin, a high-ranking, well-known official of En+, on work that would serve to benefit both En+'s largest shareholder who controlled four board seats and En+'s corporate interests. There was not fair notice that such conduct would constitute an IEEPA violation as a matter of law.

As for the false statements count, the government's claim that Mr. Shestakov's response to whether he had a "business relationship" with Mr. Fokin similarly ignores the government's own

[1] For ease of reference, we use terms as they are defined in Mr. Shestakov's moving memorandum of law ("Mov. Mem.").

theory of the case as both charged and set forth in the government's Opposition brief:[2] Mr. Shestakov and Mr. McGonigal were engaged to provide "business intelligence" services *to Oleg Deripaska*, not Mr. Fokin. Indictment ¶ 18. Mr. Fokin—an official of En+— was simply the middleman. *See, e.g.*, Indictment ¶¶ 18-22; Gov. Opp. at 4 ("Shestakov and McGonigal began negotiating with Fokin to provide services again *to Deripaska*") (emphasis added). Thus, the question of whether Mr. Shestakov was in a business relationship with Mr. Fokin is not only "ambiguous," but the wrong question under the government's own theory. And, the Indictment omits critical reference to the undisputed and recorded back-and-forth between the FBI Agents and Mr. Shestakov because it reveals fundamental ambiguity and other defects that require dismissal as a matter of law. As a matter of law that false statement charge cannot stand.

With respect the Indictment's allegation that Mr. Shestakov violated § 1001 because he "concealed the nature of the relationship" between Mr. McGonigal and Mr. Fokin, that charge is deficient on its face, in part because it omits the specific undisputedly vague and ambiguous question the FBI Agents asked of Mr. Shestakov: "what was [Mr. McGonigal]'s interest in [Mr.] Fokin?" *See* Ex. 4.2. A literally true but nonresponsive response cannot be the basis of a false statement charge as a matter of law—particularly where the questioning is imprecise.

## ARGUMENT

### I. The Court Should Dismiss Counts One and Two

In response to Mr. Shestakov's arguments that the IEEPA Counts should be dismissed as violative of due process for not providing fair notice (*see* Mov. Mem. at 7-11), the government

[2] References to the government's memorandum of law in opposition to Mr. Shestakov's Motion are cited as "Opposition brief" or "Gov. Opp."

principally argues that Mr. Shestakov's Motion (i) misconstrues the Indictment and (ii) is premature. The government's arguments should be rejected.

First, the government argues that Mr. Shestakov "misconstrues the Indictment, which alleges that [Mr.] Shestakov agreed to and did provide services to Oleg Deripaska, a sanctioned oligarch, not Fokin and En+." Gov. Opp. at 1; Indictment ¶ 1. To support this allegation, the government notes that "Shestakov and McGonigal began negotiations with Fokin to provide services again to Deripaska" and "Fokin served as an officer of En+ during the relevant time period of the Indictment." Gov. Opp. at 4, 10 (citing Indictment ¶¶ 18, 12). The government misses the point. The Indictment specifically alleges that Mr. Fokin was working for En+ at all relevant times, and that Mr. Deripaska was the principal shareholder of En+. Indictment ¶ 12. Mr. Shestakov argues the Indictment impermissibly attempts to prohibit his conduct in acting with Mr. Fokin—a well-known official of En+—and Mr. McGonigal to conduct business intelligence work that would serve to directly benefit En+. Mov. Mem. at 8. As such, a person of ordinary intelligence would not reasonably understand Mr. Shestakov's alleged conduct to be prohibited under the controlling regulations and Executive Orders.

The government sidesteps Mr. Shestakov's arguments regarding the convergence of interests between En+ and Mr. Deripaska (e.g., Mov. Mem. at 9) to argue that the Indictment does not allege that Mr. Shestakov entered into a contract to provide services for En+. Such an argument ignores the Indictment's allegations about the roles of both Mr. Fokin and Mr. Deripaska in En+, as well the public undisputed facts about En+, Rusal, Mr. Potanin, and Nornickel . While the Indictment includes the broad allegation that Mr. Shestakov agreed to provide services to Mr. Deripaska, the government further alleges that "[i]n or about August 2021, McGonigal, Shestakov, and [Fokin] drafted and executed a contract"—but not with Mr. Deripaska, whose name appears

nowhere in that contract, nor with an entity associated with him (Pandean). Indictment ¶ 18. The government's Opposition brief tries to clean up the gaps and contradictions in the Indictment, arguing that it somehow charged a direct transaction between Mr. Shestakov and Mr. Deripaska and that the Indictment alleges that Mr. Fokin acted as an agent solely of Mr. Deripaska (despite its allegation that Mr. Fokin was a high-ranking En+ official and the publicly known and undisputed fact that Mr. Deripaska is a majority shareholder of En+). Moreover, the government does not dispute that the business intelligence work involved the CEO of Nornickel, a company that is publicly known to be of critical importance to En+'s business interests. Indictment ¶ 18. As the Court must consider the Indictment's allegations and reasonable inferences drawn therefrom, the Court should dismiss the IEEPA Counts. *See United States v. Gasperini*, 894 F.3d 482, 487 (2d Cir. 2018); *United States v. Tairod Nathan Webster Pugh*, No. 15-cr-116, 2015 WL 9450598, at *16 (E.D.N.Y. Dec. 21, 2015).

The government's arguments concerning "specific intent" do not cure the Indictment's flaws. The Motion recognizes that a scienter requirement may mitigate vagueness problems, but this principle does not spare the IEEPA Counts against Mr. Shestakov. Mov. Mem. at 9-10. On this score, the government's argument boils down to a contention that the government can prove Mr. Shestakov knew his conduct was unlawful because he knew Mr. Deripaska was sanctioned. Gov. Opp. at 11. Any knowledge of the sanctions imposed on Mr. Deripaska, however, did not put Mr. Shestakov on notice that working with an officer of En+ on efforts that would benefit En+ was similarly criminal. This distinction, evidenced by Mr. Shestakov's FARA filing on November 29, 2021 (*see* Mov. Mem. at 10), only serves to emphasize the lack of notice that sustains a fair warning violation.

As established in the Motion, the IEEPA Counts, as alleged, do not comport with the Due Process Clause's fair warning requirement. *See Gasperini*, 894 F.3d at 487. Where the Indictment's first two Counts have alleged a constitutionally infirm theory as a matter of law, the need for a factual record is obviated—and Mr. Shestakov's arguments are thus not premature—and the IEEPA Counts must be dismissed. Similarly, because the Court should dismiss the IEEPA Counts on vagueness grounds at this stage, the Court should similarly dismiss the Money Laundering Counts—and the government's argument that the IEEPA Counts are adequate, and the Money Laundering Counts track the language of the statute, do not move the needle. *United States v. Handakas*, 286 F.3d 92, 112-13 (2d Cir. 2002).

## II. Count Five Must Be Dismissed

The government argues that Count Five is legally sufficient because Mr. Shestakov's statements (and the corresponding questions) were unambiguous and knowingly and willfully false, and his arguments otherwise present questions of fact reserved for the jury. Taking each point in turn for the relevant statements alleged in Count Five, the government's arguments do not shield the § 1001 charge from dismissal.

As a threshold matter, the government takes issue with purported "extrinsic evidence" that Mr. Shestakov uses to attack the Indictment, remarking that "no questions were discussed in the Indictment." Gov. Opp. at 16, 20. First, that is precisely the problem with the portion of the false statement count that vaguely alleges that Mr. Shestakov concealed the nature of Mr. McGonigal's relationship with Mr. Fokin. The omission of the questions that caused the alleged "concealment" implicitly concedes that the questions were hopelessly vague and ambiguous. Second, and most importantly, the government does not dispute the recorded colloquy between the FBI Agents and Mr. Shestakov—they recorded it. And, although extrinsic evidence may not form the basis to

dismiss an indictment, "common sense must control…and an indictment must be read to include facts which are necessarily implied by the specific allegations made." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). Here, where the government has alleged that Mr. Shestakov made specific false statements, the "necessarily implied" facts include the surrounding colloquy that the statements were made in response to. *See, e.g.*, *United States v. Polos*, 15-cr-692 (PGG), ECF No. 30 (Jan. 6, 2016 Superseding Indictment) ¶¶ 5, 13-18 (quoting from the national security forms that served as the basis for the counts alleging false statements concerning outside employment and contacts with foreign nationals). By contrast, the Indictment deliberately omits the precise exchanges between the FBI Agents and Mr. Shestakov because they underscore Count Five's defects.

### A. The Question Concerning Mr. Shestakov's Relationship with Mr. Fokin was Fundamentally Ambiguous and Should Not be Presented to a Jury

Because a § 1001 prosecution cannot be premised on an answer to a fundamentally ambiguous question, the government opposes Mr. Shestakov's Motion by arguing that the pertinent questions were objectively clear and should be judged by common sense standards. The government's arguments mischaracterize the relevant inquiry and Mr. Shestakov's arguments.

First, the government's protestation concerning Mr. Shestakov's view of the questions is misplaced. Courts in this Circuit recognize that "to precisely define the point at which a question becomes fundamentally ambiguous, and thus not amenable to jury interpretation, is impossible." *United States v. Kerik*, 615 F. Supp.2d 256, 271 (S.D.N.Y. 2009) (citation omitted). Here, as in *Kerik*, the government argues that false statements should be put to a jury "to determine the reasonable meaning of the relevant question and the truthfulness of the defendant's response." *Id.* (citation omitted). The court acknowledged that questions employing the term "embarrassing"

were "open to interpretation," and that the salient inquiry was whether the questions were "sufficiently clear." *Id.* at 273. Reasoning that although the term "embarrassing" is not fundamentally ambiguous *per se*, the court found that the relevant questions had an impermissible "level of abstraction" and "[d]espite the laundry list of answers the Government wishes Kerik would have supplied, ***it does not follow that Kerik necessarily understood the question in precisely this way***." *Id.* at 274 (emphasis added). Like *Kerik*, a poorly worded, ambiguous, and vague question cannot predicate the false statements count simply because the government had a particular response in mind. *See* Mov. Mem. at 13-18.

Despite its fierce opposition that the Indictment concerns only Mr. Shestakov's services to Mr. Deripaska, the government then propounds that it would have been "common sense" for Mr. Shestakov to understand that he had a business relationship with Mr. Fokin because the Indictment alleges "Shestakov negotiated the Contract to provide services to Deripaska with Fokin, received payment under that Contract, and regularly spoke with Fokin about providing services under the Contract." Gov. Opp. at 18. But the Indictment charges that the contract services were for Mr. Deripaska. The government cannot have it both ways: it does not square that Mr. Fokin was merely a middleman for Mr. Deripaska ***and*** that Mr. Shestakov had a business relationship with Mr. Fokin (rather than Mr. Deripaska, in the government's own theory). Because Mr. Shestakov was asked whether he "ever" engaged in a business relationship with Mr. Fokin, the government argues that his denial was a false statement. Nonetheless, the word "ever" does not ameliorate the question's fundamental ambiguity: it still does not follow that, in the government's own formulation, allegedly facilitating a purported contractual engagement for Mr. Deripaska, with whom Mr. McGonigal and Mr. Shestakov were allegedly to be working, created a business relationship between Mr. Fokin and Mr. Shestakov.

Moreover, the government's attempt to distinguish on *United States v. Lattimore*, 127 F. Supp. 405 (D.D.C. 1955) should fail. The allusion to *Lattimore*'s application of exacting scrutiny for questions implicating the First Amendment is of no moment. Rather, the Second Circuit has embraced *Lattimore*'s general formulation of the "fundamental ambiguity" defense to perjury and false statements. *See United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986) (quoting *Lattimore*, 127 F. Supp. at 410) ("A question is fundamentally ambiguous when it 'is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.'"); *see also United States v. Polos*, 723 F. App'x 64, 65 (2d Cir. 2018) (citing *Lighte*, 782 F.2d at 375, and *Lattimore*, 127 F. Supp. at 410) ("A question is fundamentally ambiguous when it 'is not a phrase with a meaning about which men of ordinary intellect could agree.'") Thus, because there can be no agreement or mutual understanding of what the question meant, it cannot form the basis for Count Five.

### B. Mr. Shestakov's Statements Regarding Mr. McGonigal Cannot Form the Basis of a False Statement Charge

Regarding the concealment allegation in Count Five, the government likewise argues that the questions were not fundamentally ambiguous, and Mr. Shestakov's answers were responsive and misleading. For the reasons set forth, *supra*, in Section II and in the Motion (Mov. Mem. at 18-22), the colloquy was fundamentally ambiguous. Confoundingly, the government argues that "no questions were discussed in the Indictment, and Shestakov fails to identify which specific questions were purportedly ambiguous." Gov. Opp. at 20. In fact, Mr. Shestakov contextualizes his responses with the full back-and-forth concerning Mr. McGonigal and Mr. Fokin—which he was forced to do because the Indictment alleges he attempted to conceal the nature and depth of the relationship between himself, Mr. McGonigal, and Mr. Fokin, which necessarily implicates the

facts of the conversation itself. Indictment ¶¶ 23, 34-35. And, it is worth repeating: the government does not dispute the accuracy of the colloquy as set forth in the Motion. Further to this point, this portion of Count Five is deficient on its face because it provides no detail as to what Mr. Shestakov said that somehow was meant to "conceal the nature" of Mr. McGonigal's relationship with Mr. Fokin, and in response to what inquiry.

The government concedes that there can be no § 1001 conviction based on answers that are literally true but unresponsive. Gov. Opp. at 14. The government's attempt to recast *Bronston v. United States*, 409 U.S. 352 (1972) to argue that Mr. Shestakov's responses were "responsive, but misleading " is unavailing. Gov. Opp. at 21. The government endeavors to distinguish between the *Bronston* defendant's answer to whether he ever had any Swiss bank accounts (responding that the company did, but failing to state that he personally previously had Swiss bank accounts) and Mr. Shestakov's answers to the FBI Agents' questions (as is evident from the transcribed conversation, Mov. Mem. at 19-20, were limited, accurate, and unresponsive). This comparison is a distinction without difference. The government employs an example that, when asked what Mr. McGonigal's interest was in Mr. Fokin, Mr. Shestakov responded that Mr. McGonigal had an interest in "Russian things," but did not mention the contract allegedly involving Mr. Deripaska. To be clear, Mr. Shestakov first replied to this question, saying, "Um, he was actually he wanted to to somehow you know be nominally in touch with you know uh?" Ex. 4.2 When asked "why?", Mr. Shestakov then replied in relevant part that Mr. McGonigal was interested in Russian things. *Bronston* counsels, and the government recognizes, that a false statements charge cannot be premised on unresponsive answers that would only be untrue by "negative implication." 409 U.S. at 361. The Court reasoned: "[i]t does not matter that the unresponsive answer is stated in the affirmative, thereby implying the negative of the question actually posed; for again, by hypothesis,

the examiner's awareness of unresponsiveness should lead him to press another question or reframe his initial question with greater precision. Precise questioning is imperative[.]" *Id*. at 362.

Likewise, regarding the question of when Mr. Shestakov, Mr. McGonigal, and Mr. Fokin met, the government takes issue with the fact that "Shestakov confirmed they had met after McGonigal had retired from the FBI, but concealed that they had met just 12 days earlier." Gov. Opp. at 22. Rather, the pertinent question was whether this group had met while Mr. McGonigal was still working for the FBI, and Mr. Shestakov responded, "both." Ex. 4.2. This is unresponsive. As *Schafrick* recognizes, *Bronston* puts the onus on the examiner to prevent the use of an after-the-fact prosecution to resolve ambiguities. *United States v. Schafrick*, 871 F.2d 300, 303 (2d Cir. 1989). Here, where the colloquy between the FBI Agents and Mr. Shestakov is clear that Mr. Shestakov did not conceal, but instead offered unresponsive, limited answers, *Bronston* is applicable and Count Five should be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Shestakov respectfully requests that the Court dismiss the Indictment.

Dated: March 26, 2024
New York, New York

Respectfully submitted,

*Rita M. Glavin*

Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*