UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                            :

UNITED STATES OF AMERICA

                                            :

          - v. -

                                            :     23 Cr. 16 (JHR)

SERGEY SHESTAKOV

                                            :

                        Defendant.

                                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S MOTIONS *IN LIMINE*

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

Rebecca T. Dell
Sheb Swett
Derek Wikstrom
Assistant United States Attorneys
     *- Of Counsel -*

# TABLE OF CONTENTS

## Cases

*Bourjaily v. United States*, 483 U.S. 171 (1987) ................................................................. 4

*Crigger v. Fahnestock & Co.*, 443 F.3d 230 (2d Cir. 2006) ................................................. 6

*In re Reserve Fund Secs. & Derivs. Litig.*, 09 Civ. 4346 (PGG), 2012 WL 12354233 (S.D.N.Y. Oct. 3, 2012) ..................................................................................................................... 6

*Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534 (2d Cir. 1992) ....................... 6

*Rogers v. United States*, 422 U.S. 35 (1975) ...................................................................... 19

*Shannon v. United States*, 512 U.S. 573 (1994) ................................................................. 19

*United States v. Bailey*, 444 U.S. 394 (1980) .................................................................... 17

*United States v. Bakhtiari*, 913 F.2d 1053 (2d Cir. 1990) ................................................. 16

*United States v. Battaglia*, 05 Cr. 774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ..... 18

*United States v. Campos*, 763 F. App'x 97 (2d Cir. 2019) ................................................. 10

*United States v. Chan*, 185 F. Supp. 2d 305 (S.D.N.Y. 2002) ........................................... 14

*United States v. Chaparro*, 181 F. Supp. 2d 323 (S.D.N.Y. 2002) .................................... 14

*United States v. Desena*, 260 F.3d 150 (2d Cir. 2001) .................................................... 5, 8

*United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999) .......................................................... 5, 8

*United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999) ......................................................... 4

*United States v. Gomez,* 210 F. Supp. 2d 465 (S.D.N.Y. 2002) ........................................ 15

*United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014) .......................................................... 4

*United States v. Harris*, 491 F.3d 440 (D.C. Cir. 2007) ................................................... 19

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007) ................................................. 10, 11

*United States v. Knox*, 687 F. App'x 51 (2d Cir. 2017) .................................................... 17

*United States v. Kwong*, 69 F.3d 663 (2d Cir. 1995) ........................................................ 16

*United States v. Maldonado-Rivera*, 922 F.2d 958 (2d Cir. 1990) ...................................... 5

*United States v. Mezzanatto*, 513 U.S. 196 (1995) ........................................................... 16

*United States v. Miller*, 626 F.3d 682 (2d Cir. 2010) ..................................................... 9, 16

*United States v. Milstein*, 401 F.3d 53 (2d Cir. 2005) ...................................................... 11

*United States v. Neumann*, No. 21 Cr. 439 (NSR), 2023 WL 8700974 (S.D.N.Y. Dec. 14, 2023) 6

*United States v. Oluwanisola*, 605 F.3d 124 (2d Cir. 2010) ............................................. 15

*United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991) ................................................. 18

*United States v. Padilla*, 203 F.3d 156 (2d Cir. 2000) ....................................................... 4

*United States v. Parra*, 302 F. Supp. 2d 226 (S.D.N.Y. 2004) .................................................. 14

*United States v. Paul*, 110 F.3d 869 (2d Cir. 1997) .............................................................. 16

*United States v. Rahme*, 813 F.2d 31 (2d Cir. 1987) ........................................................ 5, 8

*United States v. Rastelli*, 870 F.2d 822 (2d Cir. 1989) ........................................................ 5

*United States v. Rioux*, 97 F.3d 648 (2d Cir. 1996) ............................................................. 6

*United States v. Rivera*, 22 F.3d 430 (2d Cir. 1994) ............................................................ 4

*United States v. Rosemond*, 841 F.3d 95 (2d Cir. 2016) ................................................ 13, 15

*United States v. Saldarriaga*, 204 F.3d 50 (2d Cir. 2000) ................................................ 17

*United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988) .............................................. 4

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994) ............................................................... 5

*United States v. Velez*, 354 F.3d 190 (2d Cir. 2004) ........................................................ 14

**Rules**

Fed. R. Evid. 104 ................................................................................................................... 4

Fed. R. Evid. 402 .............................................................................................................. 9, 16

Fed. R. Evid. 410 ................................................................................................................ 13

Fed. R. Evid. 801 .......................................................................................................... 3, 5, 11

# **TABLE OF AUTHORITIES**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................. 1

ARGUMENT .................................................................................................................... 3

I.   Out-of-Court Statements Made by Co-Conspirators or Their Agents in Furtherance of
     the Conspiracy Are Admissible................................................................................ 3

     A. Applicable Law .................................................................................................. 3

     B. Discussion ......................................................................................................... 5

II.  Evidence That EN+ Was Delisted in January 2019, Absent a Sufficient Connection to
     the Defendant's Relevant Contemporaneous Knowledge, Should Be Precluded ................... 8

III. The Court Should Exclude Fokin's False-Exculpatory Statements to Law Enforcement...... 10

IV.  The Court Should Admit the Defendant's Proffer Statements in the Event He Opens the
     Door to this Evidence .......................................................................................... 11

     A. Applicable Law .................................................................................................. 12

     B. Discussion ......................................................................................................... 14

V.   The Court Should Preclude the Defendant from Introducing Certain Evidence and
     Arguments That Are Irrelevant and Unfairly Prejudicial............................................ 14

     A. The Court Should Exclude Argument that the Prosecution Should Have Been
        Handled Other Than Through a Criminal Prosecution ...................................... 15

     B. The Court Should Exclude Irrelevant Evidence or Argument Concerning the
        Sanctions Regime or Any Individual Sanctions................................................. 16

     C. The Court Should Exclude Irrelevant Evidence of the Defendant's Employment,
        Service Record, Personal Circumstances, and Potential Punishment ...................... 16

CONCLUSION.................................................................................................................. 17

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motion for certain rulings in advance of the trial scheduled for August 6, 2024. The Government moves *in limine* to: (i) introduce out-of-court statements by the defendant's co-conspirators and agents; (ii) exclude Evgeny Fokin's statement to immigration officials; (iii) exclude evidence that EN+ Group ("EN+) was delisted in January 2019 absent evidence of the defendant's contemporaneous knowledge of that fact; (iv) admit the defendant's proffer statements should he open the door; and (v) preclude irrelevant and prejudicial evidence.

## BACKGROUND

On January 12, 2023, a grand jury sitting in this District returned Indictment 23 Cr. 16 (JHR) (the "Indictment"), charging defendant Sergey Shestakov with participating in a scheme to violate the International Emergency Economic Powers Act ("IEEPA"). (Indictment, Dkt. No. 2). Specifically, the defendant was charged with one count of conspiracy to violate IEEPA, in violation of 50 U.S.C. § 1705; Executive Orders 13660, 13661, and 13662; and 31 C.F.R. § 589.201 (Count One); one count of violating IEEPA, in violation of 50 U.S.C. § 1705; Executive Orders 13660, 13661, and 13662; 31 C.F.R. § 589.201; and 18 U.S.C. § 2 (Count Two); one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Three); one count of money laundering, in violation of 18 U.S.C. §§ 1956 (a)(1)(B)(i) and 2 (Count Four); and one count of false statements, in violation of 18 U.S.C. § 1001 (Count Five). Co-defendant Charles McGonigal was also charged with the first four counts, and has since pled guilty and been sentenced. On January 21, 2023, the defendant was arrested, and the defendant was presented in magistrate court and the Indictment was unsealed two days later. (Dkt. Nos. 3 & 8).

As set forth in the Indictment, in the Spring of 2021, the defendant and McGonigal began

negotiations with Evgeny Fokin to provide services to Oleg Deripaska, a Specially Designated National ("SDN") under Executive Orders 13661 and 13662. (Indictment ¶¶ 11, 18). Despite Deripaska's sanctioned status, which prohibited both the defendant and McGonigal from providing any services to Deripaska, in or about August 2021, McGonigal and the defendant agreed to investigate a rival oligarch, Vladimir Olegovich Potanin, for Deripaska. (Indictment ¶¶ 19-21). McGonigal, Fokin, and the defendant drafted and executed a contract (the "Contract") between Pandean Ltd. ("Pandean") and Spectrum Risk Solutions ("Spectrum") to memorialize the services to be provided to Deripaska. (Indictment ¶¶ 18-19). According to the Contract, Pandean would pay Spectrum $51,280 upon execution of the Contract and $41,790 per month thereafter. (Indictment ¶ 19). Even though Fokin, McGonigal, and the defendant understood that McGonigal and the defendant would perform work under the Contract on behalf of Deripaska, none of these individuals was named in or a signatory to the Contract. (Indictment ¶ 19). Instead, the Contract listed signature lines for Pandean and Spectrum. (Indictment ¶¶ 19-20). Spectrum was a company belonging to McGonigal's "Friend," who knew nothing about this arrangement. (Indictment ¶ 20). The defendant ultimately forged the Friend's signature on the Contract for Spectrum. (Indictment ¶ 20).

Consistent with the Contract, on August 13, 2021, a Russian bank wired $51,280 to Spectrum, followed by monthly payments of $41,790 between August 18 and November 18, 2021. (Indictment ¶ 19). When the Friend later questioned why a Russian bank was wiring tens of thousands of dollars to Spectrum, McGonigal told the Friend that it was payment for "legitimate" work McGonigal was performing for "a rich Russian guy." (Indictment ¶ 20). The Friend later transferred funds received from the Russian bank at McGonigal's direction, including to McGonigal and the defendant. (Indictment ¶ 20).

On or about November 21, 2021, the Federal Bureau of Investigation ("FBI") met with the defendant and asked about the relationship between himself, McGonigal, and Fokin. The defendant claimed he was unsure how recently McGonigal and Fokin had met, even though the defendant had met with both of them on November 9, 2021. (Indictment ¶¶ 23, 35). In addition, when asked if he "ever engaged in a business relationship" with Fokin, the defendant replied that he did not have a business relationship with Fokin, even though work on the Contract was still being performed at that time and the defendant regularly spoke with Fokin about such work, including earlier that very day. (Indictment ¶¶ 23, 35).

## ARGUMENT

### I.  Out-of-Court Statements Made by Co-Conspirators or Their Agents in Furtherance of the Conspiracy Are Admissible

The Government expects to introduce for their truth out-of-court statements made by the defendant's co-conspirators, McGonigal and Fokin, and individuals that were hired to perform work in furtherance of the conspiracy (the "Agents"). These statements primarily consist of text messages between and among the defendant, McGonigal, Fokin, and several Agents. The co-conspirators' statements were made in furtherance of the charged conspiracy and are admissible under Federal Rule of Evidence 801(d)(2)(E). Moreover, the Agents' statements were made in the course of their work for the co-conspirators and are admissible under Federal Rule of Evidence 801(d)(2)(D).

#### A.  Applicable Law

Federal Rule of Evidence 801(d)(2)(E) provides in relevant part that a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's co-conspirator during and in furtherance of the conspiracy." To admit a statement under this rule, a district court must find two facts by a preponderance of the evidence: (i) that a conspiracy that

included the defendant and the declarant existed; and (ii) that the statement was made during the course of, and in furtherance of, that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). "In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). When determining whether the predicate conspiracy has been established, the district court is not bound by the Rules of Evidence, *see* Fed. R. Evid. 104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily*, 483 U.S. at 181).

To be "in furtherance" of a conspiracy, a statement "must in some way have been designed to promote or facilitate achievement of the goals of that conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). Under this standard, a co-conspirator statement is admissible if it "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). Thus, statements are in furtherance of the conspiracy if they, for example: (1) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990); (3) "seek to induce a co-conspirator's assistance," *Desena*, 260 F.3d at 158; (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-conspirator of

"the identity and activities of his co-conspirators," *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989); *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987). A narrative description of a past event is admissible as long as it serves "some current purpose in the conspiracy." *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994).

Federal Rule of Evidence 801(d)(2)(D) also excludes from the definition of "hearsay" a statement offered against an opposing party that was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." A Rule 801(d)(2)(D) proponent must establish "(1) existence of an agency relationship; (2) that the statement was made in the course of that relationship; and (3) that the statement relates to a matter within the scope of that relationship." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 238 (2d Cir. 2006). The Second Circuit has stated that "[a]dmissibility under this rule should be granted freely." *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992); *see also*, *e.g.*, *United States v. Neumann*, No. 21 Cr. 439 (NSR), 2023 WL 8700974, at *5 (S.D.N.Y. Dec. 14, 2023) (statements made by individuals who had been hired to file the defendant's tax returns are admissible); *In re Reserve Fund Secs. & Derivs. Litig.*, 09 Civ. 4346 (PGG), 2012 WL 12354233, at *7 (S.D.N.Y. Oct. 3, 2012) ("Where an individual defendant controls the entity that employs the declarant, and is the declarant's ultimate supervisor, the employee is an agent of the defendant for purposes of F.R.E. 801(d)(2)(D), and his statements are admissible against that individual defendant." (citing *United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996))).

**B. Discussion**

McGonigal's and Fokin's statements are admissible as co-conspirator statements. First, the evidence will establish McGonigal's and Fokin's membership in the conspiracy to provide services to Deripaska and to launder money received from Deripaska for those services. McGonigal's

membership in the conspiracy is beyond doubt: in August 2023, he pled guilty to participation in a conspiracy to violate IEEPA. (Dkt. Nos. 57 & 59). As described below, Fokin negotiated the terms of the services with the defendant and McGonigal and received updates about their work for Deripaska. Moreover, when the FBI asked the defendant about his and McGonigal's dealings Fokin, the defendant lied. These facts are sufficient to establish Fokin's participation in the conspiracy.

Second, McGonigal's and Fokin's statements regarding the Contract and services performed pursuant to the Contract were made in furtherance of the conspiracy. For example, in July 2021, the defendant and McGonigal discussed the need to hire individuals to perform work under the Contract. On July 8, 2021, McGonigal messaged the defendant on an encrypted messaging application and said: "I have conducted some research and checked with a few contractors and feel we would need a significant budget for tracking Ps [Potanin's] assets globally. We would need all information from the clients [sic] holdings. I'm thinking 100k up front and 25k per month for 6 months to start. Let me know your thoughts." In addition, in July and August 2021, the defendant, McGonigal, and Fokin had continuous discussions about the drafting and execution of the Contract. As an example, on August 3, 2021, Fokin messaged McGonigal on an encrypted messaging application and asked him to send the full bank account information on "Spectrum," which would eventually be included in the Contract. Moreover, on August 5, 2021, after the defendant told McGonigal that he was "glad it's [the Friend]" listed on the Contract, McGonigal responded that "[the Friend] doesn't know[,] just using the company," which the evidence will establish was a reference to the fact that the Friend did not know that his own company— Spectrum—was being named in the Contract.

The above-excerpted statements are just a sample of the numerous communications

6

between and among the defendant, McGonigal, and Fokin about the drafting and execution of the Contract and the services that were performed under the Contract, including the hiring of the Agents. These statements were made in furtherance of the conspiracies as they, among other things, provided a status update about the progress of the conspiracies and facilitated and protected conspiratorial activities. *See Desena*, 260 F.3d at 158; *Diaz*, 176 F.3d at 87; *Rahme*, 813 F.2d at 36. The statements are therefore admissible for their truth.

The Government also expects that the evidence at trial will establish that the defendant and McGonigal hired the Agents to perform work pursuant to the Contract, including to investigate Potanin and trace his assets. Indeed, in furtherance of the conspiracy, in August 2021, McGonigal entered into a subcontract with a particular company and requested that the company, among other things, conduct a "soup to nuts" investigation of Potanin. In the course of their work for McGonigal and the defendant, the Agents had numerous communications with McGonigal about the status of their research, in which, among other things, McGonigal provided direction to the Agents about their assignment. For example, on August 24, 2021, McGonigal asked one agent ("the Subcontractor") whether he could add to the scope of the project by "conduct[ing] a dark web search for any info re the company and principals." In response, the Subcontractor informed McGonigal that he had "added dark web cyber related searches" to the project's scope and provided a status update on the project. Moreover, on October 28, 2021, the Subcontractor messaged McGonigal that he had found a file that "can reveal hidden assets valued at more than 500 million us $. The file consists of more than 5000 files and documents." In response, McGonigal asked the Subcontractor for "samples" of the files, and the Subcontractor connected McGonigal to another agent who attempted to set up a meeting so that samples of the files could be viewed. These conversations and related conversations between the Agents and McGonigal

were made during the course of the Agents' work for McGonigal and relate to the scope that work. These statements should therefore also be admissible for their truth.[1]

## II.    Evidence That EN+ Was Delisted in January 2019, Absent a Sufficient Connection to the Defendant's Relevant Contemporaneous Knowledge, Should Be Precluded

On April 6, 2018, pursuant to the Ukraine-Related Sanctions Regulations, the Secretary of the Treasury listed Deripaska on the sanctions list. That same day, EN+ was also added to the sanctions list because, at the time, it was owned or controlled by Deripaska. On January 27, 2019, EN+ was removed from the sanctions list after EN+ reduced Deripaska's direct and indirect shareholding stake in the company and severed his control.[2] The defendant should be precluded from introducing evidence of EN+'s delisting unless he can demonstrate, through his testimony or otherwise, that he knew about this fact.

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible" at trial, and under Rule 403, a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403; *see also United States v. Miller*, 626 F.3d 682, 689-90 (2d Cir. 2010). Following these principles, courts have excluded evidence of certain facts where the party offering the evidence has failed to demonstrate it was relevant to the defendant's knowledge or where the admission of such evidence may be confusing to the jury. *See, e.g.*, *United States v. Campos*, 763

---

[1] The co-conspirator statements and agent statements may also be admissible for non-hearsay purposes, such as to show the effect on the listener or to demonstrate the defendant's or his co-conspirators' knowledge or intent.

[2] Press Release, "OFAC Delists En+, Rusal, and EuroSibEnergo," (Jan. 27, 2019), *available at* https://home.treasury.gov/news/press-releases/sm592.

F. App'x 97, 100 (2d Cir. 2019) (precluding a defense witness on the basis that "what [the defense witness] knew or believed sheds little, if any, light on what [the defendant] knew or believed"); *see also United States v. Kaplan*, 490 F.3d 110, 121-22 (2d Cir. 2007) (finding that the district court erred in admitting evidence of one person's knowledge of the fraud to show the defendant's knowledge of the fraud without evidence that defendant was aware of the same facts as the other person); *see also id.* (precluding the same evidence under Rule 403 because the party offering the evidence "failed to offer evidence that would connect the third parties' knowledge of the fraud to" the defendant).

As the Government expects to prove at trial, the defendant provided and conspired with others to provide services to Deripaska. To prove these charges, the Government will offer evidence that Deripaska was sanctioned at the time of the charged conduct and that the defendant and McGonigal understood the work was for Deripaska.[3] If the defendant argues that the work was performed on behalf of EN+, the prior history of EN+'s listing is irrelevant; the Government will not dispute that EN+ was not listed during the period covered in the Indictment. If the defendant wishes to argue that EN+'s delisting affected the defendant's state of mind, the defendant must provide evidence, through his own testimony or otherwise, that he had contemporaneous knowledge of EN+'s delisting. Without this connection, evidence regarding the previously sanctioned status of EN+ will only confuse the jury about irrelevant facts. *See Kaplan*, 490 F.3d at 122.

---

[3] After the FBI seized the defendant's phone in November 2021, the defendant registered with the United States Government as an agent for Fokin, pursuant to the Foreign Agents Registration Act ("FARA").

### III.    The Court Should Exclude Fokin's False-Exculpatory Statements to Law Enforcement

On August 16, 2021, Fokin entered the United States at John F. Kennedy International Airport on a flight from Moscow, Russia. Fokin underwent secondary screening, including an interview with agents from U.S. Customs and Border Patrol ("CBP"). According to notes of that interview, Fokin stated that he was traveling to the United States on a three-day business trip for EN+, including a potential meeting with "Spectrum Group" and "Charlie [McGonigal]." Fokin stated that EN+ had recently signed a contract with Spectrum Group to conduct due diligence on a Russian nickel company.[4]

Fokin's statement to the CBP is inadmissible hearsay. The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Absent some specific exception, hearsay is inadmissible. Fed. R. Evid. 802. Although the Government could potentially offer Fokin's statements as co-conspirator statements, the defendant cannot rely on the co-conspirator exception to offer statements of his own co-conspirator. *See, e.g.*, *United States v. Milstein*, 401 F.3d 53, 73 (2d Cir. 2005). As a result, the defendant cannot offer Fokin's statements as proof that the Contract, or the work performed under the Contract, related to EN+. Moreover, because the defendant was not present for Fokin's statement to CBP, there are no valid, non-hearsay purposes (such as to prove the defendant's state of mind) for introducing it. Accordingly, the Court should exclude the statement.

---

[4] As described above, the Contract did not mention EN+. A memorandum of Fokin's statement is attached as Exhibit A and will be filed under seal.

## IV.   <u>The Court Should Admit the Defendant's Proffer Statements in the Event He Opens the Door to this Evidence</u>

In October 2022, the defendant met with the U.S. Attorney's Office for the Southern District of New York pursuant to a proffer agreement, as detailed below. The Government seeks a ruling that it be permitted to admit the defendant's proffer statements to rebut any inconsistent statements offered, or arguments made on defendant's behalf, or, if the defendant testifies, to impeach the defendant's testimony at trial.

Specifically, on October 11, 2022, the defendant and his counsel met with the Government in a proffer session governed by a proffer agreement (the "Proffer Agreement") also signed by the defendant and his prior counsel. The Proffer Agreement, in which the defendant is referred to as "Client," provides, in pertinent part, the following:

> (2) In any prosecution brought against Client by [the United States Attorney's Office for the Southern District of New York], except as provided below the Government will not offer in evidence on its case-in-chief, or in connection with, any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Client at the meeting, except (a) in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting [....]

> (3) Notwithstanding item (2) above: . . . in any prosecution brought against Client, the Government may use statements made by Client at the meeting and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should Client testify; (c) the Government may also use statements made by Client at the meeting to rebut any evidence or arguments offered by or on behalf of Client (including arguments made or issues raised *sua sponte* by the District Court) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against Client [....]

> (5) To the extent that the Government is entitled under this Agreement to offer in evidence any statements made by Client . . . , Client shall assert no claim under the United States Constitution, any

> statute, Rule 410 of the Federal Rules of Evidence, or any other
> federal rule that such statements or any leads therefrom should be
> suppressed. It is the intent of this Agreement to waive all rights in
> the foregoing respects.

During his proffer session, the defendant made numerous representations about facts the Government expects will be relevant at trial, including, among others: (a) his knowledge, as of at least 2019, that Deripaska was sanctioned; (b) how Deripaska was connected with a law firm performing work on behalf of Deripaska in 2019; (c) payment the defendant received from the Law Firm in 2019; (d) the meaning of and context surrounding his April through November 2021 communications with McGonigal and Fokin regarding the Contract between the Spectrum and the Pandean; (e) the fact that the defendant signed the Friend's name on the Contract on behalf of the Spectrum; and (f) the defendant's admission regarding the lack of any evidence that the defendant believed the Contract was on behalf of EN+ other than the defendant's own words. An FBI report memorializing statements by the defendant during his proffer session pursuant to the Proffer Agreement are attached as Exhibit B and will be filed under seal.

### A. Applicable Law

Under Rule 410 of the Federal Rules of Evidence, "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea" is not "admissible against the defendant who made the plea or participated in the plea discussions." However, this protection may be waived "so long as the defendant agrees to the waiver knowingly and voluntarily." *United States v. Rosemond*, 841 F.3d 95, 107 (2d Cir. 2016). As a result, proffer agreements, such as the one executed by the parties here, have been upheld and routinely enforced by and within the Second Circuit. *See, e.g.*, *id.* ("If the defendant makes a factual assertion at trial that contradicts a statement made during the proffer session, the Government may

then offer the earlier proffer statement to rebut the assertion being made at trial."); *United States v. Velez*, 354 F.3d 190, 193-97 (2d Cir. 2004); *United States v. Parra*, 302 F. Supp. 2d 226, 235-40 (S.D.N.Y. 2004); *United States v. Chan*, 185 F. Supp. 2d 305, 308 (S.D.N.Y. 2002); *United States v. Chaparro*, 181 F. Supp. 2d 323, 334 (S.D.N.Y. 2002). As Judge Cote explained in *Chaparro*, there is "no unfairness to [the defendant] in allowing use of [the defendant's] statements during proffer sessions once he has opened the door to their use by his arguments and evidence," because the "design of the [Proffer] Agreement provides any defendant who decides to speak with the Government strong incentives to speak truthfully, and discourages anyone from speaking at all if she intends to lie or intends at a later time in the prosecution to advocate a position at odds with the facts she describes during the proffer session." 181 F. Supp. 2d at 334.

Not all statements by defense counsel trigger a waiver of the Proffer Agreement. For example, the Second Circuit has held that counsel for the defendant may argue that the Government has failed to prove its case beyond a reasonable doubt and may "draw the jury's attention to the lack of evidence presented on specific elements without triggering the waiver." *Rosemond*, 841 F.3d at 108 (quoting *United States v. Oluwanisola*, 605 F.3d 124, 132 (2d Cir. 2010)). Defense counsel is also "entitled to argue that certain inferences from the Government's proof should not be drawn." *Id*. at 111. Moreover, defense counsel "may cross-examine a witness in a way that casts doubt on his credibility, as well as challenge a witness's perception or recollection of an event," because such attacks do not "necessarily imply that the event did not occur." *Id.* at 108 (internal quotation marks, citations, and alterations omitted); *see also id.* at 109 (listing certain arguments that do not trigger the waiver provision of the proffer agreement).

However, defense counsel will open the door to admission of the proffer statements if counsel's arguments directly or indirectly assert facts that contradict proffer statements. *Id.*; *see*

13

*also id.* at 109-110 (listing certain arguments that do trigger the waiver provision of the proffer agreement).

### B. Discussion

Should he testify, the defendant will open the door to the use of his proffer statements for purposes of cross-examination, as provided in the Proffer Agreement. Moreover, should his counsel assert facts that contradict statements the defendant made during the proffer session, the Government intends to offer evidence of the defendant's own admissions in the proffer session. To permit the defendant to offer evidence, make arguments, or pursue lines of cross-examination that assert or inquire about new facts contrary to the admissions he made in his proffer session without also permitting the jury to assess that evidence in light of those proffer statements would thwart the truth-seeking purpose of a trial. *See United States v. Gomez*, 210 F. Supp. 2d 465, 476 (S.D.N.Y. 2002). As the Supreme Court stated in *United States v. Mezzanatto,* "making the jury aware of the inconsistency" between a defendant's testimony and proffer statements "will tend to increase the reliability of the verdict[.]"  513 U.S. 196, 205 (1995).

For these reasons, the Government respectfully moves to introduce the defendant's proffer statements should he open the door to those statements.

### V.  The Court Should Preclude the Defendant from Introducing Certain Evidence and Arguments That Are Irrelevant and Unfairly Prejudicial

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible" at trial, Fed. R. Evid. 402, and under Rule 403, a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403; *see also Miller*, 626 F.3d at 689-90 .

A defendant is entitled to present a defense only if it has a foundation in the evidence, *see*

14

*United States v. Kwong*, 69 F.3d 663, 667-68 (2d Cir. 1995), and as long as it does not fail as a matter of law, *see United States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d Cir. 1990). If the Court finds a defense insufficient as a matter of law, the Court is under no duty to allow the defendant to present the evidence, or advance the defense, to the jury. *See United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) (citing *United States v. Bailey*, 444 U.S. 394, 416-17 (1980)).

### A. The Court Should Exclude Argument that the Prosecution Should Have Been Handled Other Than Through a Criminal Prosecution

Juries are routinely advised that, in a criminal prosecution, the Government is not on trial. *See, e.g.*, *United States v. Knox*, 687 F. App'x 51, 54-55 (2d Cir. 2017) (instructing jury that "the government is not on trial" is "appropriate" (internal quotation marks omitted)); *United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000) ("The Court properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged."). Accordingly, the Court should preclude any evidence or argument either: (a) that this matter should have been handled through OFAC's civil enforcement mechanisms; or (b) that the Government should have somehow intervened and cut short the scheme rather than investigating and prosecuting it. Neither of these arguments has anything to do with the defendant's guilt. Moreover, arguments along this line would likely result in a trial-within-a-trial regarding the Government's investigative and charging policies and practices—matters far beyond the proper scope of a criminal trial. Accordingly, evidence and arguments along these lines should be precluded.

**B. The Court Should Exclude Irrelevant Evidence or Argument Concerning the Sanctions Regime or Any Individual Sanctions**

Similarly, the Court should preclude any evidence or argument criticizing the sanctions regime on either legal or policy grounds. The former clearly falls outside of the jury's purview as deciders of the fact. As to the latter, any arguments that the sanctions are ineffective, inconsistently applied, or counterproductive either as a whole or with respect to any particular individual, are both irrelevant to the defendant's guilt and would only confuse the jury and waste time during the trial. The Court should preclude all arguments of this nature.

**C. The Court Should Exclude Irrelevant Evidence of the Defendant's Employment, Service Record, Personal Circumstances, and Potential Punishment**

The Government is unaware of any lawful basis for the defendant to offer evidence or argument concerning his employment as a translator for the court system, his record as a confidential source for the FBI,[5] his family background, health, age, or any other similar factors. He should be precluded from doing so, and from mentioning such subjects in his opening statement, absent a pre-trial, threshold showing that such a factor bears on his guilt. *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *see also United States v. Harris*, 491 F.3d 440, 447-48 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

---

[5] The Government intends to prove that the defendant had, at some point, provided information to the FBI as part of its proof on Count Five without providing details about his work as a source.

16

The defendant should similarly be precluded from offering evidence or argument concerning the punishment or consequences he faces if convicted. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.*

## **CONCLUSION**

For the reasons set forth above, the Court should grant the Government's motions *in limine*.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York


By: /s/_____
    Rebecca T. Dell
    Sheb Swett
    Derek Wikstrom
    Assistant United States Attorneys
    Southern District of New York
    (212) 637-2198 / -6522 / -1085


Dated: July 2, 2024
       New York, New York