**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SERGEY SHESTAKOV,<br><br>Defendant. | No. 23 Cr. 16 (JHR) |

**MEMORANDUM OF LAW IN SUPPORT OF SERGEY SHESTAKOV'S MOTIONS *IN LIMINE***

July 2, 2024

**GLAVIN PLLC**
Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
156 W. 56th Street, Ste. 2004
New York, NY 10019
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

ARGUMENT .......... 1

1. Mr. McGonigal's Guilty Plea Cannot Be Mentioned Or Referenced At Trial .......... 1

2. The Court Should Admit Portions Of His Interview For Completeness And State Of Mind. .......... 4

3. The Government Should Be Precluded From Offering Irrelevant and Prejudicial Evidence Concerning Russia And/Or Purported Ties To Russian Intelligence. .......... 7

4. The Government Should be Precluded From Offering Irrelevant Evidence and Hearsay Testimony Concerning Inflammatory Allegations. .......... 11

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Beech Aircraft Corp. v. Rainey*,
488 U.S. 153 (1988) .......... 4

*Crawford v. Washington*,
541 U.S. 36 (2004) .......... 1, 2

*Old Chief v. United States*,
519 U.S. 172 (1997) .......... 8

*United States v. Becker*,
502 F.3d 122 (2d Cir. 2007) .......... 2

*United States v. Birney*,
686 F.2d 102 (2d Cir. 1982) .......... 8

*United States v. Coplan*,
703 F.3d 46 (2d Cir. 2012) .......... 5, 6

*United States v. Detrich*,
865 F.2d 17 (2d Cir. 1988) .......... 7

*United States v. DiMaria*,
727 F.2d 265 (2d Cir. 1984) .......... 6

*United States v. Dworken*,
855 F.2d 12 (1st Cir. 1988) .......... 3

*United States v. Figueroa*,
618 F.2d 934 (2d Cir. 1980) .......... 9

*United States v. Gleason*,
616 F.2d 2 (2d Cir. 1979) .......... 9

*United States v. Gonzalez*,
2013 WL 5973146 (W.D.N.Y. Nov. 8, 2013) .......... 5

*United States v. Gotti*,
459 F.3d 296 (2d Cir. 2006) .......... 2

*United States v. Hardwick*,
523 F.3d 94 (2d Cir. 2008) .......... 2

*United States v. Johnson*,
507 F.3d 793 (2d Cir. 2007) .......... 4

*United States v. Kaplan*,
490 F.3d 110 (2d Cir. 2007) .......... 3

*United States v. Kopp*,
562 F.3d 141 (2d Cir. 2009) .......... 4

*United States v. Lawal*,
736 F.2d 5 (2d Cir. 1984) .......... 6

*United States v. Livoti*,
196 F.3d 322 (2d Cir. 1999) .......... 8, 9, 11

*United States v. Louis*,
814 F.2d 852 (2d Cir. 1987) .......... 3

*United States v. Marin*,
669 F.2d 73 (2d Cir. 1986) .......... 5

*United States v. Massino*,
319 F. Supp. 2d 295 (E.D.N.Y. 2004) .......... 2

*United States v. McClain*,
377 F.3d 219 (2d Cir. 2004) .......... 2

*United States v. Nachamie*,
101 F. Supp. 2d 134 .......... 8

*United States v. Prawl*,
168 F.3d 622 (2d Cir. 1999) .......... 3

*United States v. Quinones*,
511 F.3d 289 (2d Cir. 2007) .......... 6

*United States v. Riggi*,
541 F.3d 94 (2d Cir. 2008) .......... 2

*United States v. Roberts*,
2009 WL 1706043 (E.D.N.Y. June 16, 2009) .......... 5

*United States v. Sessa*,
806 F. Supp. 1063 (E.D.N.Y. 1992) ........................................ 10, 11

*United States v. Smothers*,
652 F. Supp. 3d 271 (E.D.N.Y. 2023) ........................................ 8

*United States v. Southland Corp.*,
760 F.2d 1366 (2d Cir. 1985) ........................................ 7

*United States v. Walker*,
652 F.2d 708 (7th Cir. 1981) ........................................ 5

Constitution and Statutes

U.S. Const., amend. VI ........................................ 1
18 U.S.C. § 1001 ........................................ 4

Rules

Fed. R. Evid. 106 ........................................ 4, 5, 6
Fed. R. Evid. 401 ........................................ 7
Fed. R. Evid. 402 ........................................ 7, 9
Fed. R. Evid. 403 ........................................ 8, 9
Fed. R. Evid. 608 ........................................ 9
Fed. R. Evid. 801 ........................................ 4, 7
Fed. R. Evid. 803 ........................................ 6, 7

Sergey Shestakov, by his undersigned attorneys, respectfully submits this memorandum of law in support of his motions *in limine* to:

(1) Preclude the government from referencing or referring to (implicitly or explicitly) Charles McGonigal's guilty plea;

(2) Admit all relevant portions of Mr. Shestakov's recorded meeting with the FBI on November 21, 2021 for completeness and as evidence of Mr. Shestakov's state of mind;

(3) Preclude the government from offering irrelevant and highly prejudicial evidence concerning Russia and/or alleged association to Russian intelligence; and

(4) Preclude the government from offering irrelevant evidence or hearsay testimony concerning inflammatory allegations.[1]

## ARGUMENT

### 1. Mr. McGonigal's Guilty Plea Cannot Be Mentioned Or Referenced At Trial

Mr. McGonigal will not be a witness at trial, and therefore the government cannot reference, allude to, or mention his guilty plea during the trial. Any such reference would run afoul of the Confrontation Cluase of the Sixth Amendment and irreparably prejudicial to Mr. Shestakov's right to a fair trial.

The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., amend. VI. The Supreme Court has made clear that where the government seeks to introduce a testimonial statement against a criminal defendant, "the Sixth Amendment demands

[1] Mr. Shestakov also reserves the right to file additional motions *in limine* as needed, including after the government identifies its exhibits for trial, produces 3500 material, identifies its witnesses for trial, and as developments at trial may warrant.

what the common law required: unavailability and a prior opportunity for a cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Thus, the Sixth Amendment establishes a "per se bar on the admission of out-of-court testimonial statements made by unavailable declarants where there was no prior opportunity for cross-examination." *United States v. McClain*, 377 F.3d 219, 221 (2d Cir. 2004).

It is well-established that guilty pleas and plea allocutions are testimonial statements under the Confrontation Clause, precluding their admission. *United States v. Riggi*, 541 F.3d 94, 102 (2d Cir. 2008) ("It is thus constitutional error to admit as substantive evidence a plea allocution by a co-conspirator who does not testify at trial unless the co-conspirator is unavailable and there has been a prior opportunity for cross-examination") (cleaned up); *United States v. Hardwick*, 523 F.3d 94, 98 (2d Cir. 2008) (plea allocutions are "testimonial hearsay … inadmissible under the Confrontation Clause unless the co-conspirator testifies at trial, or is unavailable at trial and the defendant had a prior opportunity for cross-examination"); *see United States v. Becker*, 502 F.3d 122, 129-30 (2d Cir. 2007) ("[P]lea allocutions are testimonial, and are therefore subject to the requirements set forth in *Crawford*."); *United States v. Gotti*, 459 F.3d 296, 343 (2d Cir. 2006) ("It is undisputed that under *Crawford*, which was decided one year after this trial, the admission of these guilty pleas . . . was error"); *see also United States v. Massino*, 319 F. Supp. 2d 295, 299 (E.D.N.Y. 2004) ("[A] guilty plea is testimonial within the meaning of *Crawford* because it embodies an allocution. In order for there to be a guilty plea, there must be both an allocution and a judicial finding that the allocution is valid and sufficient.").

Mr. McGonigal's guilty plea falls squarely within the definition of testimonial statements of an alleged co-conspirator who will not testify, and Mr. Shestakov did not have any prior

opportunity to cross examine Mr. McGonigal. As a result, any evidence regarding such plea would violate Mr. Shestakov's rights under the Confrontation Clause.

Moreover, "admission of a co-defendant's guilty plea can be extremely prejudicial to the defendant, given the natural human tendency to assume if [a co-defendant] is guilty, the [defendant] must also be guilty." *United States v. Prawl*, 168 F.3d 622, 626 (2d Cir. 1999) (citation omitted). The government is therefore prohibited from mentioning to the jury that a nontestifying co-defendant pled guilty given the extreme prejudice to defendant on trial of any such reference. *See United States v. Louis*, 814 F.2d 852, 856 (2d Cir. 1987) ("[I]t is impermissible for a prosecutor to suggest to a jury that the conviction of a testifying co-conspirator is evidence that a defendant on trial is guilty . . ."); *United States v. Dworken*, 855 F.2d 12, 31 (1st Cir. 1988) (statements suggesting the "probative value" of a cooperator's intent and "[t]he obvious logical inference" that "the other defendants had the requisite intent, and thus are at least as guilty as Goldberg" was "plainly improper."); *see also United States v. Kaplan*, 490 F.3d 110, 119-122 (2d Cir. 2007) (vacating defendant's conviction and concluding it was error for the district court to admit testimony concerning the witness's and others' "knowledge of the fraud as circumstantial evidence of [the defendant's] knowledge.").

Accordingly, the Court should prohibit any reference or allusion to Mr. McGonigal's guilty plea at trial.

**2. <u>The Court Should Admit Portions Of His Interview For Completeness And State Of Mind.</u>**

According to the Indictment,[2] Mr. Shestakov met with FBI agents in a Manhattan restaurant on or about November 21, 2021. Ind. ¶ 23. The government alleges that during the meeting, Mr. Shestakov falsely stated that he did not have a business relationship with Evgeny Fokin and concealed the nature of the relationship between Mr. McGonigal and Evgeny Fokin in violation of 18 U.S.C. § 1001. *Id.* ¶ 35. Accordingly, the defense expects the government to offer into evidence recordings of Mr. Shestakov's statements during that meetingpursuant to Fed. R. Evid. 801(d)(2). To the extent, however, that the government intends to offer only limited portions of the recording of that meeting—which lasted approximately one hour—such that those portions omit critical and necessary context regarding Mr. Shestakov's statements and state of mind, the defense seeks to introduce the omitted portions that go to context and his state of mind. Without that context, the government's presentation will give the jury a misleading impression about Mr. Shestakov's state of mind, and the rule of completeness forbids the government from offering Mr. Shestakov's in such selective fashion.

Rule 106 in part codifies the broader, still-existing rule of completeness under common law, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72 (1988), providing that: [i]f a party introduces . . . part of a statement, an adverse party may require the introduction . . . of any other part . . . that in fairness ought to be considered at the same time." The Rule is constructed to prevent "the misleading impression created by taking matters out of context." Fed. R. Evid. 106, Advisory Committee's Note. Statements offered for completeness are admissible "if necessary to explain

[2] The Indictment refers to the operative indictment in this case, ECF No. 2, unsealed on January 23, 2023, and is also cited as "Ind."

the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion," even if the statement would otherwise be inadmissible hearsay. *United States v. Kopp*, 562 F.3d 141, 144 (2d Cir. 2009) (quoting *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007)).

When the government seeks to admit a portion of a criminal defendant's own statement that it considers inculpatory, the completeness rule applies with particular force because of the Fifth Amendment. *See United States v. Marin*, 669 F.2d 73, 85 n.6 (2d Cir. 1986) (citing *United States v. Walker*, 652 F.2d 708, 713 (7th Cir. 1981) (noting that "when the government offers in evidence" defendant's inculpatory statements, and in making those statements, "the defendant has also made exculpatory statements that the government seeks to omit, the defendant's Fifth Amendment rights may be implicated."). Consistent with the concern over a defendant's Fifth Amendment rights, courts in this Circuit have allowed criminal defendants to introduce exculpatory and contextual statements for completeness when the government seeks to admit only inculpatory portions. *See, e.g.*, *United States v. Gonzalez*, No. 12-CR-088S, 2013 WL 5973146, at *2 (W.D.N.Y. Nov. 8, 2013) (noting that "all the reasons articulated for the rule by the *Johnson* court are present here . . . . [and] so long as the Government seeks to admit part of the statement, the initial portion of the statement must also be admitted."); *United States v. Roberts*, No. 07-CR-425 (DLI), 2009 WL 1706043, at *2 (E.D.N.Y. June 16, 2009) (noting the prosecution's agreement that the defendant could introduce exculpatory statements he made in the same meetings from which the government offered inculpatory statements for completeness, but holding defendant could not introduce statements from other meetings); *see also United States v. Coplan*, 703 F.3d 46, 85 (2d Cir. 2012) (holding trial court did not abuse its discretion under Rule 106 in allowing

defense to submit exculpatory counter-designations for deposition transcripts but not allowing introduction of the entirety of those transcripts).

Here, should the government designate as evidence only certain purportedly inculpatory portions of Mr. Shestakov's meeting with the FBI that underly Count Five, fundamental fairness requires that Mr. Shestakov be allowed to introduce other portions to put his statements in context without having to waive his Fifth Amendment right not to testify by introducing counter-designations. Once the government identifies the portions it intends to introduce, Mr. Shestakov should be permitted to submit counter-designations that are admissible for completeness purposes and to place in context the cherry-picked statements the government may seek to offer. *See Coplan*, 703 F.3d at 85 (permitting admission of counter-designations under Fed. R. Evid. 106).

Moreover, additional statements from the interview would also be admissible as evidence of Mr. Shestakov's state of mind. Otherwise-admissible statements by a defendant cannot be excluded on the ground that the government believes the statement to be a "classic false exculpatory statement" because "truth or falsity [is] for the jury to determine." *United States v. DiMaria*, 727 F.2d 265, 271-72 (2d Cir. 1984); *see id.* at 272 (citation omitted) ("[T]o sustain the argument . . . of taking the possible trickery of guilty persons as a ground for excluding evidence in favor of a person not yet proved guilty . . . would be inconsistent with the presumption of innocence."); *see also United States v. Lawal*, 736 F.2d 5, 8-9 (2d Cir. 1984) (relying on *DiMaria*, reversing the trial court's exclusion of purportedly "self-serving statements" because statements "reflecting [the defendant's] present state of mind at the time, would have been admissible under Rule 803(3)."). "When a declaration is admitted only to prove a relevant state of mind, it does not appear to matter whether admissibility is predicated on the declaration not being hearsay or under the Rule 803(3) hearsay exception for declaration of states of mind because under either theory, a

state of mind can be proved circumstantially by statements which are not intended to assert the truth of the fact being proved." *United States v. Quinones*, 511 F.3d 289, 312 (2d Cir. 2007) (quoting *United States v. Southland Corp.*, 760 F.2d 1366, 1376 (2d Cir. 1985)) (alterations omitted)). Thus, state of mind evidence (i) can be offered for it truth if it is a statement of the defendant's then-existing state of mind under Fed. R. Evid. 803(3) or (ii) is admissible as non-hearsay circumstantial evidence of intent where relevant to state of mind regardless of its truth. *See United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988) ("Where, as here, the statement is offered as circumstantial evidence of [the defendant's] state of mind, it does not fall within the definition given by Rule 801(c); because it was not offered to prove the truth of the matter asserted.").

Thus, depending on what portions of the recorded interview the government designates for admission at trial, Mr. Shestakov should be permitted to admit additional statements from the November 2021 interview under Rule 803(3) and as circumstantial evidence of his state of mind.

**3. The Government Should Be Precluded From Offering Irrelevant and Prejudicial Evidence Concerning Russia And/Or Purported Ties To Russian Intelligence.**

The government has not yet produced to the defense its exhibit and witness lists, or 3500 material. Nonetheless, the government should be precluded from introducing specific Russia- and national security-related evidence and testimony at trial under Federal Rules of Evidence 401, 402, and 403. First, the government should not be permitted to introduce evidence or elicit testimony that would allude to or cast aspersions concerning Mr. Shestakov's purported background (and lack thereof) in Russian intelligence or paint Mr. McGonigal or Mr. Shestakov as being involved in espionage against the U.S. Neither were charged with espionage and the government has made no such allegation against either Mr. McGonigal or Mr. Shestakov. Second, the government should

not be able to introduce evidence or testimony concerning the Russian war with Ukraine or the role of the sanctions regime to U.S. national security interests vis-à-vis Russia or make argument that the alleged conduct in this case concerns an "an unusual and extraordinary threat to the national security and foreign policy of the United States." Ind. ¶ 4.

Although the government has disclaimed interest in introducing evidence concerning Mr. Shestakov's allegedly association (or lack thereof) with Russian intelligence,[3] the Court should preclude such evidence. Beyond the fact that Mr. Shestakov was not a Russian spy, such evidence is not relevant, risks confusing the issues the jury must resolve, prejudices and inflames the jury against Mr. Shestakov, and any probative or impeachment value is plainly substantially outweighed by its prejudicial value under Fed. R. Evid. 403. *See United States v. Nachamie*, 101 F. Supp. 2d 134, 146 (Rule 403 balancing can be used to exclude evidence that would otherwise require infeasible "mental acrobatics" to use for a permissible purpose).

"Although evidence may be relevant as directly probative of, or inextricably intertwined with, the defendant's charged conduct, this evidence may nonetheless be inadmissible pursuant to [Rule 403] if its probative value is substantially outweighed by a danger of unfair prejudice." *United States v. Smothers*, 652 F. Supp. 3d 271, 284 (E.D.N.Y. 2023) (citation omitted). Specifically, the term "unfair prejudice" as to a criminal defendant, "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). As such, in determining whether evidence is unfairly prejudicial, a court may consider the context of the crime alleged and will exclude evidence when it is "more inflammatory than the charged

[3] In an April 28, 2023 letter to the defense, the government stated "it does not intend to prove at trial Shestakov's association (or lack thereof) with Russian intelligence."

crime." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999); *see United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982) (citing Fed. R. Evid. 403, Adivsory Committee Note) ("[U]nfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). Stated differently, unfair prejudice may result if evidence goes to "some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). Rule 403's balancing test and overriding protection against unfair prejudice extends to impeachment evidence. *See, e.g.*, Fed. R. Evid. 608, Advisory Committee Note (noting that Rules 402 and 403 govern certain grounds for impeachment).

Evidence or testimony concerning purported association to Russian intelligence entities or espionage against the U.S. would be more inflammatory than the charged crimes, are not properly in issue, and would only serve to unfairly excite emotions against the defendant. *Cf. Livoti*, 196 F.3d at 326. This danger is particularly acute with respect to evidence concerning purported ties to Russian intelligence when the general public's already-negative opinions of Russia have continued to sour.[4] According to Gallup Data, Russia's favorability view among Americans dropped to 9% in 2023, meaning that the vast majority—indeed, 91%—of Americans hold an *unfavorable* view of Russia.[5] Specifically, Americans' perception of Russia's military power as a threat to the U.S. remains high, with 51% viewing it as a "critical" threat and another 37% viewing it as an "important" threat.[6] Gallup characterized its findings as "easily the worst ratings of Russia in at least 34 years of Gallup polling" noting that "Russia is now in the company of nations like Iran,

---

[4] Jeffrey M. Jones, "Americans' Favorable Rating of Russia Sinks to New Low of 9%," GALLUP (Mar. 13, 2023), https://news.gallup.com/poll/471872/americans-favorable-rating-russia-sinks-new-low.aspx (hereinafter the "Gallup Data").

[5] *Id.*

[6] *Id.*

Iraq, and North Korea, in *receiving nearly universal disapproval from the American public*."[7] Thus, to admit such evidence would create the dire risk of the jury conflating animus against Russia with Mr. Shestakov's culpability. When the evidence's risk of unfair prejudice substantially outweighs its minimal relevance, Rule 403 requires its preclusion. *See, e.g.*, *United States v. Gleason*, 616 F.2d 2, 23 (2d Cir. 1979) (no abuse of discretion to preclude cross-examination on a topic where it would "open up a flood of evidence regarding a possibly confusing collateral issue"); *United States v. Sessa*, 806 F. Supp. 1063, 1070 (E.D.N.Y. 1992) (beyond having "little to no probative value" testimony was properly barred where it "should not be permitted on the question of bias").

For similar reasons, evidence, testimony, or argument concerning the war in Ukraine, Russian aggression, the role of sanctions in protecting the U.S. and its allies from Russian aggression, or the role of these specific Russian sanctions to the U.S. national security interest, should likewise be precluded under Fed. R. Evid. 403 because it will confuse the issues at trial and inflame the passions of the jury.

For example, the Indictment references the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") designation of Oleg Deripaska as a Specially Designated National (SDN), "in connection with its finding that the actions of the government of the Russian Federation with respect to Ukraine constitute an *unusual and extraordinary threat to the national security and foreign policy of the Unites States*." Ind. ¶ 4 (emphasis added). More recently, during Mr. McGonigal's sentencing, the government argued that sanctions not only play a critical role in protecting national interests—which is not in dispute—but "allow[] [the U.S.] to respond to hostile

---

[7] *Id.* (emphasis added).

actions without more costly measures, things like breaking off diplomatic relations *or even going to war*. . . . The last three American presidents have agreed that Russia's attacks on Ukraine create a national emergency. But few people want to see America join that war….[S]anctions…are one of the tools our presidents have chosen to address that national emergency *without making matters even worse*." Dec. 14, 2023 Tr. 13:17-25 (emphasis added). These kinds of comments, or evidence related to them, have no place in front of the jury and would do nothing more than inflame the jury, appeal to nationalism, confuse the issues, and unfairly prejudice the jury against Mr. Shestakov. Where a majority of Americans see the Russia-Ukraine conflict as "critical threat" to U.S. vital interests, such references at trial would present a grave danger to Mr. Shestakov's right to a fair trial and impartial jury and should be excluded.[8] *Cf. Livoti*, 196 F.3d at 326; *see also Sessa*, 806 F. Supp. at 1070.

4. **<u>The Government Should be Precluded From Offering Irrelevant Evidence and Hearsay Testimony Concerning Inflammatory Allegations.</u>**

Paragraph 13 of the Indictment refers to alleged conduct from 2018—well outside either of the relevant time periods in 2021 actually charged in the Indictment—concerning Evgeny Fokin's daughter's internship at the New York City Police Department and alleged special treatment from the FBI. Ind. ¶ 13. At base, these allegations and the evidence and testimony that would support them have nothing to do with the charged IEEPA, money laundering, or false statement counts. There is simply no nexus between the allegations in paragraph 13 and the charged conduct that is alleged to have occurred years later. Instead, evidence and testimony regarding these allegations would invite the jury to speculate about Mr. Shestakov, Mr. McGonigal, and Mr. Fokin and would only serve to prejudice the jury against Mr. Shestakov.

8 Gallup Data, *supra* note 4 (56% of American's describe the Russia-Ukraine conflict as a "critical threat" and 36% says it is "important but not critical").

Moreover, in support of these extraneous allegations, the Indictment attributes statements to Mr. McGonigal that constitute inadmissible hearsay. These statements are disconnected from the alleged conduct and thus there is no basis to admit them as co-conspirator statements. For these reasons, such irrelevant evidence and hearsay testimony concerning allegations divorced from the charged conduct at issue should be precluded.

## CONCLUSION

For the foregoing reasons, Mr. Shestakov respectfully requests that the Court grant his motions *in limine*.

Dated: July 2, 2024
New York, New York

Respectfully submitted,

*/s/ Rita M. Glavin*
Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*