

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 15, 2024

**BY ECF**
The Honorable Jennifer H. Rearden
United States District Judge
500 Pearl Street
Southern District of New York
New York, New York 10007

    Re:    *United States v. Sergey Shestakov*, 23 Cr. 16 (JHR)

Dear Judge Rearden:

    The Government respectfully submits this letter to oppose the defendant's motions (the "Motions") for the Court to "so order" two subpoenas *duces tecum* pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. First, the defendant seeks a subpoena to the National Security Agency ("NSA") for records relating to Oleg Deripaska, Evgeny Fokin, and others (the "NSA Motion" and "NSA Subpoena" (Dkt. No. 135)). Second, the defendant seeks a subpoena to Olga Shriki for a variety of records covering a nearly six-year period (the "Shriki Motion" and "Shriki Subpoena") (Dkt. No. 136)). The Court should deny the Motions. The Motions are a clear attempt to evade established discovery procedures and the Court's previous rulings. Moreover, the Subpoenas are nothing more than fishing expeditions, and the defendant cannot meet the "strict standard" required to issue Rule 17(c) subpoenas. *United States v. Nixon*, 418 U.S. 683, 700 (1974). Finally, the Subpoenas call for inadmissible and irrelevant materials.

**I.**    **Legal Standard**

    Under Rule 17(c), a subpoena may order a witness to produce any books, papers, documents, data or other designated objects. Fed. R. Crim. P. 17(c)(1). But Rule 17(c) "was not intended to provide a means of discovery for criminal cases," and a Rule 17(c) subpoena may not be used to conduct a "general 'fishing expedition.'" *Nixon*, 418 U.S. at 700; *see also Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (same). Instead, because the rule's "purpose is trial-focused," a Rule 17(c) subpoena "may be used only to obtain materials admissible as evidence at trial." *United States v. Louis*, 04 Cr. 203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005); *see also United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962) (Rule 17 subpoena is "solely for the obtaining of *evidence* for the use of the moving party" (emphasis added)).

    Accordingly, a defendant seeking documents pursuant to Rule 17(c) subpoena bears the burden of satisfying the "strict standard" set forth by the Supreme Court in *Nixon*, *United States v.*

*Brown*, No. 95 Cr. 168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995), which requires the party seeking the pretrial production of documents to demonstrate:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699-700; *see also United States v. RW Pro. Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (citing *Nixon*, 418 U.S. at 699-700); *Louis*, 2005 WL 180885, at *9 (party seeking documents pursuant to a Rule 17(c) subpoena must be able to "reasonably specify the information contained or believed to be contained in the documents sought" and establish both relevancy and admissibility (citation omitted)); *Brown*, 1995 WL 387698, at *9 (*Nixon* requires "specifically identifying the materials sought and showing that they are relevant and admissible").

Precisely because the Rule poses such a risk of abuse and misuse, courts stringently hold those seeking to obtain documents under Rule 17(c) to their burden of demonstrating that the documents sought are (1) relevant, (2) admissible, and (3) specifically identified, and it is "insufficient" for a party to show only that the subpoenaed documents "are potentially relevant or may be admissible," *RW Pro. Leasing Servs.*, 228 F.R.D. at 162.[1] Rule 17(c)(2) provides that "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." "[T]he Court has an independent duty to review the propriety of the subpoena," *Vasquez*, 258 F.R.D. at 72, and requests accurately characterized as fishing expeditions "deserve[] to be quashed" on that basis alone, *United States v. Chen De Yian*, No. 94 Cr. 719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995).

---

[1] The defendant asks the Court to apply the more lenient standard articulated in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008). (*E.g.*, Dkt. 135 at 3-4). The defendant has cited only one other case that adopted the *Tucker* standard. *See United States v. Goldstein*, 21 Cr. 550 (DC), 2023 WL 3662971, at *2 (E.D.N.Y. May 25, 2023). By contrast, the Second Circuit continues to apply *Nixon* to Rule 17(c) subpoenas issued by defendants, *see, e.g., United States v. Bergstein*, 788 Fed. App'x 742, 746 (2d Cir. 2019), and numerous judges in this District have declined to follow *Tucker*, *see United States v. Ray*, 337 F.R.D. 561, 573 n.4 (S.D.N.Y. 2020); *United States v. Blondet*, No. 16 Cr. 387 (JMF), 2022 WL 485031, at *1 n.2 (S.D.N.Y. Feb. 16, 2022), *reconsideration denied*, 2022 WL 549707 (S.D.N.Y. Feb. 23, 2022); *United States v. Cole*, No. 19 Cr. 869 (ER), 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021); *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2018 WL 9539131, at *2 n.2 (S.D.N.Y. June 14, 2018); *United States v. Yudong Zhu*, No. 13 Cr. 761 (VM), 2014 WL 5366107, at *4 (S.D.N.Y. Oct. 14, 2014); *United States v. Barnes*, No. S9 04 Cr. 186 (SCR), 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008). Regardless, because *Tucker* proposed a rule that was "no broader—but also no narrower—than the defendant's right to obtain such material from the government," the Motions would fail precisely because the Government has complied with its discovery obligations with respect to the materials sought. *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 322 n.1 (S.D.N.Y. 2011).

II.  **The Subpoenas Are an Unreasonable Attempt to Evade the Discovery Process, the Protections of the Classified Information Procedures Act, and the Court's Prior Ruling**

The Court should deny the Motions because they represent an "unreasonable and oppressive" attempt to obtain discovery outside the bounds of Rule 16, the Classified Information Procedures Act ("CIPA"), and the Court's prior ruling. Fed. R. Crim. P. 17(c)(2).

A.  **The NSA Subpoena**

CIPA is the appropriate designated legal mechanism for the handling of classified information. "Section 4 of CIPA governs the discovery of classified information by criminal defendants." *United States v. Al-Farekh*, 956 F.3d 99, 106 (2d Cir. 2020). The Act's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material at trial and the government's right to protect classified material in the national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (internal citation omitted). In other words, CIPA "establishes certain procedures for the handling of classified information in criminal cases" and those procedures "protect[] and restrict[] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'" *Al-Farekh*, 956 F.3d at 106 (quoting *United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2d Cir. 2010) and *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008)); *see also In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 115 (2d Cir. 2008) ("CIPA establishes rules for the management of criminal cases involving classified information."). Therefore, CIPA embodies "Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial" while also ensuring that the defendant's right to present evidence in his defense is not compromised. *United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006) (citing *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002)).

On February 8, 2023, the Government requested that the Court hold an *ex parte* conference pursuant to Section 2 of CIPA to consider matters relating to classified information. (Dkt. No. 20). That conference occurred on March 8, 2023. As discussed at the conference—and as the Government has also confirmed at other junctures in the case—the Government has complied with its discovery obligations. The NSA Subpoena represents an extraordinary and improper attempt to sidestep the ordinary discovery and CIPA process. Unsurprisingly, the defendant has not cited a single case in support of his position that the NSA Subpoena would be proper, since the relevant precedent is unambiguous: "CIPA governs the discovery of classified information by criminal defendants." *Al-Farekh*, 956 F.3d at 106. The defendant has received the process due to him under a procedure specifically designed to balance his rights against the Government's compelling interest in the protection of national security. The defendant may not use Rule 17 to make an end-run around CIPA.

B.  **The Shriki Subpoena**

On October 20, 2023, the defendant filed a motion to compel the Government to produce a broad array of materials obtained in the case *United States v. Shriki*, 22 Cr. 518 (PKC). (Dkt. No. 85). In opposing the motion, the Government explained that, even if the materials obtained in the *Shriki* case were within the prosecution team's possession, the prosecutors assigned to the

*Shriki* case had reviewed their materials and identified no materials discoverable in this case. (Dkt. No. 87 at 9). Moreover, the Government laid out why these materials, or the nonexistence of these materials, was immaterial to the defense in this case. (*Id.* at 11-16). The Court denied the defendant's motion. (Dkt. No. 123). The defendant, having failed to satisfy the Rule 16 standard, cannot now seek relief through the narrower subpoena power available under Rule 17. *See Bowman Dairy*, 341 U.S. at 220 ("Rule 17(c) was not intended to provide an additional means of discovery.").

### III. The Subpoenas Are a Fishing Expedition

In addition, the requests contained in the Subpoenas are not a good faith effort to obtain identified evidence, but are instead a general "fishing expedition" that constitutes an impermissible use of Rule 17 as a discovery device. *See Bowman Dairy*, 341 U.S. at 220-21 (rejecting a "catch-all provision, not intended to produce evidentiary materials but is merely a fishing expedition to see what may turn up"); *see also Nixon*, 418 U.S. at 700.

First, Rule 17(c) bars the kind of wide-ranging document demands contained in the Subpoenas. The Shriki Subpoena seeks communications and documents in Shriki's possession concerning fourteen different individuals or entities for a period of nearly six years. (*See* Shriki Mot. Ex. A). Similarly, one of the document demands in the NSA Subpoena seeks all communications between Fokin and Deripaska for a particular timeframe with no limit as to the content of the communications. (*See* NSA Mot. Ex. A). Another request asks for all communications and records of communications between Fokin and EN+ or Rusal "officials"—a group of individuals the defendant has neither defined nor identified but that could include dozens, if not hundreds, of people. (*Id.*). These requests are untethered from the actual purpose of Rule 17—"to obtain materials admissible as evidence at trial." *Louis*, 2005 WL 180885 at *3. Courts have repeatedly found that "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 515 (S.D.N.Y. 2013); *see also United States v. Barnes*, No. S9 04 Cr. 186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008) (quashing motion that "blindly seeks 'all' documents and recordings that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence" because "[s]uch a blanket request implicates all of the problems associated with a classic 'fishing expedition'"). The Subpoenas fail the specificity prong of the *Nixon* test.

Additionally, the defendant has only provided the barest of reasons to suggest the requested materials even exist—further proof that he is just fishing. "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *United States v. Brown*, No. 95 Cr. 168 (AGS), 1995 WL 387698, at *9 (quoting *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)). His only basis to believe the Shriki Subpoena will turn up evidence is that "Ms. Shriki was an employee of Deripaska who conducted his business." (Shriki Mot. at 6). The defendant is seeking Ms. Shriki's documents relating to fourteen individuals and entities without attempting to connect Ms. Shriki to any of them (other than Deripaska). This does not satisfy Rule 17(c).

Incredibly, the defendant proffers even less to justify the NSA Subpoena. The defendant can only make generalized arguments about the NSA's capabilities and the intelligence community's interest in Fokin and Deripaska to suggest the NSA "most certainly" would have intercepted their communications. (NSA Mot. at 5). The defendant points to a law enforcement report to bolster his argument, because that report states that information about Fokin is maintained "at a higher classification." Simply because some classified materials about Fokin may or may not exist hardly suggests the NSA, as opposed to the many other intelligence agencies, possesses those materials[2]. The truth is that the defendant has *no idea* whether the communications sought in the NSA Subpoena exist. The NSA Motion is based on pure speculation.

### IV. The Subpoenas Request Information That Is Inadmissible and Irrelevant

Lastly, the Court should deny the Motions because the Subpoenas do not seek evidence that the defendant can proffer is likely to be admissible. "The weight of authority holds that in order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence." *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (collecting cases).

The Subpoenas call for out-of-court statements, in the form of both communications and records, that are (or would be, if they exist) inadmissible as hearsay. *See* Fed. R. Evid. 802. The defendant's attempts to shoehorn these statements into hearsay exceptions fail. He makes the conclusory claim that because Ms. Shriki was formerly Deripaska's employee, all of her "communications are admissible as business records . . . evidence of habit, routine and practice . . ., and absence of entry in business records." (Dkt. 136 at 6). But even if it stands to reason that Ms. Shriki possesses *some* number of Deripaska business records, the breadth of the proposed subpoena defeats the notion that hearsay exceptions apply. The defendant requests *all communications* concerning various people and entities without any basis in law or fact to expect that all or even many of Ms. Shriki's communications with or about over a dozen individuals and entities—some of whom are her alleged co-conspirators—will qualify as business records. With respect to the NSA Subpoena, the defendant seeks all of Fokin's communications with large categories of people, about broad topics (Dkt. 135 at 6-7), and at most conclusorily suggests that these (entirely theoretical) communications may show Fokin's state of mind.[3]

Moreover, substantial parts of the requests in both Subpoenas would be utterly irrelevant and inadmissible. The Motions seek to revive the "reverse modus operandi" argument the Government addressed at length in opposing his motion to compel—namely, that a lack of records responsive to the Subpoenas would be material to the defense. (Dkt. No. 87 at 11-16). Briefly stated, the notion that Ms. Shriki was the sole or primary individual tasked with managing Deripaska's affairs flies in the face of the evidence, applicable caselaw, and common sense. Therefore, if she lacks records about the sanctions-evading work that the defendant, Charles

---

[2] The Government can neither confirm nor deny the existence of classified intelligence information. Nothing herein should be construed as such a confirmation or denial.

[3] Much of what the defendant summarily describes as state-of-mind evidence pursuant to Rule 803(3) may be inadmissible as "statement[s] of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3).

McGonigal, and Fokin were conducting for Deripaska, that absence of records would not be admissible to prove that the defendant was not working for Deripaska. Similarly, assuming no records responsive to the NSA Subpoena exist, that fact would be inadmissible because it would speak more to the NSA's collection methods than anything else. Indeed, the defendant's claims about the lack of a particular type of electronic communications is an argument about law enforcement techniques—an area far outside the jury's concern. *See United States v. Saldarriaga*, 204 F.3d 50, 53 (2d Cir. 2000) ("[T]he failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged.").

While confirmation of a lack of intercepted communications (if true) would be irrelevant and inadmissible, courts have recognized that this type of information would be highly relevant to foreign governments that are intensely interested in knowing the scope of the U.S. intelligence community's collection capabilities. *See United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989 ("much of the government's security interest . . . lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept conversations at all"). Confirmation or denial of the existence of communications would itself be classified and its disclosure contrary to national security interests. *See id.*; *United States v. Stewart*, 590 F.3d 93, 129-32 (2nd. Cir. 2009) (affirming district court's denial of a motion to compel disclosure of whether defendants were subject of NSA surveillance in part based on the fact that "the surveillance vel non of any particular individual or group, implicate[s] national security and [is] among 'the nation's most guarded secrets.'"); *United States v. Alshahhi*, 628 F.Supp.3d 449, 453 (E.D.N.Y. 2022) (other than providing exculpatory material, the "Government has no duty to confirm or deny the existence of other type of classified material that it is not going to use at trial."). This, again, is why courts correctly handle such questions through CIPA, and this Court should reject the defendant's cavalier and scattershot proposal. *See Pappas*, 94 F.3d at 799 (explaining that CIPA was designed to "minimize the problem of so-called graymail—a threat by the defendant to disclose classified information in the course of trial—by requiring a ruling on the admissibility of the classified information before trial"). The defendant should not be permitted, on the eve of trial, to amplify the risk of "graymail" by seeking classified information outside of the CIPA process through a Rule 17 subpoena that makes a broad request for inadmissible evidence.

Accordingly, the Court should deny the Motions.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: *[signature]*
Rebecca T. Dell
Sheb Swett
Derek Wikstrom
Assistant United States Attorneys
(212) 637-2198 / -6522 / -1085

cc: Defense counsel (by ECF)