

Glavin PLLC  
156 W. 56th Street, Suite 2004  
New York, NY 10019

glavinpllc.com  
646.693.5505

July 15, 2024

**VIA ECF**
The Honorable Jennifer H. Rearden
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   <u>United States v. Sergey Shestakov, 23 Cr. 16 (JHR)</u>

Dear Judge Rearden:

    I represent Sergey Shestakov in the above-referenced matter and write respectfully to urge the Court to hold an immediate hearing with the parties and reconsider its complete denial of Mr. Shestakov's motion to compel discovery (the "Motion to Compel") of certain materials in the possession of the U.S. Attorney's Office concerning unindicted co-conspirator Oleg Deripaska (the "Discovery Materials"),[1] or in the alternative, hold an immediate hearing on the motion to compel discovery so that the reasons underlying the Court's denial can be made part of the record.

    I further request that the Court adjourn the August 6, 2024 trial date because: (1) given that the Court's June 21, 2024 summary denial of the motion six weeks prior to trial did not provide any reasoning and that the Court stated it would not explain its reasoning until the final pretrial conference on August 1, 2024, the defense does not have adequate time to adjust its trial strategy at this late date (for which we have been preparing for months) and Mr. Shestakov's Sixth Amendment rights are therefore implicated; and (2) should the Court deny the motion for reconsideration, the adjournment will allow the defense time to consider and seek an appeal to the Second Circuit of the denial of discovery, which, for the reasons set forth in detail below, severely prejudices Mr. Shestakov's Sixth Amendment rights to a fair trial and to present a defense.

    The Discovery Materials are essential to the defense because they would show that, contrary to the government's allegations, there was no conspiracy with Oleg Deripaska to conduct the business intelligence work at issue in this case: Mr. Deripaska did not structure, and was not behind the structuring of, the business intelligence work through the Cyprus entity Pandean Ltd. ("Pandean"); EN+ official Evgeny Fokin was not acting on behalf of Mr. Deripaska for the charged business intelligence work, but was acting on behalf of EN+ and its subsidiary Rusal in arranging

---

[1]     For purposes of this letter and making the record, the definition of "Discovery Materials" is the same as used in the Motion to Compel. *See* ECF No. 84.

1

for the work to be performed;[2] Mr. Deripaska did not cause and was not part of having Arina Lazarou sign the contract on behalf of Pandean with Mr. McGonigal's company Spectrum Risk Solutions ("Spectrum"); and Mr. Deripaska did not cause payments for the business intelligence to be made to Spectrum through a Gazprombank account in Russia in the name of Pandean. Specifically, as set forth in the Motion to Compel, the Discovery Materials were gathered in connection with two other S.D.N.Y. indictments charging that Mr. Deripaska conspired with others to commit the same crime, *i.e.*, to violate the International Emergency Economic Powers Act ("IEEPA"), during the same time period (2018-2022). *See United States v. Bonham-Carter*, 22 Cr. 503 (PAE) (charging Graham Bonham-Carter, a longtime business associate and employee of Mr. Deripaska with conspiring to evade sanctions on Deripaska through use of various entities and accounts); *United States v. Deripaska*, 22 Cr. 518 (PKC) (charging Oleg Deripaska, Natalia Bardakova, and longtime U.S.-based business associate and employee Olga Shriki with conspiring to evade sanctions on Mr. Deripaska through use of various entities and accounts). Specifically, those cases charge conspiracies with Mr. Deripaska to structure business and financial transactions to evade the sanctions imposed on Mr. Deripaska in 2018, and Discovery Materials from those cases strongly indicate that while Mr. Deripaska conspired with others to evade sanctions, Mr. Deripaska was not part of any conspiracy as charged in the Indictment here—*i.e.*, to use longtime EN+ official Evgeny Fokin to engage Charles McGonigal and Sergey Shestakov to conduct business intelligence work on Norilsk Nickel and its CEO Vladimir Potanin—because Mr. Deripaska already had an established network for doing so.

To the extent that the Court deemed the Discovery Materials sought in the Motion to Compel to be too broad under Rule 16, we ask that the Court consider directing the government to produce a narrower subset of those materials, including: records and information concerning entities, individuals, and accounts with whom or through which Oleg Deripaska conducted business or financial transactions from 2018 to 2022; the "contacts" lists stored in the seized electronic devices and/or messaging accounts of Olga Shriki, Graham Bonham-Carter, Natalia Bardakova, and Ekaterina Voronina; and communications concerning the manner in which Mr. Deripaska conducted business and financial transactions from 2018 through 2022. *See United States v. Urena*, 989 F. Supp. 2d 253, 261-62 (S.D.N.Y. 2013) (PAE) (evidence deemed material under Rule 16 where "it conceivably may provide a different version of events from that presented at trial by the Government" or may "lead the defense to pursue other investigative leads as it readies for trial and will lead it to admissible evidence"); *United States v. Hossain,* 16 Cr. 606 (SHS), 2020 WL 6874910, at *2 (S.D.N.Y. Nov. 23, 2020) (in determining whether material is discoverable under Rule 16 the court must determine "whether the information is helpful or material to the defense, *i.e.*, useful to counter the government's case or bolster a defense"); *United States v. Zanfordino*, 833 F. Supp. 429, 432 (S.D.N.Y. 1993) ("A narrow view of [Rule 16] is

---

[2] The defense will make a Rule 15 motion for Evgeny Fokin's deposition later this week. Both the government and the defense have been in recent communication with counsel for EN+. We understand that Mr. Fokin remains employed at EN+ and that counsel for EN+, in response to certain government document requests of EN+, has had access to Mr. Fokin. We further understand that based on discovery provided by the government, as well as what Mr. Fokin recently shared with company counsel, Mr. Fokin is in possession of information that is exculpatory to Mr. Shestakov.

inappropriate; failure to provide reasonably available material that might be helpful to the defense and which does not pose any risks to witnesses or to ongoing investigation is contrary to the requirements of due process and to the purposes of the Confrontation Clause."). Consistent with such narrowed requests from the Discovery Materials, we further request that the government be directed to produce, under Rule 16 and pursuant to *Brady v. Maryland*: any information or records reflecting that Oleg Deripaska, Graham Bonham-Carter, Olga Shriki, Natalia Bardakova, and Ekaterina Voronina had no dealings with Pandean, Pandean's Gazprombank account, or Arina Lazarou from 2018 through 2022; and any information or records reflecting that Oleg Deripaska did not communicate with Evgeny Fokin between July 1, 2021 and November 30, 2021, or did not communicate with Mr. Fokin about Pandean, Charles McGonigal or the business intelligence work to be performed regarding Norilsk Nickel and its CEO Potanin between July 1, 2021 and November 30, 2021.

The Discovery Materials are critical to show that the charged conduct in this case had nothing to do with Mr. Deripaska—this was not Mr. Deripaska's transaction. Specifically, those materials will reveal that the work was not done on behalf Mr. Deripaska, and will support the theory of the defense that the work was done for EN+ and/or its subsidiary Rusal and thus, was not done with intent to evade or violate any sanctions because no services were provided to Mr. Deripaska and he did not pay for the services. Absent these materials, which will show how Mr. Deripaska did and did not conduct business following the sanctions imposed in 2018, Mr. Shestakov will not be able to mount an effective defense. Thus, the defense respectfully requests that the Court reconsider its wholesale denial, or, in the alternative hold a hearing concerning the Motion to Compel.

### A. The Government's Theory of the Case

The Indictment alleges that Mr. Shestakov conspired with co-defendant Charles McGonigal and unindicted co-conspirators Oleg Deripaska and Evgeny Fokin to violate the U.S. sanctions imposed on Mr. Deripaska in April 2018, in violation of IEEPA. Specifically, the Government alleges that in 2021, EN+ official Evgeny Fokin, acting as the agent of Mr. Deripaska, and with the assistance of Sergey Shestakov, hired Mr. McGonigal and Mr. Shestakov on Mr. Deripaska's behalf to investigate a rival Russian oligarch, Vladimir Potanin. Indictment ¶¶ 18-22. According to the Government, Mr. Potanin had a controlling stake in Norilsk Nickel ("Nornickel") and was the CEO of Nornickel, and Mr. Deripaska was "contesting control" by Mr. Potanin over Nornickel. *Id.* ¶ 18. In August 2021, the Government alleges that Mr. Deripaska, through his agent Mr. Fokin, entered into a contract through a Cyprus corporation, Pandean, with a New Jersey-based corporation associated with Mr. McGonigal, Spectrum, for "business intelligence services, analysis, and research relevant to [Nornickel], its business operations, and shareholders." *Id.* ¶ 19. This contract with Pandean was signed by Arina Lazarou, who is listed as a director of Pandean. According to the Government, Mr. Deripaska then purportedly caused money to be sent to Spectrum from a Russian bank account on behalf of Pandean. *Id.* . As alleged, Spectrum then paid Mr. McGonigal and Mr. Shestakov for this purported work on behalf of Mr. Deripaska. *Id.* ¶ 20. According to the Indictment and discovery provided to the defense, the payments to Spectrum were made from an account at Gazprombank in Russia in the name of Pandean, and the payments were made under the on or about August 13, 2021, August 18, 2021, September 15, 2021, October 18, 2021, and November 18, 2021. The government's theory of the case is that, in order to hide the

fact that this business intelligence work was being done for and at the behest of sanctioned oligarch Mr. Deripaska, Mr. Fokin and Mr. Deripaska structured this transaction by using the Cyprus shell company Pandean to contract with Spectrum and to pay Spectrum for the services to be provided to Mr. Deripaska.

Notably, the Government will not be calling Evgeny Fokin, Charles McGonigal, Arina Lazarou or Oleg Deripaska to be witnesses at trial. No one will testify that they were involved in this alleged conspiracy or that this alleged conspiracy existed—because it did not. The Government's case is entirely circumstantial.

### B.   Mr. Shestakov's Defense

Mr. Shestakov steadfastly maintains his innocence. He never believed that the transaction at issue was being done on behalf of or at the behest of Mr. Deripaska. Rather, Mr. Shestakov understood that the business intelligence work was being performed for EN+ and/or its subsidiary Rusal, and that Mr. Fokin, who was an employee for EN+ at all relevant times, was acting in his capacity as an official of EN+ in arranging for the business intelligence work from Mr. McGonigal. And, in truth and in fact, Mr. Fokin, a high-level official at EN+, was acting on behalf of EN+ and its interests in Rusal for this transaction. Mr. Deripaska—a billionaire Russian oligarch with political, business, and intelligence ties throughout the world—did not engage Mr. Fokin, Pandean, Spectrum, or Arina Lazarou for this transaction and business intelligence work. And Mr. Deripaska did not cause Spectrum to be paid from a Russia bank account through Pandean for this transaction, as alleged by the Government.

The evidence will be that in 2021 and 2022, EN+ was gravely concerned about its large investment in Nornickel, which EN+ held through its subsidiary United Company Rusal PLC ("Rusal").[3] Nornickel and its CEO, Mr. Potanin, were in 2021, and remain, vitally important to EN+'s business interests because EN+ owns Rusal, and Rusal owns approximately 28 percent of Nornickel. Mr. Potanin is the other largest shareholder of Nornickel, with approximately 35 percent of the shares. In 2021 and 2022, EN+, through its subsidiary Rusal, was at odds with Nornickel over the direction of Nornickel and Mr. Potanin's leadership of the company. The tension between the companies is demonstrated by (1) a 2018 lawsuit Rusal filed in the United Kingdom against

---

[3]   EN+ is an energy and metals conglomerate and owns Rusal, one of the world's largest aluminum producers. EN+ and Rusal were subject to U.S. sanctions beginning in April 2018, because those companies were owned and/or controlled by Mr. Deripaska. On January 27, 2019, OFAC removed EN+ and Rusal from the U.S. sanctions list pursuant to an agreement (the Terms of Removal or "TOR") that EN+ would take steps to diminish Mr. Deripaska's ownership and control over EN+. Specifically, the TOR provided that Mr. Deripaska could own no more than 45 percent of EN+, vote no more than 35 percent of his shares, and control no more than four seats on the board. Notably, Mr. Deripaska remained involved with EN+ and is still EN+'s largest single shareholder.

Mr. Potanin's company Whiteleave Holdings, Inc., to protect shareholder interests,[4] and (2) another lawsuit that Rusal filed in the United Kingdom in October 2022 (after Mr. Fokin received the business intelligence work he commissioned for EN+/Rusal) against Mr. Potanin and his company Whiteleave Holdings, Inc., to protect the interests of Nornickel shareholders.[5] The October 2022 lawsuit alleges that Mr. Potanin and Whiteleave Holdings, Inc. transferred crucial assets out of Nornickel's corporate group to divert value away from Nornickel. Thus, it made perfect sense for EN+, as communicated to Mr. Shestakov by Mr. Fokin, to want business intelligence on Mr. Potanin and Nornickel at the time of the alleged conspiracy in 2021—which is exactly what Mr. Shestakov thought to be the transaction at issue and was, in fact, the transaction at issue.

In presenting his defense, Mr. Shestakov expects to elicit evidence that Mr. Deripaska had several close business associates around the world, including his longtime employee and business associates Graham Bonham-Carter in the United Kingdom and Olga Shriki in the United States, who handled Mr. Deripaska's most sensitive personal, business, and financial transactions through various corporate entities and international bank accounts. And those particular associates played very significant roles in assisting Mr. Deripaska in evading U.S. sanctions from 2018 through 2022 through a web of various entities and accounts. Indeed, as set forth *supra* and in detail in Mr. Shestakov's Motion to Compel, the government charged Mr. Deripaska and his close business associates in two other indictments alleging sanctions violations for those business and financial transactions on behalf of Mr. Deripaska *during the same time period charged in the Indictment against Mr. Shestakov*. See generally *United States v. Bonham-Carter*, 22 Cr. 503 (PAE); *United States v. Deripaska*, 22 Cr. 518 (PKC).

---

[4]  See *United Rusal Plc v. Crispian Investments, Ltd.*, [2018] EHWC 2415, Approved Judgment (Sept. 14, 2018), *available at* https://www.bailii.org/ew/cases /EWHC/Comm/2018/2415.html.

[5]  Sam Tobin, Clara Denina & Anastasia Lyrchikova, *Rusal Plans Further Lawsuit Against Potanin Over Nornickel Pact*, REUTERS, (Mar. 23, 2023), https://www.mining.com/web/rusal-plans-further-lawsuit-against-potanin-over-nornickel-pact/ ("Rusal alleges Potanin and Whiteleave procured the transfer of 'crucial subsidiaries' out of Nornickel's corporate group 'with the sole or main purpose of diverting value away from the (Nornickel) Group, as part of a wider strategy of entrenching (Whiteleave and Potanin's) control'"); *Rusal Accuses Potanin Of Breaching Nornickel Shareholder*, REUTERS (Oct. 24, 2022), https://www.miningweekly.com/article/rusal-accuses-potanin-of-breaching-nornickel-shareholder-pact-2022-10-24 ("Rusal, which holds a 26.2% stake in Nornickel said that the lawsuit, filed in London's High Court of Justice on October 21 against Potanin and his affiliate Whiteleave Holdings, is aimed at protecting the interests of the company's shareholders. The statement said: 'Rusal's claims are based on Mr. Potanin's failure to fulfil his duties as Nornickel's managing partner and CEO. Under the management of Mr. Potanin, Nornickel lost a number of assets that played a key role in group's activities. This resulted in Nornickel and its shareholders suffering significant losses.'").

### C. The Critical Importance to the Defense of the Discovery Materials

The government's entire case hinges on Oleg Deripaska being the person who initiated this transaction, being the "client" for the business intelligence work about Nornickel and Potanin, being behind the contract between the Cyprus entity "Pandean" and Mr. McGonigal's company Spectrum, and being the person who paid Spectrum for this business intelligence work through a Gazprombank account in the name of Pandean.

A key part of Mr. Shestakov's defense is that it would make no sense for Mr. Deripaska—an extraordinarily wealthy and sophisticated Russian oligarch with intelligence and business ties throughout the world—to contract with Spectrum through Pandean for the business intelligence work as alleged in the Indictment. Mr. Deripaska had plenty of other entities and accounts through which such transactions were habitually and routinely performed by Mr. Deripaska's experienced and trusted business associates and *would have done so here* if Mr. Deripaska was really involved in the transaction with Mr. McGonigal and Mr. Shestakov as charged in the Indictment. This is critical to the defense theory that Mr. Deripaska was not part of the charged transaction with Mr. McGonigal and Mr. Shestakov.

The fact that Mr. Deripaska had nothing to do with Pandean, was not involved in the business intelligence work at issue, nor was involved in the payment for that work to Spectrum is why the Discovery Materials at issue in the motion to compel records are so critically important to preparing the defense. How Mr. Deripaska conducted business during the critical time period after he was sanctioned in 2018 *and how he did not conduct business* (*e.g.*, not through Pandean, not with Arina Lazarou, or not with the bank account at Gazprombank through which Spectrum was paid) is a core issue for presenting Mr. Shestakov's defense. The Discovery Materials will also identify witnesses that the defense may seek to call at trial to present this defense. By summarily depriving the defense, without explanation, of the records that the U.S. Attorney's Office for the Southern District of New York possesses from the *Shriki* and *Bonham-Carter* cases—which demonstrate the personnel, entities, and financial institutions and accounts through which Mr. Deripaska routinely handled his transactions after being sanctioned by the U.S.—the defense has been denied critical information to preparing the defense and the use of that information to demonstrate that there was neither a criminal conspiracy with Mr. Deripaska nor a substantive sanctions violation as charged.

### D. Ongoing Irreparable Harm to the Defense and Mr. Shestakov's Sixth Amendment Rights

The denial of the Motion to Compel deprives Mr. Shestakov of critical information in the government's possession that goes directly to preparing the defense and from which the defense can use to obtain other evidence for trial: records regarding the various entities set up so that Mr. Deripaska could continue business despite the sanctions (*e.g.*, GBCM Limited, Global Consulting Services LLC, Gracetown Inc.); records regarding the various bank accounts and financial institutions through which Mr. Deripaska made and received payments for his various transactions after the U.S. imposed sanctions on him; records concerning the individuals and entities through which and with whom Mr. Deripaska routinely transacted business during the time period after the 2018 sanctions (*e.g.*, longtime confidantes and employees such as Graham Bonham-Carter, Olga

Shriki, and Natalia Bardakova); the manner through which Mr. Deripaska and those individuals conducted business on behalf of Mr. Deripaska and communicated to conduct such business; and, critically, the lack of any ties of Mr. Deripaska established network with Pandean, Arina Lazarou, or the Gazprombank account from which Spectrum was paid.

While the Court has indicated that it will provide its reasons for the summary denial of the Motion to Compel at the final pretrial conference on August 1, 2024, that timing is (1) simply too late and unduly prejudicial to preparing Mr. Shestakov's defense for trial and (2) would not permit the defense to seek appellate relief of the Court's decision to the Second Circuit prior to trial, which is set to commence August 6. Indeed, the reasons for the Court's decision impact how the defense prepares for the critical opening statement (which takes weeks of preparation and incorporates core defense strategy), prepares cross-examination (which also takes weeks of preparation), identifies what exhibits are likely to be admissible, and would inform the defense decision-making on issuing additional subpoenas for documents.

* * *

The prejudice to Mr. Shestakov's defense and his ability to effectively prepare for the August 6 trial cannot be overstated.[6] Thus, the defense requests either that the Court hold an immediate hearing with the parties and reconsider its summary denial (to include narrowing the categories of records sought in the Motion to Compel), or hold an immediate hearing so that the

---

[6] Along these same lines, we must also note that the defense has been prejudiced in trial preparation—given the August 6 trial date—by not having decisions on the following applications:

- The Court still has not ruled on the defense motions to dismiss, which were filed on February 16, 2024 and fully briefed since March 26, 2024. The issues raised in those motions, and how the Court rules upon them, impact trial strategy in defending the IEEPA and false statement counts. We need sufficient time to adjust, depending on the rulings and reasoning, prior to trial.

- The Court did not rule on (i) Mr. Shestakov's March 8, 2024 *ex parte* application for the Court to "So Order" a Rule 17(c) subpoena to Olga Shriki for records to be produced prior to trial and (ii) Mr. Shestakov's May 28, 2024 *ex parte* application for the Court to "So Order" a Rule 17(c) subpoena to the NSA for records to be produced prior to trial, until finally informing the defense on July 1 that its *ex parte* applications were denied without prejudice to making new subpoena applications with notice to the government. This delay and new round of briefing directed by the Court to be completed by July 18 has thereby put the defense in an impossible possible of not knowing if we will have critical records until the eve of trial. Further, the defense will also consider seeking an appeal of a subpoena denial if necessary.

Hon. Jennifer H. Rearden
July 15, 2024
Page 8 of 8

Court can state its reasons for the denial on the record, followed by an adjournment of the trial date to allow the defense sufficient time to adjust the strategy, seek documents elsewhere, and pursue an immediate appeal if necessary.

                                      Respectfully submitted,

                                      */s/ Rita M. Glavin*
                                      Rita M. Glavin