

Glavin PLLC  
156 W. 56th Street, Suite 2004  
New York, NY 10019

glavinpllc.com  
646.693.5505

August 6, 2024

**VIA ECF**
The Honorable Jennifer H. Rearden
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **United States v. Sergey Shestakov, 23 Cr. 16 (JHR)**

Dear Judge Rearden:

I represent Sergey Shestakov in the above-referenced action, and write to respectfully: (1) object to the government's request for an *ex parte* conference under Section 2 of the Classified Information Procedures Act (18 U.S.C. app. 3 § 2) to disclose classified information to the Court without a more developed record under CIPA Section 4 (*id.* § 4); and (2) that the Court direct the government to inform the defense as to what the classified information concerns (which can be done without disclosing the classified information itself or obviating the *ex parte* procedure allowed CIPA and Rule 16).[1]  The defense further requests, in light of the Court's August 6, 2024 Order emailed to the parties this evening, that the Court hear from defense counsel tomorrow before any *ex parte* conference with the Government under CIPA.

A.   **Objections to the Government's Request for an *Ex Parte* Section 2 Conference**

As an initial matter, Mr. Shestakov objects to the government's request for and proceeding with a Section 2 conference for the purpose of either (a) discussing and/or making argument about the discoverability of the classified information and/or seeking a ruling from the Court that the classified information is not discoverable, or (b) discussing a protective order regarding such information.

Section 2 provides in relevant part:

> At any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution. Following such motion, or on its own motion, the court shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by section 5

---

[1]   As described herein, the government for the first time today indicated its intention to convey classified information to the Court during its conference pursuant to Section 2, necessitating Mr. Shestakov's objection and request.

> of this Act, and the initiation of the procedure established by section 6 of this Act. In addition, at the pretrial conference the court may consider any matters which relate to classified information or which may promote a fair and expeditious trial.

18 U.S.C. app. 3 § 2.

In contrast, Section 4 empowers the court:

> upon a sufficient showing, [to] authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

*Id.* § 4.

Section 4 is implicated when the head of the department with control over the matter, and after personal consideration of the matter, has invoked the state-secrets privilege to withhold classified information from the defendant in the interests of national security. *Doe v. C.I.A.*, No. 05 CIV. 7939 LTSFM, 2007 WL 30099, at *1 (S.D.N.Y. Jan. 4, 2007). *see also United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008). The privilege, however, is not absolute and indeed must give way to a criminal defendant's right to present a meaningful defense under some circumstances. *See United States v. Aref*, 533 F.3d 72, 79-80 (2d Cir. 2008); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010) (same). Critically, Section 4 helps ensure fairness to the defendant in providing for a procedure for the Court to review the classified information at issue, to assess its discoverability and determine whether and in what form the information must be disclosed to the defendant, and whether the government has truly satisfied its discovery obligations. *See, e.g.*, *United States v. Aref*, No. 04 CR 402, 2006 WL 1877142, at *1 (N.D.N.Y. July 6, 2006).

On August 6, 2024, the government informed the Court and the defense—for the first time—that it planned to "convey . . . classified information" to the Court at the Section 2 conference. ECF No. 151. Prior to August 6, the government had indicated that some unspecified "[i]nformation has come to the Government's attention that may require litigation pursuant to [CIPA]. But the Government needs to take additional steps to evaluate the information before it will be ready for possible CIPA practice." ECF No. 144. Thereafter, the government confirmed its availability for a Section 2 conference. ECF No. 148. Given this belated representation that the conference will be used to convey classified information—without *ex parte* briefing or *in camera* review of the information itself—we are concerned that the government will attempt to use the

Section 2 conference to discuss or make argument regarding the discoverability of such information and/or seek a ruling from the Court concerning whether the material is discoverable, when disclosure of classified material to the Court and discussion of discoverability should occur at a Section 4 CIPA conference.

The plain text of Section 2 evidences its less substantive nature, providing for consideration of "timing" and "notice" and matters which "*relate* to classified information – though not, notably, the classified information itself. Section 4 authorizes the Court to consider whether certain materials are discoverable, a procedure which the government has sought to avoid to date in accordance with its untenably narrow view of Rule 16 and its discovery obligations.

Not only has the government's interpretation of what is discoverable in this case been improperly narrow, but the government has made repeated representations to the Court and the defense regarding discovery that have turned out to be, in fact, misguided and incorrect. For example:

- On March 8, 2023, the government informed the Court that it had completed its Rule 16 production. March 8, 2023 Tr. at 2:20-25. That was not true, as we demonstrate below.

- On March 8, 2023 and again on May 10, 2023, the government represented to the Court and defense counsel that the discovery from the indictment of co-defendant Charles McGonigal in the District of Columbia did not constitute or contain Rule 16 material in this matter. *See* March 8, 2023 Tr. at 4:1-4 ("So we will produce [the District of Columbia discovery] to Mr. Shestakov if and when we have it and if and when it is discoverable. I doubt very much any of that is going to be Rule 16 material since it is part of a second investigation."); *see also* May 10, 2023 Tr. at 11:15-24 ("[A]s to Mr. Shestakov, to be clear, it's sort of definitionally not Rule 16. It's another case. We think it is potentially producible to him as impeachment material because we will be likely offering Mr. McGonigal's statements as co-conspirator statements, so he's entitled to material that could impeach McGonigal under Rule 806. . . so we think Mr. Shestakov is entitled to that impeachment material, but it's not something that should get lumped in as Rule 16 in this case."). In truth and in fact, the discovery produced to Mr. Shestakov from the District of Columbia case against Mr. McGonigal contained core Rule 16 material pertaining to this case, including, for example: records from Mr. Shestakov's bank account that had been subpoenaed by an FBI agent assigned to this case; images of two cell phones of a cooperating witness in this case that had been searched; and FBI interview 302s wherein witnesses were asked about Mr. Shestakov. That Rule 16 discovery was produced on May 19, 2023, over two months after the government proclaimed its Rule 16 discovery productions to Mr. Shestakov were complete. March 8, 2023 Tr. at 2:20-25 ("I believe the last time we were here we told the Court we could get all of the Rule 16 discovery we were aware of produced within 30 days. And so the primary announcement I have for the Court today is we did accomplish that, although it did include a very small production this morning.")

3

- On July 15, 2024, the government informed the Court that "it had complied with its discovery" obligations as it pertained to classified information. ECF No. 140. Yet, the very next day, with no explanation, the government informed the Court that an adjournment of the August 6, 2024 trial date for *at least six weeks* was necessary because of new information that "may require litigation pursuant to [CIPA.]" ECF No. 144. To date, the government has refused to indicate when it came into possession of that information requiring the adjournment, and today the government stated for the first time that it planned to disclose classified information the Court pertaining to this matter

- On July 22, 2024, the government belatedly disclosed *Brady* material that had been in its possession for a month (and only *after* the government filed a letter opposing the defense subpoena for records to Oleg Deripaska's longstanding business associate and co-conspirator Olga Shriki and argued the subpoena was a fishing expedition and did not seek relevant information (ECF No. 140)). Specifically, on June 25, 2024, an FBI intelligence analyst who worked with this prosecution team and had expertise in Oleg Deripaska's financial and business "networks" informed the government that he was not familiar with Pandean Ltd., the Cyprus entity that the government has alleged that Oleg Deripaska used to contract with and pay Mr. McGonigal on Deripaska's behalf for business intelligence work on Norilsk Nickel and its CEO Vladimir Potanin. Moreover, that analyst also informed the government that Arina Lazarou's "address is listed in EN+ and Rusal paperwork." The government's barebones summary of that June conversation is attached as Exhibit A. As the Court is aware, Arina Lazarou is a central figure in this case because she signed the August 2021 contract with Mr. McGonigal's company Spectrum on behalf of Pandean Ltd. The defense has repeatedly argued in pre-trial motions that the contract and the business intelligence work concerning Norilsk Nickel and its CEO Vladimir Potanin was done—legally—on behalf of EN+ and its subsidiary Rusal, which sued Potanin in 2022. This information is entirely corroborative of that defense. Indeed, as the government well knows, the defense has also repeatedly argued that: Oleg Deripaska was not the client for this work; Deripaska had a well-established network of confidantes, entities, and accounts through which he regularly conducted his business transactions around the world after he was placed on the U.S. sanctions list in April 2018, and none of the people, entities or accounts were utilized here—demonstrating that the services were not done for Deripaska's benefit; and Pandean Ltd. is not connected to Deripaska. *See* ECF Nos. 84-85, 91, 103, 113, 141.

- On July 26, 2024, the government made another egregiously belated *Brady* disclosure concerning that same FBI intelligence analyst that had been in the USAO's possession

4

**for two years**.[2] The disclosure consisted of two emails sent by the same FBI analyst discussed above. The first email, sent June 24, 2022, documents the connection of Arina Lazarou—who signed the contract at issue in this case on behalf of an entity called Pandean Ltd. —to multiple EN+ affiliates including Rusal, and notably, that "[p]ublic financial disclosures from EN+ and Rusal both show multiple entities tied to their respective corporate structures as being affiliated with" Pandean Ltd.'s address. Ex. B. In the second email, sent May 30, 2024, the FBI analyst stated again that Pandean Ltd.'s address "had also been linked to RUSAL." *Id.* This information is entirely corroborative of the defense theory of the case. Moreover, this information corroborates the exculpatory information that EN+'s counsel provided to the government on July 17, 2024 about the interview of EN+ Evgeny Fokin: that the business intelligence work performed by Spectrum/Mr. McGonigal was at the behest of and on behalf of EN+ and its subsidiary Rusal—not Oleg Deripaska.

- o  Notably, as part of Rule 16 discovery, the government produced two public filings by EN+ and United Company Rusal Limited which linked Ms. Lazarou to Rusal and EN+, *but those filings were in French and Russian, and the government provided no translation of those documents. See e.g.*, USAO_000000168-00000234, USAO_00000244-00000321, USAO_00000322-00000325. Such gamesmanship has no place when it comes to complying with its constitutional and statutory discovery obligations. The defense had to engage its own translator to go through the hundreds of pages of untranslated documents in the government's discovery dump and made the connection after finding the proverbial needle in an untranslated haystack.

- ■ On July 23, 2024, the government informed the defense that it had not produced the two cellphones seized from cooperating witness Agron Neza, but could do so as a "courtesy." In truth and in fact, those two cellphones—which are Rule 16 material—were already produced to the defense by the government via external hard drive, delivered by FedEx on June 5, 2023. Astonishingly, the government still insisted in its August 1, 2024 letter that it had *not* produced those two cellphones *after* the defense informed the government that those phones had already been produced. The government's lack of knowledge concerning what they have and have not produced further reflects their unreliability when it comes to discovery representations in this case, including representations concerning complying with discovery obligations.

- ■ On August 1, 2024, the government also informed the defense of significant issues concerning the forensic imaging of a cellphone of alleged co-conspirator "Agent-1," Evgeny Fokin, that was conducted during a purported border search in August 2021.

---

[2]  The fact that the government did not produce this *Brady* material prior to co-defendant Charles McGonigal's plea to Count One of the Superseding Information, ECF No. 57, is extremely disturbing to say the least.

      Indeed, for the first time, the government informed the defense that the version of Cellebrite (a forensic extraction tool) used to image Fokin's phone did "**not generate a full forensic image of the cellphone**" and consequently, agents "*sometimes* took screenshots of messages contained on [the] phone." The Cellebrite report allegedly generated only an Excel file which was produced to the defense. We have been questioning the completeness of this Fokin phone production for months, including at the July 23 status conference where we noted that there is "reason to believe" additional information was extracted from Fokin's phone or, in other words, that what had been produced to the defense was an incomplete image of what was on the phone. The government requested the "factual basis" for that assertion in its August 1, 2024 letter to the defense, completely ignoring the fact that the obviously incomplete and inadequate nature of the forensic extraction of Fokin's phone was *confirmed* in government's own August 1 letter and the production of notes concerning the purported border search.

      Given this history of grave discovery missteps and failures, the Court should not countenance, at this stage, arguments or discussion concerning the discoverability of the unspecified classified material during a conference purportedly pursuant to Section 2 of CIPA. That determination, *i.e.*, the Court's oversight *under CIPA Section 4* in determining whether "the classified materials at issue contain matter that is helpful or material to the defense" and "aid counsel in constructing an effective defense" and, thus, whether information must be produced requires a more developed record and not simply the government's one-sided proffer to the Court regarding discoverability of the material. *United States v. Shehadeh*, 857 F. Supp. 2d 290, 293, 294 (E.D.N.Y. 2012). Moreover, considering the discovery history in this case, we respectfully submit that any representation by the government that it can properly withhold classified material based on it not being discoverable, should be viewed with very strong suspicion. When it comes to discovery in this case, this prosecution team has demonstrated that their judgment should not be trusted or representations taken at face value.

    **B. The Government Should Inform the Defense What The Classified Information Pertains To So That the Defense Can Make Argument to the Court Regarding Whether the Information is Discoverable**

      To that end, there is no reason why the government cannot inform the defense what the classified information generally concerns, particularly if the government intends to argue or insinuate to the Court that this information is not discoverable and should be withheld altogether. *See, e.g.*, *United States v. Saipov,* S1 17-CR-722 (VSB), 2019 WL 5558214, at *1 (S.D.N.Y. Oct. 29, 2019) (discussing classified intercepts as part of CIPA litigation); *United States v. Abu-Jihaad*, No. 3:07CR57 (MRK), 2008 WL 596200, at *1 (D. Conn. Feb. 22, 2008) (CIPA litigation concerning "FISA-derived evidence").

      As the discoverability of classified material includes *ex parte* and *in camera* proceedings, it is critical that Mr. Shestakov can make an informed argument to this Court concerning defense theories and specific evidence in the case we have identified as critical to our defense such that the

Hon. Jennifer H. Rearden
August 6, 2024
Page 7 of 7

Court may properly evaluate the classified information and the government's arguments. These defense arguments would certainly inform and be helpful to the Court's analysis of the classified information as it pertains to Rule 16.

* * *

Thus, Mr. Shestakov objects to the government's proposed improper use of a Section 2 conference, requests that the Court direct the government to generally represent what the yet-unspecified classified information concerns, and, in light of the Court's August 6, 2024 Order, requests that Mr. Shestakov be heard before any *ex parte* conference with the government tomorrow under CIPA.

Respectfully submitted,

__/s/ Rita M. Glavin_____
Rita M. Glavin