O878SHEC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4             v.                   23 Cr. 16 (JHR)

5    SERGEY SHESTAKOV,

6             Defendant.        Conference

7    ------------------------------x

                              New York, N.Y.
8                               August 7, 2024
                              3:10 p.m.
9

   Before:
10

                HON. JENNIFER H. REARDEN,
11

                          District Judge
12

                  APPEARANCES
13

   DAMIAN WILLIAMS
14       United States Attorney for the
      Southern District of New York
15    DEREK WIKSTROM
   SEBASTIAN SWETT
16    REBECCA T. DELL
      Assistant United States Attorneys
17

   GLAVIN PLLC
18       Attorneys for Defendant
   RITA M. GLAVIN
19

20    Also present:   LESLIE ESBROOK, DOJ, National Security Division

21

22

23

24

25

O878SHEC

1              (In open court; case called)

2              THE DEPUTY CLERK:  Counsel, please state your name for

3      the record, starting with the government.

4              MR. WIKSTROM:  Good afternoon, your Honor.  Derek

5      Wikstrom for the government.  I am joined by Leslie Esbrook, a

6      trial attorney at the National Security Division of the

7      Department of Justice, as well as colleagues from my office,

8      Sheb Swett and Rebecca Dell.

9              THE COURT:  Good afternoon.

10             MS. GLAVIN:  Good afternoon, your Honor.  Rita Glavin,

11     along with my client, Sergey Shestakov.  And we thank the Court

12     for letting us just briefly have a status conference before the

13     CIPA conferences today.

14             THE COURT:  Okay.

15             MS. GLAVIN:  I just wanted to make a record.

16             THE COURT:  All right.

17             MS. GLAVIN:  Your Honor, so the record is clear, the

18     defense was not informed until the government's August 7th

19     letter today -- well, actually, I should say starting with

20     yesterday.  The defense learned for the first time yesterday,

21     in the government's August 6 letter to the Court, that the

22     purpose of the Section 2 conference was that there was

23     classified information.  That is what prompted us to follow up.

24     We had not been told that before.  That prompted our letter as

25     of last night.  And then this morning, when the government

1    filed their letter of August 7, stating that the purpose of the

2    conference, the Section 2 CIPA conference, was to "provide

3    information about what prompted the government's July 16, 2024

4    letter to the Court," because that information informs the

5    timing and status of potential *ex parte* litigation pursuant to

6    CIPA Section 4.

7          I want to make a record about a couple of these

8    things.  One is we had been asking the government about what

9    the purpose of this was, and this came up at our July 23rd

10   conference.  We did not get any specifics until this letter

11   today.

12         The record needs to be clear that the government's

13   July 16, 2024 letter to the Court sought an adjournment of at

14   least six weeks of the pending August 6, 2024 trial date, with

15   no specifics as to (a) what the government knew, when they knew

16   it, and to the extent that there was classified material, not

17   only when it came to their attention, but to the extent that

18   the government made requests that prompted this classified

19   material review, when those requests were made.  That is not

20   classified.

21         To the extent today that the government wants to talk

22   about timing and status of *ex parte* litigation, that is not

23   classified.  So we object to an *ex parte* CIPA conference to the

24   extent there is anything discussed beyond what is classified.

25   Section 2 CIPA conferences routinely happen in a non-*ex parte*

1      basis, because it is not supposed to be substantive.

2              So I get it if they have classified info, and we will

3      step out, and they have every right to make that presentation

4      to the Court.  But to the extent there is a discussion about

5      timing of review of classified information, we expect to be a

6      part of that discussion.  And this is particularly pertinent,

7      your Honor, because——and we will write a letter to the Court

8      making this record——because we will be asking the Court,

9      imploring the Court, to exercise your supervisory judicial

10     authority in case management over their discovery in this case.

11             The government repeatedly told this Court, and they

12     told defense counsel, that there was no classified information

13     implicated in this case.  And this has been going on for 18

14     months.  The government told the Court that, in setting a trial

15     date——this is back in 2023——that the Court need not factor in

16     CIPA litigation.  And we have been asking and asking, and the

17     government not only refuses to tell us what they asked, when

18     they asked, and who they asked.

19             So, Mr. Shestakov, for 18 months, we have thought one

20     thing.  In the last two to three months, the whole landscape of

21     discovery and the status of this case from the defense

22     perspective has changed.  And it's because they didn't do their

23     job.

24             So, your Honor, I object because we have sat for 18

25     months having been told, we complied with our obligations, and

O878SHEC

1    trust us, and it's none of your business, Rita Glavin and

2    Sergey Shestakov, how we do our business in pulling discovery

3    together.  We object to the extent there is any discussion

4    before the Court about timing and status without defense being

5    a part of it.  There is a way that this can proceed today that

6    is not *ex parte*, and we can step out and the Court could

7    inquire of the government, please tell me what this classified

8    information is.  You can ask them questions about the

9    classified information.  And then we would request that the

10   parties be brought back in to address the timing, the status,

11   and when they became aware of this, because we are entitled to

12   know.

13          He was entitled to a speedy trial, and the trial dates

14   and everything in this case was informed by their

15   representations which were not true.  And as a result, we made

16   motions to compel.  We issued subpoenas.  We made motions *in*

17   *limine*.  And we are going to have to do a do-over based on what

18   has been disclosed slowly over the last few months.  And there

19   are motions to compel now, additional ones we are going to

20   make.

21          The fact that we just learned on August 1st, after

22   asking them for months about Evgeny Fokin's telephone, that was

23   seized and imaged in August of 2021, we have been asking them

24   for months because there were problems with the imaging, and we

25   are only told on August 1st that not only was that imaging done

O878SHEC

1    by an agent who had never used that software before, it's an

2    incomplete image, and they don't know what they imaged and what

3    they didn't image.  How that came to our attention, when we

4    were supposed to have an August 6 trial date, there would have

5    been motion practice about that months ago.

6              So, I am requesting that the Court let them disclose

7    whatever the classified information is, and talk to them about

8    that, and then invite us back in, the parties, to discuss what

9    is timing and status, because there is no need for that to be

10   on an *ex parte* basis.

11             THE COURT:  You also requested a CIPA conference

12   today.  Are you asking for yours to be *ex parte*?

13             MS. GLAVIN:  Yes, your Honor.  The reason we are going

14   to ask is that we have very specific requests that we would ask

15   the Court to make of the government.  And those requests, both

16   dates and times -- and we will probably be asking for a second

17   one because we don't want to give up our work product or our

18   view of some of the evidentiary issues.

19             So, there are some things I would like to point out to

20   the Court so that you're aware of and it will probably also

21   inform the Court at a Section 4 conference.  So I can do that

22   today.  I am not fully prepared because some of the information

23   that we got in the last couple of weeks has changed the

24   landscape for us about how we view this case.

25             So, yes, I am asking for that, and the reason we are

O878SHEC

1    asking for it to be *ex parte* is because it concerns things we

2    want to point out to the Court, as to which we think classified

3    information is relevant, and I don't want to reveal the defense

4    strategy and specific pieces of evidence we have identified.

5            THE COURT:  I don't know that strategy is a reason.

6    In these conferences, they are *ex parte* when there are concerns

7    about classified information and the substance of that

8    information.  If you want to have an *ex parte* conference to

9    talk strategy to me, I'm not sure that I think that's

10   appropriate.

11           MS. GLAVIN:  First, your Honor, two things.

12           Number one is, as the Court may recall, the government

13   submitted *ex parte* a letter to the Court about how they had

14   satisfied their *Brady* obligations.  That shouldn't have been *ex*

15   *parte*, if that's the standard here.  Because their view is it's

16   none of my business.  So we will move to unseal that, and that

17   should not have been done *ex parte*.  That's already been done

18   in that case.

19           But one of the reasons that it's important for you to

20   meet *ex parte* with the defense is that, because of the nature

21   of the classified information, you end up, Judge, standing in

22   our shoes.  And so we are entitled to have an *ex parte*

23   conference in the same way the government is, but for a

24   different reason.  One is because we don't get to ask the

25   questions directly of them about the classified information.

O878SHEC

1    They have told me nothing.  But what we do get to do is inform

2    the Court about specifics with respect to the defense, so that

3    when you stand in our shoes, Mr. Shestakov's shoes, as defense

4    counsel, in assessing what they are telling you, yes, that's

5    part of our work product and strategy, and the process is set

6    up so that we are able to do that when you stand in our shoes.

7             THE COURT:  You have already made many arguments

8    publicly about what you believe the intelligence community has

9    that you think should have been produced to you.  So how is

10   this different?

11            MS. GLAVIN:  Because there are some very specific

12   pieces I want to point out to the Court, dates and things that

13   we have identified in discovery, that I don't want to reveal to

14   the government.  We don't have any burden at trial, and I don't

15   want to reveal to the government what we have seen and its

16   meaning to us.  I am willing to reveal it to the Court because

17   I don't get to ask and hear what it is.  There is a wall.  You

18   are the person straddling both sides of that wall in this case.

19            THE COURT:  Let me turn to the government.

20            First, what is your position on the defense's argument

21   that whatever you want to tell me need not be done *ex parte*?

22            MR. WIKSTROM:  My position is that the information we

23   are going to provide to the Court is classified.  I am trying

24   to think about what I can say here.  I can't provide to the

25   Court the information I intend to provide today if the defense

O878SHEC

1    is in the room.  I can't provide to the Court the information I

2    plan to provide today if we are not in a secure courtroom.  I

3    just can't do it.  I can't do it if there is a risk that the

4    Court is going to unseal it later.  I can't take that risk.  I

5    am not allowed to disclose the information in a way that would

6    be that risky.

7              I will say this 20-minute proceeding is, while we are

8    making records, pure gamesmanship, and an obvious end run

9    around the order the Court issued this afternoon, which already

10   decided this exact issue.  But beyond that, all I can say is we

11   have got a status update for the Court, it includes classified

12   information, and that's what we intend to provide at the

13   Section 2.

14             THE COURT:  To the extent we get into timing and

15   notice, which I understood we would, what is your position on

16   then having the defense come back in for that part?

17             MR. WIKSTROM:  There is no information that I intend

18   to provide to the Court today -- let me bracket that.  There is

19   some basic background information about the Justice Manual and

20   the government's policies that I could provide in open court

21   today, that I will provide sort of by way of situating us.  But

22   beyond that, there is no information I intend to provide at the

23   Section 2 that I can provide with the defense in the room.

24             THE COURT:  What is your position on defendant's

25   request for an *ex parte* conference?

O878SHEC

1          MR. WIKSTROM:  The government has not objected to the

2    conference.  As we expressed in our letter, we are a little

3    puzzled about why it's necessary.  I will say, I know from both

4    Second Circuit case law and case law in this district that it

5    is relatively common for judges to hold *ex parte* conferences

6    with defense counsel in order to inform their consideration of

7    issues on Section 4, and I don't in principle object to that.

8          Here, I don't know what I don't know.  So I don't know

9    what Ms. Glavin plans to say in her conference.  To the extent

10   there is information that ought to be permitted to be shared

11   with the Court *ex parte* to inform the Court's analysis of any

12   CIPA issues, it makes sense to me to do that *ex parte*.  To the

13   extent it's just going to be more of the same as in all her

14   letters, more criticism of the government's discovery, as we

15   have said repeatedly now, I think she should just make a

16   motion, to which we can respond.

17          THE COURT:  All right.

18          Ms. Glavin, I'd rather do your conference on a

19   different day.  Just based on what you have told me orally

20   right now, I am not comfortable having an *ex parte* conversation

21   with you without seeing the authorities.  I am happy to

22   reschedule it in the near term, but I am not going to do that

23   today.

24          MR. WIKSTROM:  Your Honor, if I can make one

25   additional point for the record on that.  We are not asking at

1    the anticipated Section 2 for the Court to do anything; we are

2    not asking for the Court to make any rulings, and we don't

3    intend to make any arguments about relief the Court ought to

4    grant.  I don't think we are going to be asking the Court to do

5    anything today that will be impacted by a delay in any

6    additional *ex parte* conferences.

7         THE COURT:  That was my understanding from the letter

8    you sent today.

9         Ms. Glavin, if you would put in a letter to me what it

10   is that you want to discuss and what your authorities are, I

11   will take it from there.

12        MS. GLAVIN:  Your Honor, we will.  I do want to make

13   clear we object to the extent the government has a conference

14   in anything other than just the pure classified information

15   that's discussed.

16        So, for instance, if it's something that's part of

17   SCI, sensitive compartmented information, and it is anything

18   related to that, that's fine, if it's a particular program or

19   project.  But to the extent there is a discussion about what

20   agency is involved, that is not classified.  To the extent

21   there is a discussion about the timing as to when they will get

22   certain materials from an agency, we will review those

23   materials.  And then, of course, Judge, then it comes to you

24   for review, which is part of the Section 4 process.  None of

25   that is classified.  We are entitled to know that, particularly

O878SHEC

1    given Mr. Shestakov's right to a speedy trial and that the

2    government moved two and a half weeks before trial, without any

3    explanation, a case that they had investigated for two years,

4    that they then had indicted for a year and a half, as to what

5    suddenly came up now.  We have a right to know that because I

6    have a right to make motions about this.

7              And, of course, the government——I just have to say

8    this, Judge——the government wants the Court to think -- I am

9    kind of chuckling to myself about the gamesmanship.  What the

10   government wants you to think is that I have to make a motion

11   for you to do something.  The Court has inherent judicial

12   supervision power.  That's why you do at the initial

13   appearance, that's why Rule 5(f) has the *Brady* order.  The

14   judge has a right, when the government doesn't meet its

15   obligations, or when they have said things to the Court that

16   turned out to be inaccurate or not true, to inquire.  The judge

17   has a right to say these things.  So I think the letter we are

18   going to put in is to ask you to start exercising that power,

19   because there is a serious problem in this case that I have

20   never seen before, as a prosecutor or defense lawyer.

21             So, I want to make that record, but to the extent

22   timing is discussed, volume of information is discussed, when

23   your Honor might be able to review something, none of that is

24   classified.  So we ask to be a part of that.

25             With respect to the *ex parte* conference, it is routine

1   for defense counsel to have *ex parte* conferences with the

2   judge.  It can sometimes deal with client relationships.  It

3   can deal with making proffers to the Court, because we don't

4   have a burden and there's constitutional rights.  But it

5   routinely happens --

6          THE COURT:  I understand that, but I want to know in

7   your case why you want it to happen.  I want you to write to me

8   about what it is you would like to talk about at an *ex parte*

9   conference and why it's proper with authorities.

10          MS. GLAVIN:  Yes.  And one of things that we have been

11   debating doing is a PowerPoint presentation for the Court.

12          MR. WIKSTROM:  Your Honor, may I correct just one

13   possible misimpression?  I want to make sure I am correcting it

14   on a record that has got everyone in it and in an open

15   transcript.

16          THE COURT:  Yes.

17          MR. WIKSTROM:  Without getting into what steps the

18   government took in this case, as a general matter, the

19   government, as I think the Court knows, conducts prudential

20   searches with other agencies in the intelligence community.  My

21   understanding, and Ms. Esbrook will jump up and tell me if I am

22   wrong about this, I suspect, is that the members of the

23   intelligence community, when they receive requests relating to

24   a particular case and indicate that they have responsive

25   results, view that information as itself classified.

O878SHEC

1              In other words, I am not saying what the government

2     has done in this case, but if the government, as a general

3     proposition, sends an intelligence community agency a request

4     for a defendant's identifiers, that agency's response is, oh,

5     yeah, we have 500 documents about that guy, come on and look at

6     them, that information would be classified, as I understand it.

7              THE COURT:  Okay.

8              MS. GLAVIN:  We object.  We don't agree with that, but

9     we don't have to litigate it now.  The government takes a very

10    broad view of what is classified and top secret and not.  Been

11    there, done that.  And they are going to continue to do it

12    because they don't want me anywhere near it.  I don't blame

13    them.  Because every time we get closer to something, it keeps

14    falling apart.

15              Thank you, your Honor.

16              THE COURT:  Thank you.

17              (Adjourned)

18

19

20

21

22

23

24

25