UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

SERGEY SHESTAKOV,

           Defendant.

Case No. 23 Cr. 16 (JHR)

---

# MEMORANDUM OF LAW IN SUPPORT OF
# SERGEY SHESTAKOV'S MOTION TO TAKE A RULE 15 DEPOSITION

Dated:  November 12, 2024
       New York, New York

**GLAVIN PLLC**
Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
156 W. 56th Street, Ste. 2004
New York, NY 10019
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

BACKGROUND ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 8

I.     MR. FOKIN IS UNAVAILABLE. ................................................................................... 8

II.    MR. FOKIN'S TESTIMONY IS INDISPUTABLY MATERIAL. .................................. 9

III.   MR. FOKIN'S TESTIMONY IS NECESSARY TO PREVENT A FAILURE OF JUSTICE ........................................................................................................................ 11

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Hwa*,
  18-CR-538 (MKB), 2021 WL 11723583 (E.D.N.Y Sep. 3, 2021) ............................................. 8

*United States v. Parnas*,
  19-CR-725 (JPO), 2021 WL 2981567 (S.D.N.Y. Jul. 14, 2021) ............................................... 9

*United States v. Abu Ghayth*,
  2014 WL 144653 (S.D.N.Y. Jan. 15, 2014) ............................................................................ 8

*United States v. Al Fawwaz*,
  2014 WL 627083 (S.D.N.Y. Feb. 18, 2014) .......................................................................... 11

*United States v. Bronston*,
  321 F. Supp. 1269 (S.D.N.Y. 1971) ....................................................................................... 10

*United States v. Drogoul*,
  1 F.3d 1546 (11th Cir. 1993) .................................................................................................. 11

*United States v. Epskamp*,
  12 Cr. 120 2013 WL 12175097 (S.D.N.Y. Oct. 2, 2013) ................................................. 12, 13

*United States v. Fargesen*,
  2022 WL 4110303 (S.D.N.Y. Sep. 8, 2022) ....................................................................... 9, 11

*United States v. Grossman*,
  03 CR. 1156 2005 WL 486735 (S.D.N.Y. Mar. 2, 2005) .......................................... 7, 10, 12

*United States v. Johnpoll*,
  739 F.2d 702 (2d Cir. 1984) ..................................................................................................... 7

*United States v. Khan*,
  2008 WL 2323375 (E.D.N.Y. June 2, 2008) ........................................................................... 7

*United States v. Korlokov*,
  870 F. Supp. 60 (S.D.N.Y. 1994) ............................................................................................. 8

*United States v. Rossy*,
  2023 WL 8520732 (S.D.N.Y. Dec. 8, 2023) ............................................................................ 8

*United States v. Sindona*,
  636 F.2d 792 (2d. Cir. 1980) ............................................................................................... 9

*United States v. Sun Myung Moon*,
  93 F.R.D. 558 (S.D.N.Y. 1982) ........................................................................................... 9

*United States v. Vilar*,
  568 F. Supp. 2d 429 (S.D.N.Y. 2008) ........................................................................... 7, 11

*United States v. Wey*,
  2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ....................................................................... 11

*United States v. Pham*, 12-CR-423 (AJN),
  2015 WL 7871348 (S.D.N.Y. Dec. 4, 2015) ....................................................................... 8

**<u>Statutes</u>**

28 U.S.C. § 1783 ....................................................................................................................... 8

**<u>Rules</u>**

Fed. R. Crim. P. 15 ............................................................................................................*Passim*
Fed. R. Crim. P. 17 ................................................................................................................... 8
Federal Rule of Evidence 801 .................................................................................................. 5

iii

Defendant Sergey Shestakov, by and through his undersigned counsel, respectfully submits this brief in support of his motion to take the deposition abroad of Evgeny Fokin, a Russian foreign national who is unavailable to testify at trial and a critical witness in this case, pursuant to Federal Rule of Criminal Procedure 15 (the "Motion").

## BACKGROUND

On January 12, 2023, a grand jury in the Southern District of New York returned an indictment against Sergey Shestakov, charging Mr. Shestakov with: (i) conspiracy to violate IEEPA; (ii) violation of IEEPA; (iii) conspiracy to commit money laundering; (iv) money laundering; and (v) false statements. *See* ECF No. 2 (the "Indictment" or "Ind."). The Indictment alleges that Mr. Shestakov conspired with co-defendant former FBI Agent Charles McGonigal and unindicted co-conspirators Oleg Deripaska ("Oligarch-1") and Evgeny Fokin ("Agent-1") to violate the U.S. sanctions imposed on Mr. Deripaska. Specifically, the Indictment alleges, "[a]t all relevant times, [Fokin] worked for and reported to Deripaska and served as an officer of [En+] that, in 2018, was primarily owned by Deripaska." Ind. ¶ 12. "Beginning in or about the Spring of 2021, [Fokin] began negotiating with MCGONIGAL and SHESTAKOV to retain defendants to work directly for Deripaska, without the involvement of the Law Firm and on a non-legal matter not lawful under the OFAC Sanctions." *Id.* ¶ 18. The government alleges that Evgeny Fokin, acting on Mr. Deripaska's behalf and at his direction, hired Mr. McGonigal and Mr. Shestakov to investigate a rival Russian oligarch, Vladimir Potanin, who was the CEO of Norilsk Nickel ("Nornickel") and its largest shareholder. According to the Indictment, Mr. Deripaska used Mr. Fokin to contract with a New Jersey-based corporation associated with Mr. McGonigal, Spectrum Risk, for "business intelligence services, analysis, and research relevant to [Nornickel], its business operations, and shareholders." Ind. ¶¶ 18-19. According to the Indictment, Mr. Deripaska then

1

purportedly caused money to be sent from a Russian bank through a Cyprus corporation, Pandean Ltd., to Spectrum Risk for those business intelligence services. Spectrum Risk then paid Mr. McGonigal and Mr. Shestakov. *Id.* ¶ 19. The only connection alleged between the sanctioned Mr. Deripaska and Mr. Shestakov is through Mr. Fokin. Indeed, Mr. Fokin—who will not be called to testify on behalf of the government at trial—is mentioned in the Indictment *twenty-five times*, further evidencing his vital role in the government's theory. Accordingly, Mr. Fokin is a cornerstone of both the government's case and the defense, turning on whether he was working as an agent for Mr. Deripaska or acted on behalf of and in his capacity as a high-level En+ employee at the time he engaged with Mr. McGonigal and Mr. Shestakov for business intelligence services concerning Nornickel. A critical defense theory of the case is that Mr. Fokin was acting on behalf of En+ and/or its subsidiary Rusal when he sought out these business intelligence services, and that these business intelligence services were for the purpose of an anticipated corporate battle concerning the management and misuse of Norilsk Nickel ("Nornickel") assets by its CEO Vladimir Potanin. En+'s subsidiary, Rusal, is the second largest shareholder of Nornickel (second to Mr. Potanin himself), and therefore En+ had an enormous financial interest in how Nornickel was managed, how its assets were utilized, and whether Mr. Potanin was self-dealing and/or diluting or misusing assets at the expense of other Nornickel shareholders.

As the Indictment indicates, Mr. Fokin is employed by En+, and currently serves as its director of international cooperation. *See* Ind. ¶ 12; Declaration of Rita M. Glavin ("Glavin Decl.") Exhibit 1 ("[S]ubject stated that he has been working for En+ for about the past 10 years. Subject stated that he is the Director for international government relations.").[1] As the director of international cooperation, Mr. Fokin's responsibilities included analyzing international issues,

---

[1] Hereinafter, exhibits to the Glavin Decl. are referred to as "Ex. _."

2

political risk, building cooperation of foreign corporations and "dealing with various entities to affect the goals of his company." Exs. 1, 2.

### A. Mr. Fokin's August 16, 2021 Statements to the Department of Homeland Security

On August 16, 2021, Mr. Fokin was stopped, searched and interviewed by the U.S. Department of Homeland Security ("DHS") Custom and Border Patrol agents upon entering the United States. Ex. 1. In the interview, Mr. Fokin stated he worked for En+ and came to the United States for a three-day business trip on behalf of En+. *Id.* As part of the trip, Mr. Fokin noted that he may meet with Spectrum, which En+ recently entered a contract with for business diligence on Norilsk Nickel, a Russian nickel company, to ensure "the company is operating properly and without issues." *Id.* Importantly, at no point in the interview did Mr. Fokin state he worked for or reported to Oleg Deripaska. Instead, he specifically stated Mr. Deripaska is "no longer the controlling person within the company." *Id.* As part of the interview, DHS partially imaged Mr. Fokin's phone and took certain screen captures of his laptop. Ex. 3. Notably, due to time constraints, DHS obtained only a partial image of Mr. Fokin's phone. *Id.* Mr. Fokin's phone did not show any direct contact with Oleg Deripaska during the time of the alleged conspiracy.

### B. Mr. Fokin's July 2024 Statements to Counsel for En+

In July 2024, counsel for En+ interviewed Mr. Fokin regarding the business intelligence work at issue in the Indictment. Ex. 2. During that interview, Mr. Fokin stated the following: when he engaged Mr. McGonigal for the business intelligence work in 2021, Mr. Fokin reported to En+'s Deputy CEO, Alexander Osminin and he did not report to Oleg Deripaska; Mr. Fokin received the assignment to engage for this business intelligence work directly from Mr. Osminin; and Mr. Fokin was directed to act on behalf of En+/Rusal in approaching Mr. McGonigal for business intelligence research on Nornickel. *Id.* Counsel for En+ met with the government and informed them of these

facts on or about July 11, 2024. The government first provided the defense with their notes summarizing the meeting—*Brady* material—on or about July 22, 2024.

Moreover, the notes from that meeting reflect that counsel for En+ explained to the government that Arina Lazarou, Secretary of Pandean Ltd. (who is the Pandean signatory on the agreement with Spectrum), has an affiliation with En+. *Id.* Specifically, Ms. Lazarou was affiliated with En+ and "acted as a director of [a] Rusal Company over the years." *Id.*

Pandean Ltd, the Cyprus entity, while not an En+ subsidiary or affiliate itself, had ties to affiliates of En+. *Id.* Notably, the government has been aware of Ms. Lazarou and Pandean Ltd.'s affiliations since at least June 24, 2022, when an FBI Intelligence Analyst provided information connecting Lazarou to En+, including that "according to French corporate registration websites. . . . Arina Lazarou has been affiliated with United Company Rusal." [2] Ex. 4. Moreover, that FBI Intelligence Analyst informed the prosecution team that "[p]ublic financial disclosures from EN+ and Rusal both show multiple entities tied to their respective corporate structures as being affiliated with the same [address as Pandean LTD]: LGA&F Nominee Services Limited, RUSAL Finance Limited, United Company RUSAL IP Limited[.]" *Id.* Notably, the FBI Intelligence Analyst told the prosecution team he had "familiarity with Deripaska['s] network" and "was **not** immediately familiar" with Pandean Ltd. Ex. 5.

Mr. Fokin was Mr. McGonigal's and Mr. Shestakov's direct contact with En+, regarding the business intelligence work. The contract at issue in this matter was directly negotiated with

---

[2] This information is undoubtedly exculpatory and, although the government had this information since June 2022, the government did not produce this information to Mr. Shestakov until July 2024, mere weeks before his criminal trial was set to commence. The government's unreasonably belated disclosure flies in the face of and in direct contravention of Magistrate Judge Cave's January 23, 2023 *Brady* order in this case. ECF No. 11 ("The Government shall disclose such information to the defense promptly after its existence becomes known to the Government."). Moreover, Mr. Shestakov's codefendant was never made aware of this information prior to entering a guilty plea.

Mr. Fokin. Ex. 6. Mr. Fokin made seven trips to the United States from April 2021 through November 2021, and during several of those trips, Mr. Shestakov and Mr. McGonigal met with Mr. Fokin. Ex. 7. Mr. Fokin reviewed the business intelligence work on behalf of En+ and communicated with Mr. McGonigal and Mr. Shestakov about certain areas that En+ wanted additional information or further investigation performed. *See* Ex. 8. Specifically, Mr. Fokin sought further information, including who the ultimate beneficial owner was, on two entities, Atomyze LLC and Symbridge LLC, which had ties to Norilsk Nickel.[3] *See id.* Moreover, Mr. Fokin was responsible for directing payment to be transferred to Spectrum Risk for the work done by Mr. McGonigal and Mr. Shestakov.

Given Mr. Fokin's central importance to the business intelligence project, the government intends to rely on the out-of-court statements of Evgeny Fokin and Charles McGonigal without their live testimony under Federal Rule of Evidence 801(d)(2)(E). *See United States v. Shestakov*,

---

[3] Nornickel is tied to Atomyze. *See, e.g.*, *Nornickel Places Debut Issue Of Digital Financial Assets On Atomyze Blockchain Platform*, NORNICKEL (Aug. 3, 2022), *available at* https://nornickel.com/news-and-media/press-releases-and-news/nornickel-places-debut-issue-of-digital-financial-assets-on-atomyze-blockchain-platform/. Atomyze "launched the first digital token backed by palladium produced by Nornickel." *Blockchain Firm Executes Russia's First Digital Asset Deal With Palladium*, REUTERS (July 18, 2022), *available at* https://www.reuters.com/technology/blockchain-firm-executes-russias-first-digital-asset-deal-with-palladium-2022-07-18/. "'The emergence of Russia's first industrial token marks the entry of the Russian economy into a new period - the era of tokenisation,' businessman Vladimir Potanin said in a statement of his Interros Holding, one of Atomyze's investors and the largest shareholder at metals producer Nornickel." *Id.* "'Unlike unsecured cryptocurrency, where blockchain technology is used to maximise user anonymity, industrial and other tokens are secured by physical assets, and the use of blockchain technology makes transactions with them secure,' he added." *Id.*; *see Interros Had Invested In Atomyze, Which Became First Crypto-Register Company In Russia*, MODERN DIPLOMACY (Feb. 4, 2022) available at https://moderndiplomacy.eu/2022/02/04/interros-had-invested-in-atomyze-which-became-first-crypto-register-company-in-russia/ ("One of the first issuers of the Atomyze global platform was the Global Palladium Fund (GPF), which launched Exchange Traded Commodities (ETC) backed by Norilsk Nickel metals on six key European exchanges"). Symbridge LLC's former CEO also served on the Board of Directors of Atomyze. *See Atomyze Rounds Out Board, Appoints Former CFTC Commissioner Thomas Erickson*, PR NEWSWIRE (April 26, 2021), *available at* https://www.prnewswire.com/news-releases/atomyze-rounds-out-board-appoints-former-cftc-commissioner-thomas-erickson-301276546.html.

No. 23 Cr. 16 (S.D.N.Y. July 2, 2024), ECF No. 126 at 3-5 (the government's motion in limine seeking to admit certain statements including "text messages between and among the defendant, McGonigal, Fokin, and several Agents"). In other words, the government will seek to admit Mr. Fokin's statements and communications—through text messages—without the benefit of his live testimony to explain what he was saying in those messages and what he understood was being said to him. The government will not call him (or Mr. McGonigal for that matter) in their case-in-chief. In turn, the government has also sought to exclude Mr. Fokin's August 16, 2021 statements to DHS, which exculpate Mr. Shestakov and are entirely inconsistent with the government's theory of the case. *See id.* at 10. Although the defense intends to oppose these motions in limine, the government's requests underscore the importance of Mr. Fokin's testimony.

As a Russian national who resides in Russia, Mr. Fokin requires a visa to enter the United States. Glavin Decl. ¶¶ 5-7. Despite previously having such a visa, the FBI requested, in March 2022 while this investigation was ongoing, that the State Department revoke Mr. Fokin's visa and prohibit his entry into the country, which the State Department then did. Ex. 9 ("This memorandum requests the U.S. Department of State (DoS), Bureau of Consular Affairs to assist with the revocation of [Evgeny] FOKIN's visa. . . . ("[T]he FBI request the US Department of State revoke FOKIN's current visa and deny him future access to the United States."); Ex. 10 (noting that Mr. Fokin's visa had been revoked).[4] Thus, the government has made Mr. Fokin's presence in the United States to testify impossible.

Counsel for Mr. Shestakov made several attempts to contact Mr. Fokin directly earlier this year, without success. Glavin Decl. ¶ 3. In subsequent discussions with counsel for En+ following their interview of Mr. Fokin, counsel informed the defense that if the Court authorizes such a Rule

---

[4] As discussed below, the defense only confirmed Mr. Fokin's visa was, in fact, revoked through documents the government produced in August 2024.

6

15 deposition, the company would make "best efforts" to make Mr. Fokin available. Glavin Decl. ¶ 4. Counsel further informed us that, ultimately, it is up to Mr. Fokin if he will testify or not. *Id.*

## LEGAL STANDARD

Under Rule 15, a court may allow "a prospective witness" to be deposed in order to preserve testimony for trial . . . . because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15. It is within the discretion of the trial court to determine whether "exceptional circumstances" and "the interest of justice" exist. *United States v. Johnpoll*, 739 F.2d 702, 708 (2d Cir. 1984). "To demonstrate that exceptional circumstances exist, the movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice. *United States v. Grossman*, No. S2 03 CR. 1156 (SHS), 2005 WL 486735, at *2 (S.D.N.Y. Mar. 2, 2005) (citation omitted). Courts may accept the assertions of counsel on facts relating to availability. *See United States v. Vilar*, 568 F. Supp. 2d 429, 438 (S.D.N.Y. 2008). Testimony is material if it is highly relevant to a central issue in the case. *See id.* at 440 (citing *Grossman*, 2005 WL 486735, at *3). Stated differently, the materiality prong assesses whether the proposed testimony is "essential or critical to the defense, exculpatory or capable of negating an element of the government's case, or is instead cumulative or merely corroborative." *United States v. Khan*, No. 06-cr-255 (DLI), 2008 WL 2323375, at *4 (E.D.N.Y. June 2, 2008). It is well-settled that a Rule 15 deposition is necessary to prevent a failure of justice where the first two elements are met, and "there are no substantial countervailing factors militating against the taking of the deposition." *Grossman*, 2005 WL 486735, at *3. This final factor "is likely satisfied when the first two factors are met." *Khan*, 2008 WL 2323375, at *4. For

the following reasons, each of these elements is met and the Court should grant Mr. Shestakov's request to take Mr. Fokin's deposition.

## ARGUMENT

### I.     MR. FOKIN IS UNAVAILABLE.

Mr. Fokin is unavailable to testify at trial because he is beyond the Court's subpoena power and unable to enter the United States. Mr. Fokin is a Russian national residing in Russia and is, therefore, beyond the Court's jurisdictional reach and not amenable to compulsory process to secure his attendance at trial. *See* Fed. R. Crim. P. 17(e)(2) ("If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service."); *see* 28 U.S.C. § 1783(a); *United States v. Korlokov*, 870 F. Supp. 60, 65 (S.D.N.Y. 1994) ("The Government is unable to compel the attendance of any of these witnesses at trial at New York. As there are not citizens of the United States and do not reside here, they are not amenable to United States subpoenas."). "Foreign witnesses who are not subject to the government's subpoena power and, despite the moving party's appropriate efforts, refuse to travel to [the United States] to testify routinely are found unavailable." *United States v. Abu Ghayth*, No. S14 98 Crim. 1023 (LAK), 2014 WL 144653, at *2 (S.D.N.Y. Jan. 15, 2014); *see United States v. Hwa*, 18-CR-538 (MKB), 2021 WL 11723583, at *44 (E.D.N.Y Sep. 3, 2021) (collecting cases) (same). "For the purpose of Rule 15, unavailability is 'determined according to the practical standard of whether under the circumstances the movant has made a good-faith effort to produce the person to testify at trial.'" *United States v. Pham*, 12-CR-423 (AJN), 2015 WL 7871348, at *1 (S.D.N.Y. Dec. 4, 2015) (citation omitted); *see  United States v. Rossy*, No. 22-CR-550-02, 2023 WL 8520732, at *2 (S.D.N.Y. Dec. 8, 2023) (although "[a] movant must provide specific reasons for a witness's

8

unavailability," there is no precedent requiring "any particular documentary evidence" to establish unavailability under Rule 15).

By virtue of his foreign national status and revoked visa (at the request of the FBI), Mr. Fokin is unavailable. *See United States v. Sindona*, 636 F.2d 792, 803 (2d. Cir. 1980) (Rule 15's exceptional circumstances met when the witness was not subject to subpoena and lacked the necessary travel documents needed to enter the United States); *United States v. Sun Myung Moon*, 93 F.R.D. 558, 559-60 (S.D.N.Y. 1982) ("The 120 witnesses whom the defendants seek to depose are also unavailable within the meaning of Rule 15. These individuals are neither presently residing in the United States nor subject to the subpoena power of this Court and are purportedly unable, or unwilling, for various reasons, to come to the United States.").

Moreover, as an unindicted co-conspirator in this case (and wrongly so), Mr. Fokin, also known as "Agent 1" in the Indictment, is at significant risk of arrest if he enters the United States, thus prohibiting him from traveling to the United States.[5] *See United States v. Fargesen*, No. 21 CR 602 (LAP), 2022 WL 4110303, at *3 (S.D.N.Y. Sep. 8, 2022) ("Unavailability" met where the witness was a non-U.S. citizen residing abroad, are willing to testify, but "unwilling to travel to the United States to testify in person" due, in part," to "the that they might be prosecuted (wrongly, in their view) if they were to enter the United States").

Thus, Mr. Fokin is unavailable to testify at the upcoming trial.

## II.    MR. FOKIN'S TESTIMONY IS INDISPUTABLY MATERIAL.

Mr. Fokin's testimony is undoubtedly material in this proceeding as it bears directly on the heart of the government's theory and Mr. Shestakov's defense: whether Mr. Fokin was an agent

---

[5]    Mr. Fokin would be unable to testify remotely from Russia as "Russian law prohibits taking any testimony under oath in Russia for use in the United States." *United States v. Parnas*, 19-CR-725 (JPO), 2021 WL 2981567, at *7 (S.D.N.Y. Jul. 14, 2021).

9

of Mr. Deripaska in seeking opposition research of a rival or was an employee of En+ in engaging the business intelligence work to protect the financial interests of En+ and Rusal. Though testimony is material if it is highly relevant to a central issue in the case, "it is not necessary that defendant show the testimony will surely acquit him." *United States v. Bronston*, 321 F. Supp. 1269, 1272 (S.D.N.Y. 1971). Mr. Fokin is at the center of the government's allegations. Ind. ¶¶ 12-22 ("At all relevant times, [Fokin] worked for and reported to Deripaska and served as an officer of a corporation that, in 2018, was primarily owned Deripaska."); *id.* ¶ 18 ("Beginning in or about Spring of 2021, [Fokin] began negotiating with McGONIGAL and SHESTAKOV to retain the defendants to work directly for Deripaska, without the involvement of the Law Firm and on a non-legal matter not lawful under OFAC Sanctions.")

      Mr. Fokin's testimony goes to the central issues of fact: on whose behalf was Mr. Fokin acting in his engagement with Mr. McGonigal and Mr. Shestakov for business intelligence services in the summer of 2021. Given Mr. Fokin's consistent and repeated statements since he was stopped in August 2021 and when he was recently interviewed by En+'s counsel, we expect Mr. Fokin will testify that the business intelligence work was for En+ and not Mr. Deripaska. *Grossman*, 2005 WL 486735, at *4 (the witness' "testimony is material because it would challenge central aspects of the government's allegations"). Indeed, counsel for En+ already informed the government of Mr. Fokin's most recent statements on this issue, including that En+ deputy CEO Alexander Osminin, not Mr. Deripaska, directed Mr. Fokin to engage investigators to perform business intelligence work on Nornickel and approved the contract with Mr. McGonigal through Spectrum. Ex. 2.

      Mr. Shestakov also expects that Mr. Fokin would testify that he negotiated the contract at issue with Spectrum with the approval of his boss at En+. Even more, Mr. Shestakov anticipates

10

Mr. Fokin's testimony would corroborate Mr. Shestakov's defense by reaffirming Mr. Fokin's statement to DHS that: "En+ just recently entered into a contract with Spectrum" and that "Spectrum will conduct due diligence on Norilsk, a Russian nickel company." Ex. 1. Moreover, his testimony will provide important information on En+'s intentions and interests in entering this contract and obtaining the business intelligence reports. Mr. Fokin's testimony is crucial to Mr. Shestakov's defense. *See United States v. Al Fawwaz*, No. S7 98 CRIM. 1023 LAK, 2014 WL 627083, at *3 (S.D.N.Y. Feb. 18, 2014) (reasoning that exculpatory testimony is material under Rule 15).

Further, Mr. Fokin's testimony would not be cumulative. Mr. Fokin is the key – and only – witness who can testify regarding his work for En+, who he answered to within the company, and the purpose of the business intelligence work from En+'s perspective. *See Fargesen*, 2022 WL 4110303, at *4 ("That other documents and testimony may also be relevant to the defense does not mean that the witnesses' testimony will be so cumulative as to be immaterial.")

### III.    MR. FOKIN'S TESTIMONY IS NECESSARY TO PREVENT A FAILURE OF JUSTICE

Mr. Fokin's testimony is necessary to prevent a failure of justice because, for the reasons discussed above, he has met the first two requisite factors under Rule 15, and there are no substantial countervailing factors. "When the first two prongs of [Rule 15's] exceptional-circumstances test are met, the third prong, 'necessity to prevent a failure of justice,' is 'likely satisfied' if 'there are no substantial countervailing factors militating against the taking of the deposition." *United States v. Wey*, 15-cr-611 (AJN), 2017 WL 237651, at *24 (S.D.N.Y. Jan. 18, 2017) (cleaned up). As established above, Mr. Fokin is unavailable, and his testimony is material to Mr. Shestakov's defense. *See Vilar*, 568 F. Supp. 2d at 442 (quoting *United States v. Drogoul*, 1 F.3d 1546, 1556 (11th Cir. 1993)) ("[W]hen a substantial likelihood exists that the prospective

11

deponents will be unavailable for the trial and their testimony is highly relevant to a central issue in the case, justice generally requires preservation of that testimony.").

Mr. Shestakov's trial is currently scheduled to commence on February 10, 2025, providing adequate time to coordinate and take Mr. Fokin's deposition in a foreign country without delaying the trial. *See United States v. Epskamp*, No. 12 Cr. 120 (RJS), 2013 WL 12175097, at *2 (S.D.N.Y. Oct. 2, 2013) (Rule 15 deposition was in the interests of justice where defendant could be "substantial[ly]" prejudiced if the motion were denied); *Grossman*, 2005 WL 486735, at *4 (granting motion to take Rule 15 deposition a month before trial was scheduled to commence).

Moreover, the materiality of Mr. Fokin's testimony has been made clear in the government's recent productions doling out evidence critical to the defense little by little. As discussed *supra*, shortly before the August 6, 2024 trial date, the government produced *Brady* material consisting of notes from their meeting with counsel for En+ in which the government was informed that Mr. Fokin was interviewed and insisted that the contracted work was for En+, not Mr. Deripaska. Ex. 2. Moreover, the government also recently produced records confirming Mr. Fokin's unavailability and materiality. Records produced by the government in mid-August 2024 confirmed Mr. Fokin's visa had, in fact, been revoked. Ex. 10. Earlier in August, the government produced records indicating that the border search of Mr. Fokin's cellphone and laptop had been incomplete – including that the phone extraction was "limited" rather than "full" and the laptop exam was "basic," involving agents simply "click[ing] through it" and taking screenshot only if there is something "pertinent" in their view. Exs. 3, 11. Accordingly, because the extractions were inadequate, Mr. Fokin's live testimony is crucial. Moreover, most recently – **on October 25, 2024** – the government produced statements of a former En+ employee who worked at the company from 2019 through 2021, Sakura Amend. In 2022, Ms. Amend told the government: she knew Mr.

12

Fokin and had worked with him; that Mr. Fokin was loyal to and would report to EN+'s Chairman Lord Barker, who was installed as chairman as part of an agreement with the United States to remove sanctions on En+ and limited Oleg Deripaska's control; and it was possible Mr. Fokin could have an interest in Norilsk Nickel "given his position at En+." Ex. 12. The government appears to have spoken to Ms. Amend or some other unidentified En+ employee once again on July 17, 2024—shortly before the August 6, 2024 trial date. Ex. 13. In heavily redacted notes produced to the defense in late October, 2024, that witness recalled working on a crisis plan related to Norilsk Nickel that Mr. Fokin may have been involved in, and the witness had a folder for Norilsk Nickel on the witness's personal computer from the witness's time working at En+. *Id.* Thus, the government's continued trickle of critical *Brady* information has made clear the need for Mr. Fokin's testimony. *See Epskamp*, 2013 WL 12175097, at *1 (citation omitted) (finding proposed testimony material for if it is believed by the jury the testimony would negate intent and be "highly relevant to a central issue in the case").

Thus, Mr. Shestakov has satisfied the third prong of the exceptional-circumstances test.

## **CONCLUSION**

      For the foregoing reasons, Mr. Shestakov respectfully requests that the Court order a Rule 15 deposition of Mr. Fokin.

| | |
|---|---|
| Dated: New York, New York<br>November 12, 2024 | Respectfully submitted,<br><br>*/s/ Rita M. Glavin*<br><br>Rita M. Glavin<br>Katherine E. Petrino<br>Leo S. Korman<br>Glavin PLLC<br>156 West 56th Street, Ste. 2004<br>New York, NY 10019<br>Tel: (646) 693-5505<br>rglavin@glavinpllc.com<br><br>*Counsel for Sergey Shestakov* |