UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

SERGEY SHESTAKOV,

            Defendant.

---

23 Cr. 16 (JHR)

# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO TAKE A RULE 15 DEPOSITION

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
26 Federal Plaza, 37th Floor
New York, New York 10278

Rebecca T. Dell
Sheb Swett
Derek Wikstrom
Assistant United States Attorneys
   *Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1
ARGUMENT .................................................................................................................................. 1
   I. The Motion for a Rule 15 Deposition Should Be Denied ....................................................... 1
      A. Applicable Law .................................................................................................................. 1
      B. Discussion .......................................................................................................................... 4
         1. Countervailing Considerations Weigh Heavily Against Granting a Rule 15 Deposition 4
         2. Shestakov Has Not Established that the Witness Is Unavailable .................................. 7
CONCLUSION ............................................................................................................................. 10

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to defendant Sergey Shestakov's motion to depose Evgeny Fokin pursuant to Federal Rule of Criminal Procedure 15 (Dkt. 176 ("Motion" or "Mot.")).[1] Rule 15 requires Shestakov to establish "exceptional circumstances" justifying the deposition, but the Motion falls far short of meeting that standard. For starters, the Motion is futile, because Fokin is a Russian citizen and resident, and Russian law prohibits the taking of depositions for use in the United States. But even if it were possible to lawfully depose Fokin, the inability to effectively place him under oath, and the lack of any possibility of extradition, would render his already suspect testimony completely unreliable. Nor, in any event, has the defense—which has been unable to contact Fokin at all (Mot. 6)—met its burden to establish that Fokin is unavailable to testify at trial. The Motion should be denied.

**ARGUMENT**

**I.   The Motion for a Rule 15 Deposition Should Be Denied**

   **A.  Applicable Law**

Rule 15 permits the Court to order a pretrial deposition in a criminal case only "because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). A Rule 15 deposition is taken "in the same manner as a deposition in a civil action," and the "scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial." Fed. R. Crim. P. 15(e). But as "more than one court has observed," depositions taken outside the United States "are suspect and, consequently, not favored." *United States v. Oudovenko*, No. 00 Cr. 1014 (JG), 2001 WL 253027, at *3 (E.D.N.Y. Mar. 7, 2001)

---

[1] "Mot. Decl." refers to the declaration submitted in support of the defendant's motion (Dkt. 177), and "Mot. Ex." refers to exhibits to that declaration. Unless otherwise noted, case text quotations omit internal quotation marks, citations, footnotes, and previous alterations.

(quoting *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993), and collecting cases). "This is due, in part, to the use of different procedures related to, *inter alia*, the oath, the translation process, and the opportunity for cross-examination." *Id.*; *see also United States v. Salim*, 855 F.2d 944, 950 (2d Cir. 1988) (expressing "considerable concern about the possible abuses of foreign methods of examining witnesses"); *United States v. Feijoo-Tomala*, 751 F. Supp. 40, 43 (E.D.N.Y. 1990) (noting that foreign depositions may "lack[] the sanction of perjury").

The party seeking a Rule 15 deposition bears the burden of establishing the existence of "exceptional circumstances." *United States v. Vilar*, 568 F. Supp. 2d 429, 437 (S.D.N.Y. 2008). As that phrase signifies, Rule 15 depositions should be granted only rarely. *See, e.g.*, *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994) ("The words 'exceptional circumstances' bespeak that only in extraordinary cases will depositions be compelled."); *United States v. Rosen,* No. 05 Cr. 225, 2006 WL 5029996, at *1 (E.D. Va. Apr. 21, 2006) ("Rule 15(a) depositions are appropriately granted only in rare circumstances."). To obtain a Rule 15 deposition, the movant "must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *Vilar*, 568 F. Supp. 2d at 437 (quoting *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001)).

To meet the burden of establishing a witness's unavailability, the movant must have made a "good-faith effort to produce the person to testify at trial." *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984). This means that the moving party must establish that the foreign-based witness is truly unable or unwilling to come to the United States to testify; a defense counsel's representation that a witness would not voluntarily travel to the United States to testify at the trial, without more, is insufficient to satisfy this requirement. *See Oudovenko*, 2001 WL 253027, at *2; *see also United States v. Chusid*, No. 00 Cr. 0263 (LAK), 2000 WL 1449873, at *1 (S.D.N.Y.

2

Sept. 27, 2000) ("Conclusory statements of unavailability by counsel are insufficient."); *United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962) ("Neither the motion nor the supplementary affidavit…did more than allege, in conclusory terms, the availability of the five proposed witnesses."); *Vilar*, 568 F. Supp. 2d at 438 (suggesting that repeated contact and offers to pay all expenses of the witnesses would meet good faith requirement). When the basis for alleged unavailability is the lack of a visa, courts generally expect the movant to make efforts to acquire a visa or ask the Government to do so. *See, e.g.*, *United States v. Robinson*, 205 F.3d 1326 (Table), 1999 WL 1254436, at *1 (2d Cir. 1999) (affirming denial of motion for Rule 15 deposition where "there was no suggestion" that the movant "had attempted to use foreign service of process to compel them to appear," nor "even begun the process of applying for visas for them"); *United States v. Paredes-Cordova*, No. 03 Cr. 987 (DAB), 2009 WL 1585776, at *4 (S.D.N.Y. June 8, 2009) ("Defendant has not shown the Court any efforts to obtain visas for the prospective witnesses, either by counsel, or with the help of the Government.").

Evidence is "material" for purposes of Rule 15 "if it is 'highly relevant to a central issue in the case.'" *United States v. Grossman*, No. 03 Cr. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005) (quoting *Drogoul*, 1 F.3d at 1556); *see also United States v. Abu Ghayth*, No. 98 Cr. 1023 (LAK), 2014 WL 144653, at *2 (S.D.N.Y. Jan. 15, 2014) (proposed Rule 15 testimony "should be more than merely relevant"). The movant must make "some showing, beyond unsubstantiated speculation," that the testimony sought in the Rule 15 deposition "exculpates the defendant." *United States v. Kelley*, 36 F.3d 1118, 1125 (D.C. Cir. 1994).

Finally, "[t]he 'failure of justice' element is met if the other two elements are met and there are no other countervailing factors." *United States v. Epskamp*, No. 12 Cr. 120 (RJS), 2013 WL 12175097, at *2 (S.D.N.Y. Oct. 3, 2013); *accord Vilar*, 568 F. Supp. 2d at 442 (courts must

3

consider "substantial countervailing factors militating against the taking of the deposition"). The lack of an incentive for truthful testimony is an important potential countervailing factor. *See United States v. Buck*, 271 F. Supp. 3d 619, 624 (S.D.N.Y. 2017); *United States v. Banki*, No. 10 Cr. 08 (JFK), 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010). Other countervailing factors include, for instance, "whether the safety of United States officials would be compromised by going to the foreign location." *United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000).

B.  Discussion

1. **Countervailing Factors Weigh Heavily Against Granting a Rule 15 Deposition**

Shestakov's motion does not address where (or when) his requested deposition would take place. (*See* Mot. 1 (seeking a "deposition abroad")). But it confirms that Fokin is a Russian resident and citizen. (Mot. 6). This poses an obvious problem: deposing Fokin in Russia is impossible. "Russian law prohibits taking any testimony under oath in Russia for use in the United States."[2] *United States v. Parnas*, No. 19 Cr. 725 (JPO), 2021 WL 2981567, at *7 (S.D.N.Y. July 14, 2021). Indeed, in *Parnas*, Judge Oetken denied a Rule 15 deposition involving a Russian witness—without even reaching materiality—for that precise reason. *See also id.* ("Moreover, such testimony would be taken without an effective oath, the possibility of extradition, or any of the usual indicia of reliability.").[3]

But even if Russian law permitted the requested deposition, multiple countervailing considerations would still weigh against it. For one thing, even aside from the impossibility of conducting the deposition, Russia also will not extradite its citizens to the United States, which

---

[2] Curiously, Shetsakov cites *Parnas* for this proposition, but frames it only as an impediment to remote testimony, and not equally an impediment to a deposition in Russia. (*See* Mot. 9 n.5).

[3] As discussed further below, because the defense has not spoken to Fokin, Shestakov has provided no basis to conclude that a Rule 15 deposition could occur anywhere other than Russia.

4

ensures that there can be no prosecution for perjury and, therefore, no enforceable oath. *See id.* Yet to testify, a trial witness "must give an oath or affirmation to testify truthfully," and the oath is supposed to take "a form designed to impress that duty on the witness's conscience." Fed. R. Evid. 603. That is scarcely possible where, as here, the oath would be toothless, because—in stark contrast to any in-person trial witness—the witness could not be held accountable for violating it. Courts recognize that, without the meaningful threat of extradition and prosecution for any perjury by the witness, the oath is essentially meaningless. *See, e.g.*, *Buck*, 271 F. Supp. 3d at 624 (deposition of an un-extraditable witness seeks would "essentially be free of any penalty of perjury, calling into doubt the reliability of any of the potential testimony"); *Banki*, 2010 WL 1063453, at *2 (denying motion for remote testimony of an Iranian witness in Iran, because "[w]ithout the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital. Thus, the strongest indicator of the reliability of a witness's testimony—the oath—is effectively absent here"). Further, even setting aside the issues presented by the unenforceable oath, courts have found that other Russian procedures would stymie cross-examination. *See Ourdovenko*, 2001 WL 253027, at *3 (at a deposition in Russia, "the government would not have a full opportunity to cross-examine the witness, and might not even be permitted to ask any of the questions").

Those factors weigh particularly heavily against the Motion, because Fokin's account—as relayed through unsworn statements made to counsel for his employer—is extremely unreliable. Fokin, an unindicted co-conspirator in this case, offers a version of events in which he (and therefore Shestakov) were not working for Oleg Deripaska.[4] Instead, in Fokin's apparent telling, Fokin was working for a single colleague at his company, who has passed away (and thus cannot

---

[4] Given the substance of Fokin's proffered testimony—however unreliable—the Government does not contest materiality for purposes of this Motion.

5

confirm any of this), on a purportedly secret project that only the two of them knew about and that was not reflected in the company's records. (*See* Mot. 10; Mot. Ex. 2 at 2-3, 5). Fokin's account, as relayed by his employer's attorneys, is contradicted in multiple respects by other evidence. That makes it especially important that Fokin—a central player in the charged conspiracy, who has an obvious incentive to help his longtime friend and co-conspirator—be subject to meaningful cross-examination, under an enforceable oath, in person before a jury that can evaluate his credibility.

Another countervailing factor is that it would be dangerous for lawyers—either United States officials or defense attorneys—to travel to Russia to take the depositions. In 2021, in *Parnas*, the Government submitted a declaration from an Attorney Adviser in the Office of the Assistant Legal Adviser for Consular Affairs at the United States Department of State. That declaration (the "State Dept Decl.")[5] explained that Russian authorities "do <u>not</u> recognize the authority or ability of foreign persons, such as American attorneys, to take voluntary depositions of willing witnesses," and that Russia has indicated that such depositions would violate "Russia's judicial sovereignty," potentially resulting in the "arrest, detention, expulsion, or deportation of the American attorney." (State Dept. Decl. ¶¶ 1, 6, 7). And even absent the apparent risk of arrest and detention, the State Department, as recently as June 2024, has warned that United States citizens should not travel to Russia because of safety risks, including the "risk of wrongful detention of U.S. nationals," and that any citizens "residing or traveling in Russia should leave immediately."[6] The risks of taking a deposition in Russia weigh heavily against permitting Shestakov's requested deposition. *E.g. Olafson*, 213 F.3d at 442; *United States v. Moalin*, No. 10 Cr. 4246, 2012 WL

---

[5] The State Dept. Decl. was docketed at *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y.), Dkt. 163-9, and is attached to this brief as Exhibit A for ease of reference.

[6] United States Department of State, *Russia Travel Advisory* (June 24, 2024), https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/russia-travel-advisory.html.

6

3637370, at *5-6 (S.D. Cal. Aug. 22, 2012) (holding that safety concerns weighed "decisively" against requested Rule 15 depositions); *United States v. Jefferson*, 594 F. Supp. 2d 655, 672 (E.D. Va. 2009) ("[C]ourts should not order Rule 15 depositions that place prosecutors, counsel, or others in jeopardy of being killed, injured, or kidnapped.").

In light of the countervailing factors,[7] it is granting Shestakov's motion, not denying it, that would cause a "failure of justice."

### 2. Shestakov Has Not Established that the Witness Is Unavailable

Shestakov bears the burden of establishing that he "made a 'good-faith effort to produce the person to testify at trial,'" and of providing "specific reasons" that the witness is unavailable. *Parnas*, 2021 WL 2981567, at *6 (quoting *Johnpoll*, 73 F.2d at 709). Shestakov has not established unavailability. He argues that Fokin is unavailable "because he is beyond the Court's subpoena power and unable to enter the United States." (Mot. 8). But the Court can no more order Fokin to sit for a deposition in Russia than it can subpoena him to testify in New York, and Fokin will be able to enter the United States should he wish to do so, because the Government will assist him in obtaining a visa. Neither supposed impediment supports a finding of unavailability.

---

[7] To the extent that any difficulty in arranging the requested deposition jeopardizes the February 2025 trial date in this case, that would be an additional countervailing factor justifying denying the Motion. Courts recognize "unexcused delay" as a discretionary basis on which to deny a Rule 15 motion. *E.g. Vilar*, 568 F. Supp. 2d at 442. Here, there was significant delay in filing the Motion. Shestakov previewed that Rule 15 depositions could be sought more than a year and a half ago, at a March 2023 status conference. (*See* Mar. 8, 2023 Tr. at 9). And in January 2024, defense counsel notified the Government that it intended to "file a motion in the next few weeks seeking Rule 15 depositions," including a deposition of Fokin, writing, "We will be submitting a letter to Judge Rearden on this, to give her a heads up." That letter never came. But when the Government asked when and where those depositions would take place, and whether counsel had spoken to the proposed witnesses about their availability, defense counsel responded without providing the requested information. Shestakov has not explained this delay in filing the Motion.

*First*, the claim that Fokin is beyond the Court's subpoena power is true, as far as it goes. But Fokin is likewise effectively beyond the power of any treaty or other international agreement to compel his testimony in Russia. As the State Department has explained, although "Russia has insisted on exclusive use of letters rogatory" for defendants to obtain evidence or testimony in Russia, "this vehicle has proven in practice to be unreliable. To the best of our knowledge, no request for testimony pursuant to letters rogatory on behalf of the defense in a criminal case, or in a civil case, has been successfully executed in Russia in recent years." (State Dept. Decl. ¶ 8). *See also, e.g.*, *In re Qiwi PLC Securities Litig.*, No. 20 Civ. 6054, 2022 WL 20527316, at *5 (E.D.N.Y. Sept. 30, 2022) ("[T]he United States Department of State maintains that Russia has refused to cooperate when requests to serve process in Russia are made from the United States."). As a result, Fokin cannot be compelled to participate in this case either here or in Russia, so, as the defense declaration recognized, "it is ultimately up to Mr. Fokin whether he will testify or not."[8] (Mot. Decl. ¶ 4).

More to the point, it is unknown whether Fokin will agree to testify in this case or not. The defense has been unable to speak either to Fokin or to any attorney representing him.[9] (Mot. 6; *see also* Mot. Decl. ¶ 3). That means that Shestakov and his counsel cannot represent—and have not represented—that Fokin is *actually* unable to come to the United States. They can only speculate

---

[8] The fact that Fokin can effectively choose freely whether or not to participate in this case at all supports denying the Motion. If Fokin were to volunteer to testify on Shestakov's behalf, but only if he can do so from Russia (or some other country where his extradition would be unlikely or impossible if he committed perjury), it would only reinforce the importance of insisting that his testimony be preceded by an effective oath.

[9] This also distinguishes this case from *United States v. Fargesen*, No. 21 Cr. 602 (LAP), 2022 WL 4110303 (S.D.N.Y. Sept. 8, 2022), on which Shestakov relies (Mot. 9). In *Fargesen*, the proposed witnesses had actually expressed an unwillingness to travel from Dubai to the United States and a fear of prosecution. *Id.* at *3. Here, by contrast, the defense has not spoken with Fokin. The countervailing factors discussed above were also largely absent in *Fargesen*. *See id.*

8

that he might be. But "unfounded speculation is not enough." *Oudovenko*, 2001 WL 253027, at *1. And Shestakov's inability to do more than argue that it is unlikely that Fokin will come testify at trial is fatal to the Motion. "[A] defendant's mere allegation that there is reason to believe that a foreign witness would not attend trial in the United States is an insufficient basis upon which to require the taking of the witness'[s] deposition." *Parnas*, 2021 WL 2981567, at *7 (quoting *United States v. Merrit*, No. 90 Cr. 767, 1991 WL 79235, at *4 (S.D.N.Y. May 7, 1991)); *see also, e.g.*, *United States v. Korogodsky*, 4 F. Supp. 2d 262, 266 (S.D.N.Y. 1998) (denying Rule 15 motion where the defendant had not made the "representation" that proposed witnesses were "unwilling to testify at trial"); *Paredes-Cordova*, 2009 WL 1585776, at *4-5 (witnesses not unavailable where defendant had not sought visas for them, nor affirmed "that his 'longtime friends' are unwilling or unable to travel to the United States for trial such that service of process is necessary"). While it may be true that courts "routinely" find unavailability where foreign witnesses "refuse to travel" here to testify, "despite the moving party's appropriate efforts," (Mot. 8 (quoting *Abu Ghayth*, 2014 WL 144653, at *2)), here Shestakov has not made appropriate efforts (such as speaking with Fokin, and offering to pay for his travel), and in any event, Fokin has not "refuse[d] to travel to this country to testify." *Abu Ghayth*, 2014 WL 144653, at *2.

*Second*, Fokin will not have difficulty entering the United States should he wish to come here to testify in this case. It is true, as Shestakov notes, that the United States revoked Fokin's visa when he was determined to have participated in crimes in this country. (Mot. 6). But courts expect defendants and their proposed witnesses to seek the Government's assistance to facilitate foreign witnesses' attendance at trial. *See, e.g.*, *Paredes-Cordova*, 2009 WL 158776, at *4 (denying motion where the defendant neither made his own efforts to secure a visa for a witness nor sought "the help of the Government"); *United States v. Pham*, No. 12 Cr. 423 (AJN), 2015

9

WL 7871348, at *3 (S.D.N.Y. Dec. 4, 2015) (where proposed witness had not attempted to obtain a visa or made official inquiries to determine whether an application would be futile, defendant's reliance on the "subjective belief" that the witness would "be unable to enter the United States…suggests that the Defendant may not have made a sufficient 'good-faith effort'" (quoting *Johnpoll*, 739 F.2d at 709)).

Had Shestakov asked, the Government would have confirmed that it will assist in ensuring that Fokin can obtain a visa for the limited purpose of traveling to the United States to testify on Shestakov's behalf, should he wish to do so. As a result, the prior revocation of Fokin's visa has no bearing on his availability to testify at trial. If he applies, he will be able to obtain a visa and travel to the United States to testify at trial.

## CONCLUSION

For the reasons set forth above, Shestakov's motion to take a Rule 15 deposition should be denied.

Dated: New York, New York
November 26, 2024

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:    /s/
Rebecca T. Dell
Sheb Swett
Derek Wikstrom
Assistant United States Attorneys
Tel.: 212-637-2198 / 6522 / 1085