UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

SERGEY SHESTAKOV,

            Defendant.

Case No. 23 Cr. 16 (JHR)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
SERGEY SHESTAKOV'S MOTION TO TAKE A RULE 15 DEPOSITION**

Dated: December 17, 2024
       New York, New York

**GLAVIN PLLC**
Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
156 W. 56th Street, Ste. 2004
New York, NY 10019
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.     MR. FOKIN IS UNAVAILABLE. ............................................................................ 3

II.    MR. FOKIN'S TESTIMONY IS INDISPUTABLY MATERIAL. .................................. 6

III.   MR. FOKIN'S TESTIMONY IS NECESSARY TO PREVENT A FAILURE OF JUSTICE. ...................................................................................................................... 8

CONCLUSION ..................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*United States v. Abu Ghayth*,
   2014 WL 144653 (S.D.N.Y. Jan. 15, 2014) ............................................................................... 9

*United States v. Alexandre*,
   22 Cr. 326 2022 WL 9843495 (S.D.N.Y. Oct. 17, 2022) ..................................................... *Passim*

*United States v. Banki*,
   2010 WL 1063453 (S.D.N.Y. Mar. 23, 2010) ...................................................................... 9, 10

*United States v. Banki*,
   2010 WL 1459442 (S.D.N.Y. Apr. 6, 2010) ........................................................................ 10, 11

*United States v. Buck*,
   271 F. Supp. 3d 619 (S.D.N.Y. 2017) .................................................................................. 9, 10

*United States v. Epskamp*,
   2013 WL 12175097 (S.D.N.Y. Oct. 3, 2013) ............................................................................ 3

*United States v. Fargesen*,
   2022 WL 4110303 (S.D.N.Y. Sep. 8, 2022) ..................................................................... *Passim*

*United States v. Grossman*,
   2005 WL 486735 (S.D.N.Y. Mar. 2, 2005) .................................................................. 2, 3, 4, 9

*United States v. Johnpoll*,
   739 F.2d 702 (2d Cir. 1984) ..................................................................................................... 3

*United States v. Little*,
   2014 WL 1744824 (S.D.N.Y. Apr. 23, 2014) ...................................................................... 6, 10

*United States v. Mohamed*,
   2020 WL 1545522 (E.D.N.Y. Apr. 1, 2020) ........................................................................... 11

*United States v. Pacelli*,
   491 F.2d 1108 (2d Cir. 1974) ................................................................................................... 8

*United States v. Salim*,
   855 F.2d 944 (2d Cir. 1988) .............................................................................................. 10, 11

*United States v. Sun Myung Moon*,
   93 F.R.D. 558 (S.D.N.Y. 1982) ................................................................................................ 2

*United States v. Vilar*,
    568 F. Supp. 2d 429 (S.D.N.Y. 2008) ................................................................................... 2, 3

*United States v. Wey*,
    2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ............................................................................... 6

**Statutes**

28 U.S.C. § 1783 ................................................................................................................................ 4

**Rules**

Fed. R. Crim. P. 15 ..................................................................................................... *Passim*
Fed. R. Crim. P. 17 ................................................................................................................... 4
Fed. R. Evid. 801 .................................................................................................................. 7, 8
Fed. R. Evid. 802 ....................................................................................................................... 7
Fed. R. Evid. 803 ....................................................................................................................... 7

Defendant Sergey Shestakov, by and through his undersigned counsel, respectfully submits this reply brief in further support of his motion to take the deposition abroad of Evgeny Fokin pursuant to Federal Rule of Criminal Procedure 15 (the "Motion").[1]

## **PRELIMINARY STATEMENT**

In an attempt to prevent Mr. Shestakov from obtaining what the government agrees is material, exculpatory testimony from Mr. Fokin on central issues in the case, the government attacks a strawman—*i.e.*, that the proposed deposition cannot proceed in Russia—and then speculatively complains about a slew of logistical concerns. None of these arguments pass muster, particularly where the government has conceded that Mr. Fokin's testimony is material. And how could it not be: Mr. Fokin has consistently stated that the business intelligence work at issue was done on behalf of En+—not Oleg Deripaska as wrongly charged in the Indictment.

Instead, on the remaining issues relevant to the Court's determination on a Rule 15 motion, the witness's unavailability and the interests of justice, the government grasps at straws to avoid truthful testimony from a critical witness who will exonerate Mr. Shestakov: attacking a deposition location Mr. Shestakov did ***not*** propose; speculatively raising logistical obstacles; and attempting to obviate Mr. Fokin's unavailability. Ignoring the government's own actions in making Mr. Fokin unable to travel to the United States to testify at trial (by revoking his visa), the government now claims Mr. Shestakov has not carried his burden in demonstrating Mr. Fokin's unavailability and disingenuously offers Mr. Fokin a limited purpose visa while still asserting he is an unindicted co-conspirator (for whom the government makes no representation that he will not be subject to arrest if he entered the United States). To the contrary, the objective facts demonstrate Mr. Fokin's

---

[1] For ease of reference, we use terms as they are defined in Mr. Shestakov's moving memorandum of law ("Mov. Mem."). References to the government's opposition, ECF No. 178, are cited as "Govt. Opp."

1

unavailability, particularly given the government's position that Mr. Fokin is an unindicted co-conspirator. Moreover, and most importantly, after speaking with Mr. Fokin's recently retained counsel in the last several days, it is now without question that Mr. Fokin is unwilling to come to the United States. As set forth in more detail below, Mr. Fokin's counsel informed us that Mr. Fokin is willing to voluntarily appear at a deposition in a neutral country, and specifically said he would appear in the United Arab Emirates (UAE) or Turkey. Supplemental Declaration of Rita M. Glavin ("Glavin Supp. Decl.") ¶¶ 6–8. He also informed us that Mr. Fokin is unwilling to come to the United States even if the government gave him a special visa or safe passage to do so. *Id.* ¶ 8. In terms of timing, Mr. Fokin's counsel is working to find dates in January for the deposition, so that the trial can proceed as scheduled on February 10, 2025.[2] *Id.* ¶ 9. Mr. Shestakov should be

---

[2] The government's theoretical concern that the deposition could "jeopardize[] the February 2025 trial date," Govt. Opp. at 7 n.7, is particularly ironic given the government's own adjournment request of the August 2024 trial *on the eve of trial* to deal with the government's forthcoming motion under the Classified Information Procedures Act ("CIPA") Section 4 to withhold classified materials, after repeatedly representing to the Court and the defense that CIPA was not implicated in this case. *See* ECF Nos. 144, 150, 151, 153, 163, 164, 170, 173, 188. As for the government's assertion, in a footnote, about some alleged delay in bringing this Rule 15 motion, the government has not argued (because it cannot) that there was "serious lack of due diligence" or "bad faith" on Mr. Shestakov's part. *United States v. Vilar*, 568 F. Supp. 2d 429, 442-43 (S.D.N.Y. 2008); *United States v. Grossman*, No. 03 Crim. 1156 (SHS), 2005 WL 486735, at *4 (S.D.N.Y. Mar. 2, 2005). While defense counsel put the government on notice about a potential Rule 15 motion earlier this year when the trial date was in June 2024, the Rule 15 motion was simply not ripe until we attempted to contact Mr. Fokin, learned what he would testify to on the critical issues, and confirmed whether Mr. Fokin had legal representation. Mr. Shestakov's counsel diligently attempted to contact Mr. Fokin without success, and then engaged with counsel for En+ regarding the potential motion and Mr. Fokin's testimony. Moreover, the government only produced its notes of a meeting with counsel for En+ recounting an interview with Mr. Fokin a few months ago. These notes previewed Mr. Fokin's Rule 15 deposition testimony. *See* Ex. 2. The Motion was further delayed by ongoing discussions with En+ counsel in September and October regarding En+ securing individual counsel for Mr. Fokin (a current En+ employee) for purposes of advising him on a Rule 15 deposition, which did not happen until last week when the retainer for counsel was finalized. As recognized in *Vilar*—which the government cites— "periods of delay are simply unrelated to the issue of whether conducting the proposed deposition[] at this time would unfairly prejudice" the opposing party. 568 F. Supp. 2d at 443-44. *Vilar* also observed that district courts in this Circuit "have granted Rule 15 motions" filed close in time to trial. 568 F. Supp. 2d at 443 (citing *Grossman*, 2005 WL 486735, at *4 (granting the defendant's Rule 15 motion one month prior to trial); *United States v. Sun Myung Moon*, 93 F.R.D. 558, 560 (S.D.N.Y. 1982) (granting the defendants' motion to depose 120 witnesses one month prior to the scheduled trial)). Notably, in the Rule 15 context, where the government has no real prejudice and the prejudice to the defendant of denying the motion "could be

authorized to preserve Mr. Fokin's material testimony and the government's "speculative" concerns provide "no reason that Defendant should not be permitted to *try* to obtain the testimony before the scheduled trial date." *Alexandre*, 2022 WL 9843495, at *5 (emphasis in original).

## ARGUMENT

### I.    MR. FOKIN IS UNAVAILABLE.

For the purposes of Rule 15, "unavailability" is "to be determined according to the practical standard of whether under the circumstances the [movant] has made a good-faith effort to produce the person to testify at trial." *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984). Contrary to the government's assertions, a movant is not required to present an affidavit from the proposed witness or even documentation of prior statements of unavailability to prevail. *Vilar*, 568 F. Supp. 2d. at 438 (collecting cases). Rather, a moving party's representations, if sufficiently specific, suffice. *Id.*; *Grossman*, 2005 WL 486735, at *3 ("Courts may accept the assertions of counsel on the facts relating to unavailability"). Mr. Shestakov has made a sufficient showing that Mr. Fokin is unavailable, particularly given the recent representations by Mr. Fokin's counsel that he is unwilling to come to the United States.

Though the government argues that Mr. Shestakov's representations regarding Mr. Fokin's availability are merely speculative and thus insufficient to demonstrate unavailability within the meaning of Rule 15 (Govt. Opp. at 8-9), it is indisputable that Mr. Fokin is unavailable for purposes of this Motion. As an initial matter, Mr. Fokin is not a United States citizen, nor is he a resident of

---

substantial" where the witness's testimony "could be critical to [the] defense," granting such a Rule 15 motion is entirely proper. *United States v. Epskamp*, No. 12 CR. 120 (RJS), 2013 WL 12175097, at *2 (S.D.N.Y. Oct. 3, 2013) (granting motion for a Rule 15 deposition); *see also United States v. Alexandre*, 22 Cr. 326 (JPC), 2022 WL 9843495, at *6 (S.D.N.Y. Oct. 17, 2022) (directing the parties to "confer and work in good faith to identify appropriate next steps, including to arrange for the depositions to occur as soon as possible" and asking the government to consider tools at its disposal that might expedite the process).

3

the United States – he is a Russian national residing in Russia. Thus, he is beyond the subpoena power of the Court. 28 U.S.C. § 1783; Fed. R. Crim. P. 17(e)(2); *see Grossman*, 2005 WL 486735, at *3. Although Mr. Fokin is beyond the Court's subpoena power and unwilling to come to the United States, Mr. Fokin's counsel recently informed the defense that Mr. Fokin is willing to voluntarily testify in a neutral country, specifically, the UAE or Turkey. Glavin Supp. Decl. ¶ 6. The government suggests that the voluntariness of Mr. Fokin's deposition "supports denying the Motion," without citing any authority for this proposition. If anything, the voluntariness of Mr. Fokin's testimony vitiates the government's purely hypothetical logistical concerns. A deponent's willingness to sit for a Rule 15 deposition is immaterial to the application for a deposition.

Further, Mr. Fokin is not willing to come to the United States to testify at Mr. Shestakov's trial.  Mr. Fokin's counsel informed the defense this past weekend that Mr. Fokin is unwilling to travel to the United States for the trial because of his lack of trust in the United States government. Glavin Supp. Decl. ¶ 8. This is not surprising given the government's Indictment of Mr. Shestakov and assertions about Mr. Fokin being a co-conspirator, which Mr. Fokin obviously disputes. In addition, Mr. Fokin is unavailable due to the government's own actions seeking a successful revocation of his visa, asserting that Mr. Fokin "was determined to have participated in crimes in this country." Govt. Opp. at 9.

While the government seeks to fault the defense for not seeking the government's assistance in obtaining Mr. Fokin's presence at trial through a limited purpose visa, this argument rings hollow in light of the defense's prior discussions with the government regarding the Rule 15 deposition. Over the course of the summer when both the government and defense engaged in discussions with counsel for En+ regarding Mr. Fokin's potential testimony, the defense sought the government's position on a Rule 15 motion and whether they would consent to the motion.

4

Glavin Supp. Decl. ¶¶ 10–12. The defense specifically raised the issue of negotiating the location of the deposition given Russian law and visa issues. Glavin Supp. Decl. ¶ 11. The government refused to take a position, responding: "we think it makes sense for you to file a motion and we will consider our position after we've seen your arguments." Glavin Supp. Decl. ¶ 12. Despite the government's knowledge that Mr. Fokin was an exculpatory witness, as well as knowledge of Mr. Fokin's visa revocation and the barriers he would surely face in attempting to obtain a new visa, the government did not offer a limited purpose visa at that time or even safe passage.

The government's latest offer of a limited purpose visa is a distraction ploy. As discussed above, as an unindicted co-conspirator that the government alleges (wrongly) to have been involved in criminal activity, Mr. Fokin faces almost certain arrest or detainment upon entry into the United States. *United States v. Fargesen*, No. 21 CR 602 (LAP), 2022 WL 4110303, at *3 (S.D.N.Y. Sep. 8, 2022) ("Unavailability" met where the witnesses were non-U.S. citizens residing abroad, are willing to testify, but "unwilling to travel to the United States to testify in person" due, in part, "to the possibility that they might be prosecuted (wrongly, in their view) if they were to enter the United States").[3] And, even where the government has offered safe passage (which, tellingly, the government has not done here), Mr. Fokin's stated unwillingness to come to the United States establishes his unavailability. *Id.* at *3 (citation omitted) (crediting counsel's representation that "'after watching the Government's prosecution of [Defendants], all three

---

[3] Contrary to the government's representation, this case is indistinguishable from *Fargesen*, where foreign nationals were outside the reach of the Court's subpoena power and unwilling to travel to the United States to testify due in part to the possibility that they may face criminal liability if they entered the United States. 2022 WL 4110303, at *3. The government attempts to distinguish this case by arguing that the countervailing factors they contend are present here "were also largely absent in *Fargesen*." Govt. Opp. at 8 n.9. However, the prosecution team in *Fargesen* also raised concerns regarding effective cross-examination and reliability of the testimony itself. 2022 WL 4110303, at *5. And, like the weight of cases in this District discussed *infra* in Section III, the *Fargesen* court was unpersuaded by these concerns, reasoning that they "do not militate against taking depositions under the circumstances." *Id.*

5

Witnesses mistrust the United States Government and do not want to subject themselves to its jurisdiction' . . . . Given the degree of mistrust, the Court finds it unlikely that even the promise of immunity (were the Government to offer it) could induce the witnesses' attendance at trial."); *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *25 (S.D.N.Y. Jan. 18, 2017) (deponent unavailable where counsel made a good faith attempt to secure the testimony and the witness did not intend to travel to the United States to testify despite the government's offer of safe passage; "the Court is unpersuaded . . . that a unilateral offer of 'safe passage' converts an otherwise unavailable witness into an available witness"); *United States v. Little*, No. 12 CR 647 ALC, 2014 WL 1744824, at *2 (S.D.N.Y. Apr. 23, 2014) (Swiss resident who refused to come to the United States to testify "because the Government views him as a co-conspirator in the crime alleged" was unavailable even when the government had offered safe passage). Accordingly, considering the circumstances that (1) Mr. Fokin is a foreign national who resides in Russia, (2) counsel made repeated efforts, unsuccessfully, to contact Mr. Fokin (3) the government's own actions in causing his visa to be revoked prevent Mr. Fokin from entering the United, (4) Mr. Fokin has stated his unwillingness—through his individual counsel—to travel to the United States to testify at trial, Mr. Fokin is unavailable for the purposes of this Motion. *Fargesen*, 2022 WL 4110303, at *3.

## II. MR. FOKIN'S TESTIMONY IS INDISPUTABLY MATERIAL.

Mr. Fokin's anticipated testimony is undoubtedly material to Mr. Shestakov's defense as it goes to his factual innocence—and the government agrees. Govt. Opp. at 5 n.4. Instead, the government decries that Mr. Fokin's proffered testimony is "unreliable" and that it is "especially important" that Mr. Fokin's statements "be subject to meaningful cross-examination, under an enforceable oath, in person before a jury that can evaluate his credibility." *Id.* at 5–6. Similar to

the government's attempt to distract from Mr. Fokin's unavailability with an empty offer of a limited purpose visa, these assertions are another example of the government taking a position contrary to their prior arguments out of convenience (at best) and desperation (at worst).

It is worth noting that just a few months ago, the government moved *in limine* for the across-the-board admission at trial of *unspecified hearsay statements* in the form of text messages of Mr. Fokin, Charles McGonigal, and others as non-hearsay statements by co-conspirators in furtherance of the conspiracy under Federal Rule of Evidence 801(d)(2)(E). Govt. Mot. *in Limine*, ECF No. 126, at 3–8.[4] Hearsay refers to out-of-court statements offered for the truth of the matter asserted, and such statements are inadmissible unless they fall within an enumerated exception or are excluded from the definition of hearsay under the Rules, generally referred to as "non-hearsay." Fed. R. Evid. 801(c), 802, 803 (exceptions), 801(d) (non-hearsay); *see, e.g.*, *United States v. Pacelli*, 491 F.2d 1108, 1116 (2d Cir. 1974) (citation omitted) (reasoning that the admission of certain testimony "violated the central purpose of the hearsay rule, which is to give litigants 'an opportunity to cross-examine the persons on whom the fact finder is asked to rely'"). In seeking to wholesale admit various purported text messages of Mr. Fokin as co-conspirator statements under Rule 801(d)(2)(E), the government wants to present Mr. Fokin's purported out-of-court statements in its case-in-chief without an opportunity for Mr. Fokin to explain those purported statements or put them in context, for Mr. Shestakov to cross-examine Mr. Fokin about those statements, or for the jury to evaluate the credibility of Mr. Fokin's testimony.[5] Now, when presented with the opportunity to allow Mr. Fokin to actually provide testimony and offer perspective on the out-of-

---

[4] Mr. Shestakov opposes this request and others made in the government's motions *in limine*.

[5] There are many reasons why these statements should not be admitted under Rule 801(d)(2) including, for example, that Mr. Fokin's text messages do not support an inference that an unlawful conspiracy existed. This issue will be litigated in the motions *in limine*.

court statements that the government will seek to admit at trial, the government now cries foul and claims his anticipated testimony—which would directly contradict their theory of the case—would be unreliable. The government cannot have it both ways in seeking to rely on cherry-picked out-of-court hearsay statements by Mr. Fokin when it suits them, yet at the same time seeking to prevent Mr. Fokin from providing testimony for the defense when it does not. Mr. Fokin's testimony is material, and Mr. Shestakov should be authorized to preserve it through a Rule 15 deposition.

### III. MR. FOKIN'S TESTIMONY IS NECESSARY TO PREVENT A FAILURE OF JUSTICE.

The government speculates about a parade of logistical horribles, curiously omitting that courts routinely reject such arguments. Many of these purported concerns are specific to hindrances to taking the deposition in Russia. To be clear, Mr. Shestakov never proposed taking Mr. Fokin's deposition in Russia and the government's suggestion that Mr. Shestakov "has provided no basis to conclude that Rule 15 deposition could occur anywhere other than Russia" (Govt. Opp. at 4 n.3) is false. Defense counsel specifically raised with the government that the location could be negotiated, recognizing that Russian law would create barriers to holding the deposition in Russia. Putting that distraction aside, these concerns are mooted by Mr. Fokin's agreement to be deposed in the UAE or Turkey.

#### A. The Government's Arguments Concerning Perjury Are Misplaced.

The government's argument that Mr. Fokin could perjure himself without consequence is nothing more than a rebuke of Rule 15 depositions writ large. The government fails to offer any specific reason to believe that Mr. Fokin would testify untruthfully other than the government's conclusory assertions that his proffered testimony would be "unreliable" and "contradicted" by other evidence. Instead, in an attempt to prevent the preservation of Mr. Fokin's material

8

testimony, the government appears to swipe at Rule 15 depositions generally on the basis of the supposed unreliability of testimony of foreign witnesses. Courts in this District, however, have resoundingly rejected such arguments. *Alexandre*, 2022 WL 9843495, at *5 (collecting cases); *United States v. Abu Ghayth*, No. S14 98 Crim. 1023(LAK), 2014 WL 144653, at *4 (S.D.N.Y. Jan. 15, 2014) ("This situation, however, is no different from one in which a witness travels to the United States from a foreign country with no extradition treaty, testifies in court (truthfully or otherwise), and immediately boards a plane to return to his or her home country. The government is entitled to use the lack of a viable enforcement mechanism against Hamdan to impeach his credibility, but this is not a basis for denying defendant's motion."); *Grossman*, 2005 WL 486735, at *4 ("Finally, the government asserts that foreign depositions are untrustworthy because they lack a realistic perjury sanction. However, courts routinely order the taking of foreign depositions when the witness is unavailable and his testimony is material, as is the case here.").

      Worse still, the government cites inapposite cases in support of its argument. The two cases the government principally relies on for the proposition that an effective oath and perjury sanction are essential involved requests for *remote trial testimony* via videoconferencing—*not* requests for Rule 15 depositions. Govt. Opp. at 5 (citing *United States v. Buck*, 271 F. Supp. 3d 619, 224 (S.D.N.Y. 2017); *United States v. Banki*, No. 10 CR. 08 (JFK), 2010 WL 1063453, at *3 (S.D.N.Y. Mar. 23, 2010)). The government elides the fact that, in both cases, the court expressly found that Rule 15 depositions could be viable alternatives to remote testimony. *Buck*, 271 F. Supp. 3d at 624-25 ("Thus, the Court finds that, in these particular circumstances, testimony via live two-way videoconferencing is not warranted …. The Court notes, however, that Buck is still free to seek depositions of these witnesses pursuant to Rule 15 if he is so inclined."); *Banki*, 2010 WL 1063453, at *3 ("In further support of this decision, the Court notes that Rule 15 of [the] Federal Rules of

Criminal Procedure offers a viable alternative by which Defendant could offer the testimony of his family members and/or broker at trial."). In both cases, the court subsequently granted defense motions for Rule 15 deposition – a fact the government also conspicuously omits. *See Buck*, No. 1:13-cr-282, ECF No. 87 (S.D.N.Y. Sept. 14, 2017); *United States v. Banki*, No. S1 10 Cr. 08(JFK), 2010 WL 1459442, at *1-*2 (S.D.N.Y. Apr. 6, 2010).

B. **The Deposition Will Not Delay Trial and Will Be Properly Held in A Neutral Country.**

The government's concerns about the deposition procedure and potential delay are unfounded. The government argues the deposition cannot proceed in Russia because a deposition for use in the United States is not permitted under Russian law and it would be dangerous for lawyers to travel to Russia to take the deposition. That is not an issue because Mr. Fokin has agreed to have his deposition taken in a neutral country, specifically the UAE or Turkey.

Though Rule 15 depositions "must be taken and filed in the same manner as a deposition in a civil action." Fed. R. Crim. P. 15(e), courts have rejected the notion that "depositions taken according to foreign law are inferior to those taken under United States law." *United States v. Salim*, 855 F.2d 944, 951 (2d Cir. 1988); *Little,* 2014 WL 1744824, at *3 (disagreeing with the government's suggestion that "absolutely no deposition could be taken" just because a "traditional American-style deposition" may not be possible; noting that "courts have upheld depositions where the district court, in permitting procedural modifications to a standard deposition, achieved substantial compliance with Rule 15").

And, in any event, the government's concerns regarding mechanics are obviated by the fact that the deposition can occur in the UAE or Turkey. Rule 15 depositions in both locations have been authorized in this District. *Fargesen*, 2022 WL 4110303, at *5 (granting Rule 15 deposition to proceed in the UAE despite government protestations concerning cross examination and

10

protecting against perjury); *Banki*, 2010 WL 1459442, at *1-*2 (granting motion to take Rule 15 depositions in Turkey); *see Alexandre*, 2022 WL 9843495, at *5-*6 (granting motion to take Rule 15 depositions in Cyprus and Lithuania). To the extent procedural questions remain, "[a]part from also being speculative, many of these [procedural] concerns could likely be overcome by holding the depositions at an American embassy or consulate, where they could be conducted in a manner consistent with the American judicial system." *Alexandre*, 2022 WL 9843495, at *5-*6 (citing *Fargesen*, 2022 WL 4110303, at *5 (directing parties to attempt to hold depositions of foreign witnesses at an American embassy or consulate "so that U.S. officials can swear the witnesses and provide assurances of formality and accuracy")); *United States v. Mohamed*, 2020 WL 1545522, at *7 (E.D.N.Y. Apr. 1, 2020). Indeed, in *Banki*, the court observed that Rule 15 depositions are preferable to remote testimony because "a United States official could directly administer the oath" and the "face-to-face arrangement may also provide more of an incentive than videoconferencing for the witnesses to testify truthfully." 2010 WL 1063453, at *4.

      Certainty regarding the mechanics of a Rule 15 deposition is not required beforehand. The Second Circuit has recognized "the parties and the court may not always know beforehand just what type of examination a foreign nation may permit the attorneys to conduct. The district court therefore may prefer to consider these problems after the deposition has been taken, when it can examine the transcript and the actual circumstances under which the deposition was conducted." *Salim*, 855 F.2d at 952. Recognizing that Rule 15 is meant to "preserve" testimony and expressly provides that admissibility of the deposition testimony is a separate determination, courts have reasoned that reliability concerns about formality and accuracy are appropriate to a subsequent motion *in limine* and not an impediment to the deposition proceeding. *See Alexandre*, 2022 WL 9843495, at *6 (observing that the parties "can raise any evidentiary concerns with the Court prior

to the depositions being shown to the jury"); *Fargesen*, 2022 WL 4110303, at *5 ("Because the Court grants Defendants' motion to take remote depositions—but not to present live remote testimony at trial—the Government will have an opportunity to move in limine to exclude all or part of the testimony under the Federal Rules of Evidence.").

## CONCLUSION

For the foregoing reasons, Mr. Shestakov respectfully requests that the Court authorize the Rule 15 deposition of Mr. Fokin.

Dated: New York, New York
December 17, 2024

Respectfully submitted,

*/s/ Rita M. Glavin*

Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*