UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v.-

SERGEY SHESTAKOV,

                        Defendant.

---

23 Cr. 16 (JHR)

MEMORANDUM OPINION &
ORDER

JENNIFER H. REARDEN, District Judge

Defendant Sergey Shestakov seeks approval, pursuant to Federal Rule of Criminal Procedure 17(c), to serve subpoenas *duces tecum* to the National Security Agency (the "NSA") and Olga Shriki. *See* ECF No. 135 (NSA Mot.); ECF No. 136 (Shriki Mot.).[1] For the following reasons, Defendant's applications are denied.

## I.  LEGAL STANDARD

Rule 17(c) permits subpoenas ordering the production of "books, papers, documents, data, or other objects." Fed. R. Crim. P. 17(c)(1). "The purpose of Rule 17(c) is to facilitate the trial by designating a time and place prior to trial to obtain and inspect evidentiary material." *United States v. Maxwell*, No. 20 Cr. 330 (AJN), 2021 WL 1625392, at *1 (S.D.N.Y. Apr. 27, 2021) (citing *United States v. Nixon*, 418 U.S. 683, 698-99 (1974)). It is "not intended to

---

[1] Initially, Defendant moved *ex parte* for authorization to serve the subpoenas. On June 30, 2024, the Court denied Defendant's *ex parte* motions "without prejudice to renewal on notice to the Government." ECF No. 138 (Op.) at 1. On July 5, 2024, Defendant publicly filed the instant motions. *See* NSA Mot.; Shriki Mot. On July 15, 2024, the Government opposed Defendant's motions. *See* ECF No. 140 (Opp.). On July 17, 2024, the parties jointly requested that the Court adjourn all deadlines *sine die*, "pending resolution of the parties' respective requests" to adjourn the August 6, 2024 trial. ECF No. 146. On July 18, 2024, the Court granted the parties' request to adjourn trial (to February 2025, subsequently rescheduling to June 2025 at Defendant's request) and adjourned all deadlines, including Defendant's July 18, 2024 deadline to reply in further support of his Rule 17(c) motions. *See* ECF No. 147. On December 27, 2024, the Court directed Defendant to complete the briefing on his Rule 17(c) motions by January 6, 2025. *See* ECF No. 193. After the Court twice extended that deadline at Defendant's request, *see* ECF Nos. 195, 200, Defendant submitted his reply in further support of his Rule 17(c) motions on January 10, 2025. ECF No. 206 (Reply).

provide a means of discovery for criminal cases." *United States v. Menendez*, No. S4 23 Cr. 490 (SHS), 2024 WL 2801960, at *2 (S.D.N.Y. May 31, 2024) (quoting *Nixon*, 418 U.S. at 698). "Courts must 'be mindful not to allow the Rule 17(c) process to become a broad discovery device that would undermine the discovery procedures set forth in Rule 16.'" *Id.* (quoting *United States v. Kwok*, No. 23 Cr. 118 (AT), 2024 WL 1719364, at *2 (S.D.N.Y. Apr. 22, 2024)).

"To determine whether issuance of the subpoena[s] is appropriate, the Court considers the factors articulated in *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)."[2] *Maxwell*, 2021 WL 1625392, at *1. The moving party must demonstrate "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition." *Nixon*, 418 U.S. at 699-700 (citation omitted). "In

---

[2] The defense argues that the Court should apply the standard in *United States v. Tucker* instead, which would require a more limited showing: that "the request[s are] (1) reasonable, construed as material to the defense and (2) not unduly oppressive for the producing party to respond." 249 F.R.D. 58, 66 (S.D.N.Y. 2008); *see United States v. Goldstein*, No. 21 Cr. 550 (DC), 2023 WL 3662971, at *2 (E.D.N.Y. May 25, 2023) (adopting *Tucker* standard); *see also* NSA Mot. at 3; Shriki Mot. at 5. However, the "Second Circuit has routinely applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant, and *Tucker* has not generally been followed in this Circuit." *United States v. Ray*, 337 F.R.D. 561, 573, n.4 (S.D.N.Y. 2020); *see United States v. Bergstein*, 788 Fed. App'x 742, 746 (2d Cir. 2019) (citing cases); *United States v. Yudong Zhu*, No. 13 Cr. 761 (VM), 2014 WL 5366107, at *4 (S.D.N.Y. Oct. 14, 2014) ("[U]ntil the Supreme Court or the Second Circuit accepts the Court's analysis in [*Tucker*], this Court will apply *Nixon*, which does not by its terms provide an exception for defense subpoenas to third parties."); *United States v. Skelos*, No. 15 Cr. 317 (KMW), 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) ("[C]ourts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties."); *United States v. Pedraza*, No. 17 Cr. 114 (VAB), 2018 WL 6697992, at *2 (D. Conn. Dec. 20, 2018) (holding that *Tucker* is an "aberration"). "Accordingly, the Court declines to follow *Tucker* and applies *Nixon* itself." *United States v. Blondet*, No. 16 Cr. 387 (JMF), 2022 WL 485031, at *1 n.2 (S.D.N.Y. Feb. 16, 2022).

other words, under the test adopted by the Supreme Court in *Nixon*, the proponent of a subpoena returnable before trial 'must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.'" *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 (S.D.N.Y. 2011) (quoting *Nixon*, 418 U.S. at 700)); *see Maxwell*, 2021 WL 1625392, at *1.

## II. ANALYSIS[3]

### A. Proposed Subpoena to the NSA

From the NSA, Defendant requests three categories of records from "the time period July 1, 2021 through November 30, 2021": (1) communications "between Oleg Deripaska and Evgeny Fokin;" (2) communications "between Evgeny Fokin and Sergey Shestakov;" and (3) communications "between Evgeny Fokin and officials of En+ Group International or Rusal PLC concerning: Fokin's travel to the United States in that time period; an August 2021 contract involving Spectrum Risk Solutions; Arina Lazarou; business intelligence work related to Vladimir Potanin; Atomyze; Symbridge; documents received by Fokin on or about September 15, 2021 concerning Vladimir Potanin and/or Norilsk Nickel; documents received by Evgeny Fokin on or about November 5, 2021 concerning Vladimir Potanin; and/or documents or information received by Evgeny Fokin on or about November 9, 2021 concerning Vladimir Potanin." NSA Mot., Ex. A (Proposed NSA Subpoena) at 5.

All three requests "fail on the basis that they do not comply with *Nixon*'s specificity requirement." *Maxwell*, 2021 WL 1625392, at *2. "In order to satisfy [that] requirement, the party seeking production of the materials must 'reasonably specify the information contained or believed to be contained in the documents sought' rather than 'merely hope [] that something useful will turn up.'" *United States v. Barnes*, No. S9 4 Cr. 186 (SCR), 2008 WL 9359654, at *4

---

[3] This Memorandum Opinion assumes familiarity with the facts of this case.

(S.D.N.Y. Apr. 2, 2008) (quoting *United States v. Sawinski*, 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000)). "The subpoena must 'constitute[] a good faith effort to obtain identified evidence rather than a general fishing expedition' that attempts to use the rule as a discovery device.'" *Id.* (quoting *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980)).

In particular, the first two requests seek any "communications" between certain individuals, Proposed NSA Subpoena at 5, without "provid[ing] any specificity about the information [the defendant] believes is contained in the documents or why he is entitled to it," *Menendez*, 2024 WL 2801960, at *2. "This plainly fails to satisfy the specificity requirement set forth in *Nixon*." *Menendez*, 2024 WL 2801960, at *2; *see United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ("Subpoenas seeking any and all materials, without mention of specific admissible evidence, justify the inference that the defense is engaging in the type of fishing expedition prohibited by *Nixon*." (internal quotation marks omitted)); *United States v. Bergstein*, 788 Fed. App'x 742, 746 (2d Cir. 2019) (deeming subpoena overly broad because it sought "all e-mails or other communications authored or received" by two individuals "relating to almost thirty paragraphs from [the defendant's] indictment" (cleaned up)); *cf., e.g., United States v. Seabrook*, No. 16 Cr. 467 (ALC), 2017 WL 4838311, at *2 (S.D.N.Y. Oct. 23, 2017) (granting modified Rule 17(c) subpoena for "specific documents which contain a statement or communication by [a potential Government witness] about the allegations in the Indictment"); *United States v. Wey*, 252 F. Supp. 3d 237, 243 (S.D.N.Y. 2017) (permitting, as sufficiently specific, a Rule 17(c) subpoena to several non-parties, including Nasdaq, for "[a]ll correspondence and records sent or received by Keely Walter, William Slattery, or Andrew Hall relating to, interpreting or applying NASDAQ's 300 round-lot shareholder requirement, with respect to the listing applications of: (1) [SmartHeat], during the period of June 20, 2008 through January 27, 2009; (2) [Deer], during the period of May 4, 2009 through July 16, 2010; and (3)

4

[CleanTech], during the period July 13, 2010 through December 10, 2010"). While the third request in Defendant's proposed NSA subpoena "focus[es] on [] certain subject[s]," it is "so overbroad that issuance of the Rule 17(c) subpoena would be improper" because it "do[es] not identify specific" En+ Group International or Rusal PLC officials "whose communications are relevant." *Maxwell*, 2021 WL 1625392, at *2 (denying subpoenas that covered communications between "any owner, shareholder, partner or employee of [the law firm subject to the subpoena] and government officials or co-counsel in civil litigation").

"Moreover, [] Defendant apparently does not know whether or not the some of the documents requested even exist." *Barnes*, 2008 WL 9359654, at *4. Defendant only "reasonably expects [that] the requested records exist." NSA Mot at 6 (further suggesting, without citing authority, that "even the absence of such records" would be "highly material"). "This, in conjunction with the breadth of the request, evinces that [] Defendant seeks through the subpoena to acquire voluminous materials in the hope that a review of them will uncover some evidence that will be helpful to his defense." *Barnes*, 2008 WL 9359654, at *4; *see also United States v. Avenatti*, No. S1 19 Cr. 373 (PGG), 2020 WL 508682, at *5 (S.D.N.Y. Jan. 31, 2020) (holding that requested subpoena was "not sufficiently specific" because the defendant had "offered only speculation" about the contents of requested text messages). Because "such a blanket request implicates all of the problems associated with a classic 'fishing expedition,' . . . . the subpoena is not sufficiently specific." *Barnes*, 2008 WL 9359654, at *4.

Additionally, Defendant has not shown that any materials yielded by these requests would be admissible. "Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be 'inadmissible as evidence at trial.'" *United States v. Skelos*, No. 15 Cr. 317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) (quoting *United States v. Brown*, No. 95 Cr. 168 (AGS), 1995 WL 387698, at *10 (S.D.N.Y.

June 30, 1995)). "Though it is difficult to analyze the admissibility of evidence where the nature of the subpoenaed materials is largely indeterminate[,]" here "it appears that [] many of the recordings and documents sought would likely constitute hearsay . . . which would render them inadmissible." *Barnes*, 2008 WL 9359654, at *4.[4] Defendant's request for communications between "Oleg Deripaska and Evgeny Fokin," "Evgeny Fokin and Sergey Shestakov," and "Evgeny Fokin and officials of En+ Group International or Rusal PLC," Proposed NSA Subpoena at 5, "is not specific enough to permit this Court to assess admissibility." *Skelos*, 2018 WL 2254538, at *4 (distinguishing an overly broad 17(c) subpoena request for "*all* documents produced as part of a state agency's investigation into a non-party" from a permissible request for "billing records, time entries, invoices, and related records drafted by specific people, for work performed by specific individuals, and as limited by a specific time period," because the latter request "allowed th[e] court to determine that those documents . . . would likely be admissible as business records"). Accordingly, Defendant has "fail[ed] to make the necessary preliminary showing that each—or, moreover, any[—of] the subpoenaed items are admissible." *Barnes*, 2008 WL 9359654, at *4.[5]

---

[4] Defendant contends that the requested evidence would "prove that there was not a criminal conspiracy with Deripaska" and would be admissible to establish "the fact of what was said, and what was not said" in conversations between Fokin and Defendant; "the fact that Mr. Fokin did not discuss with Mr. Deripaska his trips to the United States between June 2021 and November 30, 2021"; and "the fact that Mr. Fokin was not acting as Mr. Deripaska's agent for the charged transaction." NSA Mot. at 6-7. But Defendant does not address whether those communications would "constitute hearsay," *Barnes*, 2008 WL 9359654, at *4, or be admissible under a hearsay exception.

[5] Because Defendant fails to satisfy his burden with respect to *Nixon's* specificity and admissibility requirements, the Court need not and does not reach the potential relevance of the materials sought. *See United States v. Boyle*, No. 08 Cr. 523 (CM), 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009) (refusing to authorize Rule 17(c) subpoena for records that "may be relevant to the case at bar" because "the bulk of materials sought by defendant would be inadmissible at defendant's trial"); *see also Bergstein*, 788 F. App'x at 746 (concluding that the district court did not abuse it discretion by quashing a Rule 17(c) subpoena, even "[a]ssuming the documents were relevant," because the subpoena "was overly broad"); *United States v. Skelos*,

### B. Proposed Subpoena to Olga Shriki

From Shriki, Defendant requests "documents and/or communications" from January 1, 2017 to September 2022 "concerning: (a) Oleg Deripaska, Natalina Bardakova, Graham Bonham-Carter, Arina Lazarou, Evgeny Fokin, Charles McGonigal, Sergey Shestakov, Vladimir Potanin, GBCM Limited, Global Consulting Services LLC, Gracetown Inc, Ocean Studios LLC, Pandean Limited, and/or Spectrum Risk Solutions;" and "(b) bank accounts, credit card accounts, and/or wire transfers related to Mr. Deripaska and/or the persons and entities listed in Request 1(a)." ECF No. 136-1 (Proposed Shriki Subpoena) at 5.

Like the proposed NSA subpoena, this request is "overly broad." *Bergstein*, 788 F. App'x at 746. It does not define the scope of "document[]" or "communication[]." Proposed Shriki Subpoena at 5. If, as Defendant alleges, "Ms. Shriki was an employee of Mr. Deripaska," Shriki Mot. at 6-7, then the number of documents "concerning" Deripaska alone may be significant, Proposed Shriki Subpoena at 5. "Permitting [Defendant] to fish through" voluminous materials, including Shriki's business and personal communications, "would transform Rule 17 from a mechanism of judicial efficiency intended to expedite trial to an expansive discovery tool." *Kwok*, 2024 WL 1719364, at *4 (concluding that "unfamiliarity with the universe of documents requested does not exempt [Defendant] from the requirements set forth in *Nixon*."). Similarly, the request for six years of "documents and/or communications concerning . . . bank accounts, credit card accounts, and/or wire transfers related to Mr. Deripaska" and thirteen other individuals and entities, Proposed Shriki Subpoena at 5, does not seek specific, "identifiable pieces of evidence." *Barnes*, 2008 WL 9359654, at *4 (rejecting

---

988 F.3d 645, 661 (2d Cir. 2021) (finding no abuse of discretion where district court quashed subpoenas because they were "not sufficiently specific and request[ed] the production of documents that [were] either not admissible at trial or [were] obtainable through other means" (alterations in original)).

proposed subpoena where the Defendant "blindly s[ought] 'all' documents and recordings that fall into several categories . . . rather than identifiable pieces of evidence"); *see also United States v. Xu*, No. 23 Cr. 133-5 (JMF), 2024 WL 4504352, at *3 (S.D.N.Y. Oct. 16, 2024) (concluding that a Rule 17(c) subpoena request for "production of *all* of [the subpoenaed party's] bank records over a twenty-one-year period . . . and records of *any* deposits exceeding $10,000 made into her account over that same period," used "sweeping language that courts have repeatedly rejected as enabling impermissible fishing expeditions").

Defendant also fails to show that the requested records would be admissible. Although he contends that they would be "admissible as business records under Federal Rule of Evidence ("FRE") 803(6), evidence of habit, routine and practice under FRE 406, and absence of entry in business records under FRE 803(7)," Shriki Mot. at 6, Defendant has not explained how he could meet the elements of Federal Rules of Evidence 803(6),[6] 803(7),[7] or 406[8] for "each—or,

---

[6] Federal Rule of Evidence 803(6) applies only if "(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity." Fed. R. Evid. 803(6)(a)-(c). These features must be "shown by the testimony of the custodian or another qualified witness . . ." Fed. R. Evid. 803(6)(D). Moreover, the exception does not apply if "the opponent" shows "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E).

[7] Rule 803(7) applies to "evidence that a matter is not included in a record described in" Rule 803(6). Fed. R. Evid. 803(7). The party seeking to admit the absence of a record as evidence under this rule must first show that "a record was regularly kept for a matter of that kind." Fed. R. Evid. 803(7)(B). Like Rule 803(6), this exception applies only if "the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(7)(C).

[8] Rule 406 recognizes that evidence may be admissible to show "that on a particular occasion the person or organization acted in accordance with [a] habit or routine practice." Fed. R. Evid. 406; *see Const. Reinsurance Corp. v. Stonewall Ins. Co.*, No. 94 Civ. 1888 (PKL), 1998 WL 556164, at *2 (S.D.N.Y. Sept. 1, 1998) ("To be admissible under Rule 406, '[t]he conduct at issue must constitute a regular response to a repeated specific situation.'" (quoting *McCarrick v. New York City Off–Track Betting Corp.*, No. 91 Civ. 5626, 1995 WL 261516, at *5 (S.D.N.Y. May 3, 1995))); *see also Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 125 (2d Cir. 2016) (similar).

moreover, any" of the subpoenaed items. *Barnes*, 2008 WL 9359654, at *3-4 ("The items sought cannot merely be potentially . . . admissible" but must instead "be shown to be . . . admissible at the time the subpoena is sought."); *United States v. Treacy*, No. 08 Cr. 0366 (RLC), 2008 WL 5082884, at *2 (S.D.N.Y. Dec. 1, 2008) (denying Rule 17(c) subpoena because, "[f]ar from showing the subpoenaed documents are admissible, [the defendant] only argue[d] that the documents [we]re 'likely to be admissible.'"). At bottom, Defendant's request "is not specific enough to permit this Court to assess admissibility." *Skelos*, 2018 WL 2254538, at *4.

### C. CONCLUSION

Defendant's motions to authorize the requested subpoenas pursuant to Federal Rule of Procedure 17(c) are DENIED.

The Clerk of Court is directed to terminate ECF Nos. 135 and 136.

SO ORDERED.

Dated: February 14, 2025
New York, New York

                                          JENNIFER H. REARDEN
                                          United States District Judge