**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 23 Cr. 16 (JSR) |
| SERGEY SHESTAKOV, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SERGEY SHESTAKOV'S**
**MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY**

June 6, 2025

**GLAVIN PLLC**
Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
156 W. 56th Street, Ste. 2004
New York, NY 10019
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

LEGAL STANDARD .............................................................................................. 4

ARGUMENT .......................................................................................................... 7

      I.     Dr. Markus's Proposed Testimony Is Improper ...................................... 7

           a.     Dr. Markus Cannot Serve as a Conduit for Factual Narrative ................... 7

           b.     The Proposed Testimony Will Not Help the Jury Understand the Evidence ......................................................................................................... 10

           c.     Dr. Markus Would Speculate on the Motivations of Alleged Co-Conspirators ........................................................................................... 12

           d.     Dr. Markus's Testimony Will Lead to Improper Inferences ................... 13

      II.    The Bases for Dr. Markus's Testimony Are Insufficient and Unreliable............. 14

      III.   Request for a Hearing ......................................................................... 15

CONCLUSION...................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
   185 F. Supp. 3d 401 (S.D.N.Y. 2016) ...................................................................... 5

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ..................................................................................... 5

*Andrews v. Metro N. Commuter R.R. Co.*,
   882 F.2d 705 (2d Cir. 1989) ..................................................................................... 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ......................................................................................... 1, 4, 7

*Diaz v. United States*,
   602 U.S. 526 (2024) .......................................................................................... 6, 13

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ................................................................................................. 5

*Highland Cap. Mgmt., L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008) ...................................................................... 6

*In re Terrorist Attacks on Sept. 11, 2001*,
   03-MD-01570 (GBD)(SN), 2024 WL 5077293 (S.D.N.Y. Dec. 11, 2024) .............. 5

*In re Rezulin Prod. Liability Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................................ 6, 7, 12

*King v. Wang*,
   2021 WL 5237195 (S.D.N.Y. Nov. 9, 2021) ........................................................... 15

*Kumho Tire v. Carmichael*,
   525 U.S. 137 (1999) ................................................................................................. 5

*LinkCo, Inc. v. Fujitsu Ltd.*,
   2002 WL 1585551 (S.D.N.Y. July 16, 2002) .......................................................... 13

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ................................................................................. 5, 6

*Pretter v. Metro N. Commuter R.R. Co.*,
  00-CV-4366 (JSR), 2002 WL 31163876 (S.D.N.Y. Sept. 30, 2002) ........................................ 8

*R.F.M.A.S., Inc. v. So*,
  748 F. Supp. 2d 244 (S.D.N.Y. 2010) ............................................................................... 12

*Sec. & Exch. Comm'n v. Tourre*,
  950 F. Supp. 2d 666 (S.D.N.Y. 2013) ............................................................................. 5, 8

*Sec. and Exch. Comm'n v. Terraform Labs Pte. Ltd.*,
  708 F. Supp. 3d 450 (S.D.N.Y. 2023) ............................................................................... 15

*Supply & Bldg. Co. v. Estee Lauder Intern., Inc.*,
  2001 WL 1602976 (S.D.N.Y. Dec. 14, 2001) ...................................................................... 9

*Taylor v. Evans*,
  1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) ........................................................................ 13

*United States v. Amirov*,
  No. S8 22 CR. 438 2025 WL 636088 (S.D.N.Y. Feb. 27, 2025) .................................... 5, 6, 15

*United States v. Amuso*,
  21 F.3d 1251 (2d Cir. 1994) .............................................................................................. 5

*United States v. Banki*,
  No. 10 Cr. 08, 2010 WL 1875690 (S.D.N.Y. May 10, 2010) ................................................ 13

*United States v. Castillo*,
  924 F.2d 1233 (2d Cir. 1991) ...................................................................................... 10, 11

*United States v. Cruz*,
  981 F.2d 659 (2d Cir. 1992) ................................................................................ 10, 11, 13, 14

*United States v. DiDomenico*,
  985 F.2d 1159 (2d Cir. 1993) ...................................................................................... 6, 13

*United States v. Dukagjini*,
  326 F.3d 45 (2d Cir. 2003) ............................................................................................... 9

*United States v. Kwok*,
  No. 23 CR. 118 (AT), 2024 WL 1773143 .......................................................................... 14

*United States v. Mejia*,
  545 F.3d 179 (2d Cir. 2008) ..................................................................................... 8, 9, 11

*United States v. Morgan*,
  675 F. Appx. 53 (2d Cir. 2017) ................................................................ 5

*United States v. Mrabet*,
  703 F. Supp. 3d 442 (S.D.N.Y. 2023) ................................................... 7, 14

*United States v. Newkirk*,
  2016 WL 1659149 (S.D.N.Y. Apr. 19, 2016) ........................................ 5, 9

*United States v. Rankin*,
  2021 WL 5563996 (D. Conn. Nov. 27, 2021) .......................................... 13

*United States v. Ulbricht*,
  2015 WL 413318 (S.D.N.Y. Feb. 1, 2015) ................................................ 7

*United States v. Williams*,
  506 F.3d 151 (2d Cir. 2007) ..................................................................... 4

*United States v. Zhong*,
  26 F.4th 536 (2d Cir. 2022) ................................................................ 5, 13

## **Rules**

Federal Rule of Evidence 104 ........................................................................ 1

Federal Rule of Evidence 403 .................................................................... 1, 7

Federal Rule of Evidence 702 ......................................................... 1, 4, 5, 7

Federal Rule of Evidence 703 .................................................................... 1, 6

Federal Rule of Evidence 704 ............................................................. 1, 6, 13

Federal Rule of Criminal Procedure 16 ................................................ 7, 14, 15

Sergey Shestakov respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rules of Evidence 403 and 702–704, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude the anticipated testimony of the government's proposed expert, Dr. Stanislav Markus.[1]  Alternatively, the defense requests a *Daubert* hearing and/or a hearing pursuant to Federal Rule of Evidence 104 to determine the proper scope, if any, of Dr. Markus's testimony.

## **INTRODUCTION**

The government's case is weak, circumstantial, and lacks direct evidence to prove beyond a reasonable doubt that Mr. Shestakov willfully conspired to provide business intelligence services to sanctioned Russian oligarch Oleg Deripaska in violation of U.S. law.  And that is because he did not and there was no such conspiracy.

The government's proposed expert should not be permitted to provide irrelevant, improper, and inadmissible "factual" testimony that the government wants to use to fill in the many gaping evidentiary holes in its case.  The government seeks to have Dr. Markus testify under the guise of being an "expert"—while presenting factual testimony about Russian oligarchs, Vladimir Potanin and Oleg Deripaska as Russian oligarchs and what that purportedly means, their background, their assets and wealth, their purported relationship with the Kremlin, their purported "rivalry," and how they conduct business.  None of these topics are proper expert testimony.

Tellingly, there at least three trial witnesses with direct personal knowledge who can testify about these same topics: (1) Lord Gregory Barker, who served as the EN+ Chairman from 2019– 2022; (2) current EN+ Chairman Christopher Burnham, who has served as an EN+ board member

---

[1]  The accompanying Declaration of Rita M. Glavin is referred to as the "Glavin Decl." and attaches the government's expert disclosure regarding Dr. Markus's proposed testimony, as well as his curriculum vitae (Ex. 1, the "Markus Notice").

and a Rusal board member during the alleged conspiracy;[2] and (3) Evgeny Fokin, who has been the EN+ director of international cooperation since at least 2019 and is voluntarily testifying at the request of the defense.  Each of these witnesses can testify about, for example: Oleg Deripaska, his wealth, and his relationship to EN+ and Rusal before and after being sanctioned (including that he no longer directs, manages, or controls EN+ or Rusal); EN+ and Rusal's vital investment in Norilsk Nickel ("Nornickel"); Nornickel's CEO and largest shareholder, Vladimir Potanin; and brewing business disputes between Rusal and Potanin concerning Nornickel, resulting in litigation in the United Kingdom in 2022.[3]  However, because their testimony will be exculpatory and does not fit the government's theory, the government instead seeks to use Dr. Markus's testimony to prop up its case.

Dr. Markus's testimony should not be admitted.  It addresses no technical or complicated matters requiring elucidation by an expert.  The fact that certain Russian individuals face sanctions and that the government believes there are particular evasive methods to flout those sanctions is not beyond the understanding of the average juror.  Though the government has insisted that this is "a simple case," (*e.g.*, ECF No. 38 at 4:22) Dr. Markus's expected testimony is a thinly veiled attempt to cloak fact witness testimony as "expert opinion," to essentially testify about the defendant's and alleged co-conspirators' state of mind, and imply guilt by association.  Principally, the government seeks to admit Dr. Markus's testimony so it can use his say-so in summation to cure the defects in its case-in-chief.  There will be a continuing refrain—"as Dr. Markus told you,"

---

[2]  Both Mr. Burnham and Lord Barker are under trial subpoena from the government.  The defense informed the government that Mr. Shestakov will call both Lord Barker and Mr. Burnham in the defense case if the government does not call them, and the defense has formally requested that the government not withdraw those two trial subpoenas for that reason.

[3]  Indeed, according to 3500 disclosures, both Lord Barker and Mr. Burnham would testify that any actions against Potanin and Nornickel—*i.e.,* the targets of the business intelligence work—would be legitimate business interests of EN+ and Rusal, particularly in the face of Potanin's mounting efforts against EN+ and Rusal during 2020 and 2021.

"as Dr. Markus explained"—and it could be highly effective yet completely improper and unduly prejudicial to Mr. Shestakov.  To be clear: Dr. Markus's testimony is not a proper use of expert testimony, and it will not help the jury discover the truth.  Beyond the defects in the proffered "opinions" themselves, Dr. Markus fails to sufficiently identify the bases, reasons, and sources of his opinions.  Accordingly, the Court should preclude Dr. Markus's testimony in its entirety.

## **BACKGROUND**

The government noticed its intention to call Dr. Stanislav Markus as an expert witness by a disclosure dated April 16, 2025.[4]  The government expects that Dr. Markus, an associate professor from the University of South Carolina's Darla Moore School of Business, International Business Department, will principally testify concerning (i) who Deripaska and Potanin are, their business, and the purported rivalry between Deripaska and Potanin, and (ii) the nature of the transaction alleged in the Indictment, in order to prop up an inference that Deripaska—rather than EN+/Rusal—was the true beneficiary of the business intelligence work.  The government vaguely proffers that his testimony will be based on his education and experience, but does not explain the specific basis for each "opinion" or subject.

First, Dr. Markus is expected to testify that "Russian oligarchs are extremely wealthy businesspeople" who "are subservient to Putin and control sectors of the Russian economy."  Ex. 1.  Given these spheres of influence tied to the Russian economy, Dr. Markus will testify that oligarchs "clash with one another" and attempt to "leverage international courts to resolve their disputes, but they also often resort to less formal, and sometimes illegal ways to gain leverage and status."  *Id.*  With this background, the government seeks to have Dr. Markus testify to the jury about a purported longstanding rivalry between Oleg Deripaska and Vladimir Potanin.  *Id.*  Dr.

_____

[4] According to 3500 disclosures, the government retained Dr. Markus *after* the adjournment of the February 2025 trial date.

Markus would apparently testify that even after Deripaska reduced his stake in EN+ in 2018—curiously, with no mention that EN+ and Rusal were removed from the SDN List as part of an agreement with the U.S. once Deripaska reduced his ownership interest and severed his control—Deripaska "continued to maintain significant control of [EN+'s subsidiary] Rusal." *Id.*  This rivalry, according to Dr. Markus, has continued, as apparently evidenced by Rusal's 2022 lawsuit against Potanin and an affiliate of Potanin that alleged Potanin mismanaged Nornickel's assets. *Id.*

Regarding the second topic, the nature of the transaction, Dr. Markus would testify about Russian oligarchs' use of shell companies to conceal true beneficial ownership and hide their assets.  *Id.*  Dr. Markus is expected to testify that oligarchs often use "proxies or intermediaries to set up shell companies and arrange to open bank accounts in the names of shell companies in various offshore jurisdictions, commonly tax havens such as Cyprus, Jersey, and the Cayman Islands." *Id.*  Oligarchs, according to Dr. Markus, avoid owning assets in their own names for reasons that include circumventing tax or disclosure obligations, money laundering, and evading sanctions imposed by the United States, European Union, and Canada.  *Id.*

## LEGAL STANDARD

District courts exercise a "gatekeeping role" to guard against the significant risks posed by expert testimony and to exclude unreliable expert testimony.  *Daubert*, 509 U.S. at 597.  For expert testimony to be admissible, Federal Rule of Evidence 702 requires that a qualified "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," that "the testimony is based on sufficient facts or data," and that "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The proponent of expert testimony has the burden of establishing by a preponderance

of evidence that the requirements of Rule 702 are satisfied.  *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

As an initial matter, "a district court may commit manifest error by admitting expert testimony where . . . the subject matter of the expert's testimony is not beyond the ken of the average juror."  *United States v. Zhong*, 26 F.4th 536, 555 (2d Cir. 2022).  If expert testimony merely tells the jury which inferences to draw in matters of common sense, it usurps the factfinder's role and is inadmissible.  *Nimely v. City of New York*, 414 F.3d 381, 397–98 (2d Cir. 2005); *United States v. Newkirk*, No. 14-CR-534-02 (JSR), 2016 WL 1659149, at *2 (S.D.N.Y. Apr. 19, 2016), *aff'd*, 684 F. App'x 95 (2d Cir. 2017) (expert testimony properly excluded where the matters at hand are not "so complicated or esoteric that a reasonable juror can't understand them without the aid of someone with special expertise").  It is error to admit expert testimony that impermissibly mirrors the testimony offered by fact witnesses or that is itself a vehicle for factual narrative.  *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994); *see Sec. & Exch. Comm'n v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) (collecting cases).

With respect to reliability, courts consider (i) the facts on which the expert relies, (ii) the method by which the expert draws an opinion from those facts, and (iii) how the expert applies the facts and methods to the case at hand.  *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).  Although the reliability test is "flexible," as *Daubert*'s list of specific factors (now articulated in Rule 702) neither necessarily nor exclusively applies to all experts or in every case, *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 423 (S.D.N.Y. 2016) (citing *Kumho Tire v. Carmichael*, 525 U.S. 137, 141 (1999)) (Rakoff, J.), every step of an expert's analysis must be reliable.  *United States v. Morgan*, 675 F. Appx. 53, 55 (2d

Cir. 2017).[5] "The testimony must also 'fit' the facts of the case at issue." *United States v. Amirov*, No. S8 22 CR. 438 (CM), 2025 WL 636088, at *2 (S.D.N.Y. Feb. 27, 2025). Testimony must be both reliable and relevant in that it "fits" the facts of the case. *See id.*

Rules 703 and 704 circumscribe the permissible bases of expert opinion and its application to ultimate issues. Rule 703 precludes an expert from disclosing to the jury "facts or data [that] would otherwise be inadmissible" unless the court determines that their probative value "substantially outweigh[] their prejudicial effect." Fed. R. Evid. 703. Though an expert may base an opinion on facts or data which other experts in the particular would reasonably rely, the expert may not testify as to underlying facts not within his personal knowledge. *See, e.g.*, *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008). Moreover, "inferences about the intent or motive of parties or others lie outside the bounds of expert testimony," *In re Rezulin Prod. Liability Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004), and cannot be couched "in terms of industry practice." *Highland Cap.*, 551 F. Supp. 2d at 182–83; *see United States v. DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993) (testimony on ultimate issue of intent is improper because it "poses a uniquely heightened danger of intruding on the jury's function"). This prohibition extends to a defendant's or alleged co-conspirator's state of mind. Fed. R. Evid. 704(b); *Diaz v. United States*, 602 U.S. 526, 534 (2024).

Rule 403 plays a "uniquely important role . . . in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely*,

---

[5] Rule 702 was amended in 2023 "in response to court decisions that admitted expert testimony too liberally." *In re Terrorist Attacks on Sept. 11, 2001*, 03-MD-01570 (GBD)(SN), 2024 WL 5077293, at *3 (S.D.N.Y. Dec. 11, 2024). The Advisory Committee explained that "many courts ha[d] held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702, Advisory Committee Notes (2023). Accordingly, "nothing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Almeciga*, 185 F. Supp. 3d at 415 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

414 F.3d at 397.  A district court may exclude expert testimony when its probative value is substantially outweighed by, *inter alia*, the danger of unfair prejudice, confusion of the issues, and misleading the jury.  Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595.

Beyond evidentiary requirements, a failure to comply with disclosing the requisite level of detail as to the expert's opinions and the bases, reasons, and sources of those opinions can lead to preclusion.  *United States v. Ulbricht*, No. 14-CR-68 KBF, 2015 WL 413318, at *5 (S.D.N.Y. Feb. 1, 2015), *aff'd*, 858 F.3d 71 (2d Cir. 2017).  Federal Rule of Criminal Procedure 16 requires that the disclosure for each expert witness contain "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief" and "*the bases and reasons for*" each of those opinions.  Rule 16(a)(1)(G)(iii) (emphasis added); *see United States v. Mrabet*, 703 F. Supp. 3d 442, 444 (S.D.N.Y. 2023) (Rakoff, J.).

## ARGUMENT

### I.    Dr. Markus's Proposed Testimony Is Improper

#### a.  Dr. Markus Cannot Serve as a Conduit for Factual Narrative

Dr. Markus's proffered "opinions" are nothing more than a factual narrative designed to mimic the government's theory of the case, but with no purported analyses or enunciation of specialized knowledge to aid in the jury's understanding of evidence presented at trial.  Instead, the Markus Notice demonstrates that the government intends to use Dr. Markus's testimony to bridge factual and evidentiary gaps in its case.  However, Rule 702 limits expert testimony to that which is based on "the expert's scientific, technical, or other specialized knowledge."  Fed. R. Evid. 702(a).  This requirement ensures that expert witnesses "will not testify about 'lay matters which a jury is capable of understanding and deciding without the expert's help.'"  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (quoting *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)).  Factual narratives presented by an expert

do not satisfy this requirement and must be excluded.  *See Rezulin*, 309 F. Supp. 2d at 541; *see also Pretter v. Metro N. Commuter R.R. Co.*, No. 00-CV-4366 (JSR), 2002 WL 31163876, at *2 (S.D.N.Y. Sept. 30, 2002) (expert may "only testify about the underlying facts if he was actually bringing to bear his. . . expertise").

As described above, Dr. Markus will testify about alleged "rivalries within the Russian oligarchy" including one purportedly between Deripaska and Potanin, and how oligarchs, in an attempt to gain leverage, may use shell companies and nominee agreements to, among other things, evade U.S. sanctions.  But, "an expert witness may not . . . serve as a vehicle for the factual history of the case." *United States v. Maxwell*, 20 Cr. 330 (AJN), Dkt. 516 at 16 (S.D.N.Y. Nov. 21, 2021); *see United States v. Mejia*, 545 F.3d 179, 196 (2d Cir. 2008) (parts of an expert's testimony "that involved purely factual matters . . . fell far beyond the proper bounds of expert testimony").

It is the government's burden to prove a service or benefit to Deripaska in violation of IEEPA: Dr. Markus "cannot be a conduit for a factual narrative" nor "invade the province of the jury by 'finding facts' that are in contention in this case" by narrating a purported rivalry between Deripaska and Potanin.  *Tourre*, 950 F. Supp. 2d at 681.  Without a witness who can testify with firsthand knowledge of the alleged conspiracy, the government seeks to plug holes in its proof through Dr. Markus's say-so.  Mr. Shestakov maintains his innocence and part of his defense at trial will be that he understood that the business intelligence work was for the benefit of EN+/Rusal—not Deripaska.  Thus, the aim of the business intelligence—*i.e.*, whether it was for personal rivalry or to support a shareholder dispute—is a contested issue of fact.  The government cannot dress up plainly factual testimony concerning the motivation behind the business intelligence work as "expert testimony."  Rather, the government well understands that this is a circumstantial case that lacks a witness with knowledge on this issue and "it is a little too

8

convenient that the Government has found an individual who is an expert on precisely those facts."
*Mejia*, 545 F.3d at 191; *see United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) (expert
testimony may come "dangerously close to usurping the jury's function" by effectively "providing
an overall conclusion of criminal conduct"). Thus, Dr. Markus's factual narration concerning the
rivalry between Potanin and Deripaska should be excluded.[6]

Likewise, the methods oligarchs may undertake to conceal their assets is not "so
complicated or esoteric" that a reasonable juror could not understand them "without the aid of
someone with special expertise." *Newkirk*, 2016 WL 1659149, at *2. An expert's testimony is
also inadmissible where it is contradicted by available records. *Supply & Bldg. Co. v. Estee Lauder
Intern., Inc.*, No. 95 Civ. 8136 (RCC), 2001 WL 1602976, at *5 (S.D.N.Y. Dec. 14, 2001). The
facts here are not difficult to comprehend—*i.e.*, to accomplish the business intelligence work, a
Cyprus entity contracted with and made payments to a New Jersey corporation—but it is the
inference that the government will ask the jury to draw that creates a problem for its case. The
government cannot tie the Cyprus entity on the contract, Pandean Ltd., to Deripaska.[7] Instead, the
government seeks to turn this hole in its evidence into proof through Dr. Markus's testimony:
oligarchs use evasive measures, thus the absence of direct evidence tying Pandean to Deripaska
actually supports an inference of Deripaska's involvement. Aside from the unreliability of Dr.
Markus's opinions (Section II, *infra*), the government knows this testimony is contradicted by the
government's disclosures in this case tying Pandean to EN+ and Rusal, ***not*** Deripaska. *See, e.g.*,

---

[6] Nor is such a rivalry relevant if the only "benefit" conferred by the business intelligence work flowed to EN+ and
Rusal, ***not*** Deripaska.

[7] Indeed, if the government wanted a witness who could testify about Deripaska's methods of seeking to avoid
sanctions, the government would call ████████████ who is alleged to have conspired with Deripaska to
violate sanctions law from 2018 through 2022. ████ was one of Deripaska's most trusted aides before and after he
was sanctioned, and was familiar with the entities and accounts through which he conducted business. But the
government does not want to call her because her testimony will hurt the government's case insofar as she was unaware
of Pandean Ltd. and the Gazprombank account that transmitted payment to Spectrum.

ECF Nos. 153-1, 153-2 (FBI Intelligence Analyst Chris Doyle, an expert in Deripaska's financial and business networks, informed the government that he was not familiar with Pandean and noted that public disclosures from EN+ and Rusal both show multiple entities tied to their respective corporate structure as being affiliated with Pandean's address and Pandean director Arina Lazarou).  Allowing Dr. Markus to testify, under the guise of "background" or "well-known" fact, that oligarchs use shell companies in Cyprus to evade sanctions would mislead the jury and should be excluded.

### b.  The Proposed Testimony Will Not Help the Jury Understand the Evidence

A criminal trial is not an academic exercise.  Opinions about how oligarchs "often" clash with their rivals or "frequently" use proxies to set up shell companies may be a proper subject of academic interest, but they should not be tendered to the jury because they do not help the jury reach the truth in the actual case before them.  It is well-settled that "guilt may not be inferred from the conduct of unrelated persons." *United States v. Cruz*, 981 F.2d 659, 663 (2d Cir. 1992); *United States v. Castillo*, 924 F.2d 1233–34 (2d Cir. 1991).  For example, the government may not prove a narcotics offense by arguing that the defendant's actions matched an expert's description of "the typical operating methods" of "drug dealers" in a particular neighborhood.  *Castillo*, 924 F.2d at 1231, 1234; *see Cruz*, 981 F.2d at 660–62.

As the Second Circuit reasoned in *Castillo* and *Cruz*, it is impermissible to allow an expert to provide testimony that allows the government to argue that the defendant is guilty because other people committed crimes that may share characteristics with the alleged instant offense.  In both cases, the Second Circuit held that certain evasive maneuvers were not beyond the ken of the average juror.  *Cruz*, 981 F.2d at 662; *Castillo*, 924 F.2d at 1233.  The Second Circuit further pronounced that the government's "improper guilt by alleged association argument" was "impermissible." *Castillo*, 924 F.2d at 1234; *see Cruz*, 981 F.2d at 663.  This "impermissible"

argument was propped up by expert testimony that allowed the government to argue "the following syllogism: 1) drug dealers use guns to force their customers to ingest cocaine so they can determine whether or not they are cops; 2) Castillo and Fernandez are drug dealers; 3) ergo, Castillo and Fernandez used a gun to force Johnson to ingest cocaine." *Castillo*, 924 F.3d at 1234; *see Cruz*, 981 F.2d at 663 (government's "principal use" of expert testimony was the "impermissible" argument "that the defendants were guilty" because their actions matched what the expert had testified were "various routine acts in drug transactions"). It is the government's burden to prove its case to the jury with evidence—not by finding an expert who will say that the testimony of fact witnesses is generally consistent with patterns of criminal behavior. *See Mejia*, 545 F.3d at 191.

The government's intention for Dr. Markus's testimony is improper. The government plans to introduce evidence that a Cyprus entity and intermediaries were used to transact payments under the contract for business intelligence services, that the business intelligence work concerned Potanin and Nornickel, and that, although he is an EN+ employee, Fokin was acting at the direction and for the benefit of Deripaska. Leaning on Dr. Markus's testimony, the government then intends to make the nonsensical leap that these facts are indicative of sanctions evasion because Russian oligarchs resort to illegal activity to clash with rival oligarchs and engage in unlawful transactions involving shell companies in Cyprus and intermediaries, and Deripaska had a personal rivalry with Potanin. Despite the government's insistence that this is "a simple case" (ECF No. 38 at 4:22), it seeks to alleviate its burden through improper testimony concerning oligarchs generally rather than the actual facts of this case. This inferential leap is untenable and at odds with the government's burden to prove its case to the jury with evidence and should be rejected. *See Castillo*, 924 F.2d at 1234–35 (taking "serious issue" with the government's use of an expert "to propound [an]

impermissible theory" where the government's case on a firearm count was "weak from the case's inception" because "no gun had ever been recovered").

Moreover, Dr. Markus's testimony would mislead the jury because Dr. Markus concedes that certain activities he describes have lawful purposes. Although the government would use Dr. Markus's testimony to argue that particular behaviors are proof of unlawful conduct, he would testify that the use of shell companies, proxies, and intermediaries in offshore jurisdictions is consistent not only with sanctions evasion but with lessening tax obligations or avoiding disclosure. For example, Dr. Markus notes that Russian oligarchs "frequently" set up "shell companies" in various offshore jurisdictions, including the Cayman Islands. Ex. 1. Thus, the government would argue, because an offshore entity made payments that flowed to Mr. Shestakov, that implies the impermissible involvement of a Russian oligarch. Using that flawed logic, had Mr. Shestakov received renumeration from a Cayman Islands hedge fund, that would be equally indicative of the involvement of a Russian oligarch, rather than the lawful conduct of a tiered corporate structure engaging in tax avoidance. There is little probative value to this weak proposed inference and substantial risk of undue prejudice to Mr. Shestakov. Thus, this testimony should be excluded.

### c. Dr. Markus Would Speculate on the Motivations of Alleged Co-Conspirators

Dr. Markus's testimony is problematic because it invites jurors to determine Mr. Shestakov's *mens rea* based on Dr. Markus's speculation about why alleged unindicted co-conspirator Deripaska may have sought out opposition research on his "rival" Potanin or used a Cyprus entity to pay McGonigal. *See R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 268 (S.D.N.Y. 2010) (determining what motivated a particular person or entity is generally not an appropriate subject of expert testimony); *Rezulin*, 309 F. Supp. 2d at 547 ("inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."). Dr. Markus has no first-hand

knowledge of the business intelligence work involved here or why it was structured by a contract between Pandean and Spectrum. Dr. Markus's testimony would merely "propound a particular interpretation of [the] conduct" that props up the prosecution's case that Deripaska must have been involved because he intended to harm his rival, Potanin, and to mask the transaction. *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242 (SAS), 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002); *see United States v. Rankin*, No. 3:18 Cr. 272 (JAM), 2021 WL 5563996, at *2 (D. Conn. Nov. 27, 2021) (it is "generally improper for an expert to opine" about what an individual "knew or intended at the time of events in question").

Such testimony is particularly improper insofar as it attempts to both (i) opine on the intent behind the transaction to tie it to Deripaska and (ii) use those inferences to impute knowledge and intent on the part of Mr. Shestakov to provide a service or benefit to Deripaska. *See Taylor v. Evans*, No. 94 CIV. 8425 (CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) ("musings as to defendants' motivations would not be admissible if given by any witness—lay or expert"); *see also DiDomenico*, 985 F.2d at 1164; *United States v. Banki*, No. 10 Cr. 08, 2010 WL 1875690, at *2 (S.D.N.Y. May 10, 2010) ("there is no basis on which the jury could properly infer anything about the Defendant's state of mind from the opinion of this third party expert"). Thus, Dr. Markus should not be permitted to speculate as to the intent of an alleged co-conspirator in conspiring with Charles McGonigal and Mr. Shestakov. Fed. R. Evid. 704(b); *Diaz*, 602 U.S. at 534.

### d. Dr. Markus's Testimony Will Lead to Improper Inferences

Dr. Markus's testimony would improperly risk prejudicing the jury against Mr. Shestakov based on ethnic association and generalizations concerning an alleged co-conspirator. The Second Circuit has repeatedly held that "[i]njection of a defendant's ethnicity into a trial as evidence of criminal behavior is self-evidently improper and prejudicial." *Cruz*, 981 F.2d at 664; *see Zhong*, 26 F.4th at 557 (same). Dr. Markus's testimony repeatedly refers to "*Russian* oligarchs" and the

13

"*Russian* oligarchy" and their purported penchant for illicit conduct: "often resort[ing] to . . . illegal[] ways to gain leverage," "well-known use of shell companies [to] hide their assets," "frequently us[ing] proxies" "to set up shell companies" "in various offshore jurisdictions," "launder[ing] money," and "evad[ing] sanctions." Ex. 1. The plain, pernicious implication of these statements is that wealthy Russians tend to be corrupt and dishonest. As Mr. Shestakov shares an ethnic background with the alleged co-conspirator, Deripaska, and the testimony would imply improper guilt-by-ethnic-association evidence against Deripaska, Dr. Markus's testimony would be "highly improper and prejudicial." *Cruz*, 981 F.2d at 663.

## II.     The Bases for Dr. Markus's Testimony Are Insufficient and Unreliable

Rule 16 requires the government to disclose to the defense "the bases and reasons" for all expert opinions it expects to present at trial. Fed. R. Crim. P. 16(a)(1)(G)(iii); *see* Fed. R. Crim. P. 16, Advisory Committee Notes (2022) (additions to Rule 16 are meant to address "shortcomings of the prior provisions on expert witness disclosure" -- chief among them, "the lack of adequate specificity regarding what information must be disclosed."). The rule recognizes that the prior practice of merely providing a criminal defendant with a brief summary of a prosecution expert's opinions proved to be woefully inadequate. *Mrabet*, 703 F. Supp. 3d at 443–44. Given the nature of expert opinion, "detailed specificity is required as to bases" for opinion "before a court can adequately assess" admissibility. *Id.* A disclosure, like the one here, is deficient when the opinion offered speaks in generalities and vaguely asserts the proposed expert's testimony while Rule 16 calls for detailed description. *See, e.g.*, *United States v. Kwok*, No. 23 CR. 118 (AT), 2024 WL 1773143, at *2 (S.D.N.Y. Apr. 24, 2024). Dr. Markus's assertion at the outset of his disclosure that his opinions are based on his experience and education is plainly sufficient. As to each of the subjects that the government expects to elicit expert testimony from Dr. Markus, there can be no dispute that Dr. Markus has not provided any basis or reason whatsoever—much less the type of

specificity contemplated by Rule 16—to explain what underlies Dr. Markus's opinion.  Thus, the disclosure runs afoul of Rule 16 and for this reason alone should be excluded.  *See Amirov*, 2025 WL 636088, at *2.

Apart from failing to meet Rule 16's disclosure obligations, the government cannot be permitted to present its theory on a contested issue as established fact through the *ipse dixit* of an expert.  Under *Daubert* and Rule 702, the Court's "gatekeeping function requires more than simply 'taking the expert's word for it.'"  *King v. Wang*, No. 14-CV-7694 (LJL), 2021 WL 5237195, at *20 (S.D.N.Y. Nov. 9, 2021) (citation omitted); *see also Sec. and Exch. Comm'n v. Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d 450, 471 (S.D.N.Y. 2023) (Rakoff, J.).  And, because the "opinions" offered are improper, any supplemental disclosure would not ameliorate these deficiencies: even if Dr. Markus has disclosed the bases for his opinions (he did not), his expected testimony would be improper expert testimony.  *See generally* Section I, *supra*.

## III.    Request for a Hearing

In the alternative, Mr. Shestakov respectfully requests a pre-trial *Daubert* or Rule 104 hearing.

## CONCLUSION

For the foregoing reasons, Mr. Shestakov respectfully requests that the Court preclude the government from offering testimony from its proposed expert witness Dr. Markus.

Dated:  June 6, 2025
       New York, New York

                                   Respectfully submitted,

                                   */s/ Rita M. Glavin*
                                   Rita M. Glavin
                                   Katherine E. Petrino

Leo S. Korman
Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*