UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        v.

SERGEY SHESTAKOV,

        Defendant.

No. 23 Cr. 16 (JSR)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SERGEY SHESTAKOV'S MOTION *IN LIMINE* CONCERNING TESTIMONY BY EN+'S OUTSIDE COUNSEL**

June 6, 2025

**GLAVIN PLLC**
Rita M. Glavin
Katherine E. Petrino
Leo S. Korman
156 W. 56th Street, Ste. 2004
New York, NY 10019
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

LEGAL STANDARD ..................................................................................................... 5

ARGUMENT ................................................................................................................... 6

    I.    Ms. Baj is an Improper Witness ............................................................... 6

    II.   Mr. Shestakov's Confrontation Clause and Due Process Rights Require Effective Cross-Examination .................................................................................. 8

    III.  Request for a Hearing ............................................................................. 10

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Davis v. Alaska*,
  415 U.S. 308 (1974) ............................................................................................................. 5

*Davis v. Washington*,
  547 U.S. 813 (2006) ............................................................................................................. 8

*Dunbar v. Harris*,
  612 F.2d 690 (2d Cir. 1979) ................................................................................................. 6

*Fisher v. United States*,
  425 U.S. 391 (1976) ............................................................................................................. 8

*In re Von Bulow*,
  828 F.2d 94 (2d Cir. 1987) ................................................................................................... 9

*United States v. Barnes*,
  560 Fed. Appx. 36 (2d Cir. 2014) ........................................................................................ 5

*United States v. Cardillo*,
  316 F.2d 606 (2d Cir) .......................................................................................................... 6

*United States v. Coven*,
  662 F.2d 162 (2d Cir. 1981) ................................................................................................ 6

*United States v. Doe*,
  465 U.S. 605 (1984) ............................................................................................................. 8

*United States v. Martin*,
  2024 WL 3199549 (2d Cir. June 27, 2024) ......................................................................... 6

*United States v. Rosenstein*,
  474 F.2d 705 (2d Cir. 1973) ................................................................................................ 7

*United States v. Smothers*,
  652 F. Supp. 3d 271 (E.D.N.Y. 2023) ................................................................................. 6

*United States v. Weigand*,
  2021 WL 568173 (S.D.N.Y. Feb. 14, 2021) ....................................................................... 8

**Rules**

Federal Rule of Evidence 104 ............................................................................................... 10

Federal Rule of Evidence 403 ................................................................................................. 6

Federal Rule of Evidence 406 ................................................................................................. 7

Federal Rule of Evidence 701 ................................................................................................. 7

Federal Rule of Evidence 803 ................................................................................................. 8

Federal Rule of Evidence 901 ................................................................................................. 7

Sergey Shestakov respectfully submits this memorandum of law in support of his motion to preclude testimony by attorney Alexandra Baj.

## INTRODUCTION

The government has subpoenaed former outside counsel to EN+, Steptoe LLP partner Alexandra Baj, to testify in its case-in-chief regarding EN+'s response to a 2022 grand jury subpoena. Ms. Baj did not personally conduct or supervise the purported search by EN+ for responsive documents, she is not a custodian of records, and her testimony about EN+'s nonproduction of records to the subpoena is based upon inadmissible hearsay about what the EN+ General Counsel purportedly told her. Thus, any testimony from Ms. Baj about the fact that EN+ did not produce documents is improper.

Further, in response to questions on cross-examination concerning the subpoena response, including her discussions with EN+'s general counsel that would go to the completeness and sufficiency of that response, the defense understands (based on discussions with Ms. Baj's counsel) that Ms. Baj will invoke attorney-client privilege as a basis to refuse to answer questions. Due to the risk of unfair prejudice, confusing the issues, and misleading the jury, as well as Confrontation Clause and Due Process consequences resulting from her hearsay-based testimony and the invocation of the attorney-client privilege on cross-examination, Mr. Shestakov respectfully requests that the Court preclude Ms. Baj's testimony.

## BACKGROUND

Ms. Baj, a U.S.-based partner in Steptoe LLP's International Trade and Regulatory Compliance group, accepted service of a grand jury subpoena addressed to EN+ Group IPJSC ("EN+") on October 26, 2022. (USAO 3502-006). In transmitting the subpoena, the Assistant U.S. Attorney (AUSA) expressed urgency around the subpoena response, indicating that the government was "asking for a reasonably quick response on this—the subpoena has the usual two-

week turnaround time, but we may be forced to be stingy with extensions. Also it might help to talk beforehand for efficiency's sake." (USAO 3502-006). The subpoena sought from EN+: "[a]ny and all documents concerning any of the following entities or individuals, including but not limited to communications with, about, discussing, mentioning, or naming these entities or individuals, and any records reflecting any contracts, negotiations, or business with these entities or individuals: Charles McGonigal[;] Sergey Shestakov[;] Agron Neza[;] Spectrum Risk Solutions[;] Pandean Ltd."[1] (USAO_00013225). The subpoena return date was November 9, 2022. On October 26, 2022, Ms. Baj called the AUSA who transmitted the subpoena. (USAO 3502-005). The AUSA recounted the call as follows:

> She said that her understanding from the EN+ GC's initial review is that they appeared to have no responsive documents. I said that we thought that was possible, but that we still wanted them to do the full search they would do in response to any subpoena. I also told her that to the extent there was a negative response, she may want to internally document what steps were taken by whom in conducting the search, ***as it was possible that we would need a witness to that affect in the future***. She further asked about personal appearance on November 9 and I told her that was very unlikely to be necessary—that she could either send us whatever documents she found or some documentation of a negative response, and that would suffice ***for now***.
>
> (3502-005 (emphasis added)).

On November 1, 2022, Ms. Baj emailed the AUSA that "EN+ is continuing to review its file for any responsive documents" and asked about the appearance date the following week, and whether another person from Steptoe LLP could appear in her stead due to a previously scheduled work trip out of the country. (USAO 3502-006). The AUSA replied: "No problem. As long as

---

[1] Notably, the government's grand jury subpoena did not seek records relating to Arina Lazarou, who is the director listed as the signatory on the Pandean Ltd. contract with Spectrum. As the government knows, Ms. Lazarou and/or the address for her company was listed in EN+ and Rusal corporate filings as an affiliated person. (*See, e.g.*, ECF Nos. 153-1, 153-2).

2

you send us the responsive documents, or *a certification that there are no responsive documents*, there won't be any need for personal appearance. And in the unlikely event that personal appearance is required, *anyone who can serve as a document custodian* (which I'm guessing *may not be you even if you are available*) would suffice as a witness." (USAO 3502-006 (emphasis added)).

Two days later, Ms. Baj responded to the subpoena by email, stating in part:

> In response to the October 26, 2022 Grand Jury Subpoena addressed to EN+ Group IPJSC ("EN+"), *the General Counsel of EN+ has informed me* that *EN+ has checked* and searched through their document storage and found no documents concerning the entities and individuals mentioned in the Subpoena.
>
> EN+ has identified some ordinary transactions (providing home heat and electricity and purchase of a lawnmower) with a few persons bearing the name "Sergey Shestakov" (noting that Shestakov is a very common family name in Russia and Sergey is also a very common first name). These transactions seem likely to be unrelated to Sergey Shestakov mentioned in the Subpoena. […]
>
> If more details about those transactions / operations are required, *EN+ would need to follow certain rules relating to data privacy in Russia*. In particular, since these transactions relate to the personal *data and banking information of Russian citizens*, and a potential criminal matter, it appears that data requests and submissions related to such personal information would need to follow rules stipulated in the Treaty between the United States of America and the Russian Federation on Mutual Legal Assistance in Criminal Matters dated June 17, 1999 (the "Treaty"). The Treaty provides for such requests to be sent through Parties' Central Authorities. Art. 3 (2) of the Treaty appoints as the central authority for the Russian Federation the Office of the Procurator General of the Russian Federation, or other persons designated by it. The central authority for the United States of America is the Attorney General or his designees.
>
> *Please let me know if this response is sufficient or if you will require anything additional in response to the Subpoena*.

(USAO 3502-006 (emphasis added)). The next day, Ms. Baj stated that "a representative of EN+ should be able to testify to the conduct of the search and the results, if necessary, in the future."

3

(USAO 3502-003). After receiving this response, the government did not seek a formal certification, has not noticed an intention to introduce the November 3, 2022 email as a certified record of regularly conducted business pursuant to Rule 902 (likely because the document could not meet the requirements of Rule 803(6)) or pursuant to 18 U.S.C. § 3505), and, to the defense's knowledge, did not require a document custodian to provide testimony to the grand jury.

Rather, approximately two months later, the government relied on Ms. Baj's response in seeking a true bill from the grand jury:

> Q: Was a grand jury subpoena served on EN+ for any records relating to McGonigal, Shestakov, Neza, Spectrum, or [Pandean]?
> A: Yes.
> Q: And did EN+ indicate that they performed a ***comprehensive search of all their records***?
> A: Yes.
> Q: What did they report?
> A: That they found no indication of any such work.

(USAO-3567-006 at 56:3–11 (emphasis added)).

Shortly before the August 2024 trial date—in apparent recognition of the insufficiency of the EN+ response in November 2022—the government again made document requests to outside counsel for EN+ for similar and additional categories of documents. In July 2024, EN+'s outside counsel explained to the government that a concern raised by the document requests were Russian laws, including "data privacy laws" and a law that "punish[es] Russians who provide evidence to foreign governments from unfriendly states for criminal matters." (USAO 3505-004). In a follow-up discussion a few days later, EN+'s outside counsel again indicated to the government that Russian law relating to "cooperation with foreign state" would be implicated by the document request and that responding to the request without an MLAT "could result in criminal liability," and data privacy law would make EN+ liable to monetary penalties for sharing information. (USAO 3505-008). Yet again, during a January 17, 2025 call, counsel for EN+ informed the

4

government that it was still "working through the Russian law issues" to disclosing certain documents. (USAO 3505-005). Thereafter, the government did not follow-up. The government also did not request documents from EN+'s subsidiary, United Company Rusal IPJSC ("Rusal"), which sued Norilsk Nickel ("Nornickel") CEO Vladimir Potanin in the United Kingdom in 2022 for mismanagement and misuse of Nornickel assets.[2]

EN+ has not waived its attorney-client privilege and understands from Ms. Baj's attorney that she will assert privilege to questions inquiring into her communications with EN+'s General Counsel and steps EN+ took in response the subpoena that were not already relayed to the government.

## LEGAL STANDARD

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST., amend. VI. The Confrontation Clause guarantee includes the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974). This right encompasses "an opportunity for *effective* cross-examination" within the trial judge's discretion. *United States v. Barnes*, 560 Fed. Appx. 36, 40 (2d Cir. 2014).

Although "government witnesses have a right to assert the attorney-client privilege on cross examination . . . . where assertion of the privilege unduly restricts a defendant's cross-examination, the witness' direct testimony may have to be stricken." *See United States v. Coven*,

---

[2] This is notable because EN+'s economic interest in Potanin and Nornickel—which was the subject of the business intelligence work at issue in this case—is directly through Rusal. The defense theory of the case is that the work was done on behalf of EN+ **and** Rusal. Rusal is the second largest shareholder in Nornickel, with Potanin being the largest, and EN+ therefore has a vital economic interest in Nornickel and how Potanin manages the company. Lord Gregory Barker, the chairman of EN+ from 2019-2022, represented to the government through his attorney that any contracts related to Nornickel would "most likely" have gone through Rusal and he would not have been surprised if EN+ payment to investigators would have come from non-EN+ entities such as in Cyprus. (USAO 3566-007).

662 F.2d 162, 170–71 (2d Cir. 1981). "A witness's 'general credibility' is a collateral matter, and the assertion of the attorney-client privilege in that context does not 'deprive a defendant of his constitutional right to confrontation.'" *United States v. Martin*, No. 23-6393, 2024 WL 3199549, at *3 (2d Cir. June 27, 2024). However, the Second Circuit has reasoned that, "if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part." *Dunbar v. Harris*, 612 F.2d 690, 692 (2d Cir. 1979) (citing *United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir), *cert. denied*, 375 U.S. 822 (1963)).

Evidence may be excluded under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403; *United States v. Smothers*, 652 F. Supp. 3d 271, 284 (E.D.N.Y. 2023) (citation omitted). Such evidence may be "of unquestioned relevance" but excluded on the basis of its "undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403, Advisory Committee Notes (1972).

## ARGUMENT

### I.    Ms. Baj is an Improper Witness.

As a preliminary manner, the fundamental defects to Ms. Baj's testimony are of the government's own making because Ms. Baj is not a proper records custodian who could testify to records (or lack thereof) in EN+'s possession, custody or control. Her testimony about the lack of records produced in response to a subpoena, divorced from the custodial context, is misleading. The custodial witness is a lay witness who has personal knowledge of the record-keeping process as contemplated by Rule 701. Fed. R. Evid. 701 (limiting lay opinion testimony to one that is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other

specialized knowledge"). Moreover, an organization's routine record-keeping practice "may be admitted to prove that on a particular occasion the organization acted in accordance with the habit or routine practice." Fed. R. Evid. 406. And, a custodial witness can authenticate and identify evidence under Rule 901 as "a witness with knowledge." Fed. R. Evid. 901. As evidenced by Ms. Baj's subpoena response and in 3500, there is no reason to believe that Ms. Baj has *any* personal knowledge of EN+'s record-keeping process, much less knowledge to offer evidence of EN+'s routine practice of record-keeping. To allow her to testify to the *absence* of responsive records when Ms. Baj lacks the requisite foundational knowledge would mislead the jury and unfairly prejudice Mr. Shestakov.

While Ms. Baj knows that EN+ did not produce any records in response to the grand jury subpoena, her purported knowledge of the fact that no responsive records exist is based entirely on hearsay (and potentially hearsay-within-hearsay). The subpoena response was based completely on the fact that the "General Counsel of EN+ ha[d] informed [Ms. Baj]" "that EN+ has checked." Ms. Baj relied on what the General Counsel told her in order to make the representation to the government. (USAO 3502-006). The General Counsel must have spoken to others within the company to "check and search" for documents, creating multiple layers of hearsay. There is no indication that Ms. Baj could establish a proper foundation to testify to the lack of a responsive record, and therefore any testimony by Ms. Baj that no records were produced would be improper and misleading to the jury and must be precluded. *See United States v. Rosenstein*, 474 F.2d 705, 710 (2d Cir. 1973) (records not admissible as business records where the witness did not have the "level of requisite knowledge" about the documents). In essence, because the email subpoena response (USAO 3502-06) is inadmissible hearsay—and not probative of the actual lack of responsive documents—the government is effectively attempting to use Ms. Baj's testimony for

7

the absence of a record of regularly conducted activity (Fed. R. Evid. 803(7)) *without a witness who could lay the foundation of records of regularly conducted activity.* That is misleading and improper as both an evidentiary matter and as a matter of due process and fundamental fairness to Mr. Shestakov.

## II. Mr. Shestakov's Confrontation Clause and Due Process Rights Require Effective Cross-Examination.

The Confrontation Clause is implicated because Ms. Baj's response to the subpoena on EN+'s behalf was "to establish or prove past events potentially relevant to later criminal prosecution." *United States v. Weigand*, No. 20-CR-188 (JSR), 2021 WL 568173, at *2 (S.D.N.Y. Feb. 14, 2021) (citing *Davis v. Washington*, 547 U.S. 813, 822 (2006)). "The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced." *Fisher v. United States*, 425 U.S. 391, 410 (1976). A subpoena, therefore, "compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect." *United States v. Doe*, 465 U.S. 605, 612 (1984). Accordingly, because of the testimonial aspect of producing evidence (or not), Mr. Shestakov "must be permitted to cross-examine the declarant." *Weigand*, 2021 WL 568173, at *2.

It is without question that the government will use Ms. Baj's testimony to argue that, because EN+ produced no documents in response to 2022 grand jury subpoena, EN+ and its subsidiary Rusal were not involved in the business intelligence contract, and thus, the work was for Oleg Deripaska's benefit. Unchallenged through effective cross-examination, this argument, flowing directly from Ms. Baj's testimony, would mislead the jury and unduly prejudice Mr. Shestakov. One line of inquiry Mr. Shestakov would seek to use to rebut this argument would be to show the flaws in the subpoena response, *e.g.*: what were Ms. Baj's discussions with the EN+ General Counsel about the subpoena? What was she told about the searches performed? Did she

give advice to EN+ regarding how to go about the searches and what was EN+'s response? Was the subpoena itself transmitted to the company? If so, was it sent only in English? Was the subpoena ever translated? Across which entities or subsidiaries were searches performed? How does Ms. Baj know? What document storage platform or system does EN+ and/or its subsidiaries use? Were hard copies searched? Do EN+ and its subsidiaries use a document database? What servers were searched and did those servers include electronic communications? What electronic communications were searched and how? Who performed the searches? Who did the General Counsel speak to? What was Ms. Baj told by the AUSA about the purpose of the subpoena and its relevance to the government's investigation, and what did she relay to EN+ about that such that it would inform the breadth of the search? If documents were collected, for which custodians? How were those custodians identified? Were search terms applied and if so, which ones? If only electronic copies searched, would potentially relevant documents be capable of being searched using search terms using Optical Character Recognition or other technologies? How did Ms. Baj learn what searches were performed, what documents were collected, and what search terms were applied? Did Ms. Baj discuss how to capture text and instant messages of EN+ employees, and were those employees instructed to search those communications? How was the required search communicated within EN+ and to whom? The company accepted service of the subpoena and EN+ responded in eight days – is it typical for a multinational conglomerate to respond to a grand jury subpoena in just over a week?

      Ms. Baj represented EN+, to whom the subpoena was addressed, and the attorney-client privilege belongs "solely to the client." *In re Von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987). And the defense's understanding is that Ms. Baj will invoke attorney-client privilege regarding discussions with the EN+ General Counsel relating to the subpoena and searches that were not

9

conveyed to the government, including to many of the questions set forth *supra*. Given this invocation, cross-examination is likely to be severely—and indeed, unduly and unfairly—limited in such a way as to violate Mr. Shestakov's Confrontation Clause and Due Process rights. Effective cross-examination of Ms. Baj's direct testimony that EN+ did not produce documents requires specific questions on why documents may not have been produced and testing the manner in which searches were performed to lead to that result. Accordingly, not only is Ms. Baj's testimony improperly based on hearsay, but the defense will be unconstitutionally hamstrung during cross-examination by repeated assertions of privilege. The government cannot be permitted to elicit misleading testimony, based on hearsay, and argue that any inference can be drawn by the fact that EN+ did not produce records. Thus, Ms. Baj's testimony should be excluded.

### III. Request for a Hearing

In the alternative, Mr. Shestakov respectfully requests a pre-trial hearing pursuant to Federal Rule of Evidence 104 to determine the proper scope, if any, of Ms. Baj's testimony. Fed. R. Evid. 104(c).

### CONCLUSION

For the foregoing reasons, Mr. Shestakov respectfully requests to exclude Ms. Baj's testimony.

Dated: June 6, 2025
       New York, New York

Respectfully submitted,

*/s/ Rita M. Glavin*
Rita M. Glavin
Katherine E. Petrino

Leo S. Korman
Glavin PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for Sergey Shestakov*