P6CESHEP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                        23 Cr. 16 (JSR)

SERGEY SHESTAKOV,

                                   Plea
           Defendant.

------------------------------x

                                New York, N.Y.
                                June 12, 2025
                                3:30 p.m.


Before:

                  HON. JED S. RAKOFF,

                                District Judge

                      APPEARANCES

JAY CLAYTON
     United States Attorney for the
     Southern District of New York
BY:  REBECCA T. DELL
     AMANDA C. WEINGARTEN
     OLGA I. ZVEROVHIC
     Assistant United States Attorneys

GLAVIN PLLC
     Attorneys for Defendant
BY:  RITA M. GLAVIN
     KATHERINE E. PETRINO
     LEO KORMAN

P6CESHEP

| 1 | (Case called)

2           MS. ZVEROVICH:  Good afternoon, your Honor.

3           Olga Zverovich, Rebecca Dell, and Amanda Weingarten

4  for the government, and we're joined by paralegal special

5  Braden Forwick.

6           THE COURT:  Someday I'm going to meet a paralegal

7  generalist from the U.S. Attorney's Office, but they all seem

8  to be very specialized.

9           For the defense.

10          MS. GLAVIN:  Good afternoon, your Honor.

11          Rita Glavin along with my colleagues Katherine Petrino

12 and Leo Korman, and I am here with my client, Sergey Shestakov.

13          THE COURT:  Good afternoon.

14          All right.  I understand the defendant wishes to

15 withdraw his previously entered plea of not guilty and enter a

16 plea of guilty to Count Five of the indictment; is that

17 correct?

18          MS. GLAVIN:  Yes, your Honor.

19          And just before that, I just want to make just a brief

20 record just so that we have it in terms of how we got here

21 today in the change of plea.

22          On Monday, June 9, the defense had made a presentation

23 to the U.S. Attorney's Office about the case and it did include

24 providing them some exculpatory information that they had not

25 previously known.

P6CESHEP

1              Later that day, the U.S. Attorney's Office provided

2      the defense with a *Brady* disclosure that came from an attorney

3      proffer by outside counsel for EN+, and there was significant

4      *Brady* in that proffer that we believed to be consistent with

5      the defense.

6              Within the disclosure that happened on June 9, we had

7      learned that there had been some discussion about EN+ wanting

8      to withdraw subpoenas to two high-level officials in the

9      company.

10             THE COURT:  Yes.

11             For the reporter, EN+ is capital E, capital N, and a

12     plus sign.

13             Go ahead.

14             MS. GLAVIN:  And those particular witnesses, we

15     believed, had exculpatory information and we wanted to call

16     them in the defense case so we had asked the government not to

17     withdraw those subpoenas.

18             On June 10, Tuesday of this week, we had a telephone

19     conference with chambers, and your Honor issued an order that

20     day directing the U.S. Attorney's Office not to withdraw those

21     subpoenas.

22             Yesterday morning, the parties again had a telephone

23     conference with the Court in which the U.S. Attorney's Office

24     indicated for the trial that was to begin on Monday, June 16,

25     the U.S. Attorney's Office would no longer be pursuing the

P6CESHEP

1  charges in Counts One, Two, Three, and Four, the sanctions and

2  money laundering counts, and that the trial scheduled for

3  Monday would now only proceed on the Count Five false statement

4  charge.  Later that afternoon, the U.S. Attorney's Office

5  presented a plea agreement to Mr. Shestakov, I think your Honor

6  has had an opportunity to review that agreement, and with that,

7  my client will enter a plea of guilty today to the false

8  statements 1001 charge.

9          THE COURT:  All right.  I have a partially signed copy

10  of that agreement.  Does someone have the fully signed copy?

11          MS. GLAVIN:  Yes.  This has with my signature, your

12  Honor.

13          THE COURT:  And we'll mark this Court Exhibit 1 to

14  today's proceeding.

15          And, Mr. Shestakov, please rise and raise your right

16  hand.

17          By the way, you speak English, yes?

18          THE DEFENDANT:  Yes, I do, your Honor.

19          THE COURT:  And you understand English, yes?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  All right.

22          (Defendant sworn)

23          THE COURT:  And let me advise you that because you're

24  under oath, that if anything you say is knowingly false, it

25  would subject you to punishment for perjury or obstruction of

P6CESHEP

1    justice or the making false statements.

2            Do you understand that?

3            THE DEFENDANT:  I do.

4            THE COURT:  Very good.

5            So, in addition to speaking and understanding English,

6    do you read it as well?

7            THE DEFENDANT:  Yes, I do.

8            THE COURT:  And tell me a little bit more about your

9    educational background.

10           THE DEFENDANT:  I went to Gorky State Institute of

11   Foreign Languages as in the Soviet times, between 1971 and

12   1978, and I got a diploma as an interpreter and translator of

13   the English language and the French language.  And after that,

14   I had another full-time year of education at the United Nations

15   interpreters and translators course in Moscow, which was run by

16   the United Nations with the Soviet Foreign Ministry.  I

17   completed that course.

18           And also, while I was living and working in New York,

19   I attended some additional courses in business.  The New York

20   Institute of Finance, a Fairfield University two-month course

21   in banking, and also two semesters of master's degrees at SIPA

22   at Columbia University.

23           THE COURT:  All right.  Well, that's very helpful.

24   And it's clear from me even from listening to you right now

25   that you're fully conversive in the English language.

P6CESHEP

```
 1              As for French, my daughter who lives in France will

 2    tell you that the French don't believe that anyone who wasn't

 3    born and raised in France can really pronounce the language

 4    properly, but we don't need to get into that.

 5              THE DEFENDANT:  I wouldn't argue that.

 6              THE COURT:  All right.

 7              How old are you now?

 8              THE DEFENDANT:  I'm 71.

 9              THE COURT:  And are you single or married?

10              THE DEFENDANT:  I am married.

11              THE COURT:  And are you an American citizen?

12              THE DEFENDANT:  Yes, I am.

13              THE COURT:  Have you ever been treated by a

14    psychologist or psychiatrist?

15              THE DEFENDANT:  No, I have not been.

16              THE COURT:  Have you ever been hospitalized for any

17    mental illness?

18              THE DEFENDANT:  No, I have not.

19              THE COURT:  Have you ever been treated or hospitalized

20    for alcoholism?

21              THE DEFENDANT:  No, I have not.

22              THE COURT:  Have you ever been treated or hospitalized

23    for drug addiction?

24              THE DEFENDANT:  No, I have not.

25              THE COURT:  Are you currently under the care of a
```

P6CESHEP

1    physician for any reason?

2                THE DEFENDANT:  No.

3                THE COURT:  Do you take any pills or medicine of any

4    kind?

5                THE DEFENDANT:  No.

6                THE COURT:  In the last 24 hours have you taken any

7    alcohol?

8                THE DEFENDANT:  No.

9                THE COURT:  Is your mind clear today?

10               THE DEFENDANT:  Absolutely.

11               THE COURT:  And do you understand these proceedings?

12               THE DEFENDANT:  I do, your Honor.

13               THE COURT:  On the basis of the defendant's responses

14   to my questions and my observations of his demeanor, I find

15   that he is fully competent to enter an informed plea at this

16   time.

17               Now, you have a right to be represented by counsel at

18   every stage of these proceedings.

19               Do you understand that?

20               THE DEFENDANT:  I do.

21               THE COURT:  And if at any time you cannot afford

22   counsel, the Court will appoint one to represent you free of

23   charge throughout these proceedings.

24               Do you understand that?

25               THE DEFENDANT:  I do.

P6CESHEP

1           THE COURT:  You're represented by Ms. Glavin,

2    sometimes mispronounced as Ms. Glavin, but are you satisfied

3    with her representation?

4           THE DEFENDANT:  Absolutely, your Honor.

5           THE COURT:  And have you had a full opportunity to

6    discuss this matter with her?

7           THE DEFENDANT:  Correct, yes.

8           THE COURT:  And have you told her everything you know

9    about this matter?

10          THE DEFENDANT:  Yes, I did.

11          THE COURT:  Now, you previously entered a plea of not

12   guilty and a trial in that case, as you know, was scheduled to

13   begin this coming Monday, but I understand you wish now to

14   withdraw that plea and enter a plea of guilty to Count Five in

15   satisfaction of all the counts; is that correct?

16          THE DEFENDANT:  This is correct.

17          THE COURT:  Now, before I can accept any plea of

18   guilty, I need to advise you of the rights you will be giving

19   up.  And I also want to advise you of one other thing that is

20   particular to my practice, which is I never penalize anyone in

21   any way, shape, or form for going to trial.  If you plead

22   guilty and I accept your plea, I will sentence you to the same

23   sentence I would have sentenced you to if you went to trial,

24   and, conversely, if you go to trial, I will sentence you to the

25   very same sentence I would have sentenced you to if you had

P6CESHEP

1    pled guilty.  I do that because I don't think it is

2    constitutionally proper to penalize anyone for ever going to

3    trial.  That's my practice, but I want to make sure you're

4    aware of that as well.

5            THE DEFENDANT:  I am, your Honor.

6            THE COURT:  Very good.

7            Now, with respect to your rights, do you understand

8    that you have a right to a speedy and a public trial by a jury

9    on the charges against you?

10           THE DEFENDANT:  Yes.

11           THE COURT:  And if there were a trial, you would be

12   presumed innocent, and the government would be required to

13   prove your guilt beyond a reasonable doubt before you could be

14   convicted of any charge.

15           Do you understand that?

16           THE DEFENDANT:  I do.

17           THE COURT:  Third, at the trial, you would have the

18   right to be represented by counsel.  And once again, if at any

19   time you could not afford counsel, the Court would appoint one

20   to represent you free of charge throughout the trial and at all

21   other proceedings.

22           Do you understand that?

23           THE DEFENDANT:  I do.

24           THE COURT:  Fourth, at the trial, you would have the

25   right to see and hear all the witnesses and evidence against

P6CESHEP

1    you, and your attorney could cross-examine the government's

2    witnesses and object to the government's evidence, and you

3    could call witnesses on your own behalf if you so desired and

4    could have subpoenas issued to compel the attendance of

5    witnesses and other evidence on your behalf.

6            Do you understand that?

7            THE DEFENDANT:  I do.

8            THE COURT:  And something special to this case, do you

9    understand that arrangements have already been made for

10    Mr. Fokin to testify, if you do go to trial, as a witness as

11    part of your case?

12            Do you understand that?

13            THE DEFENDANT:  I do.

14            THE COURT:  Fifth, at the trial, you would have the

15    right to testify if you wanted to but no one could force you to

16    testify if you did not want to, and no suggestion of guilt

17    could be drawn against you simply because you chose not to

18    testify.

19            Do you understand that?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  And finally, even if you were convicted of

22    one or more of the charges in the indictment, you would have

23    the right to appeal your conviction.

24            Do you understand that?

25            THE DEFENDANT:  Yes.

P6CESHEP

1          THE COURT:  Now, do you understand that if you plead

2    guilty, you will be giving up each and every one of the rights

3    we've just discussed.

4          Do you understand that?

5          THE DEFENDANT:  I do.

6          THE COURT:  Very good.

7          Now, I've been furnished with a letter agreement which

8    we've marked as Court Exhibit 1, and it says that if you plead

9    guilty to Count Five, that you and the government have

10    stipulated to a guideline range of zero to six months in

11    prison.

12          Do you understand that?

13          THE DEFENDANT:  Yes, I do, your Honor.

14          THE COURT:  Now, I should tell you that I pay little

15    or no attention to the guidelines.  I regard the guidelines as

16    fundamentally irrational at their core and also totally

17    irrational in many of their applications, so I'm not going to

18    pay much attention to the guidelines if you plead guilty, I'm

19    going to look at the facts.

20          Do you understand that?

21          THE DEFENDANT:  I do, your Honor.

22          THE COURT:  And what you face in terms of Count Five

23    is a maximum term of imprisonment of up to five years, to be

24    followed by a term of supervised release of up to three years,

25    plus a fine of whichever is greatest, either $250,000 or twice

P6CESHEP

1    the amount of gain derived from the crime, or twice the loss to

2    anyone other than yourself resulting from the crime, plus a

3    $100 mandatory special assessment.

4            Do you understand those are the maximum punishments

5    you face if you plead guilty to Count Five?

6            THE DEFENDANT:  I do understand that, your Honor.

7            THE COURT:  Also, do you understand that if I were to

8    impose a term of supervised release to follow any term of

9    imprisonment and you were to violate the terms of supervised

10   release, that violation itself could lead to further

11   imprisonment going even beyond the terms of supervised release?

12           Do you understand that?

13           THE DEFENDANT:  I do.

14           THE COURT:  Now, the letter agreement, which takes the

15   form of a letter dated June 11, 2025, directed to your counsel,

16   but also there's your signature, yes?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  And before signing it, did you read it?

19           THE DEFENDANT:  Yes, I did, your Honor.

20           THE COURT:  Did you discuss it with your counsel?

21           THE DEFENDANT:  Yes.  Correct, your Honor.

22           THE COURT:  Did you understand its terms?

23           THE DEFENDANT:  Completely, your Honor.

24           THE COURT:  And did you sign it in order to indicate

25   your agreement to its terms?

P6CESHEP

1          THE DEFENDANT:  That's correct.

2          THE COURT:  Now, let's look at some of those terms.

3     For example, the third paragraph beginning on page one and

4     going over to the top of page two has a first sentence which

5     might, by my count, consistent of 247 words.  Putting aside the

6     fact that the government doesn't apparently know how to write a

7     simple sentence, do you understand that in the last part of

8     that sentence, it says, "being understood that this agreement

9     does not bar the use of such conduct," referring back to the

10     counts in the indictment, "as a predicate act or as the basis

11     for a sentencing enhancement in the subsequent prosecution,

12     including but not limited to a prosecution pursuant to

13     18 U.S.C. Sections 1961, *et seq.*"

14          So, what's your understanding of what that means?

15          THE DEFENDANT:  Well, I certainly understand the

16     language here and I take it for face value.

17          THE COURT:  Do you have any idea what that section

18     refers to?

19          THE DEFENDANT:  Well, yes, your Honor.  I have

20     translated such documents numerous times before, so --

21          THE COURT:  Yeah.  Well, do you know that's a

22     reference to RICO?

23          THE DEFENDANT:  Yes.  Yes.

24          THE COURT:  And RICO, of course, is a statute that

25     carries a maximum of 20 years and could involve your being

P6CESHEP

1    prosecuted for everything that was in the original indictment

2    and a bunch of other things.

3            Do you understand that?

4            THE DEFENDANT:  I do.

5            THE COURT:  And so you understand that even though

6    earlier in this paragraph they say you won't be prosecuted

7    again for the four counts that they're dropping, they're

8    maintaining the possibility of subsequently prosecuting you for

9    RICO.

10           Do you understand that?

11           THE DEFENDANT:  I do, your Honor.

12           THE COURT:  Okay.

13           Now, in that same paragraph, the paragraph reads:  The

14   defendant agrees that with respect to any and all dismissed

15   charges, the defendant is not a prevailing party within the

16   meaning of the Hyde Amendment, Section 617 of Public Law

17   105-119 (November 26, 1997), and will not file any claim under

18   that law.

19           What does that mean?

20           THE DEFENDANT:  That I'm not the winning side in the

21   proceedings.

22           THE COURT:  That, therefore, any right you might

23   otherwise have to sue the government you're giving up too.

24           Do you understand?

25           THE DEFENDANT:  I do.

P6CESHEP

1              THE COURT:  All right.  Now, they then get into what

2      always brings joy to my heart, a description of the guidelines,

3      and they say that pursuant to USSG, that's the sentencing

4      guidelines, Section 2B1.1(a)(2), the base offense level is six.

5              Have you read that section?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And what does it say?  Why is it a

8      six-point determination?

9              THE DEFENDANT:  It's the basis.

10             THE COURT:  What's the offense level?  What do we mean

11     by "offense level?"

12             THE DEFENDANT:  The offense level means the category

13     of seriousness of the crime and that's --

14             THE COURT:  Okay.

15             THE DEFENDANT:  -- how the points are calculated.

16             THE COURT:  Yeah.

17             Do you know, by the way -- this is perhaps not within

18     your bailiwick.  Do you know how the Sentencing Commission

19     comes up with six as opposed to two or three or five or nine or

20     25?

21             THE DEFENDANT:  That history I'm not aware of.

22             THE COURT:  No, I don't think they are either, but

23     it's not pertinent to the immediate purposes here.

24             Then it says:  Assuming the defendant clearly

25     demonstrates acceptance of responsibility to the satisfaction

P6CESHEP

1    of the government through the defendant's allocution and

2    subsequent conduct prior to the imposition of sentence, a

3    two-level reduction will be warranted pursuant to United States

4    Sentencing Guidelines Section 3E1.1(a).

5            Do you know what that means?

6            THE DEFENDANT:  Yes.  That the level of the points

7    will be slashed by two.

8            THE COURT:  If they find it satisfactory.

9            THE DEFENDANT:  Correct.

10           THE COURT:  So, even if I found it satisfactory,

11   you're agreeing that they've got to find it satisfactory, and

12   if not, you don't get that two-point reduction.

13           You understand that?

14           THE DEFENDANT:  I do.

15           THE COURT:  Okay.  Now, they're not giving you the

16   third point because you made your decision to plead guilty too

17   late after they had to prepare for trial.

18           I'm sorry?

19           MS. GLAVIN:  I think, your Honor, for when the offense

20   level is so low as a six, I think you can only get two points,

21   but they can correct me if I'm wrong.

22           THE COURT:  Oh, that's a good point.  All right.

23   That's fine.

24           But anyway, for what it's worth, I've already declared

25   that section unconstitutional, but they're appealing that so

P6CESHEP

1    there's plenty of fun to come.

2              But then they say:  Pursuant to United States

3    Sentencing Guidelines Section 4C1.1, because the defendant

4    meets all the criteria set forth in United States Sentencing

5    Guidelines Section 4C1.1(a), a two-level reduction is

6    warranted.

7              Have you read those sections?

8              THE DEFENDANT:  Yes, sir.  Yes, your Honor.

9              THE COURT:  And they didn't put you to sleep?

10             So, what does the second section say?

11             THE DEFENDANT:  Well, I believe it's my first offense

12   in the last 71 years, so I guess that has to do with me being a

13   first-time defendant.

14             THE COURT:  Well, it's partly that and it's partly

15   also that the crime you're pleading to is not any of a bunch of

16   listed crimes in that section.

17             THE DEFENDANT:  That's what my understanding is.

18             THE COURT:  Okay.  So, in accordance with the above

19   that says the applicable guideline offense level is two.  And

20   then we get to the criminal history category and they say,

21   "Based upon this office's current understanding, including from

22   representations by the defense, the defendant has zero criminal

23   history points."  So, you understand that if you have concealed

24   from them any prior misconduct that could qualify for guideline

25   criminal history, you're out of luck.

P6CESHEP

1          THE DEFENDANT:  Yes.  Yes, your Honor.

2          THE COURT:  Okay.  And then it says, "Putting all that

3     together, the defendant stipulated guidelines range is zero to

4     six months' imprisonment."

5          Now, you understood from what I told you earlier --

6          THE DEFENDANT:  Yes.

7          THE COURT:  -- that I may sentence you to five years

8     for all you know.

9          THE DEFENDANT:  I do understand that, your Honor.

10          THE COURT:  And more importantly, that I will pay

11     little or no attention to this exercise in arithmetic

12     legerdemain.

13          Do you understand that?

14          THE DEFENDANT:  I do.

15          THE COURT:  All right.

16          Now, there's a footnote here.  Most of what we're

17     doing is sort of standard stuff for the government's

18     agreements, but there's a footnote:

19          The government agrees that it will not argue at

20     sentencing that the defendant is guilty of Counts One through

21     Four of the indictment.

22          Now, let me ask the government before we continue with

23     the allocution of the defendant.  What does that mean?

24          MS. ZVEROVICH:  Your Honor, because the defendant is

25     pleading to Count Five, which is making false statements, the

P6CESHEP

1    government has agreed in the plea agreement that it will not

2    argue at sentencing that he is guilty of the other counts in

3    the indictment.

4         THE COURT:  So, if I inquire in connection with

5    sentencing of the government to tell me everything you would

6    have proven if the case had gone to trial on Counts One through

7    Four, you still have to tell me all that, yes?

8         MS. ZVEROVICH:  Yes, your Honor.

9         THE COURT:  All you're foreclosing is saying that even

10   though we think he did X, Y, Z, Q, R, and M, we won't use the

11   word "guilty."

12        MS. ZVEROVICH:  That we will not argue at sentencing

13   that he is guilty of those counts.  Correct, your Honor.

14        THE COURT:  Well, forgive me if I misunderstand.

15   You're going to be arguing, are you not, especially if I ask

16   you about it, what you think his motivation was for making

17   false statements?

18        MS. ZVEROVICH:  That's correct, your Honor.

19        THE COURT:  And then if we get into the evidence of

20   that, that would include much of the evidence that you might

21   have offered on Counts One through Four; correct?

22        MS. ZVEROVICH:  That's correct.

23        THE COURT:  Okay.  So, this footnote only limits you

24   from not using the magic word "guilty."

25        MS. ZVEROVICH:  Your Honor, it limits us from arguing

P6CESHEP

1    at sentencing or in connection with sentencing that the

2    defendant is guilty of Counts One through Four.

3         THE COURT:  Right.  But if I hear all the evidence and

4    I decide he's guilty, I can take account of that, can't I?

5         MS. ZVEROVICH:  The Court, of course, can take into

6    account all of the facts relevant to sentencing, yes.

7         THE COURT:  Okay.

8         Ms. Glavin?

9         MS. GLAVIN:  Your Honor, on that particular point,

10   this was a matter of discussion with the U.S. Attorney's Office

11   and an absolute condition of Mr. Shestakov pleading guilty,

12   that the government, my understanding, is not going to argue

13   that Counts One through Four, the idea is that it would not be

14   part of relevant conduct that these are crimes that he

15   committed.  That's what I understood.  I am well aware that

16   your Honor will make inquiry about this and that he will have

17   to answer truthfully.

18        THE COURT:  Well, what you're saying is different from

19   what they just said.

20        MS. GLAVIN:  Yes.  And --

21        THE COURT:  You're saying that there's a further

22   agreement not expressed here *in haec verba*, as you would say,

23   that they will not argue that in the language of the guidelines

24   it is "relevant conduct."  But what do I care about that?

25        MS. GLAVIN:  Well, I am well aware that your Honor

P6CESHEP

1    will have some questions at sentencing, and I have thought

2    about that.  And one of the reasons that I asked for language

3    along these lines is that your Honor, of course, can consider

4    thus, and we will make a presentation as well, as well as what

5    Mr. Shestakov's motivation was in being evasive, and I think

6    there will be a substantial amount of that in our submission as

7    to why he said what he said.

8            THE COURT:  If you disagree with the government on

9    that, we could have a *Fatico* hearing that might go on for two

10   weeks.

11           MS. GLAVIN:  That is precisely why I wanted something

12   along these lines, because we're going to lose Mr. Fokin.  And

13   so my feeling about this was, I did not want the government

14   saying, "You should sentence him, your Honor, because he

15   violated sanctions and because he --"

16           THE COURT:  No, I understand.

17           MS. GLAVIN:  That's what I understood it to be.

18           THE COURT:  Yeah.  Now that I hear that and we take

19   out the buzz word "relevant --"

20           MS. GLAVIN:  Guilty --

21           THE COURT:  -- or the buzz word "guilty --"

22           MS. GLAVIN:  Yes.

23           THE COURT:  -- what I understand the government and

24   you have agreed is, Judge, deep down this guy did this because

25   he's guilty as sin of these others -- oh, forgive me, your

P6CESHEP

 1    Honor, not guilty.  He is someone who did X, Y, Z, Q, and R.

 2    And that may be your agreement but that's not going to stop me

 3    from finding about X, Q, and R.

 4         MS. GLAVIN:  I fully understand that, your Honor.  And

 5    I think we will have a sentencing submission that you will find

 6    quite persuasive on these points.

 7         THE COURT:  All right.  That's fine.  I just want to

 8    make sure.

 9         Anything further the government wanted to say about

10    that interesting footnote?

11         MS. ZVEROVICH:  No, your Honor.

12         THE COURT:  All right.

13         MS. GLAVIN:  But I do -- your Honor, on that point, is

14    that while your Honor will make the decision and you were not

15    party to this plea agreement, I fully, based on the footnote,

16    do not expect that the government will say to you that you

17    should increase his sentencing exposure because we think he did

18    these bad things.

19         THE COURT:  Now --

20         MS. GLAVIN:  According to this agreement.

21         THE COURT:  -- the standard language, if we go onto

22    page three, is something similar, though not --

23         MS. GLAVIN:  Yes.

24         THE COURT:  -- identical to that, which is that the

25    parties stipulate that a sentence within the stipulated

P6CESHEP

guideline range is sufficient but not greater than necessary to

comply with the purposes of sentencing set forth in

18 U.S.C. Section 3553(a)(2), and they agree not to seek a

sentence outside of the stipulated guidelines range.  So,

that's all fine.  But last I checked, the determination of

what's the proper sentence under Section 3553 is a matter for

the Court.  And last I checked, the Court, if it's doing its

job, needs to know what the facts are in order to figure out

what the proper sentence is under Section 3553(a), so I'm going

to want to inquire at great length about the facts.  In fact,

I'm sure even before I start inquiring, I will receive

voluminous but interesting submissions from both sides.

So, Mr. Shestakov, you understand that nothing in this

letter is binding on me.

You understand?

THE DEFENDANT:  Oh, yes.  Of course, your Honor.

THE COURT:  All right.  Very good.

Now, this also provides that it is agreed that the

defendant will not file a direct appeal or otherwise challenge

by petition, pursuant to 28 U.S.C. Section 2255 or any other

provision, the defendant's conviction.

What does that mean?

(Counsel and defendant confer)

THE DEFENDANT:  That basically means I'm not going to

appeal.

P6CESHEP

1          THE COURT:  At least not the fact of your having been

2     guilty doesn't -- this sentence doesn't refer to sentencing

3     *per se* but rather to the fact of your conviction for admitting

4     your guilt.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And what's Section 2255, which is

8     mentioned about 14 times in this letter?

9          (Counsel and defendant confer)

10          THE DEFENDANT:  Well, my reading into that is that I'm

11     giving up certain rights, my constitutional rights in this

12     situation, and that's what it's about.

13          THE COURT:  Yeah.  The constitutional right to *habeas*

14     *corpus*, for example.

15          THE DEFENDANT:  Yeah.

16          THE COURT:  By the way, there's an exception to all

17     this, although you don't get down to it until the very end of

18     that paragraph:

19          Nothing in this paragraph shall be construed to be a

20     waiver of whatever rights the defendant may have to assert

21     claims of ineffective assistance of counsel, whether on direct

22     appeal, collateral review, or otherwise.

23          THE DEFENDANT:  This is not the case.

24          THE COURT:  Well, that's what you say now but who

25     knows.

P6CESHEP

1          Okay.  You understand that -- and obviously Ms. Glavin

2    is a very effective counsel, but this embraces not just these

3    proceedings but conceivable future proceedings as well.  You

4    might have another counsel representing you on some *habeas* --

5          THE DEFENDANT:  *Corpus*.

6          THE COURT:  -- and you would be able to say that that

7    person was ineffective.  And undoubtedly, you would say that

8    because that person would pale in comparison to Ms. Glavin, so

9    you could rest your case.

10         But in any event, you get the idea, yes?

11         THE DEFENDANT:  I do get this, yes.

12         THE COURT:  All right.  Very good.

13         Now, still on page four, by entering this plea of

14   guilty, the defendant waives any and all right to withdraw the

15   defendant's plea or to attack the defendant's conviction or

16   sentence, either direct appeal or collaterally, on the ground

17   that the government has failed to produce any discovery

18   material other than information establishing the factual

19   instance of the defendant, including Jencks Act material,

20   material pursuant to *Brady v. Maryland*, and impeachment

21   material pursuant to *Giglio v. United States* that has not

22   already been produced as of the date of the signing of this

23   agreement.

24         What's your understanding of that?  Another

25   brilliantly worded paragraph.

P6CESHEP

1        THE DEFENDANT:  Well, my understanding is that all the

2   materials that were relevant into -- for my decision in this

3   case have been presented and I'm satisfied with that.

4        THE COURT:  So, it says that you can't argue later on

5   that the government failed to produce some material tending to

6   be exculpatory of you which they, for whatever reason, held

7   back.  That's so called *Brady* material.

8        THE DEFENDANT:  Yes.

9        THE COURT:  But there's an exception to that.  You

10   would have a claim to withdraw your plea if they held back

11   information establishing a factual innocence of the defendant.

12        Do you see that?

13        THE DEFENDANT:  I do, your Honor.

14        THE COURT:  So, let me ask the government.

15        I don't understand that sentence.  I'm glad

16   Mr. Shestakov and you all do, but I don't.  Is it *Brady*

17   material, material tending to establish the factual innocence

18   of the defendant?

19        MS. ZVEROVICH:  Yes, your Honor.

20        THE COURT:  So, isn't that sentence inconsistent on

21   its face?

22        MS. ZVEROVICH:  One moment, your Honor.

23        THE COURT:  Yeah.

24        (Counsel confer)

25        MS. ZVEROVICH:  Your Honor, so, the Supreme Court has

P6CESHEP

1  addressed this issue in *United States v. Louis*, which was from

2  2002.

3            THE COURT:  Which I'm sure Mr. Shestakov has read

4  carefully.

5            MS. ZVEROVICH:  That phrase "information establishing

6  the factual innocence of the defendant" comes from that case.

7  I believe the concept of *Brady* is broader than that.  For

8  example, there could be material that --

9            THE COURT:  Yes, I agree with that, but that is not

10  the way the sentence is worded.  It refers to all *Brady*

11  material.  So, I respectfully suggest that you might want to go

12  back and talk to your colleagues about fixing that sentence

13  because I do think it is arguably inconsistent on its face.

14  The fact that some *Brady* material is broader than something

15  establishing the innocence doesn't mean that most *Brady*

16  material isn't something that does tend to establish the

17  innocence.  So, it's a very poorly worded sentence, in my view.

18            MS. ZVEROVICH:  Understood, your Honor.

19            I believe this language expressly carves out

20  information establishing the factual innocence of the

21  defendant --

22            THE COURT:  Yeah.

23            MS. ZVEROVICH:  -- from the waiver.

24            THE COURT:  That's true.  But then what does it mean

25  that you're waiving the failure to produce "material pursuant

P6CESHEP

1  to *Brady v. Maryland*?"

2             MS. ZVEROVICH:  Well, with that exception, your Honor.

3  So, failure to produce discovery material other than

4  information establishing the factual innocence of the

5  defendant.  So, to the extent --

6             THE COURT:  Yeah.  But I -- well, all right.  One of

7  the reasons I'm raising this is not just to give you a hard

8  time, although that, of course, is an independently sufficient

9  reason, but my understanding is there was *Brady* material only

10  produced a few days ago; right?

11            MS. ZVEROVICH:  That's correct.  We received it that

12  day and we produced it the same day that we received it.

13            THE COURT:  All right.

14            MS. GLAVIN:  And on that point, your Honor, I would

15  say that the *Brady* material was of such significance that we

16  think it did establish the factual innocence of the defendant.

17  And the government and I can debate this, but I do think it

18  informed, along with some other disclosures, their decision not

19  to proceed on Counts One through Four.

20            MS. ZVEROVICH:  Your Honor, just for the record, we do

21  disagree with that characterization.

22            THE COURT:  Just out of my curiosity, was this a

23  matter -- the change in the government's view, so to speak --

24  something that was discussed with or initiated by Central

25  Justice?

P6CESHEP

1          MS. ZVEROVICH:  One moment, your Honor.

2          (Counsel confer)

3          MS. ZVEROVICH:  No, your Honor.

4          THE COURT:  Okay.  I wanted to make sure we didn't

5    have an Adams situation here.

6          Now, there's a whole bunch of stuff about immigration

7    status, which applies if you're not telling the truth when you

8    say you're a citizen, but you --

9          How long have you been a citizen, by the way?

10         THE DEFENDANT:  Since 2013.

11         THE COURT:  Very good.

12         All right.  So, I do think it's impressive that this

13   defendant does understand the letter agreement to which he has

14   now fully consented.  So, in light of all this, let me ask the

15   government.

16         On the remaining count, what are the elements?

17         MS. ZVEROVICH:  Your Honor, the elements with respect

18   to Count Five are as follows, and the government would be

19   required to prove them beyond a reasonable doubt if the case

20   proceeded to trial:

21         First, that on or about the date alleged in the

22   indictment, which is November 21, 2021, the defendant either

23   falsified, concealed, or covered up by trick, scheme, or device

24   a fact, or made a statement or representation that was false,

25   fictitious, or fraudulent;

P6CESHEP

 1          Second, that the fact falsified or concealed or

 2   covered up, or the false, fictitious, or fraudulent statement

 3   or representation was material;

 4          Third, that the defendant acted knowingly and

 5   willfully;

 6          And fourth, that the falsification, concealment,

 7   cover-up, or the false, fictitious, or fraudulent statement or

 8   presentation pertained to a matter within the jurisdiction of

 9   the United States government.

10          And in addition to these elements, the government

11   would be required to prove that venue in this district is

12   proper by a preponderance of the evidence.

13          THE COURT:  All right.

14          I neglected to ask and I should have so I will now:

15   Does the government represent that the letter agreement that

16   we've just gone over represents the entirety of any and all

17   promises made to the defendant by the government?

18          MS. ZVEROVICH:  Yes, your Honor.

19          THE COURT:  Does defense counsel agree that is

20   correct?

21          MS. GLAVIN:  That's correct.

22          THE COURT:  And, Mr. Shestakov, do you agree that's

23   correct?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Mr. Shestakov, other than the government,

P6CESHEP

1  has anyone else made any kind of promise to you or offered you

2  any inducement to get you to plead guilty?

3          THE DEFENDANT:  No.

4          THE COURT:  Has anyone threatened you in any way,

5  shape, or form to get you to plead guilty?

6          THE DEFENDANT:  No.

7          THE COURT:  So, tell me now in your own words what it

8  is that you did that makes you guilty of Count Five.

9          THE DEFENDANT:  May I remain seated, your Honor?

10          THE COURT:  Yes.  I will too.

11          THE DEFENDANT:  Yeah.  Thank you.

12          On November 21, 2021, during a breakfast meeting in a

13  Manhattan, New York, restaurant and before my cell phone was

14  seized, an FBI agent asked me about the relationship of the

15  relationship between Charles McGonigal and Evgeny Fokin.  My

16  answer knowingly and willfully concealed certain facts.

17  Despite being fully aware that Mr. McGonigal knew Evgeny Fokin

18  and the two were working together, when asked whether

19  Mr. McGonigal knew Mr. Fokin, I responded that Mr. McGonigal

20  probably does know Mr. Fokin and feigned uncertainty as to how

21  recently we all met together.

22          THE COURT:  When you say you feigned uncertainty, what

23  the heck does that mean?

24          THE DEFENDANT:  Pretended.

25          THE COURT:  In words or gestures or --

P6CESHEP

1              THE DEFENDANT:  Let me go back to the transcript of

2     that meeting, which we have here.

3              THE COURT:  Yes, go ahead.

4              THE DEFENDANT:  Thank you.

5              (Counsel and defendant confer)

6              THE DEFENDANT:  Well, it seems that it was in both my

7     demeanor and my words expressed.  That's how, you know, I --

8              THE COURT:  Was there anything you said in that

9     response -- and I don't have the transcript in front of me, but

10    was anything affirmatively false or were you simply attempting

11    to mislead?

12             (Counsel and defendant confer)

13             THE DEFENDANT:  Well, looking at that -- and it's been

14    a while -- it seems that I was evasive.

15             THE COURT:  Well, I guess, let me make sure that you

16    understand my question.

17             One can be evasive but not untruthful, in the narrow

18    sense.  So, if you're asked, "What did you have for breakfast?"

19    And you say, "Well, I had coffee and cereal," but you don't

20    reveal you also had an incredibly huge bagel, you're still

21    telling the truth as far as it goes.  You were asked what you

22    had for breakfast and you described some of the things you had

23    for breakfast but you're concealing the bagel.  That's

24    different from saying, "I had for breakfast coffee and cereal,"

25    when you didn't coffee and cereal at all, you had French toast.

P6CESHEP

1            So, you see the difference between -- evasive is one

2    thing but affirmatively lying is something else.  So, my

3    question is:  Was it either, both, or what in this case?

4            (Counsel and defendant confer)

5            MS. GLAVIN:  So your Honor, I just can read you a

6    portion of the transcript.

7            THE COURT:  Yeah, go ahead.

8            MS. GLAVIN:  So the FBI agent specifically asked,

9    "Does Charles McGonigal know Evgeny Fokin?  Do you know?"  And

10   Mr. Shestakov's response was, "Um, he probably does."  When in

11   truth and in fact Mr. Shestakov knew they absolutely knew each

12   other 100 percent.

13           THE COURT:  Yeah.  So, I'm not sure that --

14           The reason I'm asking these questions is the *Bronston*

15   case, as I'm sure counsel appreciates.

16           MS. GLAVIN:  Yes.

17           THE COURT:  It was a high probability but it was still

18   arguably, at least, maybe an evasive but not affirmatively

19   false answer.

20           MS. GLAVIN:  Well, it was actually a 100-percent

21   probability that he knew that Mr. McGonigal knew Mr. Fokin.

22   They had all met together, spoke together, discussed --

23           THE COURT:  Yeah.  But he's not saying -- not as far

24   as I know, he's saying probably they did.

25           All right.  What else?

P6CESHEP

1           MS. GLAVIN:  Okay.  So, then he was asked --

2    specifically because the FBI agents had been surveilling, so

3    they knew that they knew each other.  And they then asked, you

4    know, "Have you all met together?"  Mr. Shestakov, "Uh, at some

5    point, yeah, we did."  The agent --

6           THE COURT:  That's true; right?

7           MS. GLAVIN:  Right.

8           "Like recently or a long time ago or --"

9           Mr. Shestakov, "Um, well, when he was working with us?

10   Um.  (Pause)  Some time ago.  Yeah.  Yeah."

11          And I think what --

12          THE COURT:  And if it was the day before, that would

13   have been arguably a false statement.

14          MS. GLAVIN:  It was 12 days earlier.

15          And I think Mr. Shestakov -- I think the plea is based

16   on there can be a false statement or you make -- you know, it's

17   an omission of material fact that you're being asked about.

18          THE COURT:  Well, for example, that would support

19   liability under, for example, the Mail Fraud statute --

20          MS. GLAVIN:  Yeah.

21          THE COURT:  -- but it would not support, for example,

22   a perjury conviction.  That's what the *Bronston* case is.

23          MS. GLAVIN:  Yes.

24          THE COURT:  Let me ask the government.

25          Have you considered, in accepting this plea, the

P6CESHEP

*Bronston* case?  Do you know what I'm talking about?

MS. ZVEROVICH:  No, your Honor.  The government would need to consult the case.

THE COURT:  Well, it's a Supreme Court case, so, you know, who bothers with that.

So, in *Bronston*, the guy was asked, if I remember correctly, "Do you have a secret Swiss bank account?"  And he said something like, "My company doesn't have any Swiss bank accounts."  In fact, he did have a Swiss bank account but he was evading revealing that by giving a truthful answer that was not responsive.  "My company doesn't have any Swiss bank accounts."

He was convicted on an evasion theory.  It was clearly material to that case.  It goes up to the Supreme Court of the United States, the Supreme Court reversed it, I think, unanimously or close to unanimously, and says, no, at least under the perjury statute -- this was not 1001 -- but under the perjury statute, it has to be an affirmatively false statement.  That's why I'm making these inquiries right now.

But let's go on.

MS. GLAVIN:  And with respect to that, your Honor, actually briefed this in a motion to dismiss the false statement.

THE COURT:  Before --

MS. GLAVIN:  Judge Rearden.

P6CESHEP

1              THE COURT:  Yeah.

2              MS. GLAVIN:  And we relied heavily on *Bronston.*

3         I think where this comes out on this, and for this

4    particular plea, is that for false statement, it has the

5    language about concealing a fact -- you know, falsifies by

6    concealing a fact by scheme or device, and I think where we

7    would come out and where we think it's sufficient for a plea --

8    and is we discussed this carefully about going to trial on

9    this.  Where I think it's sufficient for the plea is that

10   Mr. Shestakov was aware of what the FBI was getting at and he

11   was giving answers, you know, does he know him?  Probably.

12             THE COURT:  Yeah.  I understand that his intent was to

13   mislead.

14             MS. GLAVIN:  Yes.  To give an evasive answer.

15             THE COURT:  Right.  And I also understand the argument

16   that the statute here is different from the one in *Bronson* --

17             MS. GLAVIN:  Yes.

18             THE COURT:  -- but I still think it's -- I would be

19   interested in -- I didn't read your submission to Judge Rearden

20   and apparently the government didn't pay much attention to it

21   since they're not familiar with the *Bronston* case, but it may

22   be that the difference in the statute makes the sufficient

23   difference.  I'm not sure.

24             MS. GLAVIN:  I think it does, your Honor.  I actually

25   think it does.

P6CESHEP

1          Look, you know I love a good trial.  We've talked

2     carefully about this.  And I think if Mr. Shestakov can finish

3     up the allocution and --

4          THE COURT:  Yeah, I want to hear the rest.  But let me

5     just ask you one last question and then we'll go on with the

6     allocution.

7          Assuming for the sake of argument that his answers

8     were evasive but not affirmatively false, assuming for the sake

9     of argument that it would not satisfy this statute in the way

10     that it did not satisfy the perjury statute under *Bronston*,

11     under his letter agreement, is he, nonetheless, waiving the

12     claim that I did not allocute to the actual elements of the

13     crime, or is that preserved?

14          What's the government's view on that?

15          MS. ZVEROVICH:  Your Honor, the government's view is

16     that the defendant waives any challenge to his conviction other

17     than the claim of ineffective assistance of counsel.

18          THE COURT:  I don't know that the agreement says that,

19     but maybe it does.  But under your interpretation, if someone

20     comes into court and gives an honest allocution that seems to

21     the district court to satisfy the statute, and the district

22     court then goes ahead and imposes sentence, the defendant is

23     precluded from appealing on the ground that, in fact, it did

24     not meet the essential elements of the statute.

25          How can that be?

P6CESHEP

1          MS. ZVEROVICH:  Well, your Honor, the Second Circuit

2    has recognized five circumstances in which an appellate waiver

3    would not be enforceable, and one of those is that the plea

4    waiver was not made knowingly and intelligently and

5    competently.  And so to the extent the defendant has such a

6    claim on appeal, he can challenge the plea waiver on that

7    basis.

8          THE COURT:  Okay.  I want to take a five-minute break

9    just to look at the statute and we will then continue in five

10   minutes.

11         MS. ZVEROVICH:  Your Honor, and if I may briefly,

12   because I think it may just inform the Court's thinking on this

13   issue.

14         I understand the defendant's allocution did not cover

15   this, but the government's position is that in the interview on

16   November 21, 2021, the defendant did make at least one

17   affirmative false statement.

18         THE COURT:  Yeah.  That's very helpful, and we'll get

19   back to that.  And I apologize for this short break, but we'll

20   take a five-minute break.

21         (Recess)

22         (Resumed)

23         THE COURT:  Well, I am satisfied that the broad

24   wording of 18 U.S.C. 1001 would apply to the kind of knowing

25   evasion that is being described so far.  I'm less certain as to

P6CESHEP

whether that is wrong that would be a waived objection, but
I'll continue to look at that.  But I think I'm sufficiently
satisfied that we can go forward today.

　　　　So, let me hear the rest of the allocution.

　　　　MS. GLAVIN:  Your Honor, I think we'll just then start
with "despite being fully aware," which is where we were
before.

　　　　THE DEFENDANT:  Your Honor, despite being fully aware
that Mr. McGonigal knew Evgeny Fokin and the two were working
together, when asked whether Mr. McGonigal knew Mr. Fokin, I
responded that Mr. McGonigal probably does know Mr. Fokin and
feigned uncertainty as to how recently we all met together.
This deliberately withheld that Mr. McGonigal, Mr. Fokin, and I
had met together 12 days earlier.

　　　　I knew from prior meetings with the FBI that I had an
obligation to be truthful, and because I was intentionally
deceptive I knew what I did was wrong.

　　　　THE COURT:  All right.

　　　　Is there anything else regarding the factual portion
of the allocution that the government wishes the Court to
inquire about?

　　　　MS. ZVEROVICH:  And the government, your Honor, will
proffer that the defendant's false and misleading statements
were material to the FBI at the time that they were --

　　　　THE COURT:  Yeah.  I know enough about this case to

P6CESHEP

```
 1    know it's clear.
 2              But of the things he just went over, which is the one
 3    that you thought was most affirmatively false?
 4              MS. ZVEROVICH:  Your Honor, he made several false
 5    statements, but one in particular which was not covered in the
 6    allocution which was that --
 7              (Counsel confer)
 8              MS. ZVEROVICH:  So, with respect to one area,
 9    Mr. Shestakov was asked whether he had ever engaged in a
10    business relationship with Evgeny Fokin, and the response was,
11    "No.  No business."  And then it continues.  So, that was --
12              THE COURT:  All right.  Let me inquire about that.
13              What about that, Mr. Shestakov?  Was that truthful or
14    a lie?
15              THE DEFENDANT:  Well, your Honor, at the time -- and I
16    still continue to think it -- that I never had business with
17    Fokin.  He was a friend and I was helping a friend.  So, we
18    didn't discuss any money, any compensation on his behalf or the
19    company that he represents behalf, so I was basically doing a
20    friendly service.
21              THE COURT:  So, let me go back to the government.
22              What's your view on --
23              THE DEFENDANT:  And my understanding was that we can
24    describe my relationship with McGonigal as business, and that's
25    different from my relationship with Fokin.
```

P6CESHEP

1          THE COURT:  So, let me go back to the government.

2          Why do you think that that statement was an

3     affirmative lie?

4          MS. ZVEROVICH:  Your Honor, that statement was an

5     affirmative lie based on the evidence, and I can summarize that

6     for the Court.

7          THE COURT:  Yeah, go ahead.

8          MS. ZVEROVICH:  So, first, in or about August 2021,

9     Mr. Shestakov negotiated with Evgeny Fokin and McGonigal a

10    business contract between Pandian Ltd. and SPECTRUM Risk

11    Solutions.  Mr. Shestakov signed the name of another person on

12    that contract on about August 11, 2021.

13         In October 2021 --

14         THE COURT:  Hold on.  Let me stop you there.

15         So, what about those two things?

16         THE DEFENDANT:  Well, I did not negotiate the

17    contract.  I helped McGonigal and Fokin communicate.  And when

18    I put that signature on the contract, McGonigal explained to me

19    while he was away on a business trip that he said he was so

20    busy with meetings.  I asked him why cannot the person who is

21    actually on the contract sign off on the contract, he said he's

22    traveling somewhere in the deep waters of the Balkans so he's

23    not reachable.  And it was a matter of time, time was of the

24    essence, and McGonigal told me, "Sign the contract and we'll be

25    done."

P6CESHEP

1          THE COURT:  Sign it in someone else's name?

2          THE DEFENDANT:  Correct.  But -- but he told --

3          THE COURT:  I understand why you're saying you did it,

4    but I just want to make sure I understand the facts.

5          You signed this contract in someone else's name,

6    knowing it was not your name?

7          THE DEFENDANT:  Correct.  Upon instructions from

8    McGonigal.

9          THE COURT:  And -- well, excuse me.

10         And the other person had not told you, "Please sign my

11   name."  Correct?

12         THE DEFENDANT:  Correct.

13         THE COURT:  So, you signed someone else's name to a

14   business contract based on representations from Mr. McGonigal

15   that you should do this because the other guy is busy and it's

16   okay, or words to that effect.

17         THE DEFENDANT:  Correct.

18         And besides, McGonigal told me that he actually was

19   the boss of this company and that other person was his business

20   partner and it was fine, and he wanted me to do that.

21         THE COURT:  Well, I understand what you're saying, and

22   maybe this will be something to be pursued in connection with

23   sentencing, but as someone who had a considerable life

24   experience, you knew, did you not, that you couldn't forge

25   someone else's name on business contract?

P6CESHEP

1          THE DEFENDANT:  I was given authority by McGonigal who

2     claimed that that was his company, his completely in control,

3     and I didn't have any reason not to believe him.  Someone who

4     has been a 20-year veteran of the FBI and definitely knew what

5     he was doing, and I had no reason not to believe him.

6          THE COURT:  Okay.

7          Was there anything further the government wanted to

8     say on the subject?

9          MS. ZVEROVICH:  One moment, your Honor.

10          (Counsel confer)

11          MS. ZVEROVICH:  Your Honor, I would just briefly

12     proffer a few additional facts with respect to this statement,

13     but I would also like to focus the Court's attention on a

14     second statement with respect to the defendant's allocution, if

15     I may.

16          THE COURT:  Please.

17          MS. ZVEROVICH:  So, with respect to this statement

18     about not having a business relationship with Fokin, that

19     statement was false based on the facts I just proffered as well

20     as the fact that in October 2021, Mr. Shestakov received an

21     $8,000 payment under the contract that he had negotiated with

22     folk and McGonigal.  He also engaged in numerous

23     communications, including text communications, between August

24     and November 2021 with Mr. Fokin about performing services

25     pursuant to the contract, and he made admissions on a FARA

P6CESHEP

1    filing that he made following the interview with respect to the

2    business relationship that he had with Mr. Fokin.  So, in the

3    government's view, that was an affirmative lie.

4         Focusing the Court on other aspects of the interview,

5    Mr. Shestakov was asked what was Charles McGonigal's interests

6    in Mr. Fokin, and the response was, "Um, he was actually, uh,

7    wanted to, oh, somehow, you know, be nominally in touch with,

8    uh, you know, uh," and then he confirms that he's referring to

9    Charles McGonigal.  That also is an affirmative false statement

10   because the three of them, including McGonigal and Fokin, and

11   the defendant was aware of it, were in repeated communication

12   about this contract, so that's another example of an

13   affirmative misrepresentation.

14        THE COURT:  So, Mr. Shestakov, what about that one?

15        THE DEFENDANT:  Well, in the first place, the money

16   that was received by me was not from Mr. Fokin, never discussed

17   with Mr. Fokin; it was from Mr. McGonigal, upon his insistence,

18   by the way.  And he also paid the same amount to Mr. Nezaj, who

19   also figures in this situation.

20        THE COURT:  When Mr. McGonigal gave you money, what

21   did you think he was giving it -- did Mr. McGonigal give you

22   money?

23        THE DEFENDANT:  No.  He actually gave instructions to

24   Mr. Nezaj.

25        THE COURT:  Maybe I misunderstood what you said a

P6CESHEP

1    minute ago.  I thought you said Mr. McGonigal gave you money.

2                THE DEFENDANT:  He actually gave instructions to

3    Mr. Nezaj to transfer the money.  A wire transfer.

4                THE COURT:  To you.

5                THE DEFENDANT:  He did.

6                THE COURT:  Yes.  How much?

7                THE DEFENDANT:  $8,000.

8                THE COURT:  And what did you think that was for?

9                THE DEFENDANT:  Say it again, please?

10               THE COURT:  What did you think that was for?

11               THE DEFENDANT:  For actually my finder's fee,

12   basically, for McGonigal, for a contract that he entered with

13   the company that represented EN+, and he basically told me that

14   that's my finder's fee.

15               THE COURT:  Okay.  So, Mr. Shestakov, I want to repeat

16   something I said to you earlier but I want to make sure you

17   fully understand it.

18               On the one hand, I never penalize anyone for going to

19   trial.  I give the same sentence -- except when I'm forced to

20   by mandatory minimums, which are not involved here -- I give

21   the same sentence to someone who goes to trial and is convicted

22   as I would give if they pled guilty.  I don't want to penalize

23   them for exercising their constitutional right to trial.

24               But at the same time, I have no belief in the

25   rationality of the guidelines.  And if I become convinced that

P6CESHEP

1    you are not being candid, you might face a considerably greater

2    sentence than six months, because if ever in your life you need

3    to be fully candid, it's when talking to the Court.

4            So, I just want to make sure you understand both those

5    aspects.

6            THE DEFENDANT:  I do, your Honor.

7            THE COURT:  All right.  And you still want to go

8    forward with your plea?

9            THE DEFENDANT:  Yes.

10            THE COURT:  All right.

11            Now, as I said, I find, even without getting into the

12    matters we just discussed in the last moment or two, I think my

13    quick review of 1001 is that the formal allocution meets the

14    requirements of 1001.  If I'm wrong on that, I'm not sure it's

15    a waivable issue but we don't have to worry about that today,

16    I'll think about that some more between now and sentencing.

17    So, before I ask the defendant to formally enter his plea, is

18    there anything else on any subject that either counsel wanted

19    to raise with the Court?

20            Anything from the government?

21            MS. ZVEROVICH:  Your Honor, just one matter, which is

22    the government would ask the Court to confirm that

23    Mr. Shestakov understands the aspect of the appellate waiver as

24    it relates to his sentence, which is on page four of the plea

25    agreement.

P6CESHEP

1          THE COURT:  Well, yeah, I think he said he understood

2     every aspect of this agreement and we went through it in

3     detail.  But what, in particular, are you referring to now?

4     That he will not file a direct appeal?

5          MS. ZVEROVICH:  Correct, your Honor.  That it is

6     further agreed that the defendant will not file a direct appeal

7     or otherwise challenge, by petition, pursuant --

8          THE COURT:  Yeah.  I thought we went through that, and

9     I was impressed by his understanding of many provisions.

10          But anyway, in an excess of caution, if I do sentence

11     you -- well, there are two aspects of the waiver:

12          First, on the sentence itself, if I sentence you to

13     six months or less, you're not going to attack it either by

14     direct appeal or any indirect collateral attack.

15          You understand that, yes?

16          THE DEFENDANT:  I do.

17          THE COURT:  And second of all, independent of the

18     sentence, if I find, as I'm about to, that you have correctly

19     admitted your guilt under Count Five, you won't appeal or

20     otherwise challenge the fact that you have admitted and been

21     convicted of violating that statute.  Correct?  You understand

22     that?

23          THE DEFENDANT:  I understand that.

24          THE COURT:  Okay.

25          Is there anything else the government wanted me to

P6CESHEP

1    inquire on?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Okay.

4              Anything from defense counsel?

5              MS. GLAVIN:  Your Honor, just briefly on the colloquy

6    that the government had and the Court had.

7              We will address that in our sentencing submission.

8    And I just want the Court to know, we spent a fair amount of

9    time on that issue with Mr. Fokin, and it will be addressed in

10   the --

11             THE COURT:  Sure.  I think it's almost inevitable that

12   I'm going to want to have a *Fatico* hearing at least to hear

13   more from him, and I'm going to want to question him before

14   sentencing and see, but I'll be much more versed, thanks to

15   submissions from counsel, with the facts of the case before I

16   do that, but I think it's inevitable that I'm going to do that.

17             MS. GLAVIN:  That's fine, your Honor.  I think on

18   these questions today, there's much more and there was much

19   more to his thinking, and I think he would be happy to share

20   that with the Court.

21             THE COURT:  Okay.  Very good.

22             So, Mr. Shestakov, in light of everything we've now

23   discussed, how do you now plead to Count Five of indictment

24   23-CR-16, guilty or not guilty?

25             THE DEFENDANT:  Guilty, your Honor.

P6CESHEP

1          THE COURT:  Because the defendant as acknowledged his

2    guilt as charged, because he has shown that he understands his

3    rights, and because his plea is entered knowingly and

4    voluntarily and is supported by an independent basis of fact

5    containing the essential elements of the offense, I accept his

6    plea and adjudge him guilty of Count Five of indictment

7    21-CR-16.

8          Now, Mr. Shestakov, the next stage of this process is

9    that we will set a sentencing date in a minute, and prior to

10   that -- in fact, probably in the next week or two -- the

11   probation office will start preparing a presentence report to

12   assist me in determining sentence and they will want to

13   interview you.  You can have your counsel present during that

14   interview, but under my practices, you personally need to

15   answer the questions put to you.

16         Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And after that report is in draft form but

19   before it's in final form, you and your counsel will have a

20   chance to review it and the government will have a chance to

21   review it and to offer suggestions, corrections, and additions

22   to the report, and the probation officer will then prepare the

23   report in final to come to me.

24         Independent of that, counsel for both sides are hereby

25   invited to submit directly to the Court in writing any and all

P6CESHEP

1    materials bearing on any aspect of sentence.  And I think in

2    light of the fact that I will probably then want to convene a

3    brief *Fatico* hearing -- I'm using that term lightly, it may not

4    be technically a *Fatico* hearing but an opportunity to hear

5    prior to sentence from Mr. Shestakov -- why don't we have the

6    written materials two weeks in advance of sentence.  Normally I

7    do it one week, but I think two weeks now will allow me to get

8    up to speed before we have that questioning.

9          And we will set the sentencing down for --

10          THE DEPUTY CLERK:  Your Honor, the Court is free

11   October 14, 15, 16, and 17.

12          THE COURT:  Okay.  What days of the week are those?

13          THE DEPUTY CLERK:  Those are the Tuesday through

14   Friday of the holiday week.

15          THE COURT:  Okay.  Let's do it on Thursday.

16          THE DEPUTY CLERK:  That's Thursday, the 16th.

17          THE COURT:  Thursday, the 16th, at 4:00 p.m.

18          Does that work for both sides?

19          MS. GLAVIN:  Yes, your Honor.

20          MS. ZVEROVICH:  That works for the government.

21          Thank you.

22          MS. GLAVIN:  And just, your Honor, in terms of

23   preparing this, what I would propose to do, because to the

24   extent the Court is wondering, like, who is the work done for,

25   Deripaska, EN+, we're going to lose Mr. Fokin.  What I would

P6CESHEP

 1   just submit to the Court is what Mr. Fokin told the company and

 2   what was represented by his counsel, or potentially we could

 3   have his counsel make a representation.  I just think we're

 4   going to lose him.

 5          THE COURT:  Well, I don't think it should come from

 6   his counsel but I have no problem with your presenting

 7   something.  I think you've already --

 8          MS. GLAVIN:  We have, your Honor.

 9          THE COURT:  Yeah.  This is a very unlikely scenario,

10   but if I concluded that was critical and disputed in a material

11   way that would affect sentence, we could always see if we could

12   rearrange to have him testify in front of the Court in a

13   setting, and that would be immense fun, I'm sure.  But anyway,

14   I doubt that that will be necessary.

15          MS. GLAVIN:  And also with respect to any -- if it is

16   relevant as to a foreign witness, because I just think I'm

17   going to lose people, to be able to refer to 3500 material.

18          THE COURT:  Sure.  Of course the government, you know,

19   can do the same.

20          MS. GLAVIN:  Yes.  Yes.  Okay, your Honor.

21          THE COURT:  All right.

22          Anything else anyone wants to raise?

23          MS. GLAVIN:  Not from the defense.

24          And if he could just be continued on conditions.

25          THE COURT:  Yeah.

P6CESHEP

1            Anything from the government?

2            MS. ZVEROVICH:  No, your Honor.

3            THE COURT:  Very good.  Thanks a lot.

4            Oh, I'm sorry.  There is one last thing.

5            I assume the government consents to bail conditions

6   being continued on the same terms.

7            MS. ZVEROVICH:  We do, your Honor.

8            THE COURT:  All right.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25